Joshua N. Eppich (TBN 24050567)
Ken Green (TBN 24050698)
Aaron Guerrero (TBN 24050698)
Eric T. Haitz (TBN 24101851)
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 529-2732 telephone
(817) 405-6902 facsimile
Email:  joshua@bondsellis.com
Email: ken.green@bondsellis.com
Email: aaron.guerrero@bondsellis.com
Email: eric.haitz@bondsellis.com

*Proposed Counsel for*
*Debtors and Debtors-in-Possession*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| **IN RE:** § | **Chapter 11** |
| § | |
| § | **Case No. 25-41544** |
| **BALKAN EXPRESS, LLC,** *et al.* § | |
| § | **(Joint Administration Requested)** |
| **Debtors.**[1] § | |
| § | *Emergency Hearing Requested* |

### DEBTOR'S <u>EMERGENCY</u> MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO (I) MAINTAIN AND CONTINUE TO OPERATE UNDER FACTORING AND SECURITY AGREEMENT IN ORDER TO SELL ACCOUNTS POST-PETITION TO COMPASS FUNDING SOLUTIONS LLC PURSUANT TO 11 U.S.C. § 363(B), (C), (F), AND (M); (II) OBTAIN WORKING CAPITAL FROM COMPASS FUNDING SOLUTIONS LLC PURSUANT TO 11 U.S.C. § 364(C)(1), (C)(2), & (D)(1); (III) GRANT COMPASS FUNDING SOLUTIONS LLC ADEQUATE PROTECTION IN THE FORM OF FIRST PRIORITY LIENS AND SECURITY INTERESTS ON PROPERTY OF THE DEBTOR'S ESTATE PURSUANT TO 11 U.S.C. §§ 361 AND 363(E); (IV) MODIFY THE AUTOMATIC STAY; AND (V) <u>GRANT SUCH OTHER RELATED RELIEF</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Balkan Express, LLC (3974), and Balkan Logistics, LLC (8202). The Debtors' mailing address is 2560 E Long Ave, Fort Worth, Texas 76137.

---

---

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 1:30 P.M. ON MAY 2, 2025.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 2, 2025, AT 1:30 PM IN COURTROOM ROOM 204, U.S. COURTHOUSE, 501 W. TENTH STREET, FORT WORTH, TEXAS 76102.**

**YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 1.650.479.3207, MEETING ID: 2309 445 3213. VIDEO COMMUNICATION WILL BE BY USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE MORRIS'S HOME PAGE. THE MEETING CODE IS 2309-445-3213. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF ELECTRONIC HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE MORRIS'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

---

TO THE HONORABLE EDWARD L. MORRIS, U.S. Bankruptcy Judge:

NOW COMES, Balkan Express, LLC (the "**Debtor**"), a Debtor in the above-referenced bankruptcy proceeding (the "**Chapter 11 Case**"), and pursuant to Bankruptcy Rule 4001 files this *Debtor's Emergency Motion for Interim and Final Orders Authorizing the Debtor to (i) Maintain and Continue to Operate under Factoring and Security Agreement in Order to Sell Accounts Post-Petition to Compass Funding Solutions LLC Pursuant to 11 U.S.C. § 363(b), (c), (f), and (m); (ii) Obtain Working Capital from Compass Funding Solutions LLC Pursuant to 11 U.S.C. § 364(c)(1), (c)(2), & (d)(1); (iii) Grant Compass Funding Solutions LLC Adequate Protection in the Form of First Priority Liens and Security Interests on Property of the Debtor's Estate Pursuant to 11 U.S.C.*

---

*§§ 361 and 363(e); (iv) Modify the Automatic Stay; and (V) Grant such Other Related Relief* (the "**Motion**"). In support, the Debtor would show:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Debtor's bankruptcy case and this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), and (M).

2.      Venue of the Debtor's bankruptcy case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      The Debtor, Balkan Express, LLC, is a Texas limited liability company. The Debtor's principal place of business is 2560 E Long Ave., Fort Worth, Texas 76137.

4.      The Debtor filed for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on April 30, 2025 (the "**Petition Date**"). The Debtor, therefore, has the rights, powers and duties of a debtor in possession and continues to hold possession of and desires to maintain and operate its business pursuant to the authority of the Bankruptcy Code set out in §§ 1107 and 1108.

5.      A detailed description of the Debtor and its business, and the facts and circumstances supporting the Motion and the Debtor's Chapter 11 Case, are set forth in greater detail in the *Declaration of Daniel Ivandic in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day Declaration") filed concurrently herewith or shortly hereafter.[2]

---

[2]   All capitalized terms used and not defined herein shall have the meanings ascribed to them in the First Day Declaration.

## FACTORING RELATIONSHIP

6.      To fund the Debtor's operations and assure sufficient working capital, the Debtor entered into a Factoring and Security Agreement dated July 16, 2020 (the "**Factoring Agreement**") with Compass Funding Solutions LLC ("**Compass**") whereby the Debtor would sell acceptable accounts receivable to Compass in accordance with the terms set forth in the Factoring Agreement. A true and correct copy of the Factoring Agreement is attached hereto as **Exhibit "A."**.

7.      Pursuant to the Factoring Agreement, the Debtor sold to Compass acceptable accounts receivable generated from the Debtor's business operations. Compass purchased the acceptable accounts receivable at face value less the finance fee of one percent and one quarter of one percent (1.25%). Invoices with supporting documentation are submitted to Compass as they are generated with each invoice including instructions to the customer to make and mail payments to Compass at a lock box controlled by Compass.  Advance payments are made by Compass to Debtor.  Receipts to the lock box are accounted for daily.  Compass collects its advances, deducts its finance fee and remits any remaining funds to the Debtor.

8.      A reserve amount is maintained by Compass in a Reserve Account established pursuant to the Factoring Agreement. As acceptable accounts receivable are purchased, the Reserve Account fluctuates based on the amount of purchased accounts. Likewise, the Reserve Account fluctuates as payments on purchased accounts are received and additional discounts or fees are earned by Compass.

9.      As the Reserve Account establishes sufficient amounts of earned reserve, additional funds are released to the Debtor.

10.      As part of the Factoring Agreement, the Debtor covenants to repurchase purchased accounts Compass requires (the "**Repurchase Obligation**").

11.      To secure the Repurchase Obligation and other obligations of the Debtor under the Factoring Agreement, the Debtor granted Compass a first lien security interest in Collateral, as that term is defined in the Factoring Agreement.

12.      Compass duly perfected its first priority security interest in the Collateral, as defined in the Factoring Agreement, by filing a UCC-1 Financing Statement with the Texas Secretary of State's Office on July 14, 2020, under Filing No. 20-0035214411. A true and correct copy of the Financing Statement is attached hereto as **Exhibit "B"**.

13.      Compass and the Debtor have operated under the Factoring Agreement up to and including the Petition Date.

14.      In essence and in summary, post-petition Compass has agreed to continue to purchase the receivables of the Debtor in the same manner it purchased receivables pre-petition, including requiring the same security and lien rights in the Debtor's assets that it maintained prepetition. To that end, the Debtor and Compass seek an order that allows the Factoring Agreement to continue post-petition and allows acceptable receivables be sold pursuant to Section 363(b) of the Bankruptcy Code.

15.      In addition, Compass requires protections under Section 364(c) and (d) of the Bankruptcy Code to protect against any assertion of any other secured creditor in the Collateral. The Debtors are not currently aware of any secured creditor with an interest in the Collateral superior to the interest proposed to be granted to Compass.

16.      The Debtor and Compass have agreed to maintain their existing Factoring Agreement as a post-petition agreement and wish to operate on a post-petition basis in accordance with the terms of the Factoring Agreement, and subject to and conditioned upon Bankruptcy Court approval.

17.     To that end, the parties have agreed to enter into that certain *Post-Petition Chapter 11 Bankruptcy Rider to Factoring and Security Agreement* (the "**Rider**"). A true and correct copy of the Rider is attached hereto as **Exhibit "C"** (the Factoring Agreement and the Rider collectively being the "**Post-Petition Agreements**").

**RELIEF REQUESTED**

18.     Pursuant to the provisions of §§ 363(b), 362, and 364 of the Bankruptcy Code as well as the provisions of Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtor seeks authority to sell acceptable accounts receivable to Compass, modify the automatic stay so that Compass can continue to collect on purchased accounts and properly notify account debtors, and grant Compass post-petition liens to secure the Debtor's obligations under the Post-Petition Agreements as requested herein on an interim basis.

19.     The Debtor further requests that the Court set a final hearing on the Debtor's Motion at least fourteen (14) days after service of the Motion.

### *11 U.S.C. § 363*

20.     With respect to the sale component, Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may…sell…other than in the ordinary course of business, property of the estate." Pursuant to Section 1107 of the Bankruptcy Code, the Debtor, as a debtor-in-possession, "shall have all the rights…, and powers, and shall perform all the functions and duties…, of a trustee serving in a case under this chapter." Moreover, Section 363(c) of the Bankruptcy Code states, in relevant part, that:

> (1) If the business of the debtor is authorized to be operated under section…1108…of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale…of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

21.    The Debtor cannot operate without factoring its receivables. The Debtor will be unable to generate sufficient cash flow to continue operations without the ability of Compass to acquire the Debtor's accounts receivable. The Debtor has been using factoring to acquire working capital with Compass since as early as 2020 and does not otherwise maintain adequate cash flow to fund its operations on extended terms with its customer base. Absent the Debtor's ability to continue to sell its accounts receivable to Compass, the Debtor's operations would immediately cease.

### 11 U.S.C. § 362

22.    Section 362(d) allows the Court to modify the stay upon the request of any party in interest if cause exists. 11 U.S.C. § 362(d)(1). Cause exists for the Court to modify the stay to allow Compass to collect on accounts receivable factored pre-petition, to apply the collected accounts receivable against the obligations of the Debtor under the Factoring Agreement, as amended by the Rider, regardless if such obligations arose pre- or post-petition, and to allow Compass to provide payment notification to account debtors of the Debtor. Without the ability of Compass to collect on factored accounts receivable and to apply the collected funds against the obligations of the Debtor, Compass will not continue to purchase accounts receivable from the Debtor, and the Debtor's ability to acquire working capital post-petition will be non-existent. the Debtor would have to cease operations and shut its doors to the detriment of its creditors and the Estate.

### 11 U.S.C. § 364

23.    As to the credit component, Section 364 of the Bankruptcy Code permits courts to grant creditors senior lien rights in the Debtor's post-petition assets in exchange for extending necessary post-petition credit. See *In re Futures Equity L.L.C., 2001 Bankr. LEXIS 2229 (Bankr.*

*N.D. Tex. April 11, 2001)*; *In re Barbara K. Enterprises, Inc.*, No. 08-11474 (MG), 2008 Bankr.

LEXIS 1917 at *10 (Bankr. S.D.N.Y. 2008)("To obtain credit…a debtor must prove that (1) the

debtor cannot obtain credit unencumbered by super-priority status; (2) the credit transaction is

necessary to preserve assets of the estate; and (3) the terms of the agreement are fair, reasonable,

and adequate."). In pertinent part, Section 364 of the Bankruptcy Code states:

> (c) If the trustee [or the Debtor] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
>> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>> (3) secured by a junior lien on property of the estate that is subject to a lien.
>
> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
>> (A) the trustee [or the Debtor] is unable to obtain such credit otherwise; and
>> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

"To support a financing request, a debtor should provide evidence of a potential benefit for the

estate in obtaining the financing." *In re Barbara K. Enterprises, Inc.*, 2008 Bankr. LEXIS 1917, at

*14. Additionally, courts will generally accord significant weight to the necessity of the debtor

obtaining post-petition financing in order to remain viable. See *In re Snowshoe Co.*, 789 F.2d 1085,

1088 (4th Cir. 1986); *In re Ames Dep't Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

24.     In the instant case, the Debtor's ability to continue its operations by receiving

working capital from Compass in the form of advances from purchased accounts is necessary to

avoid immediate and irreparable harm to the estate. The Debtor's ability to obtain debtor-in-possession factoring facilities from Compass will allow the Debtor to continue operating so that it can continue with this reorganization by proposing a plan to satisfy the claims of creditors. The Debtor has negotiated the best terms available to obtain the funding it needs to maintain sufficient liquidity to preserve its assets over the course of this Chapter 11 Case. The Debtor submits that the circumstances of this Chapter 11 Case require the Debtor to obtain financing under Section 364(c) and (d) of the Bankruptcy Code, as Compass requires such relief to provide the Post-Petition Agreements. The Debtor has operated pursuant to the Factoring Agreement for years and is simply unable to obtain alternative financing from any other financing company or Compass at this juncture. Further, without continued access to factor its receivables under the Post-Petition Agreements, the Debtor will be forced to immediately cease operations, leaving no ability to pay its employees, service its customers, and ultimately repay its creditors.

### *Event of Default Provision*

25.    The Rider includes the following provision concerning a default under the Post-Petition Agreements:

> Compass may terminate this Agreement at any time by filing a notice with the Bankruptcy Court immediately upon the Debtor committing any one or more "material" Events of Default (as defined in the Order), and (ii) upon the occurrence of any other type of Event of Default after the Notice and Cure Period and Debtor's non-compliance therewith as provided in the Order."

