

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 29, 2025**

_____

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **BALKAN EXPRESS, LLC,** *et al.* | § | **Case No. 25-41544** |
| | § | |
| **Debtors.[1]** | § | **(Jointly Administered)** |
| | § | |

**FINAL ORDER AUTHORIZING DEBTOR TO (I) MAINTAIN AND CONTINUE TO OPERATE UNDER FACTORING AND SECURITY AGREEMENT IN ORDER TO SELL ACCOUNTS POST-PETITION TO COMPASS FUNDING SOLUTIONS, LLC PURSUANT TO 11 U.S.C. § 363(B), (C), (F), AND (M); (II) OBTAIN WORKING CAPITAL FROM COMPASS FUNDING SOLUTIONS, LLC PURSUANT TO 11 U.S.C. § 364(C)(1), (C)(2), & (D)(1); (III) GRANT COMPASS FUNDING SOLUTIONS, LLC ADEQUATE PROTECTION IN THE FORM OF FIRST PRIORITY LIENS AND SECURITY INTERESTS ON PROPERTY OF THE DEBTOR'S ESTATE PURSUANT TO 11 U.S.C. §§ 361 AND 363(E); (IV) MODIFY THE AUTOMATIC STAY; AND (V) <u>GRANT SUCH OTHER RELATED RELIEF</u>**

---

[1] The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Balkan Express, LLC (3974), and Balkan Logistics, LLC (8202). The Debtors' mailing address is 2560 E Long Ave, Fort Worth, Texas 76137.

Upon consideration of *Debtor's Amended Emergency Motion for Interim and Final Orders Authorizing Debtor to (i) Maintain and Continue to Operate under Factoring and Security Agreement[2] in Order to Sell Accounts Post-Petition to Compass Funding Solutions, LLC Pursuant to 11 U.S.C. § 363(b), (c), (f), and (m); (ii) Obtain Working Capital from Compass Funding Solutions, LLC Pursuant to 11 U.S.C. § 364(c)(1), (c)(2), & (d)(1); (iii) Grant Compass Funding Solutions, LLC Adequate Protection in the Form of First Priority Liens and Security Interests on Property of the Debtor's Estate Pursuant to 11 U.S.C. §§ 361 and 363(e); (iv) Modify the Automatic Stay; and (v) Grant such Other Related Relief* [Docket No. 73] (together with the original motion filed at Docket No. 10, the "**Motion**")[3], the Court hereby makes the following findings of fact and conclusions of law:

(a)    On or about July 16, 2020, Compass Funding Solutions, LLC ("**Compass**") and the Debtor entered into a Factoring and Security Agreement[4] which entitled Compass to, among other things, purchase the Debtor's Accounts[5] arising from the Debtor's sales of goods and/or services provided to its customers (as amended, supplemented and/or restated, hereinafter, the ("**Factoring Agreement**").

(b)    The Debtor and Compass have entered or will enter into a Post-Petition Chapter 11 Bankruptcy Rider to Factoring Agreement ("**Rider**"), which is subject to this Court's approval.

(c)    Prior to April 30, 2025 (the "**Petition Date**"), Compass purchased acceptable accounts receivable (hereinafter, "**Advances**") from the Debtor pursuant to and

---

[2] The parties are seeking approval to enable the Debtor to seamlessly continue selling its accounts pursuant to the Factoring Agreement as supplemented the Rider.

[3] Capitalized terms as used herein shall have the meanings prescribed to them in the Motion, unless otherwise provided herein.

[4] The 2020 Factoring Agreement is intended to serve as both a sale of the Debtor's accounts, in respect to those accounts for which Advances (or purchase price payments) are made by Compass, and in addition, a security agreement to provide collateral securing the Debtor's monetary and non-monetary obligations and duties of performance which are, likewise, intended to be secured by the assets that serve as Compass's collateral. Due to this relationship, both the Bankruptcy Code and Rules involving the sale of accounts as addressed by 11 U.S.C. § 363 and post-petition financing and use of cash collateral and adequate protection as addressed by 11 U.S.C. § 364 and 363(c) are applicable.

[5] The term "**Accounts**" as defined in Section 2 of the Factoring Agreement shall have the meanings ascribed by the Uniform Commercial Code ("UCC"). The UCC, as enacted in Texas, defines "Account" to mean "a right to payment of a monetary obligation, whether or not earned by performance, for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; for services rendered or to be rendered…" Tex. Bus. Comm. Code § 9.102.

in accordance with the Factoring Agreement. Compass asserts it possesses a prepetition secured claim as of the Petition Date, which amount excludes fees and costs of whatever kind or nature, including attorneys' fees that Compass is entitled to recover in accordance with the Post-Petition Agreements[6] ("**Advance Obligations**").

(d)     Compass caused to be filed a UCC-1 Financing Statement with the Texas Secretary of State[7] on July 14, 2020 which was assigned Filing No. 20-0035214411.

(e)     Compass holds an unavoidable, duly perfected first priority ownership interest in pre-petition purchased accounts and an unavoidable, duly perfected first priority security interest in the Collateral, including, but not limited to any non-purchased accounts that serve to secure Compass's pre-petition secured claim arising under the Factoring Agreement.

(f)     The Debtor and Compass stipulate that the terms of the Post-Petition Agreements (as this term is defined below) between Debtor and Compass were negotiated in good faith and at arm's length between Debtor and Compass and any Advances or other financial accommodations which are caused to be issued to Debtor by Compass pursuant to the Post-Petition Agreements are deemed to have been extended in good faith, as such term is used in Sections 363(m) and 364(e) of the Code, and Compass shall be entitled to the full protection of Sections 363(m) and 364(e) of the Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise, but only to the extent that cash collateral is used or financing provided as authorized herein.

