**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| | § | **Case No. 25-41544** |
| **BALKAN EXPRESS, LLC,** *et al.* | § | |
| | § | **(Jointly Administered)** |
| **Debtors.[1]** | § | |
| | § | |
| | § | |

**THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR BALKAN EXPRESS, LLC AND ITS AFFILIATED DEBTOR**

**BONDS ELLIS EPPICH SCHAFER JONES LLP**                    *AUGUST 5, 2026*
Joshua N. Eppich
Texas Bar I.D. No. 24050567
Eric T. Haitz
Texas Bar I.D. No. 24101851
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: eric.haitz@bondsellis.com

Ken Green
Texas Bar I.D. 24036677
402 Heights Blvd.
Houston, Texas 77007
(713) 335-4990 telephone
(713) 335-4991 facsimile
Email: ken.green@bondsellis.com

**COUNSEL FOR THE DEBTORS**
**AND DEBTORS-IN-POSSESSION**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Balkan Express, LLC (3974), and Balkan Logistics, LLC (8202). The Debtors' mailing address is 2560 E Long Ave, Fort Worth, Texas 76137.

## Table of Contents

INTRODUCTION ..................................................................................................................1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF TERMS, COMPUTATION OF TIME, AND GOVERNING LAW .................................................1

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS ................................10

2.1.    Administrative Claims .......................................................................10
2.2.    Section 503(b)(9) Claims ..................................................................11
2.3.    Professional Fee Claims....................................................................12
2.4.    Priority Tax Claims...........................................................................12

ARTICLE III. CLASSIFICATION ......................................................................................13

ARTICLE IV. TREATMENT ..............................................................................................14

4.1.    Class 1 (Other Priority Claims)........................................................14
4.2.    Class 2 (Secured Tax Claims)...........................................................14
4.3.    Class 3 (Other Secured Claims)........................................................14
4.4.    Class 4 (Compass Secured Claim).....................................................15
4.5.    Class 5 (PNC Secured Claim)...........................................................15
4.6.    Class 6 (Wells Fargo Secured Claim)................................................16
4.7.    Class 7 (Huntington Secured Claim)..................................................16
4.8.    Class 8 (M&T Secured Claim) ..........................................................16
4.9.    Class 9 (Unsecured Claims)..............................................................17
4.10.   Class 10 (Covered Personal Injury Claims)......................................18
4.11.   Class 11 (Subordinated Unsecured Claim of Plan Sponsor) .............19
4.12    Class 12 (Interests in the Debtors) ...................................................19

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN..........................................19

5.1.    Formation of a Litigation Trust........................................................19
5.2.    Substantive Consolidation ................................................................22
5.3.    Sources of Plan Distributions...........................................................22
5.4.    Cancellation of Existing Agreements ................................................22
5.5.    Corporate Action...............................................................................23
5.6.    Directors and Officers of Reorganized Debtor. .................................23
5.7.    Effectuating Documents; Further Transactions .................................23
5.8.    Section 1146 Exemption....................................................................23
5.9.    Retained Causes of Action.................................................................24

ARTICLE VI. EXECUTORY CONTRACTS ..........................................................................24

6.1.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ........24

6.2.   Pass-Through ...........................................................................................25
6.3.   Claims Based on Rejection of Executory Contracts or Unexpired Leases ...........25
6.4.   Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .........26
6.5.   Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases ...........................................................................................26
6.6.   Reservation of Rights .............................................................................27
6.7.   Nonoccurrence of Effective Date ..............................................................27

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ..................................................27

7.1.   Timing and Calculation of Amounts to Be Distributed .................................27
7.2.   Delivery of Distributions and Undeliverable or Unclaimed Distributions. ...........28
7.3.   Compliance with Tax Requirements ..........................................................29
7.4.   No Post-Petition Interest on Claims .........................................................29
7.5.   Setoffs and Recoupment ........................................................................29
7.6.   Claims Paid or Payable by Third Parties. ...................................................29

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ...........................................................................................30

8.1.   Claims Administration Responsibilities .....................................................30
8.2.   Estimation of Claims.............................................................................30
8.3.   Adjustment to Claims without Objection. ...................................................31
8.4.   Time to File Objections to Claims ............................................................31
8.5.   Disallowance of Claims. .........................................................................31
8.6.   Amendments to Claims...........................................................................31
8.7.   No Distributions Pending Allowance .........................................................31
8.8.   Distributions After Allowance .................................................................31

ARTICLE IX. SETTLEMENT, DISCHARGE, AND RELEASE ...................................................32

9.1.   Compromise and Settlement ...................................................................32
9.2.   Incorporation of Compromise and Settlement with Zuza ................................32
9.3.   Release of Liens. ..................................................................................32
9.4.   Releases by the Debtors. ........................................................................33
9.5.   Exculpation. ........................................................................................34
9.6.   Injunction. ..........................................................................................34
9.7.   Protections Against Discriminatory Treatment. ...........................................35
9.8.   Document Retention. .............................................................................35
9.9.   Reimbursement or Contribution ...............................................................35
9.10.  Section 524(e) .....................................................................................36

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN ...........................................................................................36

10.1.  Conditions Precedent to Confirmation........................................................36
10.3.  Waiver of Conditions.............................................................................36
10.4.  Effect of Failure of Conditions ...............................................................36

ARTICLE XI. RETENTION OF COURT JURISDICTION ......................................................37

    11.1. Retention of Court Jurisdiction ................................................................................37

ARTICLE XII. MODIFICATION AND REVOCATION OF THE PLAN .................................38

    12.1. Immediate Binding Effect ........................................................................................38
    12.2. Modification of the Plan ...........................................................................................39
    12.3. Revocation or Withdrawal of the Plan ....................................................................39

ARTICLE XIII. MISCELLANEOUS PROVISIONS ..............................................................39

**INTRODUCTION**

Pursuant to Section 1121(c) of the Code, the Debtors respectfully propose this Plan for the resolution of the outstanding Claims against, and Interests in, the Debtors. The Debtors are each a proponent of the Plan within the meaning of Section 1129 of the Code. Reference is made to the Disclosure Statement, distributed contemporaneously with this Plan, for a discussion of the Debtors' history, assets, and operations; a summary and analysis of this Plan; and certain related matters.

Nothing contained herein shall constitute an offer, an acceptance, or a legally binding obligation of any party in interest. This Plan is subject to approval of the Court and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the Court in accordance with Section 1125 of the Code. Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE COURT.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF TERMS, COMPUTATION OF TIME, AND GOVERNING LAW**

1.1.     <u>Scope of Defined Terms.</u> For purposes of the Plan, the following terms shall have the meanings set forth below unless the context clearly requires otherwise. Any term used but not defined in this Plan that is defined in the Code or Bankruptcy Rules as the case may be, shall have the meaning ascribed in the Code or Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular. The masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2.     <u>Defined Terms.</u>

1.2.1.  **<u>Administrative Claim</u>**: means a Claim (other than any adequate protection claims) for costs and expenses of administration of the Debtors' estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Debtors' estates and operating the Debtors' businesses; (ii) Allowed Professional Fee Claims; and (iii) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

1.2.2.  **<u>Administrative Claim Bar Date</u>**: means the first Business Day that is thirty (30) days after the entry of the Confirmation Order or such earlier deadline established by an order of the Court.

1.2.3. **Affiliate**: means any specified Person, any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such Person and, with respect to any specified natural Person, any other Person having a relationship by blood, marriage, or adoption not more remote than first cousins with such natural Person. For purposes of this definition, "controlling" (including, with correlative meanings, the terms "controlled by" and "under direct or indirect common control with"), as used with regards to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such Person, whether through the ownership of voting securities, by agreement, or otherwise.

1.2.4. **Allowed**: means, with reference to any Claim or Interest, except as otherwise provided in this Plan:

(i)     any Claim or Interest arising on or before the Effective Date (a) as to which no objection to allowance has been interposed within the time period set forth in the Plan or (b) as to which any objection has been determined by a Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective holder;

(ii)     any Claim or Interest as to which the liability of a Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or

(iii)     any Claim or Interest expressly allowed under the Plan; *provided further,* that notwithstanding the foregoing, the Reorganized Debtor will retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise unimpaired pursuant to the Plan.

1.2.5. **Approval Order**: means the Final Order approving the Disclosure Statement.

1.2.6. **Ballot**: means the applicable form or forms of ballot(s) to be distributed to Holders of Claims entitled to vote on the Plan and on which the acceptance or rejection of the Plan is to be indicated.

1.2.7. **Bankruptcy Rules**: means the Federal Rules of Bankruptcy Procedure, as amended, or any successor rules.

1.2.8. **Business Day**: means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.2.9. **Case or Cases**: means each chapter 11 case of the Debtors in the Court jointly administered under Case No. 25-41544 in the United States Bankruptcy Court for the Northern District of Texas.

1.2.10. **Cash**: means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

1.2.11. **Causes of Action**: means all of the Debtors' and Estates' actions, causes of action, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, third-party claims, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Cases, through and including the Effective Date, including, but not limited to, the Chapter 5 Causes of Action and all causes of action listed in the Schedule of Retained Causes of Action to be filed as part of the Plan Supplement as **Exhibit 3**.

1.2.12.  **Chapter 5 Causes of Action**: means (i) any and all actions that are filed or that may be filed pursuant to the provisions of Sections 502(d), 510(c), 542, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, or applicable non-bankruptcy law that may be incorporated or brought under the foregoing Sections of the Code or (ii) any other similar actions or proceedings filed to recover property for or on behalf of the Estates or to avoid a lien or transfer.

1.2.13.  **Claim**: means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtors.

1.2.14.  **Claims Bar Date**: means, (a) with respect to any Entity that is not a Governmental Unit, September 24, 2025, and (b) with respect to a Governmental Unit, October 27, 2025, unless modified by entry of an Order of the Court.

1.2.15.  **Claims Register**: means the official register of Claims for the Cases maintained by the Court.

1.2.16.  **Class**: means a category of Claims or Interests as described in the Plan pursuant to Section 1122(a) of the Code.

1.2.17.  **Code**: means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

1.2.18.  **Compass**: means Compass Funding Solutions, LLC.

1.2.19.  **Comptroller**: means Texas Comptroller of Public Accounts.

1.2.20.  **Confirmation**: means the Court's entry of the Confirmation Order on the docket of the Case, subject to all conditions specified in § 10.1 of the Plan having been (a) satisfied or (b) waived pursuant to § 10.3 of the Plan.