## INTERIM APPROVAL

26.    The Debtor's ability to continue its operations by receiving working capital from Compass in the form of Advances is necessary to avoid immediate and irreparable harm to the estate. The Debtor believes that it is essential that the Debtor be permitted to sell its Accounts to Compass to continue its operations with the good faith expectation that it will achieve a successful

reorganization. The Debtor is in the business of transportation, shipping and logistics. Without access to the Advances the Debtor will be unable to meet its payroll obligations, pay its employees, fund continuing operations, or otherwise finally sustain its operations. The Debtor has evaluated its short-term financing and cash flow requirements and has reason to believe that the Budget (as defined in the Interim and Final Orders) will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the financing or the Budget.

27. Notwithstanding the very early stage of the case, the Debtor nonetheless believes that it will be able to successfully reorganize. The Debtor's primary concern is to ensure that its business continues to move ahead as smoothly as possible and without interruption during this Chapter 11 Case. The Debtor's ability to obtain debtor-in-possession factoring facilities via the Post-Petition Agreements will allow the Debtor to continue operating so that it can continue with this reorganization by proposing a plan to satisfy the claims of creditors. The Debtor's ability to convert its accounts into working capital is key to the Debtor's success going forward.

28. Finally, the Debtor and Compass jointly seek the protections afforded pursuant to 11 U.S.C. § 363(m) and 11 U.S.C. § 364(e), so that in the event of any reversal or modification on appeal of the Interim Order, no such order shall affect the validity of any debt incurred, or any priority or lien so granted to Compass, and the Court is requested to find that the extension of credit and the factoring facilities offered, and specifically the Post-Petition Agreements, are being provided in good faith.

**REQUEST FOR FINAL HEARING AND
WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)**

29. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use,

sale, or lease of property under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent potentially irreparable damage to the Debtor's operations, value, and ability to reorganize. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

30.    The Debtor therefore requests that the Court enter an interim order as soon as possible. The Debtor also requests the Court then set a final hearing at least fourteen (14) days after service of the Motion.

WHEREFORE, PREMISES CONSIDERED, the Debtor prays that the Court set an emergency hearing and determine that such notice and opportunity for hearing is reasonable under the circumstances, and upon hearing of the Motion grant the Debtor authority to continue to operate pursuant to the Post-Petition Agreements, sell acceptable accounts receivable to Compass, and provide adequate protection to Compass on an interim basis as set forth in this Motion, and that the Court set a final hearing on the Motion, and the Court grant such other and further relief, at law or in equity, as the Court may deem necessary and proper.

Dated: May 1, 2025                    Respectfully submitted,

                                    /s/ Joshua N. Eppich
                                    **BONDS ELLIS EPPICH SCHAFER JONES LLP**
                                    Joshua N. Eppich (Texas Bar No. 24050567)
                                    Eric T. Haitz      (Texas Bar No. 24101851)
                                    420 Throckmorton Street, Suite 1000
                                    Fort Worth, Texas 76102
                                    (817) 405-6900 telephone
                                    (817) 405-6902 facsimile
                                    Email: joshua@bondsellis.com
                                    Email: eric.haitz@bondsellis.com

                                    -and-

                                    Ken Green        (Texas Bar No. 24050698)
                                    Aaron Guerrero   (Texas Bar No. 24050698)
                                    402 Heights Boulevard
                                    Houston, Texas 77007
                                    (713) 335-4990 telephone
                                    (713) 335-4991 facsimile
                                    Email: ken.green@bondsellis.com
                                    Email: aaron.guerrero@bondsellis.com

                                    PROPOSED COUNSEL FOR DEBTORS AND
                                    DEBTORS-IN-POSSESSION

## CERTIFICATE OF SERVICE

An omnibus Certificate of Service concerning all "first day" motions shall be separately filed by the Debtors, which shall reflect service of this Motion.

                                    /s/ Eric T. Haitz
                                    Eric T. Haitz

# EXHIBIT  A

**COMPASS**
**FUNDING SOLUTIONS**

**115 55ᵗʰ St., Suite 301, Clarendon Hills, IL 60514  Tel: 844‑899‑8092 Fax: 888‑908‑8002 www.compassfs.net**

7/16/2020

**BALKAN EXPRESS LLC**
**ZLATAN KARIC**
**2560 E LONG AVE**
**FORT WORTH, TX 76137**

Re:  FINANCING PROPOSAL

Dear **Mr. KARIC**

Compass Funding Solutions LLC ("CFS") is pleased to express our interest in providing the financing program outlined below for **BALKAN EXPRESS LLC**

This proposal, including the Summary of Standard Terms is provided to you with the understanding that approval of the CFS credit committee is pending and that, ultimately, the final form of our agreement will be set forth conclusively in a legal contract signed by all parties entitled "Factoring and Security Agreement".  Accordingly, this proposal does NOT constitute a binding commitment on the part of CFS.

Proposed terms are as follows:

| | |
|---|---|
| **Client:** | **BALKAN EXPRESS LLC** |
| **Maximum Credit:** | $3,000,000.00 (Three Million dollars) |
| **Advance Rate:** | Ninety five percent (95.00%) of eligible accounts receivable. |
| **Recourse:** | Ninety (90) days recourse from purchase date |
| **Term:** | Initial term of eighteen (18) months with eighteen (18) month renewals. Sixty (60) days, but no more than seventy-five (75) days, written notice required for termination |
| **Fees:** | Finance Fee of  One percent and one quarter of one  percent (1.25%) for ninety (90) days thereafter     Based on the face amount of each financed invoice remains outstanding. |
| **Monthly Minimum Fee:** | Two quarters of one percent (0.50%) of the proposed Maximum Credit per month, for each month of the term. |
| **Early Termination Fee:** | The greater of (i) the Minimum Monthly Fee or (ii) the average monthly Base Fees earned by Purchaser for the three months having the highest total Base Fees, multiplied by the number of months (or portions thereof) between the Early Termination date and end of the current Term. |
| **Due Diligence Fee:** | $0 (non-refundable) |
| **Ach Funding Next Day:** | $0.00 |
| **Direct Wire:** | $0.00 |
| **Check Fee:** | $0.00 |
| **Invoice Fee:** | $0.00 |
| **Fuel Transfer:** | $7.95 |

This proposal is delivered to you with the understanding that neither it nor its substance will be disclosed by you to any third party, except with respect to persons who have an ownership or senior management relationship with **BALKAN EXPRESS LLC.** If you would like to go forward with this process, on the basis outlined herein, kindly e-mail or fax a signed and initialed copy of this proposal to our attention at the address noted above along with a check for $0.00 to satisfy the initial processing fee. If we do not hear from you within five (5) days of the date of this proposal, we will assume that you have made other financing arrangements and we will consider the proposal withdrawn.

Initials _ZK_

**COMPASS**
**FUNDING SOLUTIONS**

**115 55ᵗʰ St., Suite 301, Clarendon Hills, IL 60514   Tel: 844-899-8092 Fax: 888-908-8002 www.compassfs.net**

## SUMMARY OF STANDARD TERMS

**Security.**   CFS requires a perfected security interest in all assets and a first priority UCC-1 filing on accounts receivable and proceeds. Lien terminations and or subordinations will be required from all secured parties with liens filed against accounts receivable and proceeds.

**Guaranties.**    Personal guarantees / Validity Indemnifications will be required from all owners.

**Eligible Invoices.**   Eligible invoices are generally defined as follows. Exceptions to these guidelines may be negotiated on a case-by-case basis:

•Less than 30 days from the invoice date.

•Due from a customer that, in CFS's judgment, is creditworthy, up to the credit limit established by CFS.

•Resulting from the shipment and delivery of a product or completion of a service and not subject to counter-claim or offset (pre-billings, billings for products or services in transit, progress billings, guaranteed sales, and "bill and hold" sales are ineligible).

•Due from a customer based in the U.S.A. Eligibility of Canadian customers will be considered on an individual basis.

•Due from the Federal Government and assigned under the Assignment of Claims Act.

•Invoices from a customer of which less than 25% are over 90 days old.

•All customers must be credit approved by CFS prior to consideration for eligibility. Bank & trade references may be required for those customers lacking satisfactory credit histories.

   **Operational Mechanics.**    Originals or copies of invoices, together with all supporting documentation (i.e. customer signed timecards, purchase orders, bills of lading, proof of delivery or product/service acceptance), are submitted to CFS as generated. Each invoice will bear instructions to customers to make and mail payments to CFS, at a lock box controlled by CFS. CFS will notify customers of new remittance instructions.

Factoring advances are tracked against specific eligible invoices that have been identified for financing.  New invoices are typically verified prior to funding. Receipts to the lock box are accounted for daily. CFS collects its advances, deducts its financing fees and remits any funds remaining, together with payments received on non-financed invoices, on a monthly basis. Financed invoices which become ineligible, for any reason, are immediately "charged back" or repaid, together with the financing fees, out of available funds (including funds advanced against non-financed but eligible invoices).

After the initial funding, all invoice submissions are processed and funded within 24 hours of receipt (pending completion of all required debtor verification). CFS does offer same day processing of your invoices for an Expedite Fee of 1% of the invoice amount - cut off time is 1:00pm

Charges for the above will be deducted from each appropriate Schedule of Accounts.

**Service Bundles:** Should the financing services offered pursuant to this proposal be bundled with other services provided by CFS' Corporate Affiliates (i.e insurance, financing etc.), the approval of this proposal, and the termination of any of your factoring services may be dependent on your status with or the approval/termination of other services with CFS' Corporate Affiliates, and vice versa.

ZLATAN KARIC – MANAGER

**BALKAN EXPRESS LLC**

Subscribed and Sworn before me on this
_____ day of _____, 20____


_____
   NOTARY PUBLIC

Tatiana Gutu – Operations Manager

 **Compass Funding Solutions, LLC**

Subscribed and Sworn before me on this
____ day of _____, 20____


_____
   NOTARY PUBLIC

## FACTORING AND SECURITY AGREEMENT

THIS FACTORING AND SECURITY AGREEMENT (the "Agreement") is entered into this 16th day of January 2020 by and between BALKAN EXPRESS LLC. ("Seller") and COMPASS FUNDING SOLUTIONS, LLC. ("Purchaser") (collectively, the "Parties").

1. **Definitions and Index to Definitions**.  The following terms used herein shall have the following meaning.  All capitalized terms not herein defined shall have the meaning set forth in the Uniform Commercial Code:

    1.1   "**Account(s)**" – Seller's account receivables or invoices

    1.2.   "**Addendum**" – any amendment, restatement, supplement, modification, or addendum made to this Agreement and executed by the Parties.

    1.3.   "**Advance**" – any loan or advance of cash or funds made by Purchaser to Seller in accordance with this Agreement.

    1.4   "**Advance Rate**" – Ninety-five percent (95.00%).

    1.5.   "**Affiliate**" with respect to Seller, any Person who controls Seller, is controlled by Seller, or is under common control with such Person and Seller.  For purposes of this definition, "control" means the possession, directly or indirectly through one or more intermediaries, or the power to direct the management and policies of a Person, whether through the ownership of Seller's assets, shares, stock, partnership interests, limited liability company interests, membership interests, other equity interests, by contract, family relationship, or otherwise.

    1.6   "**Avoidance Claim**" - any claim that any payment received by Purchaser is avoidable under the US Bankruptcy Code or any other debtor relief statute.

    1.7.   "**Base Fees**" - Factoring Fee plus the Initial Fee.

    1.8.   "**Chosen State**: - Illinois.

    1.9.   "**Clearance Days**"- three (3) banking days.

    1.10.   "**Closed**" – Purchaser has received full payment on a Purchased or Reserve Account.

    1.11. "**Collateral**"- all Seller's now owned and hereafter acquired Accounts, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles.

    1.12.   "**Complete Termination**" – Complete Termination occurs upon satisfaction of the following conditions:

        1.12.1. Payment in full of all Obligations of Seller to Purchaser;

        1.12.2. If Purchaser has issued or caused to be issued guarantees, promises, or letters of credit on behalf of Seller, acknowledgement from any beneficiaries thereof that Purchaser or any other issuer has no outstanding direct or contingent liability therein.

        1.12.3. Seller has executed and delivered to Purchaser a general release in the form of Exhibit 1.12.3. attached hereto.

    1.13. "**Corporate Affiliate**" – Any entity that is a member of the family of companies related to Purchaser, with whom Seller has or had a written agreement.

    1.14. "**Curative Payment**" - a payment made by Purchaser to an affiliate of Purchaser for any outstanding amount(s) that is/are past due or owing by the Seller to such affiliate pursuant to the terms of a Related Agreement.

    1.15.   "**Early Termination Date**" – see Section 20.1. hereof.

    1.16.   "**Early Termination Fee**" – a charge equivalent to the greater of (i) the Minimum Monthly Fee or (ii) the average monthly Base Fees earned by Purchaser for the three months having the highest total Base Fees, multiplied by the number of months (or portions thereof) between the Early Termination Date and end of the current Term.

    1.17.   "**Eligible Account**" - an Account that is acceptable for purchase as solely determined by Purchaser in the exercise of its reasonable business judgment.

    1.18.   "**Events of Default**" - see Section 17.1.

    1.19.   "**Expedited Payment Fee**" – a charge equivalent to one percent (1%) of the Purchase Price.

    1.20.   "**Exposed Payments**" – payments received by Purchaser from or for the account of Payor that has become subject to a bankruptcy proceeding, to the extent such payments cleared the Payor's deposit account within ninety days of the commencement of said bankruptcy case.

    1.21.   "**Extension Date**" - with respect to each Advance, that date that is thirty (30) days after the Maturity Date.