The Court makes the following findings regarding the Post-Petition Financing:

(a)     The Debtor's immediate need to obtain credit pursuant to the Post-Petition Agreements and use Cash Collateral is critical in order to enable the Debtor to continue operations, to minimize the disruption of the Debtor as a "going concern" and to administer and to preserve the value of its estate. The ability of the Debtor to convert its Accounts into working capital, maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise finance its operations requires the availability of the factoring facilities offered by Compass and the Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business without the factoring facilities;

(b)     The Debtor has moved timely to seek to have this Final Order approved after filing its petition seeking the relief sought in the Motion. The Court notes that the Debtor set the original Motion for an emergency hearing promptly, that the Court entered an order approving the original Motion on an interim basis at Docket No. 35, and that good

---

[6] The "**Post-Petition Agreements**" consist of the Factoring Agreement and the Rider.

[7] Tex. Bus. Comm. Code § 9.301 provides that "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral." Since the Debtor is a "registered organization" that was organized under the laws of the State of Texas, the Debtor, for the purpose of perfection, is deemed "located" in Texas and the local law of Texas governs the method of perfection.

cause exists to grant the protections to Compass contained in this Final Order retroactively to the Petition Date;

(c)     Compass, the Debtor's pre-petition factor and proposed post-petition factor, is willing to purchase the Debtor's Accounts post-petition and make Advances to the Debtor only upon the conditions contained in the Post-Petition Agreements and this Final Order;

(d)     Compass's agreement to enter into and operate under the Post-Petition Agreements and provide factoring facilities to fund the Debtor's required operations is conditioned upon the Debtor agreeing that the Advances made by Compass to the Debtor shall be used, in each case, solely in a manner consistent with the terms and conditions of the Post-Petition Agreements, this Final Order and the Budget (defined below and as the same may be modified from time to time) solely for (1) working capital and other general corporate purposes, (2) permitted payment of costs of administration of the Chapter 11 Case, and (3) payment of fees and expenses as approved by the Court;

(e)     It is in the best interests of the Debtor's estate that Compass be allowed to maintain its pre-petition factoring relationship by entering into the Post-Petition Agreements in order to purchase the Debtor's Accounts, and for Compass to be permitted to make Advances and other financial accommodations to the Debtor under the terms and conditions set forth herein, to prevent a deleterious impact on the Debtor's business, assets or opportunity to reorganize;

(f)     The purchase and sale of the Accounts and extension of credit under the Post-Petition Agreements is in good faith and Compass is entitled to the protections afforded pursuant to Bankruptcy Code § 363(m);

(g)     The credit and financial accommodations to be extended under the Post-Petition Agreements are being extended by Compass in good faith, are fair and reasonable, and Compass is entitled to the protection afforded pursuant to Section 364(e) of the Bankruptcy Code;

(h)     Under the circumstances, sufficient and adequate notice of the Motion and the hearing with respect thereto has been given in accordance with the Motion and pursuant to Bankruptcy Rule 4001(c) and Section 102(1) of the Bankruptcy Code as required by Section 364(c) and (d) of the Bankruptcy Code, and LBR 4001-1, 5070-1 and 9013-1;

(i)     Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (K) and (M);

(j)     This Court has jurisdiction over this proceeding and the parties' property affected hereby pursuant to 28 U.S.C. § 1334;

(k)     Venue for this Chapter 11 Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and

(l)      Good and sufficient cause exists for the entry of this Final Order.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Motion is granted in its entirety subject to the provisions hereof.

2.      The Debtor and Compass are hereby immediately authorized to enter into, and continue to operate under and in accordance with, the Factoring Agreement, Rider and this Final Order, and shall further be entitled to execute, deliver, and perform all other documents, instruments, and agreements necessary to effectuate and carry out the terms of the Post-Petition Agreements and this Final Order, and the Post-Petition Agreements are hereby approved in all respects, *retroactively*, as of the Petition Date, including, but not limited to, pursuant to Sections 363(b)(1), (d), (e) and (f). The Debtor is hereby authorized to sell Accounts to Compass and Compass is authorized, in its sole and exclusive discretion, to purchase Accounts and make Advances, overadvances, and to provide any other financial accommodations to the Debtor, after deduction by Compass of amounts allowed under the Post-Petition Agreements. Compass shall be the absolute owner of any Purchased Accounts purchased in accordance with this Final Order and the Post-Petition Agreements, free of any claims and interests.

3.      The Debtor and Compass are hereby immediately authorized to enter into the Addendum #6 to the Factoring Agreement (the "**Addendum**" and, along with the Factoring Agreement and Rider, the "**Post-Petition Agreements**"). Compass is authorized to make the advance (the "**Addendum Advance**") to the Debtor in an amount not to exceed ten percent (10%) of the Purchased Accounts with said Addendum Advance not exceeding $721,000.00 upon the terms and conditions set forth in the Addendum. The Debtor is authorized to repay the Addendum Advance in accordance with the payment terms set forth in the Addendum (the "**Addendum Obligations**").

4.      Expressly subject to Paragraph 26 herein, effective immediately upon the entry of this Final Order, in respect to the Addendum Advance and any Advances made on or after the Petition Date by Compass to or for the benefit of Debtor of whatever kind or nature, as well as any other hereafter arising obligations and indebtedness owing to Compass under the Post-Petition Agreements ("**Post-Petition Obligations**"), the Debtor consents to a modification of the automatic stay and Compass shall be free from any restrictions and shall be entitled to: (a) collect repayments from the Debtor on account of the Addendum Advance; and (b) collect all Accounts directly from any Account Debtor and/or other payors, regardless of whether such Accounts arise from the sale of goods and/or performance of services the Debtor has or hereafter provides to its customers before and/or after the Petition Date. Compass shall be irrevocably and unconditionally authorized and is hereby permitted to retain and apply all payments and Proceeds of any Purchased Accounts purchased by Compass, to the repayment of Debtor's Pre-Petition Obligations or Post-Petition Obligations, including, but not limited to, all Post- Petition Obligations of Debtor arising from the Advances made by Compass to or for the benefit of Debtor of whatever kind or nature, in accordance with the Post-Petition Agreements.