1.2.21.  **Confirmation Date**: means the date of a determination by the Court by entry of the Confirmation Order that the Plan satisfies Section 1129 of the Code.

1.2.22.  **Confirmation Hearing**: means the hearing required by Section 1128 of the Code.

1.2.23.  **Confirmation Order**: means the order entered by the Court following the Confirmation Hearing confirming the Plan pursuant to Section 1129 of the Code.

1.2.24.  **Consummation**: means the occurrence of the Effective Date.

1.2.25.  **Court**: means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

1.2.26.  **Covered Personal Injury Claim**: means a claim arising from bodily harm or injury to property that is covered by the Debtors' Insurance Policies.

1.2.27.  **Creditor**: has the meaning prescribed in Section 101(10) of the Code.

1.2.28.  **Cure Amounts**: means all amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults and other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) pursuant to a Cure Claim under any Executory Contract or Unexpired Lease that is to be assumed or assumed and assigned by the Debtors pursuant to sections 365 or 1123 of the Code.

1.2.29.  **Cure Claim**: means a Claim based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Code.

1.2.30.  **Debtors**: means, collectively, Express and Logistics.

1.2.31.  **Disallowed**: means a Claim or an Interest (or portion thereof) that has been disallowed, denied, dismissed, or overruled pursuant to this Plan or a Final Order of the Court or of any other court of competent jurisdiction.

1.2.32.  **Disclosure Statement**: means a Disclosure Statement as described in Section 1125 of the Code to be filed in support of this Plan, as it may be amended or supplemented.

1.2.33.  **Disputed Claim**: means any Claim that is not yet Allowed or Disallowed.

1.2.34.  **Distribution Record Date**: means the record date for purposes of making Plan Distributions on account of Allowed Claims, which date shall be the later of (i) the Confirmation Date; and (ii) the Claims Bar Date.

1.2.35.  **Effective Date**: means as defined in § 10.2 of the Plan.

1.2.36.  **Entity**: has the meaning set forth in Section 101(15) of Code.

1.2.37.  **Equity Security**: means any equity security, as defined in section 101(16) of the Code, in the Debtor.

1.2.38.  **Estates**: means the estates created for the Debtors in the Cases pursuant to Section 541 of the Code, with each such estate constituting an "Estate."

1.2.39.  **Exculpated Parties**: means, collectively, and in each case, in its capacity as such: (a) the Debtors, (b) the Professionals; and (c) with respect to each of the foregoing, such Entity and its current and former affiliates, and such Entity's and its current and former affiliates' equity

holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the Petition Date.

1.2.40.   **Executory Contract**: means an executory contract or unexpired lease as such terms are used in Section 365 of the Code, including all operating leases, capital leases, and contracts to which either Debtor is a party or beneficiary.

1.2.41.   **Exit Facility**: means a continuation of debt obligations to Wells Fargo, PNC, Compass and Huntington and their existing collateral.

1.2.42.   **Express**: means Balkan Express, LLC as debtor and debtor in possession.

1.2.43.   **Federal Judgment Rate**: means the federal post-judgment interest rate in effect as of the Petition Date.

1.2.44.   **File or Filed**: means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Case.

1.2.45.   **Final Order**: means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, re-argument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, re-argument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, re-argument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing shall have expired; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Code has been or may be filed with respect to such order or judgment.

1.2.46.   **Governmental Unit**: means any governmental unit, as defined in Section 101(27) of the Code.

1.2.47.   **GUC Recovery**: means the total amount of funds available, first, to creditors holding Allowed Administrative Claims not paid in accordance with 11 U.S.C. § 1129(a)(9), if any, and second, to Allowed Unsecured Claims in Class 9, which shall be equal to either (a) seventy (70) percent of the Net Income of Reorganized Debtors for each of the five (5) years following the Effective Date or (b) one hundred (100) percent of all Allowed Unsecured Claims in Class 9 plus five (5) percent per annum interest recovery, whichever occurs first.

1.2.48.   **Holder**: means any Entity holding a Claim or an Interest.

1.2.49.   **Huntington**: means The Huntington National Bank.

1.2.50.  **Impaired**: means, with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Section 1124 of the Code.

1.2.51.  **Initial Litigation Trust Funding Amount**: means an amount equal to $25,000.00 USD in Cash.

1.2.52.  **Initial Plan Payment**: means a Pro Rata payment of $500,000.00 USD in Cash as between Wells Fargo, Compass, PNC and Huntington, reduced by any amounts paid to Section 503(b)(9) Claims pursuant to § 2.2 of the Plan.

1.2.53.  **Insider**: has the meaning set forth in Section 101(31) of the Code.

1.2.54.  **Insurance Policies**: means any and all insurance policies, insurance settlement agreements, coverage-in-place agreements, and other agreements, documents, or instruments relating to the provision of insurance entered into by or issued to or for the benefit of, at any time, the Debtors or their predecessors.

1.2.55.  **Insurer**: means any company or other entity that issued an Insurance Policy, any third party administrator of or for any Insurance Policy, and any respective predecessors and/or Affiliates of any of the foregoing.

1.2.56.  **Interest**: means any Equity Security in the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in the Debtors.

1.2.57.  **Lien**: means a lien, security interest, or other interest or encumbrance as defined in Section 101(37) of the Code.

1.2.58.  **Litigation Trust**: means the trust described in Article V of the Plan to be established under Texas trust law that will prosecute the Chapter 5 Causes of Action and any related litigation pursuant to the terms of the Plan and Litigation Trust Agreement. With respect to any action required or permitted to be taken by the Litigation Trust, the term includes the Litigation Trustee or any other person authorized to take such action in accordance with the Litigation Trust Agreement.

1.2.59.  **Litigation Trust Agreement:** means the agreement, substantially in the form annexed to the Plan Supplement as **Exhibit 4**, establishing the Litigation Trust in conformity with the provisions of the Plan, which shall be approved in the Confirmation Order and entered into by the Debtors, on behalf of the beneficiaries, and the Litigation Trustee by the Effective Date pursuant to the terms of the Plan.

1.2.60.  **Litigation Trust Assets**: means the Chapter 5 Causes of Action.

1.2.61.  **Litigation Trust Interest(s)**: means as defined in the Litigation Trust Agreement and as described in Article V of this Plan.

1.2.62.  **Litigation Trustee:** means the person appointed in accordance with Article V of this Plan to administer the Litigation Trust in accordance with the terms of the Litigation Trust Agreement.

1.2.63.  **Logistics**: means Balkan Logistics, LLC as debtor and debtor in possession.

1.2.64.  **M&T:** means M&T Bank.

1.2.65.  **Monthly Litigation Trust Funding Amount**: means an amount equal to $5,000.00 USD in Cash.

1.2.66.  **Net Income**: means and is calculated as income after operating expenses, capex expenses, debt service and tax payments.

1.2.67.  **New Interest**: means any new Interest issued to members in the Reorganized Debtor.

1.2.68.  **Organizational Documents**: means the Debtors' existing documents providing for corporate governance of the Debtors, including charters, bylaws, operating agreements, or other organizational documents, as applicable.

1.2.69.  **Other Priority Claim**: means any Claim, other than an Administrative Claim, Section 503(b)(9) Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.2.70.  **Other Secured Claim**: means any Secured Claim other than (1) the Secured Claims of Wells Fargo, Compass, PNC, Huntington and M&T, and (2) Secured Tax Claims.

1.2.71.  **Person(s)**: has the meaning set forth in Section 101(41) of the Code.

1.2.72.  **Petition Date**: means April 30, 2025, the date on which the Debtors commenced their Cases.

1.2.73.  **Plan**: means this *Third Amended Joint Chapter 11 Plan of Reorganization for Balkan Express, LLC and Its Affiliated Debtor*, as supplemented and/or amended.

1.2.74.  **Plan Distribution**: means a payment or distribution to holders of Allowed Claims, Allowed Interests, or other eligible Entities under the Plan.

1.2.75.  **Plan Sponsor**: means Zlatan Karic.

1.2.76.  **Plan Supplement**: has the meaning ascribed to it as defined in § 13.10 of this Plan.

1.2.77.  **PNC**: shall mean PNC Bank, National Association.

1.2.78.  **Priority Tax Claim**: means a Priority Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Code.

1.2.79. **Pro Rata:** means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

1.2.80. **Professional**: means an Entity employed by the Debtors pursuant to a Court order in accordance with Sections 327, 363, or 1103 of the Code.

1.2.81. **Professional Fee Claims**: means a Claim for compensation or reimbursement of expenses of a Professional incurred on and after the Petition Date and prior to the Effective Date, including fees and expenses incurred in preparing final fee applications and participating in hearings on such applications, and requested in accordance with the provisions of Sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Code.

1.2.82. **Proof of Claim**: means a proof of Claim filed against the Debtors in the Cases by the applicable Claims Bar Date.

1.2.83. **Reinstate, Reinstated or Reinstatement**: means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

1.2.84. **Released Parties**: means individually and collectively, and in each case, in its capacity as such: (i) each of the Debtors' officers, directors, and managers and (ii) with respect to the Debtors, and each of the foregoing Entities in clauses (i) through (ii), such Entity's current and former Affiliates and subsidiaries, and such Entities' and their current and former Affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

1.2.85. **Reorganized Debtor**: means the Debtors, or any successor thereto or assign thereof, by merger, consolidation, or otherwise, on and after the Effective Date.

1.2.86. **Retained Causes of Action**: means those Causes of Action of the Debtors and their Estates that are retained under the Plan, including those specifically identified on the Schedule of Retained Causes of Action and that are not released, waived, or transferred pursuant to the Plan.

1.2.87. **Schedule of Assumed Contracts and Leases**: means the schedule of Executory Contracts and Unexpired Leases to be assumed and, if applicable, assigned, by the Debtors, to be filed as part of the Plan Supplement as **Exhibit 1**.

1.2.88. **Schedule of Rejected Contracts and Leases**: means the Schedule of Executory Contracts and Unexpired Leases to be rejected, if any, to be filed as part of the Plan Supplement as **Exhibit 2**.

1.2.89. **Schedule of Retained Causes of Action**: means the schedule of retained Causes of Action, to be filed as part of the Plan Supplement as **Exhibit 3**.

1.2.90.  **Schedules**: means the schedules of assets and liabilities, the list of Holders of Interest, and the statements of financial affairs filed by the Debtors in accordance with Section 521 of the Code, Bankruptcy Rule 1007, and the Official Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented on or prior to the Confirmation Date.