    1.22.   "**Face Amount**" - the amount due on an Account at the time of its purchase.

    1.23.   "**Factoring Fee**" - the Factoring Fee Percentage multiplied by the Face Amount of a Purchased Account, for each Factoring Fee Period or portion thereof, that any portion thereof remains unpaid, computed from the end of the Initial Fee Period to and including the date on which a Purchased Account is Closed

    1.24.   "**Factoring Fee Percentage**" – One percent and one quarter of one percent (1.25%) .

    1.25.   "**Factoring Fee Period**" – Ninety (90) days

    1.26.   "**Fuel Advance**" - any loan or advance of cash or funds requested by Seller and made by Purchaser to Seller, in accordance with this Agreement, which loan or advance is used by Seller to obtain fuel or otherwise satisfy its contractual fuel requirements.

    1.27.   "**Initial Fee**" – an origination fee for each Purchased Account that is calculated in accordance with Section 6.2.

    1.28.   "**Initial Fee Percentage**" - zero percent (0%) of the Purchased Account; provided that, throughout the Term of this Agreement, including any successive Term as provided under this Agreement, the Parties hereby agree that the Purchaser will review the US Prime Rate in effect as of the first business day of each calendar month and, in the event that the then current US Prime Rate changes from the previous calendar month, the Parties hereby agree to commensurate an increase or decrease, as applicable, to the Initial Fee Percentage.

    1.29. "**Initial Fee Period**" - zero (0) days from the date on which the Purchase Price is paid to Seller or credited by Purchaser to Seller's Reserve Account.1.30.  Intentionally Left Blank.

    1.31.  Intentionally Left Blank.

INITIALS _ZK_____

1.32. "**Invoice**" - the document that evidences or is intended to evidence an Account. Where the context so requires, reference to an Invoice shall be deemed to refer to the Account to which it relates.

1.33. "**Invoice Fee**" — a charge of $0 for each Purchase Account

1.34. "**Late Charge(s)**" — a daily accruing fee representing three tenths of one percent (0.30%) of the Purchased Accounts for any untimely payment not paid but due to Purchaser.

1.35. "**Late Payment Date**" - Ninety (90) days from the date on which a Purchased Account was Purchased.

1.36. "**Maturity Date**" - with respect to each Advance, that date that is ninety (90) days after the date such Advance is made by the Purchaser.

1.37. "**Maximum Amount**" - $3,000,000.00

1.38. "**Minimum Monthly Fee**" — a charge of $15,000 or two quarters of one percent (.50%) of the proposed Maximum Credit per month, for each month of the Term

1.39. "**Misdirected Payment Fee**" — a charge equivalent to fifteen (15%) of the amount of any payment (but in no event less than $1,000) on account of a Purchased Account received by Seller and not delivered in kind to Purchaser by the next business day following the date of receipt by Seller, or thirty percent (30%) of the amount of any such payment received by Seller as a result of any action taken by Seller to cause such payment to be made directly to Seller.

1.40. "**Missing Notation Fee**" — a charge equivalent to fifteen percent (15%) of the Face Amount.

1.41. "**Obligations**" - all present and future obligations owed by Seller to Purchaser whether arising hereunder or otherwise and whether arising before, during or after the commencement of any Bankruptcy matter in which Seller is a Debtor.

1.42. "**Payor**" — an Account Debtor, or other obligor who makes payment on Seller' Accounts.

1.43. "**Person**" — any natural person, sole proprietorship, corporation, limited liability company, partnership (general or limited), joint venture, trust of any kind, government agencies and political subdivisions thereof, or any other organization, irrespective of whether they are legal entities.

1.44. "**Purchase Date**" - the date Purchaser advises Seller in writing that Purchaser has agreed to purchase Account(s).

1.45. "**Purchase Price**" - the Face Amount of a Purchased Account.

1.46. "**Purchased Accounts**" - Accounts purchased hereunder which have not been Closed.

1.47. "**Related Agreement(s)**" — any other written agreement, document or instrument between the Parties in which Seller has or owes an obligation to Purchaser, or Purchaser's Corporate Affiliates.

1.48. "**Remaining Balance**" - the unpaid portion of an Advance, including all fees, and accrued interest thereon, existing as of the Maturity Date of such Advance.

1.49. "**Repurchased**" — Account(s) that Seller buys back from Purchaser by paying Purchaser any unpaid Face Amount.

1.50. "**Required Reserve Amount**" - the Reserve Percentage multiplied by the unpaid balance of Purchased Accounts.

1.51. "**Reserve Account**" — an accounting maintained by Purchaser representing any unpaid portion of the Purchase Price due to Seller but retained by Purchaser to secure Seller's performance of this Agreement and any Related Agreement.

1.52. "**Reserve Percentage**" - approximately five percent (5%) of the total outstanding Purchased Accounts.

1.53. "**Reserve Shortfall**" - the amount by which the Reserve Account is less than the Required Reserve Amount.

1.54. "**Schedule of Accounts**" - Seller's list of Accounts offered for purchase to Purchaser under the terms of this Agreement.

1.55. "**Term**" — 18 months from the date set forth above, or any extension thereof as set forth in the most recent Addendum.

1.56. "**UCC**" — The Uniform Commercial Code as adopted in the Chosen State.

1.57. "**US Prime Rate**" — as of any date of determination, the national prime rate of interest as published by the Wall Street Journal.

1.58 "**Wire / Miscellaneous Fees**" — Unless waived or otherwise modified in writing, miscellaneous fees will be charged as follows: Direct Wire fee - $0, Check Fees: $0/per check; Invoice Fees: $0 per invoice; Next Day ACH Funding $0 per purchase; Due Diligence Fee: 0.00; and Fuel Transfer Fee: $7.95.

2. **Assignment & Sale; Billing, Advances, Fuel Advances**.

2.1. **Assignment& Sale**.

2.1.1. Seller shall offer to exclusively sell to Purchaser as absolute owner, with full recourse, such of Seller's Accounts as are listed from time to time on Schedules of Accounts.

2.1.2. Purchaser shall be automatically relieved of such non-payment risk as to all then unpaid Accounts in the event that Seller incurs any Misdirected Payment Fee or Missing Notation Fee.

2.1.3. Each Schedule of Accounts shall be accompanied by documentation supporting and evidencing the authenticity of the Account, as Purchaser shall from time to time request.

2.1.4. Purchaser may, but need not purchase from Seller such Accounts as Purchaser determines to be Eligible Accounts.

2.1.5. Purchaser may not purchase any Account which will cause the unpaid balance of Purchased Accounts to exceed the Maximum Amount, unless otherwise agreed in writing.

2.1.6. Purchaser shall pay the Purchase Price of any Purchased Account, less any amounts due to Purchaser from Seller, including, without limitation, any amounts due under Section 6.1. hereof, to Seller within two (2) business days of the Purchase Date, whereupon the Accounts shall be deemed purchased hereunder.

2.2. **Billing**. Purchaser may send a monthly statement to all Payors itemizing their account activity during the preceding billing period. All Payors shall be instructed to make payments to Purchaser.

INITIALS _____

2.3    **Advances**.  Subject to this Agreement, and upon Seller's request, Purchaser shall have the right, in its sole and absolute discretion, to make Advances to the Seller at any time during the Term.  Any Advance made by Purchaser to Seller shall be in an amount mutually agreed upon by the Parties.

2.3.1 Each Advance made by Purchaser under this Agreement shall be due and payable in full on or before the Maturity Date of such Advance.

2.3.2    Each Advance shall accrue interest at the interest rate per week as determined by Purchaser in its sole discretion beginning on the date such Advance is made by Purchaser until the earlier of (i) the date the Advance is paid in full, and (ii) the Maturity Date.

2.3.3  If the outstanding amount of the Advance, including all accrued and unpaid interest thereon, is not paid in full on or before the Maturity Date, then the Remaining Balance of such Advance shall be due and payable in full on or before the Extension Date.

2.3.4  The Remaining Balance of an Advance not paid in full on or before the Maturity Date shall accrue interest at the interest rate per week as determined by the Purchaser in its sole discretion from the date of the Maturity Date until the Remaining Balance of such Advance is paid in full.

2.3.5  Each Advance made by Purchaser under this Agreement shall constitute part of the Obligations and shall be secured in full by the Collateral.

2.4  **Fuel Advances.**  Subject to this Agreement, and upon Seller's request, Purchaser shall have the right, in its sole and absolute discretion, to make Fuel Advances to Seller at any time during the Term.  Any Fuel Advance made by Purchaser to Seller (i) shall be in an amount as mutually agreed upon between the Parties, and (ii) shall be made directly to Seller or any fuel account maintained by Seller.

2.4.1  Each Fuel Advance made by Purchaser under this Agreement shall be due and payable to Purchaser in cash on or before the seventh (7th) day after such Fuel Advance is made to Seller.

2.4.2  Each Fuel Advance shall accrue interest weekly at the Advance Rate  as determined by  Purchaser  on the date such Fuel Advance is made by  Purchaser until the date such Fuel Advance is paid in full.

2.4.3  Each Fuel Advance made by Purchaser under this Agreement shall constitute part of the Obligations and shall be secured in full by the Collateral.

3.  **Reserve Account**.

3.1.  Seller shall pay to Purchaser on demand the amount of any Reserve Shortfall.

3.2.  Purchaser shall pay to Seller any amount by which the Reserve Account exceeds the Required Reserve Amount on the 15th and the last business day of each month.

3.3.  Purchaser may charge the Reserve Account with any Obligation.

3.4.  Purchaser may pay any amounts due Seller hereunder by a credit to the Reserve Account.

3.5.  Purchaser may retain the Reserve Account until Complete Termination.

4.  **Exposed Payments**.

4.1.  Upon termination of this Agreement Seller shall pay to Purchaser (or Purchaser may retain), to hold in a non-segregated non- interest bearing account the amount of all Exposed Payments (the "Preference Reserve").

4.2. Purchaser may charge the Preference Reserve with the amount of any Exposed Payments that Purchaser pays to the bankruptcy estate of the Payor that made the Exposed Payment, on account of a claim asserted under Section 547 of the US Bankruptcy Code.

4.3.  Purchaser shall refund to Seller from time to time that balance of the Preference Reserve for which a claim under Section 547 of the US Bankruptcy Code can no longer be asserted due to the passage of the statute of limitations, settlement with the bankruptcy estate of the Payor or otherwise.

5.  **Authorization for Purchases**.

5.1.  Subject to this Agreement, Seller authorizes Purchaser to purchase Accounts upon telephonic, facsimile or other instructions received from anyone purporting to be an officer, employee or representative of Seller.

5.2.  If Seller breaches or is in default of any Related Agreement, or otherwise has any monetary obligation owed to a Corporate Affiliate of Purchaser that is past due, Purchaser may (i) cease its purchase of any Accounts under this Agreement until such time as Seller has remedied or cured such breach or default, or otherwise paid such outstanding or overdue obligations in full, and (ii) make a Curative Payment to such Corporate Affiliate of Purchaser in an amount up to the overdue or past due amount owed by Seller to Purchaser's  Corporate Affiliate.

5.3.  To the extent Purchaser makes a Curative Payment to Purchaser's Corporate Affiliate under the terms of this Agreement, Purchaser may make such Curative Payment from the funds in the Reserve Account or funds from a Purchased Account.

6.  **Seller's Fees and Expenses**.

6.1.  Expedited Payment Fee(s) - Shall become due and payable in accordance with Section 2.1.6.

6.2.  Initial Fee - Shall become due and payable on the Purchase Date, computed as the product of the Initial Fee Percent and the Face Amount of a Purchased Account.

6.3.  Invoice Fee - Shall become due and payable on the Purchase Date for each Purchased Account.

6.4.  Factoring Fee - Shall become due and payable on the date a Purchased Account is Closed.

6.5.  Minimum Monthly Fee - Shall become due and payable when any amount by which the Base Fees earned in any month (prorated for partial months) is less than the Minimum Monthly Fee. This fee shall be paid on the first day of the following month.

6.6.  Misdirected Payment Fee - Shall become due and payable immediately upon its accrual.

6.7.  Missing Notation Fee - Shall become due and payable immediately upon its accrual.

6.8.  Early Termination Fee - Shall become due and payable on the Early Termination Date if Seller terminates this Agreement before the Term ends.

6.9.  Late Charge(s) - Shall become due and payable on demand on all past due amounts due from Seller to Purchaser.

INITIALS _____

6.10. Out-of-pocket Expenses – Unless waived, shall become due and payable on demand for expenses incurred by Purchaser in the administration of this Agreement. Such expenses include but are not limited to wire transfer fees, postage and audit fees.  Seller shall not be required to pay for more than four audits per twelve-month period.

6.11. Due Diligence Fee – Shall become due and payable upon the opening of an account with Purchaser.

6.12. Fuel Transfer Fee: Shall become due and payable upon transfer of funds on behalf of Seller, from Purchaser to Corporate Affiliate to satisfy fuel card charges.