5.      Pursuant to and as authorized by the Post-Petition Agreements and Section 9-406 of the Texas Business & Commerce Code, Compass is expressly authorized to send and deliver to any customer of the Debtor (*i.e.*, Account Debtor) one or more written notifications of assignment in order to notify each such Account Debtor that the Debtor has sold, assigned and/or transferred to Compass the right to receive payment due in connection with any present and future Accounts, and all Accounts shall be payable and paid solely to Compass as provided in such written notification of assignment. Debtor is specifically directed, as required by the Factoring Agreement, before sending any Invoice to an Account Debtor which may or will constitute a Purchased

Account, to clearly state in a manner satisfactory to Compass that payment of Debtor's Purchased Accounts and non-Purchased Accounts are assigned and are factored by and payable exclusively to Compass.

6.      Except as provided below, the Debtor shall at no time during this Chapter 11 Case seek to use or be permitted to use any *Cash Collateral*, as defined under Section 363 of the Bankruptcy Code, to the extent that the source of such Cash Collateral constitutes proceeds of Purchased Accounts, non-Purchased Accounts or payment intangibles ("**Restricted Cash Collateral**"). The parties agree, however, that prior to any Event of Default under the Factoring Agreement, Rider and Addendum ("**Event of Default**"), the following shall not constitute or qualify as Restricted Cash Collateral: (a) Advances that Compass makes to the Debtor in exchange for purchasing Purchased Accounts from the Debtor, and (b) Account Debtor payments received and collected by Compass on non-Purchased Accounts and deposited into the Reserve, which Compass may, in discretion exercised in good faith, elect to remit to the Debtor in accordance with the Post-Petition Agreements, and which Debtor shall be entitled to use subject to the following limitations: for use, (i) only for the purposes specifically set forth in this Final Order (or other Court orders) and the Post-Petition Agreements, and in compliance with the Budget and (ii) conditioned upon the Debtor, at all times, satisfying its duty to maintain in Reserve the Required Reserve Amount ("**Non-Restricted Cash Collateral**"). Non-Restricted Cash Collateral shall be exclusively subject to the first and senior priority security interest and liens granted to Compass to secure any Post-Petition Obligations. Notwithstanding the foregoing, following the occurrence of any Event of Default, all Non-Restricted Cash Collateral shall automatically become Restricted Cash Collateral.

7.     The Debtor shall be authorized to use Non-Restricted Cash Collateral (*i.e.*, Advances) in accordance with the terms of this Final Order and the Budget as defined in Paragraph 8, below.

8.     Attached to this Final Order as **Exhibit "A"** is the Debtor's cash flow budget (the "**Budget**"). The Debtor shall timely deliver to Compass, the United States Trustee, and any committee if appointed, by not later than the fifth (5th) business day of each month, a variance report in a form approved by Compass, reflecting on a line-item basis, the actual cash disbursements and revenues for the preceding month and the percentage variance (the "**Variance Percent**") of such actual disbursements and revenues from those reflected in the Budget for that period ("**Variance Report**"). Any disbursement by the Debtor other than for budgeted amounts as set forth in the Budget shall constitute an Event of Default in accordance with the provisions of this Final Order unless Compass consents to those changes in writing; provided, however, that the Debtor may only make payments in excess of the total budgeted disbursements so long as the Variance Percent of the aggregate of all actual disbursements shall not exceed ten percent (10%) of the budgeted disbursements.

9.     Pursuant to the Post-Petition Agreements, in the event, notwithstanding that each Account Debtor shall be notified otherwise, the Debtor comes into possession of any proceeds (as that term and any other terms as used is defined by the Uniform Commercial Code) of Purchased Accounts or non-Purchased Accounts (*i.e.*, Restricted Cash Collateral), the Debtor (including any person, insider, or employee of the Debtor, who on behalf of the Debtor, is responsible for managing and/or administering such duties of the Debtor in accordance with this Section) shall immediately notify Compass of receipt of the payment, hold said payment in express trust for Compass, keep separate and apart from the Debtor's own property and funds, and by no later than

two (2) business days following the date of receipt, deliver said payment to Compass in the identical form in which received.

10.    Pursuant to the Post-Petition Agreements, and as authorized by Section 364(c)(1) and (d)(1) of the Bankruptcy Code, as security for all Post-Petition Obligations on a final basis, Compass is hereby indefeasibly granted, a valid, binding, enforceable and perfected first and senior ownership interest in all Purchased Accounts as well as a first and senior priority security interest and lien in all of the following property and assets of Debtor *acquired or arising after* the commencement of the Chapter 11 Case: all of the Debtor's rights, title and interest in and to each of the following, wherever located and whether now or hereafter existing or now owed or hereafter acquired or arising: Accounts, Chattel Paper, Deposit Accounts, Goods, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Letters of Credit, Commercial Tort Claims, General Intangibles, all policies of insurance, including unearned premiums, Supporting Obligations, the Reserve, all books, records, reports, memoranda, and/or data compilations, in any form (including, without limitation, corporate and other business records, customer lists, credit files, computer programs, printouts and any other computer materials and records) pertaining to any of the foregoing and all proceeds of the foregoing, specifically excluding recoveries from actions brought or recovered pursuant to Bankruptcy Code §§ 506(c), 544, 545, 547, 548, 549, 550, 553, and 724 (collectively, the "**Compass Collateral**").  Notwithstanding the foregoing, other than as set forth herein, the security interest and liens granted to Compass in the Compass Collateral shall not be made subject to or be made *pari passu* with or to any lien or security interest heretofore or hereinafter granted in the Chapter 11 Case or any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceeding superseding or related to any of the foregoing (collectively, "**Successor Case**").  The security