1.2.91.  **Section 503(b)(9) Claims**: means any Administrative Claim against the Debtors as set forth in Section 503(b)(9) of the Code.

1.2.92.  **Secured Claim**: means a Claim (i) secured by a lien on collateral to the extent of the value of such collateral as (a) set forth in the Plan, (b) agreed to by the Holder of such Claim and the Debtors, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.2.93.  **Secured Tax Claim**: means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

1.2.94.  **Securities Act**: means the Securities Act of 1933, as amended.

1.2.95.  **Solicitation**: means solicitation in accordance with the Approval Order of votes under the Plan.

1.2.96.  **Solicitation Materials**: means the Disclosure Statement (including all exhibits and appendices), Ballot, and any other materials to be used in the Solicitation of votes on the Plan.

1.2.97.  **Unexpired Lease**: means a lease to which either Debtor is a party that is subject to assumption or rejection under Section 365 of the Code.

1.2.98.  **Unimpaired**: means a Claim or Interest that is unimpaired within the meaning of Section 1124 of the Code.

1.2.99.  **Unsecured Claim**: means any Claim that is not an Administrative Claim, a Professional Fee Claim, a Secured Claim, a Priority Tax Claim, a Section 503(b)(9) Claim, an Other Priority Claim or an Other Secured Claim.

1.2.100.  **Wells Fargo**: means Wells Fargo Equipment Finance, Inc.

1.2.101.  **Zuza**: means Gorjana Zuza f/k/a Gorjana Karic.

1.2.102.  **Zuza Settlement Agreement**: means the settlement agreement between Debtors and Zuza authorized pursuant to the Court's *Order Granting Debtors' Amended Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Docket No. 443].

1.3.  Rules of Interpretation and Construction of Terms. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified; (ii)

---

unless otherwise specified, all references in the Plan to sections, articles, and exhibits are references to sections, articles, or exhibits of the Plan; (iii) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety and not to any particular portion of the Plan; (iv) captions and headings contained in the Plan are inserted for convenience and reference only and are not intended to be part of or to affect the interpretation of the Plan; (v) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (vi) unless otherwise specified, all references in the Plan to exhibits are references to the exhibits in the Plan Supplement; (vii) any reference to an Entity as a Holder of a Claim or Interest includes the Entity's successors and assigns; (viii) any reference to docket numbers of documents filed in the Case are references to docket numbers under the Court's CM/ECF system; and (ix) the rules of construction outlined in Section 102 of the Code and in the Bankruptcy Rules apply to the Plan.

1.4.    Computation of Time. Unless otherwise specifically provided herein, in computing any period, date, or deadline prescribed or allowed in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If the date on which a transaction may or must occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

1.5.    Governing Law. Subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Code and Bankruptcy Rules.

1.6.    Reference to Monetary Figures. All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with Section 1123(a)(1) of the Code, Administrative Claims, Professional Fee Claims, Section 503(b)(9) Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

2.1.    Administrative Claims. Except to the extent that a Holder of an Allowed Administrative Claim and the Debtors agree to less favorable treatment for such Holder, each holder of an Allowed Administrative Claim (other than holders of Section 503(b)(9) Claims, Professional Fee Claims and Claims for fees and expenses pursuant to Section 1930 of Chapter 123 of Title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date, or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); or (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Administrative Claim

becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) at such time and upon such terms as may be agreed upon by such holder and the Debtors, including from the GUC Recovery from Debtors' Net Income prior to any distributions to Holders of Class 9 Allowed Unsecured Claims; and (iv) at such time and upon such terms as set forth in an order of the Court.

Except for Professional Fee Claims, unless previously filed, requests for payment of Administrative Claims must be filed and served on the Debtors no later than the Administrative Claim Bar Date. Objections to such requests must be filed and served on the Debtors and the requesting party by the later of (i) thirty (30) days after the Effective Date and (ii) thirty (30) days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Code and prior Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Court.

Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or any action by the Court.

2.2.     Section 503(b)(9) Claims. Except to the extent that a Holder of an Allowed Section 503(b)(9) Claim and the Debtors agree to less favorable treatment for such Holder, each holder of an Allowed Section 503(b)(9) Claim will receive in full and final satisfaction of its Claim an amount of Cash from the Initial Plan Payment equal to the amount of such Claim in accordance with the following: (i) if a Section 503(b)(9) Claim is Allowed on or prior to the Effective Date, on the Effective Date, or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Section 503(b)(9) Claim is due or as soon as reasonably practicable thereafter); or (ii) if such Section 503(b)(9) Claim is not Allowed as of the date of the Effective Date, no later than ten (10) days after the date on which an order allowing such Section 503(b)(9) Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) at such time and upon such terms as may be agreed upon by such Holder and the Debtors; and (iv) at such time and upon such terms as set forth in an order of the Court.

Unless previously filed, requests for payment of Section 503(b)(9) Claims must be filed and served on the Debtors no later than the Administrative Claim Bar Date. Objections to such requests must be filed and served on the Debtors and the requesting party by the later of (i) thirty (30) days after the Effective Date and (ii) thirty (30) days after the Filing of the applicable request for payment of the Section 503(b)(9) Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Code and prior Court orders, the Allowed amounts, if any, of Section 503(b)(9) Claims shall be determined by, and satisfied in accordance with an order of, the Court.

Holders of Section 503(b)(9) Claims that are required to file and serve a request for such payment of such Section 503(b)(9) Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Section 503(b)(9) Claims against the Debtors, or their property, and such Section 503(b)(9) Claims

shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or any action by the Court.

2.3.    Professional Fee Claims.

2.3.1. Final Fee Applications and Payment of Professional Fee Claims. All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served on the Debtors, the U.S. Trustee and their counsel no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the U.S. Trustee, Debtors and their counsel, and the requesting Professional or other entity no later than twenty-one (21) days (or such longer period as may be allowed by order of the Court) after the date on which the applicable application for compensation or reimbursement was served. The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Court. Debtors shall pay Professional Fee Claims in Cash in the amount the Court allows by Final Order.

2.3.2. Post-Effective Date Fees and Expenses. Except as otherwise specifically provided in the Plan, from and after the Effective Date, Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation. Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331, 363, and 1103 of the Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice, action, order, or approval of the Court.

2.4.    Priority Tax Claims.

2.4.1. Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor against which such Allowed Priority Tax Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, treatment in a manner consistent with Section 1129(a)(9)(C) of the Code and paid in full through regular Cash payments, including interest at the Applicable Rate, over a period not exceeding five (5) years from the Petition Date of a value, as of the Effective Date, equal to the Allowed amount of such Claim.

2.4.2. Special Provisions Regarding Comptroller Tax Claims. Notwithstanding anything in the Plan or Confirmation Order to the contrary, the following provisions shall govern the treatment of the claims of the Comptroller: (1) nothing in the Plan or Confirmation Order shall affect or impair the Comptroller's statutory or common law setoff rights in accordance with 11 U.S.C. § 553; (2) nothing in the Plan or Confirmation Order shall affect or impair the Comptroller's rights to pursue any non-debtor third parties for any tax debts or claims; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's administrative expense tax claims; (4) to the extent that interest is payable on any

administrative expense, priority or secured tax claim of the Comptroller, the applicable interest rate shall be the statutory rate, currently 7.75% per annum; and (5) the Comptroller is not required to file a motion or application for payment of administrative expense claims; such claims are allowed upon filing, subject only to objection on substantive grounds.

Priority tax claims owed to the Comptroller shall be paid in full (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty (60) months of the Petition Date; or (3) as otherwise agreed to by the Comptroller. Interest on the Comptroller's priority tax claims shall accrue interest at the statutory rate, currently 7.75% per annum, from the Effective Date until paid in full.

Should the Reorganized Debtor fail to make any payments as required in the Plan, the Comptroller shall provide written notice of that default and send written notice to Reorganized Debtor's counsel advising of that default and providing the Reorganized Debtor with a period of ten (10) days to cure the default. If the default is not cured within ten (10) days, the Comptroller may, without further order of this Court, pursue all of its rights and remedies available to it under applicable non-bankruptcy law to collect the full amounts of all taxes, penalties, and interest owed. The Reorganized Debtor shall be entitled to no more than two (2) Notices of Default. In the event of a third (3rd) default, the Comptroller may pursue all rights and remedies available to it under applicable non-bankruptcy law without further order of the Court.

## ARTICLE III.
## CLASSIFICATION

For clarity, as described below, the Cases are being substantively consolidated and, except for Classes with subclasses where expressly indicated, each Class will be funded with assets pertaining to Express. For avoidance of any doubt, creditors for both Debtors will be paid with assets of Express. Subject to the foregoing, Claims and Interests shall be classified as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Other Secured Claims | Impaired | Entitled to Vote |
| Class 4 | Compass Secured Claim | Impaired | Entitled to Vote |
| Class 5 | PNC Secured Claim | Impaired | Entitled to Vote |
| Class 6 | Wells Fargo Secured Claim | Impaired | Entitled to Vote |
| Class 7 | Huntington Secured Claim | Impaired | Entitled to Vote |
| Class 8 | M&T Secured Claim | Impaired | Entitled to Vote |

| Class 9 | Unsecured Claims | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 10 | Covered Personal Injury Claims | Impaired | Entitled to Vote |
| Class 11 | Plan Sponsor Subordinated Unsecured Claim | Impaired | Entitled to Vote |
| Class 12 | Equity Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

## ARTICLE IV.
## TREATMENT

Claims against the Debtors and Interests in the Debtors shall receive the following treatment:

4.1.      Class 1 (Other Priority Claims). Class 1 consists of any Allowed Other Priority Claims against the respective Debtor. Each Holder of a Class 1 Claim will be paid on the later of: (i) the Effective Date or as soon as practicable thereafter or (ii) if such Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Claim becomes a Final Order, or as soon as reasonably practicable thereafter. Except to the extent that a Holder of a Class 1 Claim and the Debtor agree to less favorable treatment for such Holder, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for of such Claim, one of the following treatments, in the sole discretion of the Debtor: (i) full payment in Cash of its Allowed Priority Claim or (ii) treatment of its Allowed Priority Claim consistent with the provisions of section 1129(a)(9) of the Code. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such Holders will not be solicited.