6.13. Direct Wire fee - shall be come due and payable upon the wire transfer of funds.

6.14. Check Fees – shall become due and payable upon issuance of any check.

6.15. Invoice Fees – shall be come due and payable upon purchase of each invoice.

6.16. Next Day ACH Funding – shall become due and payable upon Seller's request for next day ACH funding.

7. **Repurchase of Accounts**. Purchaser may require that Seller repurchase, by payment of the then unpaid Face Amount thereof, together with any unpaid fees relating to the Purchased Account(s) on demand, or, at Purchaser's option, by Purchaser's charge to the Reserve Account:

7.1. Any Purchased Account, whose payment has been disputed by Payor or Account Debtor obligated thereon, Purchaser being under no obligation to determine the bona fides of such dispute;

7.2. Any Purchased Account where Seller has breached any warranty as set forth in the Section 14.4.

7.3. Any Purchased Account due and owing which (i) in Purchaser's reasonable credit judgment Payor has become insolvent or (ii) has indicated an inability or unwillingness to pay the Purchased Account when due;

7.4. All Purchased Accounts in the Events of Default, or upon the termination date of this Agreement; and

7.5. Any Purchased Account that remains unpaid beyond the Late Payment Date.

8. **Security Interest**.

8.1. As collateral securing the Obligations, Seller grants to Purchaser a continuing first priority security interest in the Collateral.

8.2. With respect to the sale and purchase of the Accounts as between the Parties, such relationship shall be that of Purchaser and Seller. With respect to the making of Advances and Fuel Advances by Purchaser to Seller, the relationship of the Parties shall be that of lender and borrower.

9. **Clearance Days**.  For the purposes of this Agreement, Clearance Days will be added to the date on which Purchaser receives any payment.

10. **Authorization to Purchaser**.

10.1.  Seller irrevocably authorizes Purchaser, at Seller's expense, to exercise, at any time, any of the following powers until all of the Obligations have been paid in full:

10.1.1. Receive, take, endorse, assign, deliver, accept and deposit, in the name of Purchaser or Seller, any and all proceeds of any Collateral securing the Obligations or the proceeds thereof;

10.1.2. Take or bring, in the name of Purchaser or Seller, all steps, actions, suits or proceedings deemed by Purchaser necessary or desirable to effect collection of or other realization upon Purchaser's Accounts;

10.1.3. With respect to any of the following established or issued for the benefit of Seller, either individually or as a member of a class or group, file any claim under (i) any bond or (ii) under any trust fund;

10.1.4. Pay any sums necessary to discharge any lien or encumbrance which is senior to Purchaser's security interest in any assets of Seller, which sums shall be included as Obligations hereunder, and in connection with which sums the Late Charge shall accrue and shall be due and payable;

10.1.5. File in the name of Seller or Purchaser or both: (i) Mechanics lien or related notices, or (ii) Claims under any payment bond, in connection with goods or services sold by Seller in connection with the improvement of realty;

10.1.6. Notify any Payor obligated with respect to any Purchased Account, that the underlying Purchased Account has been assigned to Purchaser by Seller and that payment thereof is to be made to the order of and directly and solely to Purchaser;

10.1.7. Communicate directly with Seller's Payors to verify the amount and validity of any Purchased Account created by Seller.

10.1.8. After Events of Default:

(a)  Change the address for delivery of mail to Seller and to receive and open mail addressed to Seller;

(b)  Extend the time of payment of, compromise or settle for cash, credit, return of merchandise, and upon any terms or conditions, any and all Purchased Accounts and discharge or release any Payor or other obligor (including filing of any public record releasing any lien granted to Seller by such Payor), without affecting any of the Obligations;

10.1.9. File any initial financing statements and amendments thereto that:

(a)  Indicate the collateral as all assets of Seller or words of similar effect, regardless of whether any particular asset comprised in the collateral falls within the scope of Article 9 of the UCC, or as being of an equal or lesser scope or with greater detail; (b) Contain any other information required by part 5 of Article 9 of the UCC for the sufficiency or filing office

acceptance of any financing statement or amendment, including (i) whether Seller is an organization, the type of organization, and any organization identification number issued to Seller and, (ii) in the case of a financing statement filed as a fixture filing or indicating collateral as as-extracted collateral or timber to be cut, a sufficient description of real property to which the collateral relates; and

(c)  Contain a notification that Seller has granted a negative pledge to the Purchaser, and that any subsequent lienor may be tortuously interfering with Purchaser's rights;

10.1.10. Advises third parties that any notification of Seller's Payors will interfere with Purchaser's collection rights.

10.1.11. File any Correction Statement in the name of Seller under Section 9-518 of the UCC that Purchaser reasonably deems necessary to preserve its rights hereunder.

INITIALS _ZK_____

10.2.  Seller authorizes Purchaser to accept, endorse and deposit on behalf of Seller any checks tendered by Payor or Account Debtor "in full payment" of its obligation to Seller.  Seller shall not assert against Purchaser any claim arising therefrom, irrespective of whether such action by Purchaser effects an accord and satisfaction of Seller's claims, under §3-311 of the UCC, or otherwise.

10.1.12.  Upon written demand from Corporate Affiliate, pay to any Corporate Affiliate any sum that is past due more than 7 days.

11.  **Automated Clearing House (ACH) Authorization**.   In order to satisfy any of the Obligations, Seller authorizes Purchaser to initiate electronic debit or credit entries through the ACH system to any deposit account maintained by Seller.

12. **Covenants by Seller**.

12.1.  After written notice by Purchaser to Seller, and automatically, without notice, after Events of Default, Seller shall not, without the prior written consent of Purchaser in each instance, (a) grant any extension of time for payment of any of its Accounts, (b) compromise or settle any of its Accounts for less than the full amount thereof, (c) release in whole or in part any Payor, or (d) grant any credits, discounts, allowances, deductions, return authorizations or the like with respect to any of the Accounts.

12.2.  From time to time as requested by Purchaser, at the sole expense of Seller, Purchaser or its designee shall have access, during reasonable business hours if prior to Events of Default and at any time if on or after  Events of Default, to all premises where Collateral is located for the purposes of inspecting (and removing, if after the occurrence of an Events of Default) any of the Collateral, including Seller's books and records, and Seller shall permit Purchaser or its designee to make copies of such books and records or extracts therefrom as Purchaser may request.  Without expense to Purchaser, Purchaser may use any of Seller's personnel, equipment, including computer equipment, programs, printed output and computer readable media, supplies and premises for the collection of accounts and realization on other Collateral as Purchaser, in its sole discretion, deems appropriate.  Seller hereby irrevocably authorizes all accountants and third parties to disclose and deliver to Purchaser at Seller's expense  all  financial information, including all bank statements, tax returns, books and records, insurance policies, work papers, management reports and other information in their possession relating to Seller and its subsidiaries or other entities with common ownership.

12.3.  Before sending any Invoice to Payor, Seller shall mark same with a notice of assignment as may be required by Purchaser.

12.4.  Seller shall pay when due all payroll and other state and federal taxes, and shall provide proof thereof to Purchaser in such form as Purchaser shall reasonably require.

12.5.  Seller shall not create, incur, assume or permit to exist any lien upon or with respect to the Collateral.

12.6.  Notwithstanding Seller's obligation to pay the Misdirected Payment Fee, Seller shall pay to Purchaser on the next banking day following the date of receipt by Seller the amount of any payment on account of a Purchased Account.

12.7 Seller shall not sell or otherwise transfer the Collateral or other assets to any Affiliate or third party without written notice to Purchaser. Said notice shall be provided to Purchaser within ten (10) days of said transaction.

12.8.  Avoidance Claims.

12.8.1. Seller shall indemnify Purchaser from any loss arising out of the assertion of any Avoidance Claim and shall pay to Purchaser on demand the amount thereof.

12.8.2. Seller shall notify Purchaser within two (2) business days of it becoming aware of the assertion of an Avoidance Claim.

12.8.3. This provision shall survive termination of this Agreement.

12.9.  Third Party Brokers.

12.9.1 Should Seller desire to broker with third party brokers who are unapproved by Purchaser, Seller shall be solely responsible for the payment of those Invoices (and all associated charges, fees, and interest) not paid when due and owing to Purchaser.

13.  **Account Disputes**.   Seller shall notify Purchaser promptly of and, if requested by Purchaser, will settle all disputes concerning any Purchased Account, at Seller's sole cost and expense.  Purchaser may, but is not required to, attempt to settle, compromise, or litigate (collectively, "Resolve") the dispute upon such terms, as Purchaser in its sole discretion deem advisable, for Seller's account and risk and at Seller's sole expense.  Upon the occurrence of Events of Default, Purchaser may Resolve such issues with respect to any Purchased Account.

14. **Representation and Warranties**. Seller represents and warrants that:

14.1.  Seller is fully authorized to enter into and perform this Agreement;

14.2.  this Agreement constitutes a legal, valid and binding obligation;

14.3.  Seller is solvent and in good standing in the jurisdiction of its organization;

14.4.  The Purchased Accounts are and will remain:

14.4.1. Bona fide existing obligations created by the sale and delivery of goods or the rendition of services in the ordinary course of Seller's business;

14.4.2. Unconditionally owed and will be paid to Purchaser without defenses, disputes, offsets, counterclaims, or rights of return or cancellation other than Accounts owed by a Payor which was Insolvent;

14.4.3. Not sales to any entity that is affiliated with Seller or in any way not an "arms-length" transaction; and

14.5. Seller has not received notice or otherwise learned of actual or imminent bankruptcy, insolvency, or material impairment of the financial condition of any applicable Payor regarding Purchased Accounts.

15.  **Indemnification**.  Seller agrees to indemnify Purchaser against and save Purchaser harmless from any and all manner of suits, claims, liabilities, demands and expenses (including reasonable attorneys' fees and collection costs) resulting from or arising out of this Agreement, whether directly or indirectly, including the transactions or relationships contemplated hereby (including the enforcement of this Agreement), and any failure by Seller to perform or observe its obligations under this Agreement.

INITIALS _____

16. **Disclaimer of Liability**. In no event will the Parties be liable to the other for any lost profits, lost savings or other consequential, incidental or special damages resulting from or arising out of or in connection with this Agreement, the transactions or relationships contemplated hereby or Purchaser's performance or failure to perform hereunder, even if Purchaser has been advised of the possibility of such damages.

17. **Default**.

17.1. Events of Default. The following events will constitute Events of Default hereunder: (a) Seller defaults in the payment of any Obligations or in the performance of any provision hereof or of any other Related Agreement now or hereafter entered into with Purchaser or Purchaser's affiliate, or any warranty or representation contained herein proves to be false in any way, howsoever minor, (b) Seller or any guarantor of the Obligations becomes subject to any debtor-relief proceedings, (c) any such guarantor fails to perform or observe any of such guarantor's obligations to Purchaser or shall notify Purchaser of its intention to rescind, modify, terminate or revoke any guaranty of the Obligations, or any such guaranty shall cease to be in full force and effect for any reason whatever, (d) Purchaser for any reason, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Ob ligations.

17.2. Waiver of Notice. PURCHASER'S FAILURE TO CHARGE ANY FEES OR ACCRUED INTEREST UPON ANY "DEFAULT" OR "PAST DUE" RATE SHALL NOT BE DEEMED A WAIVER BY PURCHASER OF ITS CLAIM THERETO.

17.3. Effect of Default.

17.3.1. Upon the occurrence of any Event of Default, in addition to any rights Purchaser has under this Agreement or applicable law, Purchaser may immediately terminate this Agreement, at which time all Obligations shall immediately become du e and payable without notice.

17.3.2. Late Charge(s) shall accrue and is payable on demand on any Obligation not paid when due.

17.4 Cross Default & Cross Collateralization: Seller hereby acknowledges that Purchaser is associated with certain Corporate Affiliates who may also provide various other services to Seller (i.e insurance, equipment financing, fuel card, etc.). As a result of those relationships, Seller hereby understands and agrees that any default under any of the terms and conditions of any agreement Seller may have with Purchaser's Corporate Affiliates is a Default or an Event of Default under this Agreement, and any Default or Event of Default under this Agreement, is a default of all the agreements between Seller and Purchaser's Corporate Affiliate(s). Any default of this Agreement or any other agreement between Purchaser's Corporate Affiliates and Seller shall entitle Purchaser to exercise each and every right available to it under each and every agreement, including, but not limited to, the right to foreclose against and sell any collateral, whether real or personal, securing any of said obligations as if the pledged collateral secured all of said obligations.

18. **Account Stated**. Purchaser may from time to time, and its sole discretion render to Seller a statement setting forth the transactions arising hereunder. Each statement shall be considered correct and binding upon Seller as an account stated, except to the extent that Purchaser receives, within sixty (60) days after the mailing of such statement, written notice from Seller of any specific exceptions by Seller to that statement, and then it shall be binding against Seller as to any items to which it has not objected.

19. **Amendment and Waiver**. Only a writing signed by all Parties hereto may amend this Agreement (an "Addendum"). Each such Addendum shall be consecutively numbered and become a part of the Agreement extending its Term by the same number of months stated in Section 1.55 as of the date of the most current and/or valid Addendum. No failure or delay in exercising any right hereunder shall impair any such right that Purchaser may have, nor shall any waiver by Purchaser hereunder be deemed a waiver of any default or breach subsequently occurring. Purchaser's rights and remedies herein are cumulative and not exclusive of each other or of any rights or remedies that Purchaser would otherwise have.

20. **Termination, Effective Date, Automatic Renewal**.

20.1 Subject to the terms and conditions in this Section, this Agreement will be effective on the date it is signed by the Parties, shall continue for the Term, and shall be automatically extended (i) for successive Terms (each such successive Term shall be for the same period as the original Term), unless Seller shall provide written notice at least sixty (60) days but no more than seventy-five (75) days prior to the end of the Term (or applicable successive Term) of its intention to terminate whereupon this Agreement shall terminate on the last day of the Term (or applicable successive Term) or such later date as set forth in said notice (an "Early Termination Date"), and (ii) for one (1) successive Term (for the same period as the original Term) from the date that a Fuel Advance is provided by Purchaser to the Seller. For purposes of clarification, the provisions for the automatic extension of the Term set forth in clause (i) of this Section shall apply to any Term that is automatically renewed/extended under the terms and provisions of clause (ii) of this Section.