interest and liens granted to Compass shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Case or any Successor Case, and/or upon the dismissal of the Chapter 11 Case or Successor Case. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the security interest and liens granted to Compass. No person shall be permitted to seek to interfere with and/or impair, or otherwise seek to enforce any right or privilege that may in any way interfere with and/or adversely affect any of the rights, interests and claims provided to Compass by the Debtor in respect to any Compass Collateral.

11.     As adequate protection to secure Compass's Post-Petition Obligations, Compass is hereby granted, a valid, binding, enforceable and perfected first and senior security interest and liens in all of the Debtor's assets acquired or arising on or after the commencement of the Chapter 11 Case (including, without any limitation, Compass Collateral), including, but not limited to, Cash Collateral to the same extent, validity and priority as existed pre-petition, but specifically excluding recoveries from actions brought or recovered pursuant to Bankruptcy Code §§ 506(c), 544, 545, 547, 548, 549, 550, 553, and 724.  In no event shall any party interfere with and/or impair, or otherwise seek to enforce any right or privilege that may in any way interfere with and/or adversely affect any of the rights interests and claims provided to Compass by the Debtor herein and under the Post-Petition Agreements, including but not limited to, Compass's exclusive rights to retain payment of all Purchased Accounts and nonpurchased Accounts.

12.     Pursuant to Section 364(c)(1), (2), and (3) of the Bankruptcy Code, the Post-Petition Obligations shall, except for fees owing to the United States Trustee, also have priority in payment over any administrative expenses or charges that are or may be incurred after the filing of the Petition, including, without limitation, expenses, charges or claims of the kind specified in

Sections 503(b), 506(c), and 507(a) and (b) of the Bankruptcy Code (specifically excluding

recoveries from actions brought or recovered pursuant to Bankruptcy Code §§ 506(c), 544, 545,

547, 548, 549, 550, 553, and 724).

13.     Compass shall not be required to file, but is not restricted from doing so, any UCC

financing statement(s) or other document(s) with any filing authority to further perfect and/or

maintain perfection of such ownership in the Purchased Accounts, or any security interest or lien

granted pursuant to the Post-Petition Agreements and this Final Order, or take any other action in

connection therewith; provided however, that if Compass, in its sole discretion, shall elect to file

any UCC financing statement or other document with respect to such ownership interest in the

Purchased Accounts or security interests and liens in the Compass Collateral, the Debtor shall be

deemed to have authorized the filing thereof and same shall be deemed to have been perfected at

the time and on the date of commencement of this Chapter 11 Case, or as of the date of the filing

of any previously filed financing statement, whichever is earlier.

14.     Upon the filing by Compass of a notice of the occurrence of any Event of Default

under the Post-Petition Agreements and/or this Final Order, the Debtor's right to use any Cash

Collateral, including, without limit, Non-Restricted Cash Collateral shall automatically terminate

and the Debtor's right to secure further advances from Compass shall immediately terminate.

15.     The protections afforded to Compass under the Post-Petition Agreements and this

Final Order and any actions taken pursuant hereto shall survive the entry of any orders which may

be subsequently entered in this case or any case to which this case may be converted and such

ownership of the Purchased Accounts and security interests, liens and interests recognized or

granted to Compass under the Post-Petition Agreements and this Final Order shall continue in this

and any superseding Chapter 7 case under the Bankruptcy Code and such ownership of the

Purchased Accounts and security interests, liens, and interests shall maintain their priority as provided by this Final Order until all the Pre-Petition Obligations and Post-Petition Obligations have been paid and indefeasibly satisfied in full; and the time of payment of any and all of the Post-Petition Obligations arising out of or incurred pursuant to the Post-Petition Agreements shall not be altered or impaired by any plan of reorganization, whether proposed by the Debtor or any other party-in-interest; and the Post-Petition Obligations of the Debtor to Compass under the Post-Petition Agreements shall not, in this Chapter 11 Case, be discharged by the entry of any order confirming a plan of reorganization and, pursuant to Sections 1141(d)(4) and 1192 of the Bankruptcy Code, unless prior to or concurrently with the entry of such order, Compass is paid in full an all monetary and nonmonetary obligations under the Post-Petition Agreements are fully paid and indefeasibly satisfied.

16.    In the event of the occurrence of an Event of Default, and immediately upon the filing of a notice of the occurrence of such Event of Default with the Bankruptcy Court, Compass shall have the right (in addition to all of its other rights under the Post-Petition Agreements) to seek on an expedited basis further order of the Bankruptcy Court granting relief from the automatic stay under Section 362 of the Code authorizing Compass to pursue any and all rights as described herein and directing Debtor (or any superseding Trustee) to immediately surrender and deliver peaceful possession of all the Compass Collateral to Compass.

17.    Unless Compass shall have given its prior written consent, or unless and until the Debtor indefeasibly pays all Post-Petition Obligations and fully satisfies all non-monetary obligations arising under the Factoring Agreement, the Debtor shall not seek, at any time, in this case any further order that authorizes: (i) Debtor's use of Cash Collateral in violation of the provisions of this Final Order, (ii) the use, sale or lease, other than in the ordinary course of

business, of any property of Debtor in which Compass has any interest, or (iii) the Debtor to obtain credit or incur any indebtedness that is (A) secured by a security interest or lien in property that constitutes Compass Collateral or (B) entitled to priority administrative status which is equal or senior to that granted to Compass herein.