4.2.      Class 2 (Secured Tax Claims). Class 2 consists of any Allowed Secured Tax Claims against the Debtors. Except to the extent that a Holder of an Allowed Secured Tax Claim and the Debtor against which such Allowed Secured Tax Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Tax Claim, treatment in a manner consistent with Section 1129(a)(9)(D) of the Code and paid in full through regular Cash payments, including interest at the Applicable Rate, over a period not exceeding five (5) years from the Petition Date of a value, as of the Effective Date, equal to the Allowed amount of such Claim.  Allowed Secured Tax Claims shall retain their Liens. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such Holders will not be solicited.

4.3.      Class 3 (Other Secured Claims). Class 3 consists of any Allowed Other Secured Claims against the Debtors. Except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Other Secured Claim, shall receive the collateral securing its Allowed

Other Secured Claim on the Effective Date or as soon after the Effective Date as practicable. Upon sale of any such collateral, such Allowed Other Secured Claim shall reduce its Claim by the amount received from any such sale and will then be permitted to file an amended Claim based upon any alleged deficiency remaining following such sale, which will be an Allowed Unsecured Claim subject to treatment under Class 9, unless Debtors object to the same pursuant to § 8.4 of the Plan. Such Claims for deficiency, if any, shall be filed within forty-five (45) of the later of (i) the Effective Date or (ii) the date of Debtors' surrender of the collateral (the "Deficiency Claims"). For avoidance of doubt, initially, the *pro rata* distribution to Deficiency Claims will be calculated based on the Debtors' estimate of the same.  Thereafter, the *pro rata* distribution will then be calculated based on the asserted deficiency pursuant to an amended claim, if any. The Holders of Claims in Class 3 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.4.    Class 4 (Compass Secured Claim). Class 4 consists of the Secured Claim of Compass against Debtors. Except to the extent that a Holder of a Class 4 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 4 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 4 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, PNC and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last.  Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Compass Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate, over a period not exceeding 2.5 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $550,000.00. The remainder of the Compass Claim will be treated as a Class 9 Unsecured Claim and will be paid as part of Class 9. Compass shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan. The Holders of Claims in Class 4 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.5.    Class 5 (PNC Secured Claim). Class 5 consists of the Secured Claim of PNC against Debtors. Except to the extent that a Holder of a Class 5 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 5 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 5 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, Compass and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last.  Thereafter, in accordance with the terms set for in section 1129(b)(2)(A) of the Code, the remainder of the PNC Secured Claim will be paid in full through regular cash payments, including interest at the applicable rate, over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling to approximately $4,800,000.00. Should PNC consent to treatment under this Class 5, PNC shall retain its Lien on its collateral but shall agree not to foreclose on its collateral pending a default under the terms of the Plan. In the alternative, if PNC does not consent to treatment under this Class 5, PNC will be treated as a Class 3 Other Secured Claim, such that

PNC shall receive its collateral and be entitled to an Unsecured Deficiency Claim as provided for thereunder. The Holders of Claims in Class 5 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.6.     Class 6 (Wells Fargo Secured Claim). Class 6 consists of the Secured Claim of Wells Fargo against Debtors. Except to the extent that a Holder of a Class 6 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 6 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 6 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Compass, PNC and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last.   Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Wells Fargo Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate and inclusive of any adequate protection payments provided for in the Debtors' and Wells Fargo's stipulation concerning Wells Fargo's *Motion for Relief from Automatic Stay* [Docket No. 438], over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $328,000.00. Wells Fargo shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan.  The Holders of Claims in Class 6 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.7.     Class 7 (Huntington Secured Claim). Class 7 consists of the Secured Claim of Huntington against Debtors. Except to the extent that a Holder of a Class 7 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 7 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 7 Claim, first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, Compass and PNC following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last.   Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Huntington Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate, over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $157,000.00. Huntington shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan.  The Holders of Claims in Class 7 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.8.     Class 8 (M&T Secured Claim). Class 8 consists of the Allowed Secured Claim of M&T against the Debtors. Except to the extent that a Holder of a Class 8 Claim and the Debtors agree to less favorable treatment, each Holder of a Class 8 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Class 8 Claim, receive the collateral securing its Claim on the Effective Date or as soon after the Effective Date as practicable. Upon sale of any such collateral, such Claim shall reduce its Claim by the amount

received from any such sale and such Holder will then be permitted to file an amended Claim based upon any alleged deficiency remaining following such sale, which will be an Allowed Unsecured Claim subject to treatment under Class 9, unless Debtors object to the same pursuant to § 8.4 of the Plan. Such Claims for deficiency, if any, shall be filed within forty-five (45) of the later of (i) the Effective Date or (ii) the date of Debtors' surrender of the collateral (the "M&T Deficiency Claim").

M&T has estimated that the collateral securing its Claim is worth less than seventy percent (70%) of the total value of its Claim as alleged by Debtors. Accordingly, Debtors will review the M&T Deficiency Claim and create an escrow account (the "M&T Escrow") and deposit *pro rata* portions of the quarterly payments from Debtors' Net Income to Unsecured Claims under Class 9 up to the value of the M&T Deficiency Claim less the thirty percent (30%) which is being disbursed to other Allowed Unsecured deficiency claims under Class 9 *pro rata* under the Plan as though the M&T Deficiency Claim were allowed in full.  For avoidance of doubt, initially, the *pro rata* distribution to Deficiency Claims, including M&T, will be calculated based on the Debtors' estimate.  Thereafter, the *pro rata* distribution will then be calculated based on the asserted deficiency.  If the asserted deficiency *pro rata* distribution percentage is higher than the Debtors' proposed distribution percentage, M&T will receive a payment based on the Debtors' proposed distribution percentage and the difference between the Debtors' proposed distribution percentage and the M&T Deficiency percentage will be held in the M&T Escrow.   Each other member of the Class 3 Deficiency Claims will receive distributions based on the lesser of the calculated *pro rata* distribution.   Upon M&T's sale of the collateral under § 4.8 of the Plan, one of the following will occur with respect to the M&T Escrow:

(a) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount lower than the M&T Deficiency Claim, notwithstanding the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the actual deficiency remaining following the sale of the M&T collateral, with the remaining funds in the M&T Escrow paid towards to the GUC Recovery and other Allowed Unsecured Claims under § 4.9 of the Plan;

(b) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount that equals the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the M&T Deficiency Claim; or

(c) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount higher than the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the M&T Deficiency Claim, and will then be paid any remaining deficiency from the GUC Recovery as part of Class 9.

The Holders of Claims in Class 8 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.9.      Class 9 (Unsecured Claims). Class 9 consists of any Allowed Unsecured Claims against the Debtors. Except to the extent that a Holder of a Class 9 Claim and the Debtors agree to less favorable treatment for such Holder, each Holder of an Allowed Unsecured Claim shall

receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Claim, its Pro Rata share of the GUC Recovery, less any applicable payments to Allowed Administrative Claims under § 2.1, from up to seventy percent (70%) of Debtors' Net Income and proceeds from the Litigation Trust Assets, if any. Payments to Allowed Unsecured Claims under Class 9 will occur at the end of each quarter following the Effective Date. Allowed Unsecured Claims in this Class 9 shall accrue interest at 5% per annum. For avoidance of any doubt, the quarterly payments described in this § 4.9 shall be capped at seventy percent (70%) of Debtors' Net Income for each period.  Further, while the Debtors forecast that payment from the GUC Recovery will result in Holders of Claims in Class 9 being paid in full with interest once all collateral is appropriately valued and sold, if Debtors' forecast is incorrect, Debtors are asking Holders of Class 9 Claims to consent to payment of up to seventy percent (70%) of Debtors' Net Income under the GUC Recovery. The Holders of Claims in Class 9 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.10.    Class 10 (Covered Personal Injury Claims). Class 10 consists of the Covered Personal Injury Claims as against the Debtors.  Except to the extent that a Holder of a Covered Personal Injury Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Claim, on the Effective Date, the automatic stay and the injunction imposed by the Plan, as applicable, shall be modified on a limited basis, solely to permit each Holder of a Covered Personal Injury Claim to continue or commence an action in state or federal court against the Debtors in order to determine whether the Debtors have any liability on account of such Covered Personal Injury Claim and, if so, the amount of such Covered Personal Injury Claim as of the Petition Date, with the defense and settlement of such claims controlled exclusively by the applicable Insurer(s) under the terms of the applicable Insurance Policies.

In the event there is a final settlement or final, non-appealable judgment of a Covered Personal Injury Claim, such Covered Personal Injury Claim shall be Allowed under the Plan, up to the amount of coverage available for said Claim under any applicable Insurance Policies as set forth below.  All settlements must have the consent of the applicable Insurer(s).  After the adjudication or settlement of all Covered Personal Injury Claims, each holder of an Allowed Covered Personal Injury Claim shall receive:

(i)    if the aggregate amount of Allowed Personal Injury Claims is greater than the remaining available insurance limits under the applicable Insurance Policies (i.e., remaining limits less defense costs), their pro rata share of the total coverage available under the Debtors' Insurance Policies, or, if the aggregate amount of Allowed Covered Personal Injury Claims is less than the remaining available insurance limits under the applicable Insurance Policies (i.e., remaining limits net of defense costs), 100% of their Allowed Covered Personal Injury Claim, which, in either event, shall be paid directly by the applicable Insurer(s) under the applicable Insurance Policies to the Holder of an Allowed Covered Personal Injury Claim; *provided* that under no circumstances shall a Holder receive more than 100% of the Allowed amount of such Holder's Allowed Personal Injury Claim as of the Petition Date or postpetition interest on such Claim, and

(ii)    standing to pursue any cause of action of the Debtors against Insurer for non-payment of the foregoing treatment.

For the avoidance of doubt, if the aggregate amount of Allowed Covered Personal Injury Claims exceeds the available insurance proceeds under the applicable Insurance Policies, no Insurer shall be required to fund any amount in excess of the limits of the applicable Insurance Policy; and if the aggregate amount of Allowed Covered Personal Injury Claims is less than the available insurance proceeds under the applicable Insurance Policy, no Insurer shall be required to fund any amount in excess of the aggregate amount of the Allowed Covered Personal Injury Claims.

Some of the Covered Personal Injury Claims are fully insured, and no deductible or self-insured retention amount would be payable by the Debtors under the terms of the applicable Insurance Policy. As to other Covered Personal Injury Claims, the Debtors may owe deductibles or self-insured retention amounts. The Debtors shall not be responsible to Holders of Allowed Covered Personal Injury Claims for any deductible or self-insured retention obligations incurred prior to the Petition Date (a "Prepetition Insurance Amount"), and all Claims for such deductibles and self-insured retention obligations shall be treated as Class 9 Unsecured Claims, to the extent Allowed. Allowed Administrative Claims and/or Allowed Unsecured Claims for self-insured retention obligations incurred after the Petition Date (a "Postpetition Insurance Amount") shall satisfy such self-insured retention obligations, and Holders of such Claims may thereafter pursue recovery from Insurers.