20.2 Subject to the terms and conditions of this Section 20, Seller may only terminate this Agreement as of the end of the next maturing Term, in accordance with the terms and prior written notice requirements set forth in Section 20.1 above.

20.3 Purchaser may terminate this Agreement by giving Seller thirty (30) days prior written notice of termination, whereupon this Agreement shall terminate on the earlier date of the date of termination or the end of the then current Term.

20.4 Seller may terminate this Agreement only if: (i) there are no breaches or defaults by Seller under any Related Agreement, (ii) there are no monetary obligations owed by Seller to any affiliate of Purchaser that are past due, and (iii) Seller pays all outstanding Obligations owed by the Seller to Purchaser under this Agreement as of the date of termination, or within three (3) days of the date of termination.

20.5 If Seller terminates this Agreement in accordance with the terms and conditions set forth herein, this Agreement shall automatically continue and extend for a successive Term if any of the following occurs: (i) a breach or default by Seller exists under any Related Agreement as of the date of termination, (ii) any monetary obligation owed by Seller to an affiliate of Purchaser under a Related Agreement is past due and still owed as of the date of termination, (iii) Seller fails to pay all outstanding Obligations owed by the Seller to Purchaser under this Agreement within three (3) days after the date of termination; or (iv) Seller has not requested a termination of assignment within three (3) days of the date of termination.

INITIALS _____ ZK _____

20.6  Notwithstanding anything set forth in this Agreement, Seller understands, consents and agrees that this Agreement, and any other agreement for services (i.e. insurance, equipment financing, etc) offered by Purchaser's Corporate Affiliate(s) that exists, or has been bundled, is related to or dependent upon the existence and operation of this Agreement, or any other agreement with a Corporate Affiliate, shall not be terminated unless and until any and all Obligations owed to Purchaser hereunder, and any and all obligations owed to Purchaser's Corporate Affiliate(s) are satisfied in full prior to, or as of the termination of this Agreement as set forth herein.

21.  **No Lien Termination without Release**.  In recognition of the Purchaser's right to have its attorneys' fees and other expenses incurred in connection with this Agreement secured by the Collateral, notwithstanding payment in full of all Obligations by Seller, Purchaser shall not be required to record any terminations or satisfactions of any of Purchaser's liens on the Collateral unless and until Complete Termination has occurred. Seller understands that this provision constitutes a waiver of its rights under §9 -513 of the UCC.

22.  **Successor Entity**. In the event Seller's principal(s), officer(s), director(s), or guarantor (s) during the Term of this Agreement or while Seller remains liable to Purchaser for any Obligations under this Agreement, or while Seller, or Seller's principal, officer, director, or guarantor is liable for any obligation with Purchaser's Corporate Affiliate(s), and/or directly or in conjunction with any other person, forms or causes to be formed a new entity or otherwise becomes associated with any newly formed or existing entity, whether corporate, partnership, limited liability company or otherwise that is in the same or substantially the same industry as Seller, such entity shall be deemed to have expressly assumed the Obligations Seller owes Purchaser under this Agreement unless Purchaser is first notified of such association and expressly consents, in writing, to a waiver of Purchaser's rights under this section. With respect to each such entity, Purchaser shall be deemed to have been granted an irrevocable power of attorney with authority to file, naming such newly formed or existing entity, a new UCC-1 financing statement naming such entity as Seller, and to have it filed with any and all appropriate secretaries of state or other UCC filing offices. Purchaser shall be held harmless by Seller and its principals, officers, directors, and employees, and shall be relieved of any liability as a result of Purchaser's filing of any such financing statement or the resulting perfection of its ownership or Security Interests in such entity's assets. In addition, Purchaser shall have the right to notify such entity's Payors or Account Debtors of Purchaser's rights, including without limitation, Purchaser's right to collect all Accounts, and to notify any Payor/Account Debtor, or other creditor of such entity that Purchaser has rights in such entity's assets.

23.  **Conflict**. Unless otherwise expressly stated in any other Related Agreement between the Parties, if a conflict exists between the provisions of this Agreement and the provisions of such other Related Agreement, the provisions of this Agreement shall control.

24.  **Severability**.  In the event any one or more of the provisions contained in this Agreement is held to be invalid, illegal or unenforceable in any respect, then such provision shall be ineffective only to the extent of such prohibition or invalidity, and the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

25.  **Enforcement**.  This Agreement and all Related Agreements hereof is the product of negotiation and preparation by and among the Parties and its respective attorneys, and shall be construed accordingly.

26.  **Relationship of Parties**.  The relationship of the Parties hereto shall be that of Seller and Purchaser of Accounts, and Purchaser shall not be a fiduciary of the Seller, although Seller may be a fiduciary of the Purchaser.

27.  **Attorneys' Fees**. Seller agrees to reimburse Purchaser on demand for:
27.1. The actual amount of all costs and expenses, including reasonable attorneys' fees, which Purchaser has incurred or may incur in:
    27.1.1. Negotiating, preparing, or administering this Agreement and any documents prepared in connection herewith;
27.1.2. Protecting, preserving or enforcing any lien, security or other rights granted by Seller to Purchaser or arising under applicable law, whether or not suit is brought, including but not limited to the defense of any Avoidance Claims or the defense of Purchaser's lien priority;
27.2. The actual or billed costs but not limited to photocopying (a minimum of $.10/page), travel, and reasonable attorneys' fees and expenses incurred in complying with any subpoena or other legal process in any way relating to Seller. This provision shall survive termination of this Agreement.
27.3. The actual amount of all costs and expenses, including reasonable attorneys' fees, which Purchaser may incur in enforcing this Agreement and any documents prepared in connection herewith, or in connection with any federal or state insolvency proceeding commenced by or against Seller, including those (i) arising out the automatic stay, (ii) seeking dismissal or conversion of the bankruptcy proceeding or (ii) opposing confirmation of Seller's plan there under.

28.  **Entire Agreement**.  No promises of any kind have been made by Purchaser or any third party to induce Seller to execute this Agreement. No course of dealing, course of performance or trade usage, and no parole evidence of any nature, shall be used to supplement or modify any terms of this Agreement.

29.  **Choice of Law**.  This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the Chosen State.

30.  **Jury Trial Waiver**.  THE PARTIES HERETO WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW

INITIALS _____

EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. ANY PARTY HERETO MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

31.  **Venue; Jurisdiction**.  Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Purchaser so elects, be instituted in any court sitting in the Chosen State, in the city in which Purchaser's chief executive office is located, or if none, any court sitting in the Chosen State (the "Acceptable Forums").  Seller agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Seller waives any right to oppose any motion or application made by Purchaser to transfer such proceeding to an Acceptable Forum.

32.  **Service of Process**.  Seller agrees that Purchaser may effect service of process upon Seller by regular mail at the address set forth herein or at such other address as may be reflected in the records of Purchaser, or at the option of Purchaser by service upon Seller's agent for the service of process.

33.  **Assignment**.  Purchaser may assign its rights and delegate its duties hereunder. Upon such assignment, Seller shall be deemed to have attorned to such assignee and shall owe the same obligations to such assignee and shall accept performance hereunder by such assignee as if such assignee were Purchaser.

34.  **Counterparts**.  This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart of the signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement, and any party delivering such an executed counterpart of the signature page to this Agreement by facsimile to any other party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

35.  **Notice**.
     35.1.  All notices required to be given to any party other than Purchaser shall be deemed given upon the first to occur of (i)deposit thereof in a receptacle under the control of the United States Postal Service, (ii) transmittal by electronic means t o a receiver under the control of such party, or (iii) actual receipt by such party or an employee or agent of such party.  All notices to Purchaser shall be deemed given upon actual receipt by a responsible officer of Purchaser.
     35.2.  For the purposes hereof, notices hereunder shall be sent to the following addresses, or to such other addresses as each such party may in writing hereafter indicate:

**SELLER: BALKAN EXPRESS LLC**                    **PURCHASER**: Compass Funding Solutions, LLC
 Address: 2560 E LONG AVE                          Address: 115 55th St, Suite 301
          FORT WORTH, TX 76137                              Clarendon Hills, IL 60514
 Officer:  ZLATAN KARIC                            Officer: TATIANA GUTU

Fax Number: (_____) _____         Fax Number: (888) 908-8002

IN WITNESS WHEREOF, the Parties have executed this Agreement on the day and year first above written.

**SELLER: BALKAN EXPRESS LLC**                    **PURCHASER**: Compass Funding Solutions, LLC
By:                                                By:
_____           _____
Name: ZLATAN KARIC                                  Name: TATIANA GUTU
Title:   Manager                                    Title: OPERATIONS MANAGER

Sworn and subscribed before me this                Sworn and subscribed before me this
_____ day of _____, 20_____                 _____ day of _____, 20_____

                                                   _____
_____            NOTARY PUBLIC
NOTARY PUBLIC
           { SEAL }                                           { SEAL }

                                                   INITIALS _____



**115 W 55th Street, Clarendon Hills, IL 60514  Tel: 844-899-8092  Fax: 888-908-8002 www.compassfs.net**

## 5. CONTINUING GUARANTY AGREEMENT

To induce Compass Funding Solutions, LLC, a Illinois Corporation and any other Co-Buyer specified in the Factoring Agreement described below ("Buyer") to enter into and provide credit facilities to **BALKAN EXPRESS LLC.** ( Seller") under that certain Factoring Agreement between Buyer and Seller dated the same date as this guaranty in such sums and upon such terms as Buyer deems best, the undersigned **ZLATAN KARIC**("Guarantor"), irrevocably guarantees, as an independent obligation of Guarantor, prompt performance and payment by Seller, when due, or at any time thereafter, with interest at the agreed upon rate, all of Seller's obligations heretofore or hereafter owed to or held by Buyer if not performed or paid promptly by Seller when due.

This guaranty is an absolute, unconditional, present and continuing guarantee of payment and not of collectability and is in no manner conditional or contingent upon any attempt to collect from Seller or any other person, or upon any other condition or contingency. Guarantor understands that if Seller fails to perform or pay promptly any of its obligations to Buyer, or files petition for bankruptcy, reorganization or insolvency, or makes an assignment for the benefit of creditors, Buyer may accelerate the performance of Seller's obligations.

If Buyer is required, at any time, to repay any amount received in payment of Seller's obligations because such payment was a preferential transfer or a fraudulent conveyance, or for any reason, then, Guarantor shall be and remain liable to Buyer under this guaranty for the amount so repaid as if is such amount had never originally been received by Buyer, and the provisions of this sentence shall survive, and continue in effect, notwithstanding any revocation or release of this guaranty.

Guarantor is aware of Seller's financial condition and is delivering this Guaranty at Seller's request and based solely upon Guarantor's own investigation.  Guarantor is not relying on any representation of Buyer.  Guarantor accepts the risks of a continuing guaranty, which include the possibility that Seller will incur additional obligations for which Guarantor will be liable after Seller is no longer able to pay, or after bankruptcy or insolvency proceedings have been commenced.

Guarantor represents and warrants that it is in Guarantor's direct interest to assist Seller in procuring credit, because Seller is an affiliate or Guarantor, furnishes goods or services to Guarantor, purchases or acquires goods or services from Guarantor, or otherwise has a direct or indirect corporate business relationship with Guarantor.

Guarantor waives: (i) notice of the  acceptance by Buyer  of this guaranty; (ii) notice of all transactions with Seller; (iii) notice of the conversion of any indebtedness to promissory notes and any requirements for presentment, protest and notice of protest and non-payment; (iv) any right of offset; (v) any defense based on bankruptcy, disability or any other defense of Seller or any other person; (vi) any defense based on Buyer's failure  to obtain, perfect or maintain a security interest; (vii) all rights of subrogation, reimbursement, indemnification or contribution and any other rights or defenses of an indemnitor or guarantor;  (viii) all rights and defenses based on Buyer's election of remedies.

Guarantor hereby waives Guarantor's right to a jury trial of any claim or clause of action based upon or arising out of this guaranty or any dealings relating to the subject matter of it.  Guarantor acknowledges that this waiver is a material inducement to Buyer to provide credit facilities under the Factoring Agreement and to accept this guaranty, that Buyer has already relied on this waiver in providing Seller with credit facilities and accepting this guaranty, and that Buyer will continue to rely on this waiver in future dealings under the Factoring Agreement.  Guarantor further warrants and represents that Guarantor has knowingly and voluntarily waived Guarantor's jury trial right following consultation with legal counsel.

Initial _ZK_____



**115 W 55th Street, Clarendon Hills, IL 60514   Tel: 844-899-8092   Fax: 888-908-8002 www.compassfs.net**

All rights of Guarantor under any current or future obligation owed by Seller are subordinated to the prior payment, in full, of all of Seller's obligations to Buyer. No payment of any such subordinated obligation shall be made to or accepted by Guarantor if at the time of such payment any of Seller's obligations to Buyer are outstanding, and any such payments that are received shall be held by Guarantor as trustee for Buyer.

Guarantor will pay all costs and expenses, including reasonable attorney's fees, incurred by Buyer in enforcing the obligations of Seller and Guarantor. All sums due under this guaranty shall bear interest at the highest rate charged with respect to Seller's obligations to Buyer.