18.     Compass shall have the right, pursuant to the Post-Petition Agreements and this Final Order, on reasonable notice to Debtor, at any time during Debtor's normal business hours, to perform a site visit/field examination inspection conducted by Compass's representatives at the Debtor's locations, at such times and in such frequencies that Compass may elect, to review Debtor's physical premises, interview its staff or inspect Debtor's books and records and the Compass Collateral.

19.     The failure of Compass to seek relief or otherwise exercise its rights and remedies under this Final Order, the Post-Petition Agreements, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

20.     Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, including, but not limited to, any creditor, equity holder or any direct, indirect, or incidental beneficiary.

21.     The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

22.     If this Final Order or any of the provisions of this Final Order are hereafter modified, vacated or stayed, such modification, vacatur or stay shall not affect (a) the validity of the Post-Petition Obligations (as defined in Paragraph 4, above) incurred by Debtor to Compass prior to the effective date of such modification, vacatur or stay, or (b) the validity or enforceability of any ownership interest of Compass in any Purchased Accounts and any security interest, lien or

priority authorized or created hereby or pursuant to the Post-Petition Agreements. Notwithstanding any such modification, vacatur or stay, any Post-Petition Obligations incurred by Debtor to Compass prior to the effective date of such modification, vacatur or stay shall be governed in all respects by the provisions of this Final Order, and Compass shall be entitled to all the rights, remedies, privileges and benefits granted herein and pursuant to the Post-Petition Agreements with respect to all such Post-Petition Obligations, unless otherwise ordered by the Court.

23.     Pursuant to Bankruptcy Rule 6004(h), the terms of this Final Order in respect to authorizing a sale of Debtor's Accounts shall be deemed immediately effective and enforceable and not stayed.

24.     An Event of Default shall occur if the Debtor seeks any amendment, modification or extension of this Final Order without the prior written consent of Compass, and no such consent shall be implied by any other action, inaction or acquiescence of Compass. This Final Order and the Budget may be extended with the written consent of Compass without the need to seek additional relief from the Bankruptcy Court, in which case the Debtor shall provide notice of any such extension(s) to the United States Trustee and counsel for any unsecured creditors committee.

25.     The U.S. Trustee's Office, any committee if appointed, or any other creditor asserting a lien against the Debtor's pre-petition accounts receivable shall have up to and not more than sixty (60) days after the entry of this Final Order to complete an investigation of the facts relating to Compass's ownership interest in pre-petition Purchased Accounts, the validity, enforceability, priority of the liens and security interest granted to Compass in the Debtor's pre-petition Collateral (as defined in the pre-petition Factoring Agreement), or the amount of Compass's pre-petition Claim against the Debtor that arose before the commencement of the Chapter 11 Case (collectively, "**Objection Deadline**"). If by no later than the Objection Deadline

one of the categories of parties listed in the preceding sentence file a motion or commence a proceeding with the Bankruptcy Court contesting, or otherwise seeking a declaration of Compass's ownership interest in any pre-petition Purchased Accounts, the validity, enforceability, priority of the liens and security interest granted to Compass in the pre-petition Collateral, including non-Purchased Accounts, or the amount of Compass's pre-petition Claim against the Debtor that arose before the commencement of the Chapter 11 Case, then as of the Objection Deadline all parties shall be deemed to be barred, waived and/or estopped from: (a) seeking to prevent or impair Compass's rights to retain payment of any Purchased Accounts and non-Purchased Accounts, (b) contesting Compass's ownership interest in any Purchased Accounts, (c) contesting the validity, enforceability, priority of the liens and security interest granted to Compass in any Compass Collateral, or (d) contesting the amount of Compass's Claim against the Debtor that arose before the commencement of the Chapter 11 Case.

26.     Notwithstanding anything to the contrary herein, and except as otherwise provided in this paragraph, the liens granted to Compass under this Final Order shall be subject to the right of payment of the following expenses (the "**Carve-Out**"):

(a)     fees required to be paid to the Clerk of this Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930; and

(b)     subject to the terms and conditions of this Final Order, and subject to the limits set forth in the Budget, the unpaid and outstanding reasonable fees and expenses approved or allowed by order of the Court (including any interim fees permitted to be paid under procedures approved by the Court) pursuant to Bankruptcy Code §§326, 327, 328, 330, or 331 (collectively, the "**Allowed Professional Fees**"), of attorneys, accountants and other professionals retained by the Debtor or any committee appointed pursuant to section 1102 of the Bankruptcy Code (collectively, the "**Professionals**") actually incurred on or after the Petition Date and prior to the filing of a notice of the occurrence of an Event of Default with the Bankruptcy Court (collectively, the "**Professional Fee Carve-Out**").

Notwithstanding anything to the contrary in this Final Order, neither the Carve-Out, the proceeds of Advances nor the Compass Collateral, including any proceeds thereof, shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (i) an assertion or joinder in (but excluding any investigation into) any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief (A) challenging the legality, validity, priority, perfection, or enforceability of the Post-Petition Agreements or Compass's security interests in the Compass Collateral, (B) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Post-Petition Agreements or Compass's liens on and security interests in the Compass Collateral, or (C) preventing, hindering, or delaying the Compass's assertion or enforcement of any lien, claim, right or security interest or realization upon any Compass Collateral in accordance with the terms and conditions of this Final Order; (ii) a request for authorization to obtain debtor in possession financing or other financial accommodations pursuant to section 364(c) or Section 364(d) of the Bankruptcy Code, other than from Compass, without the prior written consent of Compass; (iii) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Compass or any of its officers, directors, employees, agents, attorneys, affiliates, successors or assigns; or (iv) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of Compass or which is contrary, in a manner that is material and adverse to Compass, to any term or condition set forth in or acknowledged by the Post-Petition Agreements or this Final Order or which results in the occurrence of an Event of Default under the Post-Petition Agreements or this Final Order; *provided, however*, that the foregoing limitations shall not apply to Advances

made under the Post-Petition Agreements nor the Addendum Advance, which the Debtors and all Professionals may utilize in any manner consistent with the Budget.