The Holders of Claims in Class 10 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.11.     Class 11 (Subordinated Unsecured Claim of Plan Sponsor). Class 11 consists of the Unsecured Claims of the Plan Sponsor as against the Debtors. On the Effective Date, the Plan Sponsor agrees to subordinate its claim and shall not receive or retain any property or distributions under the Plan on account of its Unsecured Claims until all Allowed Unsecured Claims have been paid in full.  The Holders of Claims in Class 11 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.12     Class 12 (Interests in the Debtors). Class 12 consists of the Holders of Interests in the Debtors. On the Effective Date, all Class 12 Interests shall remain in place at their prepetition priority and status. The Holders of Interests in Class 12 are Unimpaired. In accordance with Section 1126(f) of the Code, the Holders of these Interests are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such Holders will not be solicited.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1.     Formation of a Litigation Trust

5.1.1. Litigation Trust Generally. The Litigation Trust will be established on the Effective Date to retain and hold all Chapter 5 Causes of Action, the proceeds of which shall be distributed Pro Rata to Holders of Allowed Unsecured Claims. On the Effective Date, the Litigation Trust

Assets shall be deemed transferred to the Litigation Trust by the Debtors and will vest in the Litigation Trust free and clear of all Liens, Claims, interests, encumbrances, etc., with all reversionary and beneficial interests in the Litigation Trust to be held by the Holders of Allowed Unsecured Claims. The sole beneficiaries of the Litigation Trust will be Holders of Allowed Unsecured Claims. The act of transferring the Litigation Trust Assets, as authorized by this Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Litigation Trust as if the asset or right was still held by the relevant Debtor. Notwithstanding anything to the contrary herein, the Litigation Trust may abandon to creditors or otherwise not accept any Chapter 5 Causes of Action that the Litigation Trustee believes, in good faith, have no value to the Litigation Trust; provided, that the Litigation Trust Agreement shall provide for the assignment by creditors to the Litigation Trust of any such Chapter 5 Causes of Action so abandoned to creditors.

Solely as relating to the Litigation Trust Assets, the Litigation Trustee, on behalf of the Litigation Trust, shall step into the shoes of the Debtors as it relates to either communications that occurred prior to, or documents prepared before, the Petition Date with respect to Debtors' right to assert attorney-client privilege or any other privilege or immunity Debtors possess, if any, and the Litigation Trustee shall be entitled to preserve, assert, access, or waive such privilege or immunity of the Debtors as it relates to such documents or communications. On the Effective Date, the Litigation Trustee shall have the power, right and responsibility to access or receive copies of all books, files and records of the Debtors or Reorganized Debtor, as applicable, to the extent relating to the Litigation Trust Assets for purposes of carrying out the purpose of the Litigation Trust. At any time after the Effective Date, upon reasonable request of the Litigation Trustee, the Reorganized Debtor shall provide the Litigation Trustee with copies of the Debtors' or the Reorganized Debtor's books, records, and files in their possession, custody, or control, and the Reorganized Debtor may, in good faith, provide such privileged information of the Debtors as is in their possession that relates to the evaluation and prosecution of the Chapter 5 Causes of Action. Following the Effective Date, the Litigation Trust and the Litigation Trustee shall be deemed a party in interest with standing to appear in the Cases and object to any pleadings Filed thereafter; provided, however, such standing and right to object does not alter the respective rights or responsibilities of the Litigation Trustee or the Reorganized Debtors under the Plan, or the Litigation Trust Agreement, alter any governing approval standard under applicable law, or otherwise limit the ability of any party with standing to respond to pleadings Filed, or objections raised, by the Litigation Trustee.

5.1.2. <u>Litigation Trustee</u>. The Litigation Trustee shall be an independent, third-party fiduciary selected by the Debtors and identified in the Plan Supplement, and shall be compensated at market rates; provided, that, for the avoidance of doubt, the Litigation Trustee shall have no affiliation with either Debtor and may not own any Claim, including Allowed Administrative Claims and Allowed Unsecured Claims, or other Interests in or Securities issued by either of the Debtors. The Litigation Trustee shall have the sole authority to make decisions and take action with respect to the Litigation Trust Assets, and shall have a duty to maximize the value of the assets of the Litigation Trust in accordance with the Litigation Trust Agreement. The Litigation Trustee shall confer with the Reorganized Debtor with respect to the commencement of any litigation in respect of such assets, provided that the ultimate decision with respect to whether to commence any litigation shall be in the sole discretion of the Litigation Trustee. For the avoidance of doubt, in exercising such sole discretion, the Litigation Trustee shall consider and may take

such actions in connection with the exercise of such sole discretion that promote the greatest recovery to the holders of Allowed Unsecured Claims. The Litigation Trustee shall seek Court approval, after notice and an opportunity for a hearing, of (a) any settlements with respect to the Chapter 5 Causes of Action, and (b) any other transaction with respect to any assets of the Litigation Trust, in each case, that has an economic value of $100,000.00 or more (in the Litigation Trustee's good faith determination) as of the date of such transaction.

The Litigation Trustee shall use the Initial Litigation Trust Funding Amount to fund all expenses related to its duties under this Plan and the Litigation Trust Agreement. Thereafter, and beginning on the first month following the Effective Date, the Litigation Trust and the Litigation Trustee will be paid the Monthly Litigation Trust Funding Amount to fund expenses related to their duties under the Plan and the Litigation Trust Agreement. The Litigation Trust and the Litigation Trustee may also use proceeds from monetizing the Chapter 5 Causes of Action to fund the reasonable and customary out-of-pocket expenses incurred by the Litigation Trust and Litigation Trustee. Beginning on the Effective Date, the Litigation Trustee shall have customary powers, including the power to employ (without further order of the Bankruptcy Court) professionals (including professionals previously engaged in the Cases), employees, or other independent contractors to assist in carrying out its duties under this Plan, including the Litigation Trust Agreement, and may compensate and reimburse the expenses of these professionals, employees, or other independent contractors based upon the nature of the work performed by such parties without further order of the Court, subject to any limitations and procedures established by the Litigation Trust Agreement.

5.1.3. <u>Reports to Be Filed by the Litigation Trust</u>. Following the Effective Date, and unless otherwise ordered by the Court, and during the existence of the Litigation Trust, the Litigation Trust shall File with the Court (and provide to any other party entitled to receive any such report pursuant to the Litigation Trust Agreement), within 90 days after the end of each calendar year during the term of the Litigation Trust, and within 45 days after the end of each calendar quarter during the term of the Litigation Trust (other than the fourth quarter), a quarterly report regarding the administration of property subject to its ownership and control pursuant to this Plan, receipts, distributions made by it, an update regarding the status of the Chapter 5 Causes of Action being prosecuted by the Litigation Trust, and a summary of all major activities during the period.

5.1.4. <u>Termination of the Litigation Trust</u>. The initial term of the Litigation Trust shall be the lesser of: (a) three years; (b) the date all Holders of Allowed Unsecured Claims receive the full amount to which they are entitled to pursuant to this Plan; and (c) the date that all Chapter 5 Causes of Action have been fully resolved, as reasonably determined by the Litigation Trustee in its sole determination; provided, however, that, subject to applicable law, the Litigation Trustee may extend the term of the Litigation Trust solely in the event termination would otherwise occur under subsection (a) of this paragraph by Filing a motion with the Court prior to the expiration of the initial term and obtaining court approval of such extension, with a maximum extension of two (2) years per request (subject, in each instance, to reasonable consideration being given to implications of tax law and other applicable law of a proposed extension of the term of the Litigation Trust). For the avoidance of doubt, no later than the termination of the Litigation Trust, the Litigation Trustee shall transfer all of the net proceeds realized from the Litigation Trust's assets Pro Rata to Allowed Unsecured Claims. Any (i) remaining Chapter 5 Causes of Action and (ii) remaining portions of the Initial Litigation Trust Funding Amount or Monthly Litigation Trust Funding

Amounts shall revert to the Reorganized Debtor upon termination of the Litigation Trust. Notwithstanding the foregoing, and for the avoidance of doubt, nothing in this Plan (or the Plan Supplement, as applicable) shall prohibit the Litigation Trustee from making interim transfers of Cash realized by the Litigation Trust to holders of Allowed Unsecured Claims in accordance with this Plan.

     5.1.5. <u>Litigation Trustee Monitoring of Reorganized Debtor</u>. Notwithstanding any request for information by the Litigation Trustee under § 5.1.1 of this Plan, the Reorganized Debtor shall also agree to provide a quarterly report to the Litigation Trust regarding the Reorganized Debtor's operations and finances for the preceding quarter. The Litigation Trustee shall also assist with any distributions and payments made under the Plan by the Reorganized Debtor, in addition to those for which it is responsible under the Litigation Trust Agreement and as stated herein.

     5.2.     <u>Substantive Consolidation</u>. Except as otherwise provided in this Plan, each Debtor shall continue to maintain its separate corporate existence after the Effective Date for all purposes other than the treatment of Claims under this Plan. Except as expressly provided in this Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date: (a) all Plan payments and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under this Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of the other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by either Debtor and any joint or several liability of either of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in either of the Cases shall be treated as filed against the consolidated Debtors and shall be treated as one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to either of the Debtors may be set off against the debts of  the other Debtor. Such substantive consolidation shall not (other than for purposes relating to this Plan) affect the legal and corporate structures of the Reorganized Debtor. Moreover, such substantive consolidation shall not affect any subordination provisions set forth in any agreement relating to any Claim or Interest or the ability of the Reorganized Debtor to seek to have any Claim or Interest subordinated in accordance with any contractual rights or equitable principles.   For the avoidance of doubt, any Secured Claim shall remain secured only to the extent and solely to the extent validly asserted against the collateral securing such Secured Claim and this substantive consolidation shall not affect the security interests of any Holder of any Secured Claim.

     5.3.     <u>Sources of Plan Distributions.</u> Distributions under the Plan shall be funded with: (1) Cash on hand; (2) assumption of Exit Facility; (3) the Initial Plan Payment; (4) the proceeds from any recovery by the Litigation Trust; and (5) the proceeds of Debtors' operations.