If Buyer assigns Seller's underlying debt or any portion of it, Buyer may assign the rights granted under this guaranty as those rights apply to the assigned debt. Each provision of this guaranty shall be severable from every other provision for the purpose of determining the legal enforceability of this guaranty. This guaranty may only be amended in writing, and shall be governed and construed in accordance with the laws of the State of Illinois. Any suit, action or proceeding arising out of this guaranty, or the interpretation, performance or breach of this guaranty, shall be instituted in any court of Du Page County, State of Illinois ("Acceptable Forums"). Guarantor agrees that the Acceptable Forums are convenient to Guarantor, and irrevocably submits to the jurisdiction of the Acceptable Forums; irrevocably agreeing to be bound by any judgment rendered thereby in connection herewith, and waives any and all objections to the jurisdiction or venue that it may have any such suit, action or proceeding.

**By** *Zlatan karic*
Zlatan karic (Jul 17, 2020 11:24 GMT+2)

**Date:** Jul 17, 2020

**ZLATAN KARIC**
**2560 E LONG AVE**
**FORT WORTH, TX 76137**
 **SSN: 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**

**Notarization:**

**State of:** _____

**County of:** _____

**Personally appeared before me and proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged to me that said person executed the same in their authorized capacity.**

**Notary Public:** _____

**My Commission Expires On:** _____

# COMPASS
## FUNDING SOLUTIONS

**115 W 55th Street, Clarendon Hills, IL 60514    Tel: 844-899-8092 Fax: 888-908-8002    www.compassfs.net**

### CERTIFIED COPY OF RESOLUTIONS

**BE IT RESOLVED**, that the Factoring and Security Agreement (the "Agreement") dated 7/16/2020 between Seller and Compass Funding Solutions LLC (herein "Buyer") and all other agreements and documents connected therewith be, and the same hereby are, approved on the terms and conditions as set forth therein;

**BE IT FURTHER RESOLVED**, that any owner/member or officer/manager of Seller is authorized and directed to enter into said Agreement and all other agreements and documents connected therewith and to execute the same for and on behalf of Seller on the terms and conditions set forth therein;

**FURTHER RESOLVED**, that any owner/member or officer/manager of Seller is authorized and directed to negotiate, agree upon, execute and deliver, from time to time, in the name of, and on behalf of, Seller, such agreements, amendments and supplements to said Agreement or any other agreement or document connected therewith, documents, instruments, certificates, notices, and further assurances, and to perform any and all such acts and things as may be required by Buyer in connection with said Agreement or any other agreement or document connected therewith, or may to Buyer seem necessary or proper to implement and in effect complete consummation of Agreement or any other agreement or document connected therewith in all respects and the purposes set forth in these resolutions;

**FURTHER RESOLVED**, that a Schedule of Accounts submitted and signed by any employee/agent of Seller will authorize the sale, transfer or assignment of, for full face value or at a discount there from, accounts, notes, trade acceptances, drafts, contracts, leases or other instruments owned or held by Seller and guarantee payment thereof on Seller's behalf.

**FURTHER RESOLVED**, that these resolutions shall remain in full force and effect until written notice of their amendment or repeal shall be received by Buyer and until all indebtedness and obligations arising out of said Agreement and all other agreements and documents connected therewith shall have been paid and satisfied in full.

The undersigned, a duly authorized owner/member, or officer/manager of Seller does hereby certify that the foregoing is a true and correct copy of the resolutions duly adopted at a meeting of the Directors/Owners or Members/Managers of Seller, duly called, noticed and held on the date specified below, at which meeting there was at all times present and acting quorum of the same; that said resolutions are in full force and effect; and that the following is a true and correct list of the present officers/managers of Seller:

*CORPORATION (sign if Seller is a corporation)*          OR          *LLC (sign if Seller is a limited liability company)*

President's Name: _____          Manager's Name: **Zlatan karic**

President's Signature: _____          Manager's Signature: *Zlatan karic*
                                                          Zlatan karic (Jul 17, 2020 11:24 GMT+2)

Sec./Treas.'s Name:_____          Member's Name: _____

Sec./Treas.'s Signature:_____          Member's Signature: _____

*CORPORATION & LLCs (must be signed if corporation or LLC)*

Owner/Member's Name: _____          Owner/Member's Name: **Zlatan karic**

Owner/Member's Signature: _____          Owner/Member's Signature: *Zlatan karic*
                                                          Zlatan karic (Jul 17, 2020 11:24 GMT+2)

Seller's Name: **BALKAN EXPRESS LLC**                    Approved/Adopted by the Board: 7/16/2020

Revised 7.2016

**115 W 55th Street, Clarendon Hills, IL 60514 Tel: 844-899-8092  Fax: 888-908-8002 www.compassfs.net**

## CERTIFICATION OF INCUMBENCY

The undersigned, the duly elected and acting Secretary of **BALKAN EXPRESS LLC** a TX, LLC ("Company"), does hereby certify that set forth below are the names and titles of the officers of the Company and that set forth above each name is the true and correct signature of each officer.

_Zlatan karic_
Zlatan karic (Jul 17, 2020 11:24 GMT+2)

_____  MEMBER

_____  MEMBER

_____  MEMBER

_____  MEMBER

IN WITNESS WHEREOF, I have hereunto set my hand and seal of the Corporation this _Zk___ day of July, 2020

(SEAL)

_____
Secretary

**COMPASS**
**FUNDING SOLUTIONS**

115 W 55th St, Suite 301, Clarendon Hills, IL 60514 | Ph: (844) 899-8092 | Fax: (888) 908-8002  www.compassfs.net

## NOTIFICATION OF ASSIGNMENT

Date: 7/16/2020

Sir/Ma'am:

The purpose of this letter is to inform you that   **BALKAN EXPRESS LLC**              ("Assignor") has assigned its accounts and contracts receivable to Compass Funding Solutions, LLC ("CFS"). Pursuant to the assignment of its accounts and contracts receivable to Compass, we hereby notify you to begin remitting payment on all of Assignor's accounts, now or hereafter existing, exclusively in accordance with the remittance instructions below.  This notice shall also unconditionally authorize you to disclose to Compass all information relating to Assignor's accounts.

These instructions shall become effective immediately upon your receipt of this letter and are irrevocable.  These payment instructions and the provisions of this letter shall continue in force until your receipt of written notification of termination.  Such notification must be signed by CFS and notarized.  **PAYMENT TO ANYONE OTHER THAN CFS WILL NOT CONSTITUTE PAYMENT OF YOUR INDEBTEDNESS ON THE ACCOUNTS.**  If you have any questions concerning our billings or the remittance of your payments, please contact us at **(844) 899-8092**

The assignment Assignor's account to CFS has been duly recorded under the applicable Uniform Commercial Code provisions and this notification fulfills all notification requirements therein.

The remittance instructions contained herein shall supersede any other remittance instructions you may have previously received, including any other remittance address contained on Assignor's invoices or on your purchase orders.

**REMIT PAYMENTS TO:**
**COMPASS FUNDING SOLUTIONS LLC**
**BALKAN EXPRESS LLC**              MC#591082
**P.O.Box 205154**
**Dallas, TX 75320-5154**

If remitting electronically, funds must be sent via wire transfer or ACH using the following instructions:

| | |
|---|---|
| Account Name: | **COMPASS FUNDING SOLUTIONS LLC** |
| Bank Name: | **Wells Fargo Bank** |
| Account Number: | 5202 |
| Routing Number: | 248 |

If you wish to claim any adjustments, holdbacks, offsets, reductions, or qualifications with regard to existing accounts or if you claim any such adjustments, holdbacks, offsets, reductions, or qualifications in the future, please notify us immediately in writing of your claim including the specific circumstances relating thereto and/or any supporting documentation you may have.

Sincerely,

Company:   BALKAN EXPRESS LLC

Address:    2560 E LONG AVE

City, State, Zip:  FORT WORTH, TX 76137

Telephone No.:

By: Zlatan karic (Jul 17, 2020 11:24 GMT+2) _____ (Signature)

ZLATAN KARIC _____ (Printed)

**COMPASS FUNDING SOLUTIONS LLC**

By: JOSE REBOLLAR _____(Signature)

JOSE REBOLLAR _____ (Printed)

## ACKNOWLEDGED AND ACCEPTED:

(Company Name)_____

(Signature)_____

(Title)_____ (Date)_____

Please fax back to (888) 908-8002 or email to noa@compassfs.net

**FUNDING SOLUTIONS**

Credit Debit Authorization

I,_ZLATAN KARIC_____, ____MANAGER_____ (title)
a duly authorized signer for _____BALKAN EXPRESS LLC_____(Company), authorize
Compass Funding Solutions, LLC. and my financial institution, to initiate debit entries for
corporate trade payments from the demand deposit account and the financial institution
named below. I acknowledge that the origination of ACH transactions to/from a corporate
account must comply with the provisions of U.S. law. In addition, I authorize Compass Funding
Solutions , LLC to initiate electronic credit entries and adjustments for any debit entries made in
error to my account as indicated above.

## BBVA

(Financial Institution Name)

## Fort worth TX 76137

(Address)                          (City/State)                          (Zip)

██████0547                          ██████0439

(Routing Number- Sig. Panel Code)          (Account Number/ Exp. Date)

Type of Acct: ☑Checking ☐Savings

This authority is to remain in full force and effect until Compass Funding Solutions , LLC has
received written notification from an authorized representative
BALKAN EXPRESS LLC(Company) of its termination in such time and manner as to afford
COMP ANY and FINANCIAL INSTITUTION a reasonable opportunity to act on it.

*Zlatan Karic*
Zlatan karic (Jul 17, 2020 11:24 GMT+2)                          ZLATAN KARIC

Authorized Company Representative                          Printed name

MANAGER

Title

7/16/2020

Date

**PLEASE ATTACH VOIDED CHECK TO THIS FORM!**

**FUNDING SOLUTIONS**

## BANK WIRE LETTER

TO:  **BALKAN EXPRESS LLC**

**ZLATAN KARIC**

FROM: Compass Funding Solutions, LLC

DATE:  7/16/2020

RE:  Wiring Instructions

Please let this letter serve as our notification to you that Compass Funding Solutions, LLC cannot, under any circumstances, wire funds into a bank account being used by you primarily as a payroll account.

By signing below you are acknowledging that the banking account that you have designated for Compass Funding Solutions, LLC to wire funds into is not primarily a payroll account.

| | |
|---|---|
| BBVA | 0039 0439 |
| Name of Bank | Account # |

| | | |
|---|---|---|
| Fort Worth | Tx america | 6748 |
| Bank Location | City / State | ABA # |

**BALKAN EXPRESS LLC**

Company Name

7/16/2020

Date

_Zlatan Karic (Jul 17, 2020 11:24 GMT+2)_

Authorized Signature

**MANAGER**

Title

We appreciate your cooperation in this matter.

_Tatianna Gutu (Jul 17, 2020 16:23 CDT)_

[NAME]  Tatianna Gutu

Operations Manager



## TRANSPORTATION/CARRIER NEW VENDOR FORM
### *ALL FIELDS ARE REQUIRED UNLESS OTHERWISE NOTED

☒ New Vendor                    ☐ Change to Existing Vendor

How will settlements be paid?  ☒ Factoring Agent  ☐ Direct Deposit  ☐ Check
If Direct Deposit is checked, Vendor Direct Deposit Enrollment Form must be completed and attached.
Changes for payment terms need to be sent to Fax#479-770-2684 or Email quickpay@jbhunt.com

How would you like to receive your settlement information?  ☐ Fax  ☒ Email  ☐ Mail
All approved carriers are eligible for cash advances. If you DO NOT want to receive cash advances check here:  ☐

Are you requesting Quick Pay?  ☐ Yes  ☒ No

If you elect Quick Pay, please fax invoices and all required documents to (479) 820-2718. A fixed 1.5% processing fee for Quick Pay will be deducted for each final settlement. Each Cash Advance will incur a fee of $10.00. In the event a Cash Advance is issued and there is not enough PTE to cover it, a credit will be placed on your account.

| GENERAL INFORMATION | ARE YOU A CERTIFIED MINORITY/WOMAN-OWNED BUSINESS? (*THIS IS OPTIONAL) |
|---|---|

**GENERAL INFORMATION**

NAME: _____
(Individual name if sole proprietor)

BUSINESS NAME:  BALKAN EXPRESS LLC
(exactly as printed on invoice)

FACTORING AGENT NAME:  COMPASS FUNDING SOLUTIONS LLC
(if any)

PAYMENT ADDRESS:  P.O. BOX 205154
(If factored, Factoring Agent Name & Address)        (Street)

 DALLAS                    TX              75320-5154
(City)                     (State)          (ZIP)

PHONE:  844-899-8092          FAX:  888-908-8002

CONTACT:  AR@COMPASSFS.NET

E-MAIL ADDRESS:  AR@COMPASSFS.NET

MC# or DOT#:  591082

**ARE YOU A CERTIFIED MINORITY/WOMAN-OWNED BUSINESS? (*THIS IS OPTIONAL)**

☐  YES        ☐  NO

NAME OF CERTIFYING AGENCY:
_____

☐ STATE
☐ FEDERAL
☐ ASIAN INDIAN
☐ ASIAN PACIFIC
☐ BLACK (AFRICAN AMERICAN)
☐ ESKIMO/ALEUT
☐ HISPANIC
☐ NATIVE AMERICAN
☐ NATIVE HAWAIIAN
☐ WOMAN-OWNED

---

**1099 INFORMATION**

☐ CORPORATION  ☒ LLC  ☐ INDIVIDUAL/SOLE PROPRIETOR  ☐ OTHER
TAXPAYER IDENTIFICATION NUMBER (EIN or SSN) ▮▮▮▮▮8974

(please mark appropriate box below)
☒ Employer Identification Number  'OR'  ☐ Social Security Number
PHYSICAL ADDRESS:  2560 E LONG AVE
(for mailing of tax forms)                (Street)
FORT WORTH                TX          76137
(City)                     (State)       (Zip)

Certification
Under penalties of perjury, I certify that:
1.  The number shown on this form is my correct identification number (or I am waiting for a number to be issued to me), and
2.  I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3.  I am a U. S. Person (including U. S. resident alien).
Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN.