27.    No party shall be entitled, directly or indirectly, to charge the Carve-Out, whether by operation of Bankruptcy Code sections 105, 506(c) or 552(b) or otherwise.

28.    Compass shall not be required to, but is not restricted from doing so, file a proof of claim in the Chapter 11 Case to preserve its right to receive a distribution applicable to any Pre-Petition Obligations and/or Post-Petition Obligations owing to Compass under and with respect to the Post-Petition Agreements.

29.    Nothing contained in this Final Order shall serve to permit or authorize any Account Debtor to unilaterally modify or extend the terms of payment on Accounts, or otherwise delay remitting timely payment of any Account to Compass.

30.    Nothing contained in this Interim Order shall be construed as limiting or waiving any right of any party in interest to seek or request from this Court further or additional adequate protection.

31.    For the avoidance of doubt, no validly perfected existing liens held by parties other than Compass shall be primed.

32.    If there is any conflict between this Final Order and the Post-Petition Agreements, the terms and provisions of this Final Order shall control.

33.    Notwithstanding any language set forth in the Factoring Agreement, so long as this bankruptcy case is pending, the United States Bankruptcy Court for the Northern District of Texas shall be the exclusive jurisdiction for all disputes relating to or arising out of this Final Order, the Factoring Agreement, the Rider, and any other dispute that may arise regarding the terms of this

Final Order. Nothing contained herein modifies or waives the Choice of Law provision set forth

in the Factoring Agreement.

    34.    This Final Order is and shall be fully effective upon its entry.

### End of Order ###

***Order Proposed By***:

Joshua N. Eppich (TBN 24050567)
Ken Green (TBN 24050698)
Eric T. Haitz (TBN 24101851)
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 529-2732 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: ken.green@bondsellis.com
Email: eric.haitz@bondsellis.com