     5.4.     <u>Cancellation of Existing Agreements.</u> On the Effective Date, all notes, instruments, and other documents evidencing Claims, including credit agreements and indentures, shall be cancelled and the obligations of the Debtors relating to such instruments shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled

instruments and other documentation will have no rights arising from or relating to such instruments and other documentation, except the rights provided for pursuant to the Plan.

5.5.      Corporate Action. On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtors and any corporate action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors. As applicable, on or prior to the Effective Date, the appropriate officers of the Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to give effect to the transactions contemplated under the Plan). The authorizations and approvals contemplated by Article V of the Plan shall beeffective notwithstanding any requirements under non-bankruptcy law.

5.6.      Directors and Officers of Reorganized Debtor. As of the Effective Date, the managers, managing members, and officers of the Debtors existing on the Petition Date shall be reinstated and continue in such roles for the Reorganized Debtor in the same capacity and same manner as existing on the Petition Date. On and after the Effective Date, the managers and managing members of the Reorganized Debtor shall consist of those entities and individuals serving in those roles on the Petition Date. The managers include the following individual: Zlatan Karic. The officer of the Reorganized Debtor shall be Zlatan Karic, as President. Mr. Karic will continue to receive an annual salary as compensation for his role as the Reorganized Debtor's President. Andrej Karic, the Plan Sponsor's son, will also continue to receive an annual salary as compensation for his role as an employee of the Reorganized Debtor. To the extent applicable and not previously disclosed in this Plan, if any such director or officer is an "insider" as defined in section 101(31) of the Bankruptcy Code, the nature of any compensation to be paid to such director or officer, if any, will also be disclosed to the extent required under the Bankruptcy Code. If necessary, the Organizational Documents will provide that subsequent managers of the Reorganized Debtor will be elected by the members holding a majority of the equity Interests in the Reorganized Debtor.

5.7.      Effectuating Documents; Further Transactions. On and after the Effective Date, the Reorganized Debtor, and the officers and members of the board of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan (collectively, a "Restructuring Transaction") in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

5.8.      Section 1146 Exemption. To the fullest extent permitted by Section 1146(a) of the Code, any transfers (whether from the Debtors to the Reorganized Debtor or any other Person) of property under the Plan or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, equity interest, or other interest in the Debtors; (ii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in

connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Section 1146(c) of the Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.9.     Retained Causes of Action. Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b)(3) of the Code, the Debtors or the Litigation Trust, as applicable, shall have the exclusive right, authority, and discretion to (without further order of the Court) determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw, or litigate to judgment any and all Causes of Action that the Debtors or Estates may hold against any Entity, whether arising before or after the Petition Date, including, without limitation, all Causes of Action listed on the Schedule of Retained Causes of Action, except the Litigation Trust shall have the exclusive rights described herein with respect to the Chapter 5 Causes of Action until such time as the Litigation Trust is terminated.  The Debtors and/or Litigation Trust reserve and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Cases.

Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order of the Court, the Debtors and/or Litigation Trust, as applicable, expressly reserve such Cause of Action (including any counterclaims) for later adjudication by the Court. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action (including counterclaims) by virtue of Confirmation of the Plan.

## ARTICLE VI.
## EXECUTORY CONTRACTS

6.1.     Assumption and Rejection of Executory Contracts and Unexpired Leases. On the Effective Date, except as otherwise provided in this Plan, all Executory Contracts or Unexpired Leases (i) not included in the Schedule of Assumed Contracts and Leases; (ii) included in the Schedule of Rejected Contracts and Leases, (iii) not previously assumed by the Debtors by Final Order of the Court, or (iv) not included in a motion to assume pending on the Confirmation Date, will be deemed rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Code.

Such automatic rejection shall be effective without the need for any further notice to or action, order, or approval of the Court, in accordance with the provisions and requirements of Sections 365 and 1123 of the Code, other than any Executory Contracts and/or Unexpired Leases that: (i) have been previously assumed, assumed and assigned, or rejected pursuant to a Court order; (ii) are the subject of a motion to assume, assume and assign, or reject such Executory Contract or Unexpired Leases (or of a filed objection with respect to the proposed assumption, assumption and assignment, or rejection of such Executory Contract or Unexpired Leases) that is pending on the Effective Date; or (iii) are a contract, release, or other agreement or document entered into in connection with the Plan or the sale of the Debtors' assets pursuant to the Sale Orders. Entry of the Confirmation Order shall constitute an order of the Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts and/or Unexpired Leases as set forth in this Plan or the Schedule of Assumed Contracts and Leases or Schedule of Rejected Contracts and Leases, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth in this Plan, assumptions or rejections of Executory Contracts and/or Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Any motions to assume or reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date by a Final Order. Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Contracts and Leases and Schedule of Rejected Contracts and Leases at any time through and including the Effective Date.

6.2.    Pass-Through. Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the operation of the Reorganized Debtor's businesses, but not otherwise addressed as a Claim or Interest or assumed under Article V of the Plan, including nonexclusive or exclusive patent, trademark, copyright, or other intellectual property licenses, and other contracts not assumable under section 365(c) of the Code, shall, in the absence of any other treatment under the Plan or Confirmation Order, be passed through the Cases for the benefit of the Reorganized Debtor, provided that, notwithstanding anything to the contrary herein, any Claim thereunder shall be treated in accordance with the distribution provisions of the Plan.

6.3.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. Unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Court within thirty (30) days after the later of (i) the date of entry of an order of the Court (including the Confirmation Order) approving such rejection, (ii) the effective date of such rejection, (iii) the Effective Date, or (iv) the date after the Effective Date that the applicable Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease affected. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Litigation Trust, the Estates, or their property without the need for any objection by the Litigation Trust or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as Unsecured Claims and shall be treated in accordance with § 4.9 of the Plan.

6.4. <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>. Any Cure Claims pursuant to an Executory Contract and Unexpired Lease, as reflected on the Schedule of Assumed Contracts and Leases, shall be satisfied, pursuant to section 365(b)(1) of the Code, by payment of the Cure Amounts in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

The Debtors shall provide a Schedule of Assumed Contracts and Leases as part of the Plan Supplement.

In the event of a dispute regarding (1) the Cure Amount, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

In any case, if the Court determines that the Allowed Cure Amount with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors or the Reorganized Debtor, as applicable, will have the right to remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

Any objection regarding (1) the Cure Amounts or (2) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Code) must have been Filed with the Court by the deadline set by the Bankruptcy Court for objecting to Confirmation of the Plan. To the extent any such objection is not determined by the Court at the Confirmation Hearing, such objection may be heard and determined at a subsequent hearing. Any counterparty to an Executory Contract or Unexpired Lease of the Debtors that does not timely object to such "adequate assurance of future performance" by such deadline will be deemed to have forever released and waived any such objection.

6.5. <u>Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.</u> Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, Debtors expressly reserve and do not waive any right to receive, or any continuing

obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

6.6.    Reservation of Rights. Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Contracts and Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability under such Executory Contract. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

6.7.    Nonoccurrence of Effective Date. In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to Section 365(d)(4) of the Code.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

7.1.    Timing and Calculation of Amounts to Be Distributed. Unless otherwise provided in the Plan and/or the Litigation Trust Agreement, on the Effective Date or as soon as reasonably practicable after the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim or as soon as reasonably practicable after such date), each holder of an Allowed Claim shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII of the Plan. Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

7.2. <u>Delivery of Distributions and Undeliverable or Unclaimed Distributions.</u>

7.2.1. <u>Record Date for Distribution.</u> As of the close of business on the Distribution Record Date, the register for each of the Classes of Claims as maintained by the Debtors shall be closed, and the Debtors, or their agents, shall not be required to make any further changes in the record holders of any of the Claims. The Debtors or Litigation Trust shall have no obligation to recognize any transfer of the Claims occurring on or after the Distribution Record Date. The Debtors shall be entitled to recognize and deal for all purposes under this Plan only with those record holders stated on the Debtors' transfer ledgers as of the close of business on the Distribution Record Date to the extent applicable.

7.2.2. <u>Delivery of Distributions in General.</u> Except as otherwise provided in this Plan, the Debtors or the Litigation Trust, as applicable, shall make distributions to holders of Allowed Claims as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Debtors or the Litigation Trust, as applicable; provided further, however, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that holder.

7.2.3. <u>Undeliverable Distributions and Unclaimed Property.</u> In the event that any distribution to any holder of Allowed Claims is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtors and/or the Litigation Trust, as applicable, has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under Section 347(b) of the Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Debtors and/or Litigation Trust automatically and without need for a further order by the Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder of Claims to such property shall be discharged and forever barred.

7.2.4. <u>De Minimis Distributions as to Allowed Class 9 Unsecured Claims.</u> In order to avoid the disproportionate expense and inconvenience associated with making a *de minimis* distribution to the Holder of an Allowed Unsecured Claim, the Debtors and/or the Litigation Trustee, as applicable, shall not be required to make, and shall be excused from making, any initial or interim distribution to such Holder that is in the amount of less than or equal to $15.00. At the time of any final distribution to the Holders of Allowed Class 9 Unsecured Claims, all such excused distributions to such Holder shall be aggregated and, if such aggregate amount is $15.01 or more, the Debtors and/or the Litigation Trustee, as applicable, shall make a final distribution to such Holder equal to such aggregated amount.

7.2.5. <u>Manner of Payment.</u> All distributions to the holders of Allowed Claims under the Plan shall be made by the Debtors and/or the Litigation Trustee, as applicable. At the option of the Debtors, any Cash payment to be made under this Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

---

7.3.　　　Compliance with Tax Requirements. In connection with the Plan, to the extent applicable, the Debtors and Litigation Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors and the Litigation Trust shall be authorized to take all actions necessary to comply with such withholding and reporting requirements.

7.4.　　　No Post-Petition Interest on Claims. Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, post-petition interest shall not accrue or be paid on any pre-petition Claims against the Debtors, and no holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

7.5.　　　Setoffs and Recoupment. Except as expressly provided in the Plan, the Debtors and the Litigation Trust may, pursuant to Section 553 of the Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Debtors and Litigation Trust may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (i) agreed in amount among the Debtors, Litigation Trust and/or holder of Allowed Claim or (ii) otherwise adjudicated by the Court or another court of competent jurisdiction; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, Litigation Trust or their successors of any and all claims, rights, and Causes of Action that the Debtors, Litigation Trust or their successors may possess against the applicable holder. In no event shall any holder of Claims against the Debtors be entitled to recoup any such Claim against any claim, right, or Cause of Action of the Debtors or the Litigation Trust, as applicable, unless such holder actually has performed such recoupment and provided notice of such recoupment in writing to the Debtors in accordance with § 13.8 of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

7.6.　　　Claims Paid or Payable by Third Parties.

7.6.1.　Claims Paid by Third Parties. The Debtors shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Litigation Trust. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or the Litigation Trust on account of such Claim, such holder shall, within fourteen (14) days of receipt of such payment, repay or return the distribution to the Debtors or Litigation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the Debtors or the Litigation Trust annualized interest at the Federal Judgment

Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

7.6.2. <u>Claims Payable by Third Parties.</u> No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Court.