SIGN HERE   *Zlatan karic (Jul 17, 2020 11:24 GMT+2)*          DATE  7/16/2020

Set up ID#
*Carrier ID# _____

V-Code ID# _____
Carrier ID# _____
For Internal Use Only

*Please Note: These fields
must be completed prior to
remitting to C. H. Robinson.
Documents with incomplete
information will be discarded.

**ACCOUNTS RECEIVABLE AUTHORIZATION**

C.H. Robinson Worldwide, Inc., including its subsidiaries and affiliated companies ('CHR'),
provides electronic access through CHR's proprietary systems to the accounts receivable and
load information pertaining to shipments transported by the carrier named below ('Carrier').
Carrier hereby authorizes and requests that CHR permit Carrier's factoring company or lender,

*COMPASS FUNDING SOLUTIONS LLC
Carrier's factoring company or lender

*Ivan Petkovski/ipetkovski@compassfs.net
Factoring Agent's Name

844-899-8092 x 8455/ direct: 214-396-5943
Factoring Company Phone Number

to have electronic access to Carrier's accounts receivable information. This Authorization shall
remain in effect until Carrier notifies CHR in writing that it revokes this Authorization. Carrier
hereby indemnifies and holds harmless CHR against any claims arising out of the grant of this
Authorization or the transmission of information by CHR. The undersigned is an owner or officer
of Carrier and is authorized by Carrier to sign this Authorization on Carrier's behalf.

*_BALKAN EXPRESS LLC_____
CARRIER

_____
DBA - If Applicable

*591082
MC#

ZLATAN KARI___

*By: _Zlatan karic_
A    Zlatan karic (Jul 17, 2020 11:24 GMT+2)

Its: _Zlatan karic_
     Zlatan karic (Jul 17, 2020 11:24 GMT+2)

MANAGER SIGNATURE

Date: 7/16/2020
* Indicates Required Fields

Fax to: 952-683-3701

or mail to

**Attention: Carrier Services
Suite 100
14800 Charlson Road
Eden Prairie, MN 55347**

Form **8821**

(Rev. January 2018)

Department of the Treasury
Internal Revenue Service

# Tax Information Authorization

▶ Go to *www.irs.gov/Form8821* for instructions and the latest information.

▶ Don't sign this form unless all applicable lines have been completed.

▶ Don't use Form 8821 to request copies of your tax returns
or to authorize someone to represent you.

OMB No. 1545-1165

**For IRS Use Only**

Received by:

Name _____

Telephone _____

Function _____

Date _____

---

**1 Taxpayer information.** Taxpayer must sign and date this form on line 7.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| **BALKAN EXPRESS LLC**<br>**2560 E LONG AVE**<br>**FORT WORTH, TX 76137** | ████████8974 |
| | Daytime telephone number ⎮ Plan number (if applicable)<br>817-924-1410 |

**2 Appointee.** If you wish to name more than one appointee, attach a list to this form. **Check here if a list of additional
appointees is attached** ▶ ☐

| Name and address | |
|---|---|
| Compass Funding Solutions, LLC<br>115 W 55th Street, Suite 301<br>Clarendon Hills, IL 60514 | CAF No. _____ 0309-61014R<br>PTIN _____<br>Telephone No. _____ 844-899-8092<br>Fax No. _____ 888-908-8002<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

**3 Tax Information.** Appointee is authorized to inspect and/or receive confidential tax information for the type of tax, forms,
periods, and specific matters you list below. See the line 3 instructions.

☐ By checking here, I authorize access to my IRS records via an Intermediate Service Provider.

| (a)<br>Type of Tax Information (Income,<br>Employment, Payroll, Excise, Estate, Gift,<br>Civil Penalty, Sec. 4980H Payments, etc.) | (b)<br>Tax Form Number<br>(1040, 941, 720, etc.) | (c)<br>Year(s) or Period(s) | (d)<br>Specific Tax Matters |
|---|---|---|---|
| INCOME | 940, 1064, 8832, 1120, 1120A | 2016-2022 | LIEN INFORMATION |
| EMPLOYMENT EXERCISE | 941.720 | 2016-2022 | LIEN INFORMATION |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the tax information authorization is for a specific
use not recorded on CAF, check this box. See the instructions. If you check this box, skip lines 5 and 6 . . . . . . . ▶ ☐

**5 Disclosure of tax information** (you **must** check a box on line 5a or 5b unless the box on line 4 is checked).

**a** If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing
basis, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**Note.** Appointees will no longer receive forms, publications, and other related materials with the notices.

**b** If you don't want any copies of notices or communications sent to your appointee, check this box . . . . . . . ▶ ☐

**6 Retention/revocation of prior tax information authorizations.** If the line 4 box is checked, skip this line. If the line 4 box
isn't checked, the IRS will automatically revoke all prior Tax Information Authorizations on file unless you check the line 6
box and attach a copy of the Tax Information Authorization(s) that you want to retain. . . . . . . . . . . . ▶ ☐

To revoke a prior tax information authorization(s) without submitting a new authorization, see the line 6 instructions.

**7 Signature of taxpayer.** If signed by a corporate officer, partner, guardian, partnership representative, executor, receiver,
administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to
the tax matters and tax periods shown on line 3 above.

▶ **IF NOT COMPLETE, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.**

▶ **DON'T SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.**

| *Zlatan karic*<br><span style="font-size:small">Zlatan karic (Jul 17, 2020 11:24 GMT+2)</span> | Jul 17, 2020 |
|---|---|
| Signature | Date |
| Zlatan karic | Manager |
| Print Name | Title (if applicable) |

**For Privacy Act and Paperwork Reduction Act Notice, see instructions.** Cat. No. 11596P Form **8821** (Rev. 1-2018)

Form **8821**

(Rev. January 2018)

Department of the Treasury
Internal Revenue Service

## Tax Information Authorization

▶ Go to *www.irs.gov/Form8821* for instructions and the latest information.

▶ Don't sign this form unless all applicable lines have been completed.

▶ Don't use Form 8821 to request copies of your tax returns
or to authorize someone to represent you.

OMB No. 1545-1165

**For IRS Use Only**

Received by:

Name _____

Telephone _____

Function _____

Date _____

---

**1  Taxpayer information.** Taxpayer must sign and date this form on line 7.

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| ZLATAN KARIC<br>2560 E LONG AVE<br>FORT WORTH, TX 76137 | ▮▮▮▮▮ 642 |
| | Daytime telephone number · Plan number (if applicable) |
| | 817-924-1410 |

**2  Appointee.** If you wish to name more than one appointee, attach a list to this form. **Check here if a list of additional appointees is attached** ▶ ☐

| Name and address | |
|---|---|
| Compass Funding Solutions, LLC<br>115 W 55th Street, Suite 301<br>Clarendon Hills, IL 60514 | CAF No.  0309-61014R<br>PTIN  _____<br>Telephone No.  844-899-8092<br>Fax No.  888-908-8002<br>Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

**3  Tax Information.** Appointee is authorized to inspect and/or receive confidential tax information for the type of tax, forms, periods, and specific matters you list below. See the line 3 instructions.

☐ By checking here, I authorize access to my IRS records via an Intermediate Service Provider.

| (a)<br>Type of Tax Information (Income, Employment, Payroll, Excise, Estate, Gift, Civil Penalty, Sec. 4980H Payments, etc.) | (b)<br>Tax Form Number (1040, 941, 720, etc.) | (c)<br>Year(s) or Period(s) | (d)<br>Specific Tax Matters |
|---|---|---|---|
| INCOME | 1040 | 2016-2022 | LIEN INFORMATION |
| | | | |
| | | | |

**4  Specific use not recorded on Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions. If you check this box, skip lines 5 and 6 . . . . . . . ▶ ☐

**5  Disclosure of tax information** (you **must** check a box on line 5a or 5b unless the box on line 4 is checked).

**a** If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . ▶ ☐

**Note.** Appointees will no longer receive forms, publications, and other related materials with the notices.

**b** If you don't want any copies of notices or communications sent to your appointee, check this box  .   .   .   .   .   .   . ▶ ☐

**6  Retention/revocation of prior tax information authorizations.** If the line 4 box is checked, skip this line. If the line 4 box isn't checked, the IRS will automatically revoke all prior Tax Information Authorizations on file unless you check the line 6 box and attach a copy of the Tax Information Authorization(s) that you want to retain.  .   .   .   .   .   .   .   .   . ▶ ☐

To revoke a prior tax information authorization(s) without submitting a new authorization, see the line 6 instructions.

**7  Signature of taxpayer.** If signed by a corporate officer, partner, guardian, partnership representative, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters and tax periods shown on line 3 above.

▶ **IF NOT COMPLETE, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.**

▶ **DON'T SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.**

| *Zlatan Karic*<br>Zlatan karic (Jul 17, 2020 11:24 GMT+2) | Jul 17, 2020 |
|---|---|
| Signature | Date |
| Zlatan karic | Manager |
| Print Name | Title (if applicable) |

**For Privacy Act and Paperwork Reduction Act Notice, see instructions.**        Cat. No. 11596P        Form **8821** (Rev. 1-2018)

# Binder1

**Final Audit Report**                                                                          2020-07-17

| | |
|---|---|
| Created: | 2020-07-16 |
| By: | JOSE REBOLLAR (jrebollar@compassfs.net) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAtMl4owG_33_awsRBle3BXGunTSC1PznA |

## "Binder1" History

🗐 Document created by JOSE REBOLLAR (jrebollar@compassfs.net)
2020-07-16 – 4:05:51 PM GMT- IP address: 50.203.47.30

✉ Document emailed to Zlatan karic (zeljkacvijetic@yahoo.com) for signature
2020-07-16 – 4:13:16 PM GMT

🗐 Email viewed by Zlatan karic (zeljkacvijetic@yahoo.com)
2020-07-16 – 8:59:07 PM GMT- IP address: 31.223.129.92

✍ Document e-signed by Zlatan karic (zeljkacvijetic@yahoo.com)
Signature Date: 2020-07-17 - 9:24:42 AM GMT - Time Source: server- IP address: 31.223.129.216

✉ Document emailed to Tatiana Gutu (t.gutu@compassfs.net) for signature
2020-07-17 – 9:24:45 AM GMT

🗐 Email viewed by Tatiana Gutu (t.gutu@compassfs.net)
2020-07-17 – 9:22:56 PM GMT- IP address: 50.203.47.30

✍ Document e-signed by Tatiana Gutu (t.gutu@compassfs.net)
Signature Date: 2020-07-17 - 9:23:23 PM GMT - Time Source: server- IP address: 50.203.47.30

✅ Signed document emailed to Zlatan karic (zeljkacvijetic@yahoo.com), JOSE REBOLLAR
(jrebollar@compassfs.net), CPS Credit Decisions (underwriting@compassfs.net),
m.barjaktarevic@compassfs.net, and 2 more
2020-07-17 – 9:23:23 PM GMT

Adobe Sign

# EXHIBIT  B

**UCC FINANCING STATEMENT**

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
COMPASS FUNDING SOLUTIONS LLC 8448998092

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
COMPASS FUNDING SOLUTIONS LLC
115 55TH ST. SUITE 301
Clarendon Hills, IL 60514
USA

**FILING NUMBER:** 20-0035214411
**FILING DATE:** 07/14/2020    12:57 PM
**DOCUMENT NUMBER:** 982922460011
**FILED: Texas Secretary of State**
**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | BALKAN EXPRESS LLC | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2560 E LONG AVE | FORT WORTH | | tx | 76137 | USA |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | KARIC | ZLATAN | | | |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 303 WOODSONG WAY | FORT WORTH | | TX | 76137 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | COMPASS FUNDING SOLUTIONS LLC | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 115 55TH ST. SUITE 301 | CLARENDON HILLS | | IL | 60514 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
Collateral- All assets of the Debtor

Notice- Pursuant to an agreement between debtor and secured party, debtor has
agreed not to grant a security interest in the collateral, described herein and
any future commercial tort claims to any other secured party. Accordingly, the
acceptance of any such security interest by anyone other than the above secured
party is likely to constitute the tortious interference with secured party's
right.