*Proposed Counsel for*
*Debtors and Debtors-in-Possession*

**Balkan Combined Budget**
**Weekly Forecast**

Starting Cash Balance: 130,000.00

| | Week of 5/3/25 | Week of 5/10/25 | Week of 5/17/25 | Week of 5/24/25 | Week of 5/31/25 | Week of 6/7/25 | Week of 6/14/25 | Week of 6/21/25 | Week of 6/28/25 | Week of 7/5/25 | Week of 7/12/25 | Week of 7/19/25 | Week of 7/26/25 | Week of 8/2/25 | Week of 8/9/25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Collections** | | | | | | | | | | | | | | | |
| Outstanding AR Claims Processing/DIP Financing | 534,040.69 | 519,082.81 | 500,000.00 / 190,000.00 | 500,000.00 / 130,000.00 | 500,000.00 | 550,000.00 | 600,000.00 / 100,000.00 | 600,000.00 | 600,000.00 | 625,000.00 / 125,000.00 | 625,000.00 | 625,000.00 | 625,000.00 | 425,000.00 | 425,000.00 / 125,000.00 |
| Fuel Surcharge | | | | | | | | | | | | | | | 625,000.00 |
| **Total Cash Collections** | 534,040.69 | 519,082.81 | 680,000.00 | 500,000.00 | 500,000.00 | 550,000.00 | 600,000.00 | 600,000.00 | 600,000.00 | 625,000.00 | 625,000.00 | 625,000.00 | 625,000.00 | 425,000.00 | 625,000.00 |
| **Expenses** | | | | | | | | | | | | | | | |
| **Weekly Expenses** | | | | | | | | | | | | | | | |
| Driver Payroll (Logistics) | 190,000.00 | 180,000.00 | 170,000.00 | 170,000.00 | 170,000.00 | 170,000.00 | 170,000.00 | 170,000.00 | 170,000.00 | 170,000.00 | 170,000.00 | 170,000.00 | 170,000.00 | 170,000.00 | 170,000.00 |
| Payroll - Zuban Kariz (Express) | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 | 2,696.15 |
| Payroll - Darian Logistics (Express) | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 |
| Office Payroll (Karic and Ivandic excluded--Express) | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 | 15,503.85 |
| Fuel - Oil | 180,000.00 | 170,000.00 | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| **Total Weekly Expenses** | 390,000.00 | 370,000.00 | 345,000.00 | 345,000.00 | 345,000.00 | 345,000.00 | 345,000.00 | 345,000.00 | 345,000.00 | 345,000.00 | 345,000.00 | 345,000.00 | 345,000.00 | 345,000.00 | 345,000.00 |
| **Monthly Expenses** | | | | | | | | | | | | | | | |
| Bosnia Payroll per contract with United Balkan | 50,000 | | | | 50,000 | | | | 50,000 | | | | 50,000 | | |
| GL Insurance | | | 135,000.00 | | | 135,000.00 | | | | 135,000.00 | | | | 135,000.00 | |
| Cargo Insurance | | | 33,000.00 | | | 33,000.00 | | | | 33,000.00 | | | | 33,000.00 | |
| Credit Card (AT&T) | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Credit Card (Shell) | 650.00 | | | | 650.00 | | | | | 650.00 | | | | 650.00 | |
| Credit Card (TXU - Electricity) | 360.00 | | | | 360.00 | | | | | 360.00 | | | | 360.00 | |
| Credit Card (Atmos - Gas) | 2,500.00 | | | | 2,500.00 | | | | | 2,500.00 | | | | 2,500.00 | |
| Credit Card (Expense Reimbursements) | 400.00 | | | | 400.00 | | | | | 400.00 | | | | 400.00 | |
| Rent for Shop | 19,022.50 | 19,022.50 | 19,022.50 | 19,022.50 | 19,022.50 | 19,022.50 | 19,022.50 | 19,022.50 | 19,022.50 | 4,600.00 | 19,022.50 | 19,022.50 | 19,022.50 | 19,022.50 | 19,022.50 |
| MtC (Parts for Kenworth Trucks) | 16,250.00 | 16,250.00 | 16,250.00 | 16,250.00 | 12,187.50 | 12,187.50 | 12,187.50 | 12,187.50 | 12,187.50 | 12,187.50 | 12,187.50 | 12,187.50 | 12,187.50 | 12,187.50 | 12,187.50 |
| TNW Tire | 56,250.00 | 56,250.00 | 56,250.00 | 56,250.00 | 54,687.50 | 54,687.50 | 54,687.50 | 54,687.50 | 54,687.50 | 54,687.50 | 54,687.50 | 54,687.50 | 54,687.50 | 54,687.50 | 54,687.50 |
| FleetPride | 1,125.00 | 1,125.00 | 1,125.00 | 1,125.00 | 51,593.75 | 51,593.75 | 51,593.75 | 51,593.75 | 51,593.75 | 51,593.75 | 51,593.75 | 51,593.75 | 51,593.75 | 51,593.75 | 51,593.75 |
| EFS (break down on the road) | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 18,750.00 | 18,750.00 | 18,750.00 | 18,750.00 | 18,750.00 | 18,750.00 | 18,750.00 | 18,750.00 | 18,750.00 | 18,750.00 | 18,750.00 |
| Penske | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| Williamson Tire | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 1,875.00 | 1,875.00 | 1,875.00 | 1,875.00 | 1,875.00 | 1,875.00 | 1,875.00 | 1,875.00 | 1,875.00 | 1,875.00 | 1,875.00 |
| Drivers Wash | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 937.50 | 937.50 | 937.50 | 937.50 | 937.50 | 937.50 | 937.50 | 937.50 | 937.50 | 937.50 | 937.50 |
| Sodexwin Int. | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 | 1,312.50 | 1,312.50 | 1,312.50 | 1,312.50 | 1,312.50 | 1,312.50 | 1,312.50 | 1,312.50 | 1,312.50 | 1,312.50 | 1,312.50 |
| SNI FN Hodapp | 750.00 | 750.00 | 750.00 | 750.00 | 562.50 | 562.50 | 562.50 | 562.50 | 562.50 | 562.50 | 562.50 | 562.50 | 562.50 | 562.50 | 562.50 |
| Other Expenses | 18,750.00 | 18,750.00 | 18,750.00 | 18,750.00 | 14,062.50 | 14,062.50 | 14,062.50 | 14,062.50 | 14,062.50 | 14,062.50 | 14,062.50 | 14,062.50 | 14,062.50 | 14,062.50 | 14,062.50 |
| **Total Monthly Expenses** | 184,157.50 | 105,647.50 | 273,647.50 | 105,647.50 | 86,491.25 | 254,491.25 | 86,491.25 | 86,491.25 | 86,491.25 | 254,491.25 | 86,491.25 | 86,491.25 | 86,491.25 | 254,491.25 | 86,491.25 |
| **Compass Loan** | 35,416.67 | | | | | 126,000.00 | | | | 126,000.00 | | | | 126,000.00 | |
| **Truck and Trailer Payments** | | | | | | | | | | | | | | | |
| M&T Capital | | | | | | | | | | 45,000.00 | | | | | |
| PNC | | | | | | | | | | 20,171.50 | | | | | |
| BMO | | | | | | | | | | 53,611.41 | | | | | |
| Triumph | | | | | | | | | | 54,608.40 | | | | | |
| Trust | | | | | | | | | | 59,748.95 | | | | | |
| Huntington | | | | | | | | | | 3,360.57 | | | | | |
| Wells Fargo | | | | | | | | | | 22,266.22 | | | | | |
| Walworth Financial Corporation | | | | | | | | | | 31,467.89 | | | | | |
| Sumitomo Mitsui Finance | | | | | | | | | | 3,611.32 | | | | | |
| Navistar Financial Corporation | | | | | | | | | | 32,329.12 | | | | | |
| Mitsubishi HC Capital America | | | | | | | | | | 59,500.00 | | | | | |
| Hyundai Translead Trailer Finance | | | | | | | | | | 11,190.98 | | | | | |
| De Lage Landen Financial | | | | | | | | | | 51,425.94 | | | | | |
| Daimler | | | | | | | | | | 56,357.37 | | | | | |
| Volvo Financial Services | | | | | | | | | | 37,555.92 | | | | | |
| MHC Financial Services | | | | | | | | | | 15,000.00 | | | | 15,000.00 | |
| **Total Truck and Trailer** | | | | | | | | | | 133,205.59 | | | | 131,205.59 | |
| **Bankruptcy Costs** | | | | | | | | | | | | | | | |
| Legal Fees - FN1 | | | 100,000.00 | | | | | | | 100,000.00 | | 125,000.00 | | | |
| US Trustee Fees - FN2 | | | | | | | | | | | | | | | |
| **TOTAL BANKRUPTCY COSTS** | | | 100,000.00 | | | | | | | 100,000.00 | | 125,000.00 | | | |
| **TOTAL EXPENSES** | 589,574.17 | 475,647.50 | 618,647.50 | 450,647.50 | 431,491.25 | 744,206.84 | 431,491.25 | 431,491.25 | 431,491.25 | 749,206.84 | 599,491.25 | 431,491.25 | 431,491.25 | 749,206.84 | 599,491.25 |
| **Net Cash Position Weekly** | (55,533.48) | 43,435.31 | 11,352.50 | 49,352.50 | 68,508.75 | (194,206.84) | 508.75 | 168,508.75 | 168,508.75 | (124,206.84) | 25,508.75 | 193,508.75 | 193,508.75 | (124,206.84) | 25,508.75 |
| **Cumulative Cash Position** | 74,466.52 | 117,901.83 | 129,254.33 | 178,606.83 | 247,115.58 | 52,908.74 | 53,417.49 | 221,926.24 | 390,434.99 | 266,228.15 | 291,736.90 | 485,245.65 | 678,754.40 | 554,547.56 | 580,056.31 |