7.6.3. <u>Applicability of Insurance Policies.</u> Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in this Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VIII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

8.1. <u>Claims Administration Responsibilities.</u> Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor or Litigation Trustee, as applicable, with respect to all Claims shall have the authority to: (i) file, withdraw, or litigate to judgment, objections to Claims; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (iii) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court. After the Effective Date, the Reorganized Debtor or Litigation Trustee, as applicable, shall have and retain any and all rights and defenses the Debtors had with respect to any Claims immediately prior to the Effective Date.

8.2. <u>Estimation of Claims.</u> Before or after the Effective Date, the Debtors may (but are not required to) at any time request that the Court estimate any Disputed Claim that is contingent or unliquidated pursuant to Section 502(c) of the Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at $0.00 unless otherwise ordered by the Court. In the event that the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

8.3.        Adjustment to Claims without Objection. Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtor without any further notice to or action, order, or approval of the Court.

8.4.        Time to File Objections to Claims. Except as otherwise specifically provided in the Plan, or as further ordered by the Court, any objections to Claims shall be filed on or before the later of (i) 180 days after the Effective Date, (ii) 30 days after the filing of a Claim for deficiency under § 4.3 of the Plan or (iii) such other period of limitation as may be specifically fixed by a Final Order of the Court for objecting to such claims.

8.5.        Disallowance of Claims. Except as otherwise specifically provided in the Plan, any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Code, or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Code, shall be deemed Disallowed pursuant to Section 502(d) of the Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as any objection to those Claims have been settled or a Court order with respect to such Claim has been entered. Except as provided in this Plan or otherwise agreed, any and all (i) scheduled contingent, unliquidated and/or disputed Claims for which a timely Proof of Claim was not filed by the applicable Claims Bar Date and (ii) Proofs of Claim filed after the applicable Claims Bar Date shall both be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Court, and holders of such Claims may not receive any distributions on account of such Claims unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.

8.6.        Amendments to Claims. On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Court or Reorganized Debtor or except as provided for under this Plan, and any such unauthorized new or amended Claim filed shall be deemed Disallowed in full and expunged without any further action; provided, however, that Governmental Units shall not be required to obtain authorization of the Court or Reorganized Debtor to file or amend a Proof of Claim prior to the Claims Bar Date applicable to Governmental Units pursuant to Section 502(b)(9) of the Code.

8.7.        No Distributions Pending Allowance. If an objection to a Claim or portion of a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.8.        Distributions After Allowance. To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. No later than ten (10) days after the date on which an order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtor or Litigation Trust, as applicable, shall provide to the Holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless otherwise required under the Plan or applicable bankruptcy law.

## ARTICLE IX.
## SETTLEMENT, DISCHARGE, AND RELEASE

9.1.    <u>Compromise and Settlement.</u> Pursuant to Section 1123 of the Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan (collectively, the "<u>Plan Settlement</u>"). The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and are fair, equitable, and within the range of reasonableness. The provisions of the Plan are mutually dependent and non-severable.

9.2.    <u>Incorporation of Compromise and Settlement with Zuza.</u> The *Order Granting Debtors' Amended Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Docket No. 443] and corresponding Zuza Settlement Agreement are expressly incorporated into this Plan.

9.3.   <u>Release of Liens.</u>

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, ON THE EFFECTIVE DATE AND CONCURRENTLY WITH THE APPLICABLE DISTRIBUTIONS MADE PURSUANT TO THE PLAN AND, IN THE CASE OF A SECURED CLAIM, SATISFACTION IN FULL OF THE PORTION OF THE SECURED CLAIM THAT IS ALLOWED AS OF THE EFFECTIVE DATE, EXCEPT FOR OTHER SECURED CLAIMS THAT THE DEBTORS ELECT TO REINSTATE IN ACCORDANCE WITH ARTICLE IV OF THIS PLAN, ALL MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS AGAINST ANY PROPERTY OF THE ESTATES SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL OF THE RIGHT, TITLE, AND INTEREST OF ANY HOLDER OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS SHALL REVERT TO THE DEBTORS AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS. ON AND AFTER THE EFFECTIVE DATE, ANY HOLDER OF SUCH SECURED CLAIM (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AT THE EXPENSE OF THE DEBTORS, SHALL BE AUTHORIZED AND DIRECTED TO RELEASE ANY COLLATERAL OR OTHER PROPERTY OF THE DEBTORS HELD BY SUCH HOLDER (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AND TO TAKE SUCH ACTIONS AS MAY BE REASONABLY REQUESTED BY THE DEBTORS TO EVIDENCE THE RELEASE OF SUCH LIEN, INCLUDING THE EXECUTION, DELIVERY, AND FILING OR RECORDING OF SUCH RELEASES. THE PRESENTATION OR FILING OF THE CONFIRMATION ORDER TO OR WITH ANY FEDERAL, STATE, PROVINCIAL,**

**LOCAL AGENCY OR DEPARTMENT SHALL CONSTITUTE GOOD AND SUFFICIENT EVIDENCE OF, BUT SHALL NOT BE REQUIRED TO EFFECT, THE TERMINATION OF SUCH LIENS.**

**WITHOUT LIMITING THE AUTOMATIC RELEASE PROVISIONS OF THE IMMEDIATELY PRECEDING PARAGRAPH: (i) EXCEPT AS OTHERWISE PROVIDED IN ARTICLE IV OF THE PLAN, NO OTHER DISTRIBUTION UNDER THIS PLAN SHALL BE MADE TO OR ON BEHALF OF ANY CLAIM HOLDER UNLESS AND UNTIL SUCH HOLDER EXECUTES AND DELIVERS TO THE DEBTORS OR THE DEBTORS SUCH RELEASE OF LIENS OR OTHERWISE TURNS OVER AND RELEASES SUCH CASH, PLEDGE, OR OTHER POSSESSORY LIENS; AND (ii) ANY SUCH HOLDER THAT FAILS TO EXECUTE AND DELIVER SUCH RELEASE OF LIENS WITHIN 180 DAYS OF THE EFFECTIVE DATE SHALL BE DEEMED TO HAVE NO CLAIM AGAINST THE DEBTORS OR THEIR ASSETS OR PROPERTY IN RESPECT OF SUCH CLAIM AND SHALL NOT PARTICIPATE IN ANY DISTRIBUTION UNDER THIS PLAN.**

> 9.4. <u>Releases by the Debtors</u>.

**PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES ARE EACH DEEMED RELEASED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTOR, AND THEIR ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, FROM ANY AND ALL CAUSES OF ACTION INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THAT THE DEBTORS, THE REORGANIZED DEBTOR, OR THE DEBTORS' ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, DEBTORS OR OTHER ENTITIES, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, THE CHAPTER 11 CASES, THE PLAN, ANY RESTRUCTURING TRANSACTION, THE PLAN SETTLEMENT, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE FOREGOING RELEASE DOES NOT RELEASE ANY OBLIGATION OF ANY PARTY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

---

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES DESCRIBED IN THIS SECTION 9.4 BY THE DEBTORS, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE ITS FINDING THAT EACH RELEASE DESCRIBED IN THIS SECTION 9.4 IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES AND A GOOD FAITH SETTLEMENT AND COMPROMISE OF SUCH CLAIMS; (2) FAIR, EQUITABLE, AND REASONABLE; (3) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (4) A BAR TO THE DEBTOR OR REORGANIZED DEBTOR ASSERTING ANY CLAIM, CAUSE OF ACTION, OR LIABILITY RELATED THERETO, OF ANY KIND WHATSOEVER, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.**

9.5.    Exculpation.

**THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST, FOR ANY ACT, EVENT, OR OMISSION FROM THE PETITION DATE TO THE EFFECTIVE DATE IN CONNECTION WITH OR ARISING OUT OF THE CASE, THE CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN OR THE ASSETS AND PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN (INCLUDING UNCLAIMED PROPERTY UNDER THE PLAN), UNLESS SUCH ENTITY'S ACTION IS DETERMINED AS (i) BAD FAITH; (ii) ACTUAL FRAUD; (iii) WILLFUL MISCONDUCT; OR (iv) GROSS NEGLIGENCE, IN EACH CASE BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. EACH ENTITY MAY REASONABLY RELY UPON THE OPINIONS OF ITS COUNSEL, CERTIFIED PUBLIC ACCOUNTANTS, AND OTHER EXPERTS OR PROFESSIONALS. FOR THE AVOIDANCE OF DOUBT, THE EXCULPATION IN THIS § 9.5 SHALL NOT APPLY TO ANY ACTIONS TAKEN PRIOR TO THE PETITION DATE. THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING THE PARTIES EXCULPATED IN THE PLAN FROM LIABILITY. NOTHING IN THIS SECTION SHALL BE DEEMED TO RELEASE OR EXCULPATE ANY PARTY FROM ANY CAUSES OF ACTION.**

9.6.    Injunction.

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR ANY OTHER ORDER ENTERED PREVIOUSLY BY THE BANKRUPTCY COURT WITH RESPECT TO A COMPROMISE, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS ARE PERMANENTLY ENJOINED, ON AND AFTER CONFIRMATION DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTEGRATED AFTER THE EFFECTIVE DATE, FROM (i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, LITIGATION TRUST OR LITIGATION TRUST ASSETS WITH RESPECT TO**

**ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS; (ii) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, LITIGATION TRUST OR LITIGATION TRUST ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS; (iii) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LITIGATION TRUST, OR THEIR ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS; AND (iv) ASSERTING ANY RIGHT OF SETOFF, RECOUPMENT OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS, THE LITIGATION TRUST, OR THEIR ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS. THE FOREGOING INJUNCTION WILL EXTEND TO SUCCESSORS OF THE DEBTORS AND LITIGATION TRUST AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN THE PROPERTY.**

9.7.   <u>Protections Against Discriminatory Treatment.</u>

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, have been insolvent before the commencement of the Cases (or during the Cases but before the Debtors are granted or denied a discharge), or have not paid a debt that is dischargeable in the Cases.