In the event that any entity is granted a security interest in debtor's
accounts, chattel paper or general intangibles contrary to the above, the
secured party asserts a claim to any proceeds thereof received by such entity.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY**

# EXHIBIT  C

## POST-PETITION CHAPTER 11 BANKRUPTCY RIDER
## TO THE FACTORING AND SECURITY AGREEMENT

This Post-Petition Chapter 11 Bankruptcy Rider to Factoring and Security Agreement (hereinafter referred to as **"Bankruptcy Rider")** is made and entered into the day of May, 2025 subject to approval of the Bankruptcy Court **("Effective Date")** by and between the Chapter 11 Debtor, and as may be applicable Debtor-in-Possession), Balkan Express LLC, a Texas limited liability company (hereinafter referred to as the **"Debtor"** or **"Client")** and Compass Funding Solutions LLC ("Compass")(Client/Debtor and Compass shall be referred to collectively as, the "**Parties"** and each individually as a **"Party").**

## RECITALS:

1.      Debtor is in a Chapter 11 bankruptcy case currently pending in the United States Bankruptcy Court for the Northern District of Texas, Chapter 11 Case No. 25-41544 hereinafter "Bankruptcy Case" or "Bankruptcy Court"). The Bankruptcy Case was filed on April 30, 2025 (**"Petition Date"**).

2.      Debtor and Compass are parties to and desire to operate post-petition under a Factoring and Security Agreement (the **"Factoring Agreement")** as of the Effective Date, as supplemented by this Bankruptcy Rider effective as of and after the Petition Date **("Post-Petition")** whereby the Debtor agrees to sell accounts to Compass, and Compass, in its sole discretion, will be entitled to purchase accounts (referred to in the Factoring Agreement as **"Purchased Accounts")** and in exchange for purchasing the Debtor's rights, title to and interest in such Purchased Accounts, Compass will make Purchase Price (as defined in the Factoring Agreement) advances available to the Debtor, and the Debtor shall grant to Compass a first priority ownership interest in all Purchased Accounts and Compass shall maintain a first priority security interest in certain assets of the Debtor, including, but not limited to, all Accounts and non-Purchased Accounts, inventory, equipment, general intangibles, etc. and all proceeds thereof as collateral securing the Debtor's monetary and non-monetary Obligations (as defined in the Factoring Agreement) in accordance with the terms of the Factoring Agreement and to the extent that Compass held a properly perfected first priority security interest in the assets (the **"Compass Collateral"**).

3.      Debtor has requested that on a post-petition basis Compass agree to provide factoring facilities to the Debtor in accordance with the Factoring Agreement. Debtor and Compass wish to enter into and operate under and in accordance with the Factoring Agreement, on a post-petition basis, in order to enable Compass to, *inter alia,* purchase Accounts from the Debtor. (The Factoring Agreement and this Bankruptcy Rider and any other related documents entered or to be entered into between Compass and Debtor, shall be collectively referred to as the "**Post- Petition Agreements"** and this Bankruptcy Rider may be so referenced separately).[1]

4.      The Debtor is and remains authorized to operate the Debtor's business and Debtor and Compass intend to operate, post-petition, under the Post-Petition Agreements subject to the entry of an interim and/or final Bankruptcy Court Order(s) approving Debtor-

---

[1] The Bankruptcy Rider may or may not have been executed as of the date this Motion is filed, and the effectiveness of the Rider is subject to Bankruptcy Court approval.

in-Possession Financing and Post-Petition Factoring and Security Agreement **("Proposed Interim Order").** The Debtor, with the consent and joinder of Compass, agrees to timely file with the Bankruptcy Court in the Bankruptcy Case the form of agreed Motion requesting entry of the Proposed Interim Order (and final order) (the "**Motion**").

     5.     The Debtor affirms the validity and accuracy of the stipulated facts contained in the Proposed Interim Order, a copy of which is attached hereto as **Exhibit "A."**

## AGREEMENT

     Now, therefore, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

     1.     The foregoing recitals shall be deemed a part of this Bankruptcy Rider for all purposes and are acknowledged by the Debtor as being true and correct.

     2.     The Parties' operation under the Post-Petition Agreements, including this Bankruptcy Rider, shall be conditioned upon Compass's agreement to the terms of the Proposed Interim Order and subject to the entry of the Proposed Interim Order by the Bankruptcy Court in a form which substantially conforms with Exhibit A (and a final Order approving the Proposed Interim Order on a final basis in substantially the same form as the Proposed Interim Order or as agreed to by the Parties). Debtor acknowledges that if the Proposed Interim Order is approved by the Bankruptcy Court in the form satisfactory to Compass, it shall be Debtor's obligation to have a copy of the Proposed Interim Order duly served on all parties-in-interest pursuant to the Federal Rules of Bankruptcy Procedure, including Rule 4001(d), and all applicable local rules and requirements in respect thereto.

     3.     Debtor acknowledges that this Bankruptcy Rider is the product of joint negotiations between the Parties hereto and represents the jointly conceived, bargained-for and agreed upon language mutually determined by the Parties to express their intention in entering into this Bankruptcy Rider. Any ambiguity or uncertainty in this Bankruptcy Rider shall be deemed to be caused by, or attributable to, all Parties hereto collectively and any action or proceeding to enforce or interpret this Bankruptcy Rider shall be construed in a neutral manner, and no term or condition of this Bankruptcy Rider shall be construed more or less favorably to any one party, or group of parties, to this Bankruptcy Rider. It shall be Debtor's duty to obtain all requisite Bankruptcy Court approvals of the Post-Petition Agreements. Debtor acknowledges that there is no basis to assert and Debtor on its behalf and on behalf of the Estate shall be deemed to have waived, as of the Effective Date, any right to contest Compass's rights under and with respect to the Post-Petition Agreements, including, but not limited to: (a) Compass's ownership rights in any post-petition Purchased Accounts (as defined in the Factoring Agreement) that have been or may be purchased by Compass, (b) the validity, enforceability or priority of the liens and security interest now existing and hereafter granted to Compass in the Debtor's assets

arising and acquired after the Petition Date, including, but not limited to, all accounts, inventory, equipment and general intangibles, etc. (c) the Debtor's post-petition monetary and non-monetary Obligations arising under and with respect to the Post- Petition Agreements, or otherwise, without setoff, recoupment or deduction and/or (d) seek to prevent or impair Compass's rights to retain payment on all such post-petition Purchased Accounts and any payments received by Compass from any Account Debtor and/or payor on any Accounts.

*4. Debtor agrees that it will not seek confirmation of a plan of reorganization that adversely affects the security interests of Compass as provided for in the Post-Petition Agreements unless (i) Compass is paid in full on the effective date of the plan of reorganization or (ii) Compass agrees to such alternative treatment.*

5. In the event that either the Post-Petition Agreements or form of Proposed Interim Order are not, for any reason, approved by the Bankruptcy Court in the form satisfactory to Compass then all negotiations between Debtor and Compass to attain the post-petition factoring and financing rights may at Compass's sole election, be deemed terminated.

6. Whenever the Post-Petition Agreements require Debtor or Compass to deliver a writing to, or serve a writing upon the other, such writing shall be delivered or served upon each as follows:

In the case of Compass:

Ms. Arleesia L. McDonald
General Counsel
Compass Funding Solutions, LLC
115 55th Street, 4th Fl.
Clarendon Hills, IL 60514
Phone: (630) 560-4890
Email: arleesia@compassholding.net

In the case of Debtor:

Daniel Ivandic

Controller at Balkan Express

2560 E Long Avenue

Fort Worth, TX 76137

daniel@balkanexpressllc.com

-and-

3

Debtor's Counsel:

Joshua N. Eppich
420 Throckmorton St, Suite 1000
Fort Worth, Texas 76102
(817) 405-6905
Joshua@bondsellis.com

    7.   The Factoring Agreement is amended as follows:

      6. 1  There is hereby added to section 17.1 the following subsections: (e) the Debtor files any form of application or motion seeking to dismiss the Bankruptcy Case, or convert the Chapter 11 Bankruptcy Case to a Chapter 7 case or any party-in-interest (other than the Debtor) files any form of application or motion of like kind and the relief is granted by the Court; (f) the Bankruptcy Court enters any form of Order granting an application or motion for relief from the automatic stay under Bankruptcy Code § 362 in respect to the Accounts, or that would otherwise impair any Collateral that secures the Debtor's Obligations to Compass and/or any order providing adequate protection to any party with lien priority over Compass is approved by the Bankruptcy Court under Section 362 of the Bankruptcy Code without Compass's consent; (g) the Debtor fails to comply with the requirements contained in the Post-Petition Agreements, the Motion, or any entered Interim Order (and any order granting the Motion and approving the Interim Order on a final basis); ( h ) all post-petition Obligations due to Compass are not repaid in full without setoff, recoupment or deduction, by no later than the earlier of conversion or dismissal of the Chapter 11 case, or, the effective date of any confirmed Plan, unless the Compass agrees to and consents, in writing, to other treatment under a Plan.

      6.2  There is hereby added a new subparagraph to the end of section 20, numbered as subparagraph 20.7 of the Factoring Agreement entitled "Termination in Bankruptcy" the following language which shall be effective during the pendency of the Bankruptcy Case or in a succeeding chapter 7 case if the Bankruptcy Case is converted to a chapter 7 bankruptcy case – Compass may terminate this Agreement at any time by filing a notice with the Bankruptcy Court immediately upon the Debtor committing any one or more "material" Events of Default (as defined in the Order), and (ii) upon the occurrence of any other type of Event of Default after the Notice and Cure Period and Debtor's non-compliance therewith as provided in the Order."

6.3    There is hereby added the following new Section 36 entitled, "Chapter 11 Bankruptcy Provisions" with the following subsections:

(a)  Debtor shall at all times timely and promptly comply with all substantive and procedural requirements of the United States Bankruptcy Court, United States Bankruptcy Code, United States Bankruptcy Rules and all applicable local rules of court including any administrative orders, including promptly paying all post-petition taxes;

(b)  The Debtor shall notify Compass within three business days of receiving any documents or correspondence from the IRS, and/or any governmental unit and/or taxing authority, claiming that Debtor has defaulted on Debtor's post-petition obligations to the IRS or any state governmental unit and/or taxing authority;

(c)  Debtor shall immediately notify Compass, in writing, of any Event of Default, as that term is defined in Section 17 of the Factoring Agreement (and as may be supplemented by this Bankruptcy Rider);

(d)  Until confirmation of a Plan, neither the Debtor's filing of a Petition with the Bankruptcy Court nor the Debtor's financial condition immediately preceding the filing of its Petition, to the extent that either constitute an Event of Default under the Agreement, shall constitute an Event of Default under the Post-Petition Agreements.

8.    Sections 6.1 through 6.3, above shall automatically cease to apply, upon the effective date of a non- appealable order entered by the Bankruptcy Court confirming the Debtor's Plan of Reorganization **("Confirmed Plan").** subject to and conditioned upon: (i) such Confirmed Plan shall be in compliance with the terms of this Bankruptcy Rider, and shall not propose any liquidation or substantial sale of assets that does not unconditionally fully pay and indefeasibly satisfy all post-petition monetary and non-monetary Obligations now and hereafter owing to Compass under the Post-Petition Agreements without any offset, recoupment, deduction or otherwise, immediately upon the Court's approval of such Confirmed Plan, and (ii) the Debtor shall not have committed any Event of Default that has not been fully cured to Compass's satisfaction prior to confirmation of the Confirmed Plan.

9.    Debtor shall cause its counsel to electronically deliver to Compass's counsel, Arleesia L. McDonald each of the following documents unless such information is otherwise transmitted through the court's electronic case filing system:

(i)    The List of Equity Security Holders required by Bankruptcy Rule 1007(a)(3).

5

(ii)    The Schedules of Assets and Liabilities required by Bankruptcy Rule 1007(b).

(iii)    The Statement of Financial Affairs as required by Bankruptcy Rule 1007(a).

(iv)    The Statement of Executory Contracts as required by Bankruptcy Rule 1007(b).

(v)    All real and personal property leases upon which the Debtor either operates or in which the Debtor has possession.

(vi)    All security agreements, promissory notes, UCC financing statements and guaranty agreements between Debtor and any party-in-interest that holds a security interest or lien on property of the estate that overlaps with a lien on property secured by Compass.

(vii)    All Notices of Tax Lien (whether federal, state or local) issued by and/or delivered to Debtor.

(viii)    Each and every Debtor-in-possession record as required by Bankruptcy Rule 2015(a), as well as any other operating report (i.e., reports that are routinely required to be filed by the courts periodically, usually every month, addressing all financial activity within that time period) required to be filed pursuant to local rules of court.

10. This Bankruptcy Rider may be executed in counterparts, all of which taken together shall constitute a single document, and either Debtor or Compass's signature of this Bankruptcy Rider may either be an original or a duplicate copy in order to constitute an original signature. Execution of this Rider may be done through a traditional, manual signature, or the Parties agree that an electronic signature may be used and that the electronic signature of a Party included in this Bankruptcy Rider is intended to authenticate this writing and to have the same force and effect as manual signatures. Electronic Signature means any electronic sound, symbol, or process attached to or logically associated with a record and executed and adopted by a Party with the intent to sign such record, including facsimile or email electronic signatures. Any electronic communication of data, whether by e-mail, tape, disk, or otherwise, Debtor remits or causes to be remitted to Compass shall be authentic and genuine.

11. This Bankruptcy Rider shall be binding on and inure to the benefit of the Debtor and Compass, as well as their respective successors and assigns. Except as expressly provided in this Rider the parties do not intend to benefit any third-party, including any third-party beneficiary.

*[SIGNATURE PAGE FOLLOWS]*

**IN WITNESS WHEREOF**, the Parties hereto have set their hands and seals, the day first written above.

BALKAN EXPRESS, LLC                          COMPASS FUNDING SOLUTIONS, LLC

By:_____                   By:_____

Name:_____                   Name:_____

Title:_____                   Title:_____