FN1 - Legal fees will not be paid until fee procedures are approved by the Court, therefore--Legal fees are included in budget but excluded from cumulative cash position during this interim period

**Balkan Combined Budget**
**Weekly Forecast**

| | Week of 8/16/25 | Week of 8/23/25 | Week of 8/30/25 | |
|---|---|---|---|---|
| Starting Cash Balance | | | | $ 625,000.00 |
| **Cash Collections** | | | | |
| Outstanding AR Claims Processing/DIP Financing | $625,000.00 | $625,000.00 | $625,000.00 | |
| Fuel Rebate | | | | |
| **Total Cash Collections** | $ 625,000.00 | $ 625,000.00 | $ 625,000.00 | |
| **Expenses** | | | | |
| **Weekly Expenses** | | | | |
| Driver Payroll (Logistics) | $170,000.00 | $170,000.00 | $170,000.00 | |
| Payroll - Zaloom Karic (Express) | $2,696.15 | $2,696.15 | $2,696.15 | |
| Payroll (Jamel Ivanidic (Express)) | $1,800.00 | $1,800.00 | $1,800.00 | |
| Office Payroll (Karic and Ivanidic excluded~Express) | $15,503.85 | $15,503.85 | $15,503.85 | |
| Fuel | $155,000.00 | $155,000.00 | $155,000.00 | |
| **Total Weekly Expenses** | $ 345,000.00 | $ 345,000.00 | $ 345,000.00 | |
| **Monthly Expenses** | | | | |
| Bosnia Payroll per contract with United Balkan | | | $ | 50,000.00 |
| GL Insurance | | | | |
| Cargo Insurance | | | | |
| Health Insurance | $10,000.00 | $10,000.00 | $10,000.00 | |
| Credit Card (AT&T) | | | | |
| Credit Card (Spectrum) | | | | |
| Credit Card (TXU - Electricity) | | | | |
| Credit Card (Atmos - Gas) | | | | |
| Credit Card (Expense Reimbursements) | $19,022.50 | $19,022.50 | $19,022.50 | |
| Rent for Shop | | | $ | 4,600.00 |
| MHC (Parts for Kenworth Trucks) | $12,187.50 | $12,187.50 | $12,187.50 | |
| TNW Tire | $4,687.50 | $4,687.50 | $4,687.50 | |
| FleetPride | $1,593.75 | $1,593.75 | $1,593.75 | |
| EFS (break down on the road) | $18,750.00 | $18,750.00 | $18,750.00 | |
| Offer Oil | $1,500.00 | $1,500.00 | $1,500.00 | |
| Williamson Tire | $1,875.00 | $1,875.00 | $1,875.00 | |
| Drivers Wash | $937.50 | $937.50 | $937.50 | |
| Southwest Int'l | $1,312.50 | $1,312.50 | $1,312.50 | |
| SN TRL Repair | $562.50 | $562.50 | $562.50 | |
| Other Expenses | $14,062.50 | $14,062.50 | $14,062.50 | |
| **Total Monthly Expenses** | $ 86,491.25 | $ 86,491.25 | $ 141,091.25 | |
| Compass Loan | | | $ | 126,000.00 |
| **Truck and Trailer Payments** | | | | |
| M&T Capital | | | | $45,000.00 |
| PNC | | | | $10,131.50 |
| BMO | | | | $3,631.41 |
| Triumph | | | | $4,608.40 |
| Triumph | | | | $9,748.95 |
| Trac | | | | $1,360.57 |
| Huntington | | | | $2,266.22 |
| Wells Fargo | | | | $1,467.89 |
| Walbush Financial Corporation | | | | $1,411.31 |
| Sumitomo Mitsui Finance | | | | $2,329.12 |
| Navistar Financial Corporation | | | | $3,500.00 |
| Mitsubishi HC Capital America | | | | $1,190.98 |
| Hyundai Translead Trailer Finance | | | | $5,425.94 |
| De Lage Landen Financial | | | | $6,637.37 |
| Daimler | | | | $7,555.92 |
| Volvo Financial Services | | | | $22,000.00 |
| MHC Financial Services | | | | |
| **Total Truck and Trailer** | $0.00 | $0.00 | $140,205.59 | |
| **Bankruptcy Costs** | | | | |
| Legal Fees - FN1 | | | | |
| US Trustee Fees - FN2 | | | | |
| **TOTAL BANKRUPTCY COSTS** | $ - | $ 125,000.00 | $ - | |
| **TOTAL EXPENSES** | $ 431,491.25 | $ 431,491.25 | $ 752,296.84 | |
| **Net Cash Position Weekly** | $ 193,508.75 | $ 193,508.75 | $ (127,296.84) | |
| **Cumulative Cash Position** | $ 773,565.06 | $ 967,073.81 | $ 839,776.97 | |

FN1 - Legal fees will not be paid until fee procedures an