9.8.   <u>Document Retention</u>.

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with its standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor, subject to the requirements of this Plan and the Litigation Trust Agreement, as applicable.

9.9.   <u>Reimbursement or Contribution.</u> If the Court disallows a Claim for reimbursement or contribution of an Entity pursuant to Section 502(e)(1)(B) of the Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding Section 502(j) of the Code unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the relevant holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

9.10. Section 524(e). Regardless of anything to the contrary in this Plan nothing in the release provisions in this Plan shall operate as a third-party discharge or affect the liability of any non-debtor party in contravention of 11 U.S.C. § 524(e).

## ARTICLE X.
### CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

10.1. Conditions Precedent to Confirmation. The following are conditions precedent to confirmation of the Plan that shall be satisfied or waived in writing in accordance with § 10.3 of the Plan:

10.1.1. The Court shall have approved a Disclosure Statement with respect to the Plan in form and substance acceptable to the Debtors; and

10.1.2. the Confirmation Order, Plan, Litigation Trust Agreement, and Plan Documents shall be in form and substance acceptable to the Debtors.

10.2. Conditions Precedent to Effectiveness. The following are conditions precedent to the occurrence of the "Effective Date," which shall be the date upon which each of the following shall be satisfied or waived in writing in accordance with § 10.3 of the Plan:

10.2.1. The Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors; and the Confirmation Order shall be a Final Order and shall not (i) have been reversed or vacated or (ii) be subject to a then-effective stay;

10.2.2. The Litigation Trust Agreement and related documents shall have been in place, effective, and filed where required; and

10.2.3. The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan.

10.3. Waiver of Conditions. The conditions to Confirmation and the Effective Date set forth in this Article X may be waived only with the prior written consent of the Debtors without notice, leave, or order of the Court or any formal action other than proceedings to confirm or consummate the Plan.

10.4. Effect of Failure of Conditions. If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by the Debtors, Claims, or Interests; (ii) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity.

## ARTICLE XI.
## RETENTION OF COURT JURISDICTION

11.1.      Retention of Court Jurisdiction. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain jurisdiction over all matters arising in, arising under, or related to, the Debtors' Cases including matters concerning and related to, among other things, the following purposes:

11.1.1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

11.1.2. Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Code or Plan;

11.1.3. Resolve any matters related to: (i) the assumption, assignment, or rejection of any executory contract or unexpired lease to which either Debtor is party or with respect to which either Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure obligations pursuant to Section 365 of the Code, or any other matter related to such Executory Contract or Unexpired Lease; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

11.1.4. Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and Litigation Trust Agreement;

11.1.5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

11.1.6. Adjudicate, decide, or resolve any and all matters related to Causes of Action;

11.1.7. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all agreements or documents created in connection with the Plan or Disclosure Statement;

11.1.8. Enter and enforce any order for the sale of property pursuant to Sections 363 or 1123 of the Code;

11.1.9. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

11.1.10.   Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.1.11.   Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases and injunctions, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

11.1.12.   Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions to insiders, if any;

11.1.13.   Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.1.14.   Determine any other matters that may arise in connection with or relate to the Plan, Disclosure Statement, Confirmation Order or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or Disclosure Statement;

11.1.15.   Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated in the Plan;

11.1.16.   Consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Court order, including the Confirmation Order;

11.1.17.   Determine requests for the payment of Claims entitled to priority pursuant to Section 507 of the Code;

11.1.18.   Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

11.1.19.   Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Code;

11.1.20.   Enforce all orders previously entered by the Court;

11.1.21.   Hear any other matter not inconsistent with the Code;

11.1.22.   Enter an order concluding or closing the Cases; and

11.1.23.   Enforce the injunction and discharge provisions set forth in the Plan.

## ARTICLE XII.
## MODIFICATION AND REVOCATION OF THE PLAN

12.1.      Immediate Binding Effect. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (as may be amended or modified), any supplement to the Plan, or the Confirmation Order shall be immediately

effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims against or Interests in the Debtors (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan) all entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each entity acquiring property under the Plan or Confirmation Order, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

12.2. <u>Modification of the Plan.</u> Subject to the limitations contained in this Plan, the Debtors reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XII.

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation of the Plan and prior to the Confirmation Date are approved pursuant to Section 1127(a) of the Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

12.3. <u>Revocation or Withdrawal of the Plan.</u> The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date or Effective Date and to file subsequent plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

13.1. <u>Payment of Statutory Fees.</u> All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation Hearing, shall be paid on or before the Effective Date. After the Effective Date, the Reorganized Debtor shall pay, including any outstanding U.S. Trustee fees, prior to the closing of the Case, in accordance with the Code and Bankruptcy Rules, all fees payable pursuant to Section 1930 of title 28 of the United States Code, which accrue after the Effective Date through and including the closing of any of the Case.

The Reorganized Debtor shall file timely quarterly operating reports until this case is closed, dismissed, or converted.

13.2.   <u>Governing Law.</u> Except to the extent that the Code, the Bankruptcy Rules or other federal law is applicable or to the extent a schedule or exhibit to this Plan or instrument agreement or other document executed under the Plan provides otherwise, this Plan, the rights, duties and obligations arising under this Plan, and any claim or controversy directly or indirectly based upon or arising out of this Plan or the transactions contemplated by this Plan (whether based on contract, tort, or any other theory), including all matters of construction, validity and performance, shall be governed by and interpreted, construed, and determined in accordance with, the internal laws of the State of Texas (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).

13.3.   <u>Corporate Action.</u> Prior to, on, and after the Effective Date, all matters provided for under the Plan that otherwise would require approval of the equity holders, members, managers or other governing Persons of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, and after the Effective Date pursuant to the applicable general corporation law of the jurisdiction in which the Debtors are organized without any requirement of further action by the shareholders or directors of the Debtors.

13.4.   <u>Severability of Plan Provisions.</u> If, prior to Confirmation, any term or provision of this Plan is held by the Court or other court of competent jurisdiction to be invalid, void, or unenforceable, the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.5.   <u>Successors and Assigns.</u> The Plan shall be binding on, and shall inure to the benefit of, the Debtors and their respective successors and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

13.6.   <u>Reservation of Rights.</u> Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Court shall enter the Confirmation Order and the Effective Date shall have occurred. Neither the filing of this Plan, nor any statement or provision contained in this Plan, nor the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors prior to the Effective Date. If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Debtors are and shall be reserved in full. Any concessions or settlements reflected in this Plan, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Case shall be bound or deemed prejudiced by any such concession or settlement.

13.7.    Further Assurances. The Debtors are authorized to execute, deliver, file, or record such contracts, agreements, instruments, releases and other documents and take or cause to be taken such action as may be necessary or appropriate to effectuate, implement and further evidence the terms, provisions and intent of this Plan and to consummate the transactions and transfers contemplated by the Plan.

13.8.    Notice and Service of Documents. With the exception of the Debtors and the U.S. Trustee, as of the Effective Date, all parties having filed entries or notices of appearance or requests for service in the Case shall no longer be provided with notice. Any Person desiring to remain on the Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Debtors within thirty (30) days of the Effective Date. Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. Post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee's Office, counsel to the Debtors, and all persons on the Bankruptcy Rule 2002 service list.

All notices, requests, and demands required or permitted to be provided to the Debtors under the Plan shall be in writing and shall be deemed to have been duly given or made (i) when actually delivered (a) by certified mail, return receipt requested, (b) by hand delivery or (c) by U.S. mail, postage prepaid or (ii) in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

Joshua N. Eppich
Bonds Ellis Eppich Schafer Jones LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

13.9.    Conflicts. To the extent any provision of the Disclosure Statement or any instrument, document, or agreement executed in connection with the Plan or Confirmation Order (or any exhibits, schedules, appendices, supplements, or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.

13.10.    Plan Supplement. Not later than ten (10) days prior to the Confirmation Hearing, the Debtors shall file with the Court any supplement to the Plan (the "Plan Supplement"), which shall include the Exhibits identified in this Plan and any other such agreements and documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.11.    Determination of Tax Liability. The Debtors are authorized, but not required, to request an expedited determination under Section 505(b) of the Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

---

13.12.    Post-Effective Date Fees and Expenses. From and after the Effective Date, the Litigation Trust shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable professional fees and expenses incurred by the Reorganized Debtor or Litigation Trust, and any professionals retained by the Reorganized Debtor or Litigation Trust, related to the Consummation and to the implementation of this Plan.

13.13.    Entire Agreement. This Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, which have all become merged and integrated into this Plan.

13.14.    Closing of the Cases. At such time as it selects, the Reorganized Debtor may seek a final decree pursuant to Section 350 of the Code formally closing the Cases.

13.15.    Change of Control Provisions. Any acceleration, vesting or similar change of control rights under any employment, benefit or other arrangements triggered by the consummation of this Plan shall be waived or otherwise cancelled under this Plan.

13.16.    Votes Solicited in Good Faith. Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Code, and pursuant to Section 1125(e) of the Code, the Debtors and their affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Litigation Trust will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

13.17.    Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Code.

13.18.    Default. No default in the performance of this Plan shall automatically result in the termination of the Plan or constitute a revocation of the Confirmation Order. Unless otherwise specified in the Plan, if any party in interest believes that the Debtors/Reorganized Debtor are in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtors/Reorganized Debtor and counsel to the Debtors prior to filing a motion with the Court regarding the alleged noncompliance or otherwise seeking Court enforcement of the terms of this Plan.

13.19.    No Admission Against Interest. Neither the filing of this Plan, the Disclosure Statement, nor any statement contained in the Plan or Disclosure Statement, is or shall be deemed an admission against interest. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained in the Plan or Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Court involving the Debtors or any of their respective former or present officers, directors, or Interest Holder.

13.20.    <u>Post-Confirmation Notice.</u> Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon the U.S. Trustee, counsel for the Debtors, counsel to the Litigation Trust, and all persons on the Bankruptcy Rule 2002 service list. As of the Effective Date, any Person desiring to remain on the Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Debtors within thirty (30) days of the Effective Date. Persons who do not file a request for continued service shall be removed from the Bankruptcy Rule 2002 service list upon the Effective Date and shall be served with pleadings only where they have a direct pecuniary interest in the relief sought by the pleading.

Dated: August 5, 2026

Respectfully submitted,

**BALKAN EXPRESS, LLC**

By: */s/ Zlatan Karic*
Its: President

**BALKAN LOGISTICS, LLC**

By: */s/ Zlatan Karic*
Its: President