CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 18, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **BALKAN EXPRESS, LLC, *et al.*** | § | **Case No. 25-41544** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |
| | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
**(I) APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS AND**
**(II) CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF**
**REORGANIZATION FOR BALKAN EXPRESS, LLC AND ITS AFFILIATED DEBTOR**

---

On September 17, 2026, the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "**Court**") conducted a hearing (the "**Confirmation Hearing**") to consider confirmation of the *Third Amended Joint Chapter 11 Plan of Reorganization for Balkan*

---

[1] The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Balkan Express, LLC (3974), and Balkan Logistics, LLC (8202). The Debtors' mailing address is 2560 E Long Ave, Fort Worth, Texas 76137.

*Express, LLC and its Affiliated Debtor* [Docket No. 482] (as may be amended or modified, the "**Plan**,")[2] filed by the above-captioned debtors and debtors-in-possession in the above-captioned case (the "**Debtors**"), and approval of the *Disclosure Statement in Support of Third Amended Joint Chapter 11 Plan of Reorganization of Balkan Express, LLC and Its Affiliated Debtor* [Docket No. 483] (the "**Disclosure Statement**") on a final basis. The Plan and Disclosure Statement are attached to this Confirmation Order as **Exhibit A** and **Exhibit B** respectively, and any modifications referred to in this Confirmation Order shall be and are hereby incorporated in the Plan and Disclosure Statement as if fully set forth therein. All subsequent references to "Plan" in this Order are the Plan as modified by this Confirmation Order. The Court has jurisdiction over the Debtors' bankruptcy cases pursuant to 28 U.S.C. §§ 157 and 1334. The Debtors are each an eligible debtor under Section 109 of the Code. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O) over which the Court has statutory and constitutional authority to enter final orders and judgments with respect thereto. Approval of the Disclosure Statement on a final basis is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) over which the Court has statutory and constitutional authority to enter final orders and judgments with respect thereto. Based on the evidence presented or considered at the Confirmation Hearing, the *Declaration of Zlatan Karic in Support of (i) Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization for Balkan Express, LLC and its Affiliated Debtor and (ii) Final Approval of Disclosure Statement* [Docket No. 512] (the "**Karic Declaration**"), the *Certification of Tabulation of Ballots with Respect to Voting on the Third Amended Joint Chapter 11 Plan of Reorganization*

[2] Capitalized terms used but not otherwise defined in this Confirmation Order shall have the meaning given to them in the Plan.

*of Balkan Express, LLC and Its Affiliated Debtor* [Docket No. 511] (the "**Ballot Certification**"), the exhibits entered into evidence at the Confirmation Hearing, the arguments and representations of counsel at the Confirmation Hearing, the pleadings filed in support of confirmation of the Plan and approval of the Disclosure Statement on a final basis, and the entire record in the above-captioned chapter 11 cases (the "**Cases**"), the Court has determined that the Plan, as modified herein, and Disclosure Statement satisfy the applicable provisions of the Code, and the Plan should therefore be confirmed and the Disclosure Statement should be approved on a final basis, as set forth in this Confirmation Order.

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

A. The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Bankruptcy Rules 7052 and 9014. To the extent any of the said findings of fact constitute conclusions of law, or vice versa, they are adopted as such.

B. The Disclosure Statement satisfies all of the requirements set forth in Section 1125 of the Code and provides "adequate information," as that term is used and defined in Section 1125 of the Code, and is approved on a final basis.

C. The Plan complies with each applicable provision of the Code, and therefore satisfies Section 1129(a)(1) of the Code.

D. The plan proponent, the Debtors, has complied with the Code, and therefore Section 1129(a)(2) of the Code is satisfied.

E. The Plan, the Disclosure Statement, the *Order Granting Debtors' Motion for Entry of an Order for (I) Conditional Approval of a Disclosure Statement; (II) Approval of Solicitation*

*Procedures for Forms of Ballots and Notices; and (III) Scheduling a Joint Hearing to Consider Final Approval of the Adequacy of the Disclosure Statement and Confirmation of a Proposed Plan* [Docket No. 488] (the "**Solicitation Procedures Order**"), the ballot for voting on the Plan, the *Notice of Order Granting Debtors' Motion for Entry of an Order for (i) Conditional Approval of a Disclosure Statement; (ii) Approval of Solicitation Procedures for Forms of Ballots and Notices; and (iii) Scheduling a Joint Hearing to Consider Final Approval of the Adequacy of the Disclosure Statement and Confirmation of a Proposed Plan* [Docket No. 488-2], the Plan Supplement [Docket No. 500] (including any supplements and amendments to the Plan Supplement), the Solicitation Materials, and the other materials distributed by the Debtors in connection with Confirmation of the Plan and final approval of the Disclosure Statement (collectively, the "**Confirmation Materials**") were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "**Local Rules**"), and the procedures set forth in the Solicitation Procedures Order. Notice of the Confirmation Hearing was appropriate and satisfactory under the Code and based upon the circumstances of the Cases. The transmittal and service of the Confirmation Materials complied with the Solicitation Procedures Order, were appropriate and satisfactory based upon the circumstances of the Cases, were conducted in good faith, and were in compliance with the provisions of the Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations. Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

F. Pursuant to Section 1127 of the Code, any modifications to the Plan since the commencement of Solicitation described or set forth in this Confirmation Order do not materially

or adversely affect or change the treatment of any other Claims or Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under Section 1125 of the Code or the re-solicitation of votes under Section 1126 of the Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

G. The Debtors have proposed the Plan and all exhibits and schedules thereto, including, without limitation, the Plan Supplement, and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing in good faith and not by any means forbidden by law, thereby satisfying Section 1129 of the Code. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Cases and the formulation of the Plan. The Plan, and all transactions contemplated under the Plan, were formulated, developed, negotiated, and proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates (the "**Estates**"), and they were the product of extensive negotiations conducted at arm's length and in good faith among the Debtors, its creditors, and the other interested parties to the Cases. The Debtors acted at all times in good faith, professionally, and ethically in seeking to maximize value in these Cases. Further, the Plan's classification, indemnification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with Sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Code, and are each necessary for the Debtors to consummate the value-maximizing transactions set forth in the Plan and Plan Supplement. Accordingly, the requirements of Section 1129(a)(3) of the Code are satisfied.

H. As required by Section 1122(a) of the Code, the Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Thus, the Plan satisfies Sections 1122 and 1123(a)(1) of the Code.

I. The Plan satisfies Section 1123(a)(4) of the Code and does not "discriminate unfairly" against any Holders of Claims or Interests. The treatment of each Class of Claims and Interests is proper, and the Debtors have a valid rationale for the Plan's classification scheme and the treatment provided for different Classes. The Plan is also "fair and equitable" with respect to each Class of Claims and Interests.

J. The Plan satisfies Section 1129(a)(5) of the Code. The Debtors have disclosed the identity and affiliations of any individual proposed to serve, after the confirmation of the Plan, as directors, officers, or voting trustees of the Debtors. The appointment of such individuals is consistent with the interests of creditors and equity security holders and with public policy. Debtors have also disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such insider.

K. There is no regulatory commission having jurisdiction after confirmation of the Plan over the rates of the Debtors and no rate change provided for in the Plan requiring approval of any such commission. Therefore, Section 1129(a)(6) of the Code is not applicable.

L. The Plan satisfies Section 1129(a)(7) of the Code. The Court finds that the exhibits and evidence proffered or adduced at the Confirmation Hearing: (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each Holder of an Impaired Claim or Interest has accepted the Plan or will receive or retain under the Plan, on account

of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Code on such date.

M. Classes 1, 2 and 12 are Unimpaired by the Plan and, accordingly, Holders of Claims in such Classes are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Code. Classes 3, 4, 5, 6, 8, 9, 10 and 11 have voted to accept the Plan, as established by the Ballot Certification and Class 7 is Impaired, but did not vote on the Plan and therefore is designated as having voted to accept the Plan (Classes 3, 4, 5, 6, 7, 8, 9, 10 and 11, collectively, the "**Impaired Consenting Classes**"). All Classes have either voted to accept the Plan or are designated as having accepted the Plan. Therefore, the Plan satisfies the requirements of Sections 1129(a)(8) and 1129(a)(10).

N. Even if the Court finds that Class 7 is not designated as having voted to accept the Plan, such that the requirements of Section 1129(a)(8) are not met, the Court finds that, the Plan is still confirmable because it satisfies Section 1129(a)(10) of the Code since the Impaired Consenting Classes voted to accept the Plan and, with respect to Class 7, Section 1129(b) of the Code is satisfied. Notwithstanding the fact that Class 7 either did not approve or is deemed to reject the Plan, the Plan may be confirmed pursuant to Section 1129(b) of the Code. The evidence in support of the Plan that was proffered, admitted, or adduced at or prior to the Confirmation Hearing is reasonable, persuasive, credible, and accurate, has not been controverted by other evidence, and establishes that the Plan satisfies the requirements of Section 1129(b) of the Code. *First*, all of the requirements of Section 1129(a) of the Code other than Section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to Class 7. The Plan has been proposed in good faith, is reasonable, and meets the requirements that Holders of Allowed Secured Claims in Class 7 realize

the indubitable equivalent of their Claims. *Third*, the Plan does not discriminate unfairly with respect to such Class because similarly situated Holders of Claims and Interests will receive substantially similar treatment on account of their Claims and Interests irrespective of Class. Accordingly, the Plan satisfies the requirements of Section 1129(b)(1) and (2) of the Code. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

O. The Plan provides for payment of Allowed Administrative Expense Claims, Allowed Secured Tax Claims and Allowed Priority Claims in a manner consistent with the requirements of Section 1129(a)(9) of the Code.

P. Evidence proffered or adduced by the Debtors at the Confirmation Hearing with respect to feasibility is persuasive and credible, and establishes that Confirmation of the Plan, is not likely to be followed by a Chapter 7 filing, a motion to convert, or the need for further financial reorganization of the Debtors. Accordingly, the Court finds that the Debtors have satisfied the requirements of Section 1129(a)(11) of the Code.

Q. Section 13.1 of the Plan provides that all fees payable pursuant to 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, shall be paid on or before the Effective Date and that until the Cases are closed, all fees incurred under 28 U.S.C. § 1930(a)(6) will be paid by the Reorganized Debtor. Accordingly, Section 1129(a)(12) of the Code is satisfied.

R. The Debtors do not have any retiree benefits within the meaning of Section 1114 of the Code. Thus, the requirements of Section 1129(a)(13) of the Code are not applicable.

S. The Debtors are not required by judicial or administrative order, or by statute, to pay a domestic support obligation. Thus, the requirements of Section 1129(a)(14) of the Code are not applicable.

T. Neither of the Debtors is an individual. Accordingly, the provisions of Section 1129(a)(15) of the Code are not applicable.

U. Because the Plan satisfies all requirements of Section 1129(a) of the Code, Section 1129(b) of the Code does not apply.

V. The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act. Therefore, the Plan complies with Section 1129(d) of the Code.

W. The Court finds that, pursuant to Section 1123(b) of the Code, Bankruptcy Rule 3016, and applicable authority, the release, exculpation, and injunction provisions of the Plan and as disclosed in the Disclosure Statement are (i) essential and integral provisions of the Plan, (ii) warranted, necessary, and appropriate, (iii) properly included in the Plan as a reasonable exercise of the Debtors' business judgment, and (iv) supported by sufficient consent and consideration under the circumstances of the Plan and the Cases as a whole. Proper, timely, adequate, and sufficient notice of the release, exculpation, and injunction provisions of the Plan, including those contained in Article IX of the Plan, have been provided in accordance with the Code, the Bankruptcy Rules, the orders of this Court, and due process. Interested parties have had a sufficient and adequate opportunity to object to such provisions and to be heard as to their objections, and no further notice of such provisions is required for entry of this Confirmation Order. Each of the release, exculpation, and injunction provisions set forth in the Plan and this Confirmation Order and as disclosed in the Disclosure Statement is: (a) within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) an integral element of the Plan and the global compromise reached among the Debtors and their various stakeholders; (c) conferring material benefit on, and is in the best interests of, the Debtors, their Estates, and Holders of Claims and

Interests; (d) important to the objective of the Plan to resolve all Claims and Interests; (e) appropriately tailored to the facts and circumstances of the Cases, and (f) consistent with Sections 105, 1123, 1129, 1141 of the Code, other applicable provisions of the Code, and any other applicable laws.

X. To permit the Debtors and Litigation Trustee to commence their duties as quickly as practicable, including to promote prompt distributions under the Plan for the benefit of creditors and equity Holders, and because a significant number of implementation activities are capable of being undertaken in short order, good cause exists to support the waiver of the stay imposed by Bankruptcy Rule 3020(e).

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

**A. <u>Confirmation of the Plan</u>**

1. The Plan is **CONFIRMED** in its entirety under Section 1129 of the Code, and all of the terms and conditions contained in the Plan are **APPROVED**. The Debtors are authorized to implement the Plan in accordance with its terms and conditions as set forth herein.

2. The Disclosure Statement is **APPROVED** on a final basis as providing "adequate information," as that term is used and defined in Section 1125 of the Code.

3. The Plan (including the Plan Supplement as filed with the Court, as may be amended through and including the Effective Date) and such other documents and instruments that may be necessary or appropriate to effectuate the transactions contemplated thereunder and in the Plan are **APPROVED**. The Debtors are authorized to make non-material modifications to the Plan Supplement through and including the Effective Date in accordance with Section 1127 of the Code without further order of the Court to the extent necessary to make any changes required or appropriate to implement, effectuate, and consummate the Plan, the Plan Supplement, the terms of

this Confirmation Order, and the transactions respectively contemplated thereunder. The Plan and the Plan Supplement have been proposed and negotiated in good faith at arm's length and shall, on and after the Effective Date, constitute legal, valid, binding, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms. On and after the Effective Date, the terms and conditions of the Plan and the Plan Supplement shall be effective and enforceable as provided for therein.

4. Notwithstanding anything to the contrary in the Plan or Confirmation Order, including Article X of the Plan, the Effective Date of the Plan may occur on any business day following entry of this Confirmation Order by the Court and, upon such Effective Date, the Debtors are authorized, but not directed, to implement, effectuate, and consummate the Plan in accordance with the terms thereof and this Confirmation Order.

5. All objections to Confirmation of the Plan not withdrawn or otherwise resolved at or before the Confirmation Hearing are expressly overruled or are otherwise reflected in this Confirmation Order.

6. All objections to approval of the Disclosure Statement on a final basis not withdrawn or otherwise resolved at or before the Confirmation Hearing are expressly overruled or are otherwise reflected in this Confirmation Order.

**B. Settlement of Claims and Controversies**

7. Pursuant to Section 1123(b)(3)(A) of the Code and Bankruptcy Rule 9019, and in consideration for the Plan distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies relating to the rights that a Holder of a Claim or Interest may have with respect to such Claim or Interest or any Plan distribution on account thereof. The entry of this Confirmation Order shall

constitute the Court's approval, as of the Effective Date, of each of the compromises and settlements embodied in the Plan, including (a) the treatment of the Secured Claim of PNC; (b) the treatment of the Secured Claim of Huntington; (c) the treatment of the Secured Claim of Compass; and (d) the treatment of all other Claims and Interests under the Plan, and the Court's finding that all such compromises or settlements: (i) are in the best interest of the Debtors, the Estates, the Litigation Trust, their Creditors, their properties, and their stakeholders; (ii) are fair, equitable, and within the range of reasonableness; and (iii) satisfy the requirements of Bankruptcy Rule 9019 and Section 1123(b)(3)(A) of the Code. The provisions of the Plan, including, without limitation, the Plan's release, injunction, exculpation, and compromise provisions, are mutually dependent.

## C. Effects of Confirmation of the Plan

8. The provisions of the Plan and this Confirmation Order are binding on the Debtors, the Litigation Trust, each Holder of a Claim against or Interest in the Debtors, each non-Debtor counterparty to an Executory Contract or Unexpired Lease with the Debtors, any interested party in the Cases, and any other Person, and each of the foregoing's respective agents, heirs, successors, and assigns, regardless of whether such Person filed a proof of claim or voted to accept the Plan.

9. Upon entry of this Confirmation Order, the Debtors and their directors, officers, agents, attorneys, and professionals are authorized and directed to effect any and all transactions contemplated or required by the Plan and Plan Supplement, including, without limitation, establishing the Litigation Trust. On and after the Effective Date, the Litigation Trust and/or the Litigation Trustee are authorized and directed to take all necessary and appropriate steps and corporate actions to implement the terms of the Plan and the Plan Supplement, regardless of whether such actions are specifically referred to in the Plan or in the Plan Supplement without the

need for further shareholder, member, director, officer, or any other corporate approvals, or further order of the Court.

10. Except as otherwise provided by the Plan or this Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction and release of all Claims against or Interests in the Debtors or property of the Estates.

11. Except as otherwise provided in the Plan, this Confirmation Order, or separate Final Order, any and all injunctions or automatic stays provided for in the Cases under Sections 105 and 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date.

12. Except as otherwise provided in Section 1141(d)(3) of the Code, and subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan shall bind every Holder of a Claim against or Interest in the Debtors and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under the Plan and whether such Holder has accepted the Plan.

**D. <u>Vesting of Assets Free and Clear of Liens and Claims</u>**

13. Except as may be otherwise provided in the Plan, on the Effective Date, all property in the Estates, and all other Assets, all Retained Causes of Action, except for the Chapter 5 Causes of Action, and any property acquired by the Debtors pursuant to the Plan, shall vest in the Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances except to the extent set forth in the Plan. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may use, acquire, or dispose of property and compromise or

settle any Claims, Interests, or Retained Causes of Action, except for the Chapter 5 Causes of Action, without supervision or approval by the Court and free of any restrictions of the Code or Bankruptcy Rules.

14. Except as may be otherwise provided in the Plan, on the Effective Date, all Chapter 5 Causes of Action shall vest in the Litigation Trust free and clear of all Liens, Claims, charges, or other encumbrances except to the extent set forth in the Plan or Litigation Trust Agreement. On and after the Effective Date, except as otherwise provided in the Plan and the Litigation Trust, the Litigation Trustee may operate the Litigation Trust and may use, acquire, or dispose of property and compromise or settle any Chapter 5 Causes of Action without supervision or approval by the Court and free of any restrictions of the Code or Bankruptcy Rules.

**E. <u>Continued Existence</u>**

15. Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date, except that the Litigation Trust Assets, consisting of any Chapter 5 Causes of Action, will be transferred and assigned to the Litigation Trust in accordance with applicable state law and pursuant to the Litigation Trust Agreement without further order of this Court. On or after the Effective Date, each of the Debtors or the Litigation Trust, as the case may be, is authorized pursuant to Article V of the Plan to take any such action as may be necessary or appropriate to give effect to any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and Litigation Trust Agreement.

**F. <u>Implementation of the Plan</u>**

16. Pursuant to Section 1123(a)(5)(D) of the Code, on, or, unless specifically provided otherwise in this Confirmation Order, prior to the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors or Litigation Trust, as applicable, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan (including the Plan Supplement) and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and the Plan Supplement; and (c) all other actions that the Debtors or Litigation Trust, as applicable, determines to be necessary or appropriate and that are not inconsistent with the Plan.

17. All such actions taken or caused to be taken consistent with the terms of this Confirmation Order and the Plan shall be deemed to have been authorized and approved by the Court without further approval, act, or action under any applicable law, order, rule, or regulation.

18. On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (1) appointment of the Litigation Trustee for the Litigation Trust as named in the Plan, Plan Supplement, or Litigation Trust Agreement; (2) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (3) payment of the Plan distributions; (4) limited relief from the automatic stay to all Class 10 Covered Personal Injury Claims to pursue proceeds, if any, under the Insurance Policies; and (5) all other acts or actions contemplated or reasonably necessary or appropriate to

promptly consummate the Litigation Trust Agreement contemplated by the Plan (whether to occur before, on, or after the Effective Date).

19. All matters provided for in the Plan involving the Debtors or the Litigation Trust, and any action required by the Debtors or the Litigation Trust, as applicable, in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Litigation Trustee of the Litigation Trust, as applicable. As applicable, on or prior to the Effective Date, the appropriate officers of the Debtors or the Litigation Trustee of the Litigation Trust, shall be authorized and directed to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtor or Litigation Trust, as applicable, including the Litigation Trust Agreement and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by Article V of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

20. On the Effective Date, except to the extent otherwise provided in the Plan (including the Plan Supplement), all notes, instruments, certificates, and other documents evidencing Claims or Interests shall be cancelled, and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, and of no force or effect. Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.

**G. <u>Release of Liens</u>**

21. Except as otherwise provided in the Plan, or any contract, instrument, release or agreement, or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor or Litigation Trust and its successors and assigns, as applicable. On or after the Effective Date, any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release to the Debtors any collateral or other property of the Debtors (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably required or requested by the Reorganized Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

**H. <u>Provisions Related to Executory Contracts</u>**

22. In accordance with Article VI of the Plan and except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, all Executory Contracts or Unexpired Leases included in the Schedule of Assumed Contracts and Leases, subject to a motion to assume that is pending on the Confirmation Date, or subject to Article V of the Plan, will be deemed assumed in accordance with the provisions and requirements of Sections 365 and 1123 of the Code.

23. In accordance with Article VI of the Plan and except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, all Executory Contracts or Unexpired Leases not previously assumed or rejected, included in the Schedule of Rejected Contracts and Leases, subject to a motion to reject that is pending on the Confirmation Date, or otherwise not included in either the Schedule of Assumed Contracts and Leases or the Schedule of Rejected Contracts and Leases, will be deemed rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Code.

24. The assumption of each of the Executory Contracts and Unexpired Leases identified on the Schedule of Assumed Contracts and Leases is effective pursuant to Sections 365(a) and 1123 of the Code as of the Effective Date. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by order of the Court shall vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms.

25. Each Executory Contract and Unexpired Lease rejected pursuant to the Plan shall be deemed rejected by the Court as of the Effective Date, unless otherwise indicated in this Confirmation Order or on the Schedule of Rejected Contracts and Leases.

26. With respect to each Executory Contract or Unexpired Lease in the Schedule of Assumed Contracts and Leases to be assumed by the Debtors, unless otherwise determined by the Court pursuant to a Final Order or agreed to by the parties thereto, the dollar amount required to cure any defaults of the Debtors existing as of the Effective Date shall be the amount listed in the Schedule of Assumed Contracts and Leases, which is attached as Exhibit 1 to the Plan Supplement.

27. Unless otherwise provided in the Plan, this Confirmation Order, or by separate order of the Court, each Executory Contract and Unexpired Lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made

directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is separately listed in the Schedule of Assumed Contracts and Leases.

28. Any term of any policy, contract, or other obligation applicable to the Debtors or Litigation Trust shall be void and of no further force or effect with respect to the Debtors or Litigation Trust to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtors or Litigation Trust as a result of, or gives rise to a right of any Entity based on any of the following: (a) the insolvency or financial condition of the Debtors (prior to the Effective Date); (b) the commencement of the Cases; or (c) the confirmation or consummation of the Plan, including any change of control that will occur as a result of such consummation.

## I. **Release and Exculpation Provisions Approved; Discharge of Claims Against and Interests in the Debtors**

29. Effective as of the Effective Date, all injunctions, exculpations, and release provisions set forth in the Plan, including but not limited to those contained in Article IX of the Plan, are hereby approved and shall be effective and binding on all persons and entities, except as expressly modified herein.

30. Upon the Effective Date and in consideration of the distributions to be made under the Plan, and except as otherwise provided in the Plan or in this Confirmation Order, each Holder (as well as any trustee or agent on behalf of such Holder) of a Claim or Interest and any successor, assign, and affiliate of such Holder shall be deemed to have forever waived and released the Debtors, to the fullest extent permitted by Section 1141 of the Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided in the Plan, upon the Effective Date, all such Holders of Claims and Interests and their

successors, assigns, and affiliates shall be forever precluded and enjoined, pursuant to Sections 105, 524, and 1141 of the Code, from prosecuting or asserting any such Claim against or terminated Interest in the Debtors or Litigation Trust.

31. The exculpation provided in Article IX of the Plan is essential to the Plan and is approved, but should be construed, and will only be effective, to the extent that it is not inconsistent with the applicable provisions of the Code. The record in the Cases fully supports the exculpation of the Exculpated Parties, as set forth in Article IX of the Plan, and the exculpation provisions are appropriately tailored to protect the Exculpated Parties from unnecessary litigation. No claim or cause of action against any of the Exculpated Parties may be brought by any Person for any claim or cause of action in connection with or related to the Cases, the administration of the Plan or Litigation Trust Assets or Assets to be distributed under the Plan, or the transactions in furtherance of the foregoing without first seeking and being granted leave from the Court prior to commencing such asserted claim or cause of action.

32. For avoidance of any doubt, nothing in the Plan is intended to prohibit, enjoin, or impair any rights any Holder of Claims or Interests has under contract or at law to pursue or attempt collection from any non-debtor for amounts owed to such Holder, including but not limited to any guarantor such as Zlatan Karic.

**J. Claims Resolution Procedures Approved**

33. The procedures for resolving contingent, unliquidated, and/or disputed claims outlined in Article VIII of the Plan are hereby approved.

**K. Retention of Causes of Action**

34. Except as otherwise provided in the Plan, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes

of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Code or any applicable non-bankruptcy law. Except as otherwise provided in the Plan, the Debtors or Litigation Trust, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Effective Date to the same extent as if the Cases had not been commenced. For the avoidance of doubt, the Retained Causes of Action specifically include the Causes of Action listed on the Schedule of Retained Causes of Action, filed of record as Exhibit 3 to the Plan Supplement and as disclosed in the Disclosure Statement. The Court finds that all such Causes of Action, including the Retained Causes of Action described within the Plan Supplement and Disclosure Statement, have been specifically and unequivocally retained for the benefit of the Reorganized Debtors, with the exception that the Chapter 5 Causes of Action have been specifically and unequivocally retained for the benefit of the Litigation Trust, as provided for and subject to the Litigation Trust Agreement.

35. The Reorganized Debtor shall, pursuant to Section 1123(b)(3), have the sole and exclusive standing and authority to pursue Causes of Action, including the Retained Causes of Action described within the Plan Supplement and Disclosure Statement, with the exception that the Litigation Trustee is the sole and exclusive representative of the Debtors' Estates under Section 1123(b)(3) with respect to the Retained Chapter 5 Causes of Action, and shall have the sole and exclusive standing and authority to pursue the same, subject to the provisions of the Plan and Litigation Trust Agreement.

**L. Setoffs and Recoupments**

36. Except as expressly provided in the Plan, the Reorganized Debtor and/or Litigation Trust, as applicable, may, pursuant to Section 553 of the Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Reorganized Debtor and/or Litigation Trust, as applicable, may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Reorganized Debtor and/or Litigation Trust, and Holder of such Allowed Claim or (2) otherwise adjudicated by the Court or another court of competent jurisdiction; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor or Litigation Trust, as applicable, or their successors of any and all claims, rights, and Causes of Action that the Reorganized Debtor or Litigation Trust, as applicable, or their successors may possess against the applicable Holder. In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Litigation Trust, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Section 13.8 of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

**M. The Huntington National Bank**

37. Notwithstanding any other provision contained in the Plan or this Confirmation Order, the Allowed Secured Claim of Huntington shall be deemed Allowed in the amount of $157,180.52 as of the Petition Date. Debtors shall retain the collateral securing such Claim and

shall pay the Allowed Secured Claim in full, together with post-petition interest at the rate of 9.00% per annum, through equal periodic payments amortized over the term provided in the Plan. The amount such payments shall be determined pursuant to an amortization schedule provided by Huntington after the date on which the Effective Date and commencement of distributions can be determined with reasonable certainty.

38. Any initial distribution made pursuant to the Plan (such as the Initial Plan Payment) shall be credited against Huntington's Allowed Secured Claim and the amortization schedule shall be adjusted accordingly so that Huntington receives payment in full of its Allowed Secured Claim together with all interest required by the Plan and Confirmation Order.

39. Except as expressly modified by the Plan and Confirmation Order, all terms, conditions, covenants, rights, remedies, liens, and obligations contained in the parties' prepetition loan documents shall remain in full force and effect and are hereby preserved, including Huntington's liens and all non-bankruptcy rights and remedies available upon a post-confirmation default. Nothing in the Plan or Confirmation Order shall be construed as a release, waiver, impairment, satisfaction, or modification of any provision of the loan documents except to the extent expressly set forth herein.

**N. <u>PNC Bank, National Association</u>**

40. Notwithstanding any other provision contained in the Plan or this Confirmation Order, the treatment of PNC under the Plan shall be modified as follows: Class 5 consists of the Secured Claim of PNC against Debtors. Except to the extent that a Holder of a Class 5 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 5 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 5 Claim, shall first receive its Pro Rata share of the Initial Plan Payment in

the approximate amount of $411,311.05, less payment to all Allowed Section 503(b)(9) Claims, but in no event less than $400,000.00, with Wells Fargo, Compass and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in section 1129(b)(2)(A) of the Code, the remainder of the PNC Secured Claim will be paid by sixteen (16) monthly payments in the amount of $75,000, twelve (12) monthly payments in the amount of $79,166.67, twelve (12) monthly payments in the amount of $83,333.33, and twelve (12) monthly payments in the amount of $100,000 due on or before the first day of each month, beginning in the first month following the entry of an order confirming the Plan. In the event that the PNC's pro rata share of the Initial Payment is less than $411,311.05, then Debtor shall increase the last monthly payment due by Debtor to PNC by the difference between $411,311.05 and the pro rata share of the Initial Payment received by PNC. Should PNC consent to treatment under this Class 5, PNC shall retain its Lien on its collateral but shall agree not to foreclose on its collateral pending a default under the terms of the Plan. In the alternative, if PNC does not consent to treatment under this Class 5, PNC will be treated as a Class 3 Other Secured Claim, such that PNC shall receive its collateral and be entitled to an Unsecured Deficiency Claim as provided for thereunder. PNC's claim in regards to Loan & Security Agreement # 225880 dated October 3, 2024 shall be treated as a Class 3 Other Secured Claim, such that PNC shall receive its collateral and be entitled to an Unsecured Deficiency Claim as provided for thereunder. PNC shall also be permitted to install GPS tracking systems on its collateral and Debtors shall use commercially reasonable means to assist PNC in any such endeavor. The Debtors' failure to cooperate with PNC to install the GPS tracking systems on PNC's collateral shall be an event of default under this Plan and PNC is not required to provide a notice of default or opportunity to cure. In the event the Debtors fail to make

PNC's collateral available for the installation of GPS tracking systems within thirty (30) days from the confirmation of this Plan, then the Debtor shall be in immediate default of this Plan and PNC is not required to provide a notice of default or opportunity to cure. The Holders of Claims in Class 5 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

41. Except as expressly modified by the Plan and Confirmation Order, all terms, conditions, covenants, rights, remedies, liens, and obligations contained in the parties' prepetition loan documents shall remain in full force and effect and are hereby preserved, including PNC's liens, applicable non-monetary provisions and all non-bankruptcy rights and remedies available upon a post-confirmation default. In the event Debtors fail to make any payment to PNC under this Plan; disconnect, remove, or otherwise tamper with the GPS Tracking units; or fails to maintain adequate insurance, then PNC will send Debtors a notice of default and Debtors shall have five (5) days to cure said default. Debtors shall be entitled to two notices of default. Upon an uncured post-confirmation default or a third default, the automatic stay and/or plan injunction shall be terminated with respect to PNC's collateral and Debtors shall turnover PNC's collateral to PNC. Nothing in the Plan or Confirmation Order shall be construed as a release, waiver, impairment, satisfaction, or modification of any provision of the loan documents except to the extent expressly set forth herein.

**O. <u>Texas Comptroller of Public Accounts</u>**

42. Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the following provisions shall govern the treatment of the claims of the Comptroller: (1) nothing in the Plan or Confirmation Order shall affect or impair the Comptroller's statutory or common law setoff rights in accordance with 11 U.S.C. § 553; (2) nothing in the Plan or

Confirmation Order shall affect or impair the Comptroller's rights to pursue any non-debtor third parties for any tax debts or claims; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's administrative expense tax claims; (4) to the extent that interest is payable on any administrative expense, priority or secured tax claim of the Comptroller, the applicable interest rate shall be the statutory rate, currently 7.75% per annum; and (5) the Comptroller is not required to file a motion or application for payment of administrative expense claims; such claims are allowed upon filing, subject only to objection on substantive grounds.

43. Priority tax claims owed to the Comptroller shall be paid in full (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty (60) months of the Petition Date; or (3) as otherwise agreed to by the Comptroller. Interest on the Comptroller's priority tax claims shall accrue interest at the statutory rate, currently 7.75% per annum, from the Effective Date until paid in full.

44. Should the Reorganized Debtor fail to make any payments as required in the Plan, the Comptroller shall provide written notice of that default and send written notice to Reorganized Debtor's counsel advising of that default and providing the Reorganized Debtor with a period of ten (10) days to cure the default. If the default is not cured within ten (10) days, the Comptroller may, without further order of this Court, pursue all of its rights and remedies available to it under applicable non-bankruptcy law to collect the full amounts of all taxes, penalties, and interest owed. The Reorganized Debtor shall be entitled to no more than two (2) Notices of Default. In the event of a third (3rd) default, the Comptroller may pursue all rights and remedies available to it under applicable non-bankruptcy law without further order of the Court.

**P. <u>Compass Funding Solutions, LLC</u>**

45. Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the following provisions shall govern the treatment of the claims of Compass: Class 4 consists of the Secured Claim of Compass against Debtors. Except to the extent that a Holder of a Class 4 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 4 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 4 Claim, first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, PNC and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Compass Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate, over a period not exceeding 2.5 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $550,000.00. The remainder of the Compass Claim will be treated as follows: (i) Compass shall receive an Allowed Class 9 Unsecured Claim in the amount of $250,000.00, which will be paid as part of Class 9 and (ii) Compass shall receive an Allowed Administrative Claim in the amount of $250,000.00, payable pursuant to Section 2.1 of the Plan. Compass shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan. Compass shall also be permitted to install GPS tracking systems on its collateral and Debtors shall use commercially reasonable means to assist Compass in any such endeavor. The Holders of Claims in Class 4 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited. Except as expressly modified by the Plan and Confirmation Order, all terms, conditions,

covenants, rights, remedies, liens, and obligations contained in the parties' prepetition loan documents shall remain in full force and effect and are hereby preserved, including Compass' liens, applicable non-monetary provisions and all non-bankruptcy rights and remedies available upon a post-confirmation default. Further, upon an uncured post-confirmation default, the automatic stay and/or plan injunction shall be terminated with respect to Compass' collateral. Nothing in the Plan or Confirmation Order shall be construed as a release, waiver, impairment, satisfaction, or modification of any provision of the loan documents except to the extent expressly set forth herein.

**Q. Class 9 GUC Recovery**

46. Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the defined term "GUC Recovery" in Section 1.2.47 of the Plan is amended as follows: **GUC Recovery**: means the total amount of funds available, first, to creditors holding Allowed Administrative Claims not paid in accordance with 11 U.S.C. § 1129(a)(9), if any, and second, to Allowed Unsecured Claims in Class 9, which shall be equal to either (a) eighty percent (80%) of the Net Income of Reorganized Debtors for each of the five (5) years following the Effective Date or (b) one hundred percent (100%) of all Allowed Unsecured Claims in Class 9 plus five percent (5%) per annum interest recovery, whichever occurs first.

47. Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the following provisions shall govern the treatment of the claims of the Holders of Class 9 Allowed Unsecured Claims: Class 9 consists of any Allowed Unsecured Claims against the Debtors. Except to the extent that a Holder of a Class 9 Claim and the Debtors agree to less favorable treatment for such Holder, each Holder of an Allowed Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of

such Claim, its Pro Rata share of the GUC Recovery, less any applicable payments to Allowed Administrative Claims under § 2.1, from up to eighty percent (80%) of Debtors' Net Income and proceeds from the Litigation Trust Assets, if any. Payments to Allowed Unsecured Claims under Class 9 will occur at the end of each quarter following the Effective Date. Allowed Unsecured Claims in this Class 9 shall accrue interest at 5% per annum. For avoidance of any doubt, the quarterly payments described in this § 4.9 shall be capped at eighty percent (80%) of Debtors' Net Income for each period. Further, while the Debtors forecast that payment from the GUC Recovery will result in Holders of Claims in Class 9 being paid in full with interest once all collateral is appropriately valued and sold, if Debtors' forecast is incorrect, Debtors are asking Holders of Class 9 Claims to consent to payment of up to eighty percent (80%) of Debtors' Net Income under the GUC Recovery. The Holders of Claims in Class 9 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

**R. <u>Class 2 Secured Tax Claims</u>**

48. Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the following provisions shall govern the treatment of the claims of Allowed Secured Tax Claims under Class 2 pursuant to Section 4.2 of the Plan: Class 2 consists of any Allowed Secured Tax Claims against the Debtors. Except to the extent that a Holder of an Allowed Secured Tax Claim and the Debtor against which such Allowed Secured Tax Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Tax Claim, treatment in a manner consistent with Section 1129(a)(9)(D) of the Code. The Allowed Secured Tax Claims shall be paid in equal monthly payments over a period

not to exceed 60 months from the Petition Date, with the first payment due on the fifth (5th) day of the first full month after the Effective Date. The Allowed Secured Tax Claims will receive interest at the applicable rate of interest from the Petition Date through the Effective Date of 1% per month and from the Effective Date through the date of payment in full at the applicable state statutory rate of 12% per annum pursuant to 11 U.S.C. §§ 506(b), 511, and 1129.

49. Holders of Allowed Secured Tax Claims shall retain their Liens until all Taxes and related interest, penalties, and fees (if any) have been paid in full.

50. In the event the Reorganized Debtor sells, conveys, or transfers any property which is the collateral of a Holder of an Allowed Secured Tax Claim, the Reorganized Debtor shall remit such sales proceeds first to the Holder of an Allowed Secured Tax Claim to be applied to the Allowed Secured Tax Claim incident to any such property sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing prior to any disbursement of the sale proceeds to any other person or entity.

51. Notwithstanding any other provisions of this Plan, any agreements approved hereby, or any other orders in these Chapter 11 Cases, any statutory liens (collectively, the "**Tax Liens**") held by Tarrant County or any other ad valorem tax authority (the "**Taxing Authorities**") for prepetition and/or postpetition taxes shall not be primed nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Taxing Authorities are fully preserved.

52. The deadline for the Debtors or Reorganized Debtor to object to the Secured Tax Claims shall be sixty (60) days from the Effective Date (the "**Tax Claim Objection Deadline**"). In the event no objections to the Secured Tax Claims are filed prior to the Tax Claim Objection

Deadline, the Secured Tax Claims shall be deemed Allowed. In the event of an objection to any portion of a Secured Tax Claim, the Holder of the Secured Tax Claim shall receive payment of the undisputed portion of the claim plus interest that has accrued from the Petition Date in the manner provided herein for an Allowed Secured Tax Claim. In the event of a claim objection, the Holder of an Allowed Secured Tax Claim shall be entitled to interest that accrues while the Claim objection is pending.

53. Maintenance of Postpetition Taxes. Debtors shall pay the taxes attributable for the 2026 and subsequent tax years in the ordinary course, prior to delinquency, with any default subject to applicable nonbankruptcy law, including immediate collection actions in state court, without further notice or order from the Bankruptcy Court. No administrative expense claim or a request for payment is required for payment of postpetition taxes.

54. Default. Default shall occur if the prepetition taxes are not timely paid as herein provided, or if post-petition taxes are not paid timely pursuant to state law. In the event of default, the Holder of an Allowed Secured Tax Claim shall send written notice of default via electronic mail or first-class U.S. mail to Debtors' attorney and Debtors. If the default is not cured within fifteen (15) days after notice of the default is sent, the Holder of an Allowed Secured Tax Claim may proceed with state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code. The Debtors have the opportunity to cure two (2) times over the life of the Plan. In the event of a third default, the Holder of an Allowed Secured Tax Claim may proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code.

55. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such Holders will not be solicited.

**S. Class 3 Claims**

56. Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, any provision relating to the release or cancellation of lien or contract or instrument as described in the Plan, including but not limited to the provisions of Sections 5.4 and 9.3 therein, and to the extent they apply to Class 3 Claims in the first place, are not effective as to Class 3 Claims until the Class 3 collateral is returned to Class 3 Claims in full.

57. Within thirty (30) days of the Effective Date, Debtors shall provide the locations of the Class 3 collateral not already returned to Holders of Class 3 Claims, based on the most current information available. Further, upon the Effective Date, Debtors shall inform VSS Transportation Group ("**VSS**") that any continued use of Class 3 collateral is a violation of this Confirmation Order and the Plan.

58. To resolve the objections filed by BMO Bank N.A. ("**BMO**"), Sumitomo Mitsui Finance and Leasing Company Limited ("**Sumitomo**") and Mitsubishi HC Capital America, Inc. ("**Mitsubishi**"), this paragraph shall govern the Class 3 Claims and treatment of BMO, Sumitomo and Mitsubishi. To the extent BMO, Sumitomo and Mitsubishi are not able to recover their respective collateral by the Effective Date (provided that the reason for such non-recovery is not a failure to pick up the collateral after being provided with sufficient information on the location of such collateral), then BMO, Sumitomo and Mitsubishi shall be provided with a conditional Secured Claim in the full amount of the balance owed on any non-recovered collateral (calculated on a unit-by-unit basis), until such time as either (i) the collateral is recovered; or (ii) an insurance

claim is filed for the collateral, if such collateral is determined to be non-recoverable, and the loss proceeds are paid to either BMO, Sumitomo or Mitsubishi, as applicable, up to the remaining balance owed on such unit. Prior to the occurrence of either (i) or (ii) in the preceding sentence, BMO, Sumitomo and Mitsubishi shall receive monthly cash payments for the amount of their respective conditional Secured Claim, commencing 30 days following the Effective Date (calculated over a four-year period following the Effective Date, with the contractual rate of interest that applies to the collateral) which shall be credited against the balance owed on such non-recovered collateral and any subsequent deficiency claim. Once either (i) the collateral is recovered; or (ii) an insurance claim is filed for the collateral, if such collateral is determined to be non-recoverable, and the loss proceeds are paid to either BMO, Sumitomo or Mitsubishi, as applicable, the conditional secured claim relating to such collateral shall be deemed an unsecured claim subject to allowance and treatment as a Deficiency Claim under section 4.3 of the Plan.

**T. <u>Elsa Guerra</u>**

59. In resolution of issues raised by Elsa Guerra ("**<u>Guerra</u>**") regarding her treatment under the Plan, and by agreement of the Debtors and Guerra, nothing in the Plan or Confirmation Order shall prejudice, release, impair, or enjoin the ability of Guerra to litigate her claims currently pending in *Guerra v. Balkan Express, LLC, et al.*, Cause No. 342-358000-24, in the 342nd Judicial District Court of Tarrant County, Texas (the "**<u>State Court Case</u>**"). Guerra shall be permitted to prosecute the State Court Case to final judgment or settlement, including any appeal, and to collect any judgment or settlement from applicable insurance coverage and insurance proceeds, if any. Notwithstanding Section 4.10 or any other provision of the Plan, any portion of Guerra's claims against Balkan Express, LLC not satisfied by insurance shall be preserved and treated as a Class 9 Unsecured Claim under the Plan. All parties retain all rights, claims, and defenses with respect to the claims asserted in the State Court Case.

**U. <u>Litigation Trustee</u>**

60. The Litigation Trustee is hereby identified as John Pidcock.

**V. <u>Miscellaneous Confirmation Provisions</u>**

61. Upon entry of this Confirmation Order, the Debtors, the Litigation Trust, the Litigation Trustee, and any other Person having duties or responsibilities under the Plan or this Confirmation Order, and their respective directors, officers, managers, board of managers, agents, trustees, representatives, and attorneys are specifically authorized, empowered, and directed to take any and all actions necessary or appropriate to implement, effectuate, and consummate the Plan and the Plan Supplement, and the terms of this Confirmation Order, and the transactions respectively contemplated in those documents, all in accordance with the terms thereof, and are

authorized and directed to take all steps necessary and appropriate to implement the Plan terms without the need for further corporate approvals.

62. This Confirmation Order is in recordable form and shall be accepted by any filing or recording officer or authority of any applicable governmental unit for filing and recording purposes without further or additional orders, certifications, or other supporting documents. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

63. Under Section 1146(c) of the Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan, shall not be taxed under any law imposing a stamp tax or similar tax. The appropriate state or local government officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

64. To the extent that, under applicable non-bankruptcy law, any of the actions contemplated in the Plan would otherwise require the consent or approval of the Holders of Interests in the Debtors, this Confirmation Order shall constitute such consent or approval, and such actions shall be, and are deemed to have been, taken by unanimous action of the Holders of Interests in the Debtors.

65. Pursuant to Sections 1123(a) and 1142(a) of the Code, the provisions of this Confirmation Order, the Plan, the Litigation Trust Agreement, and all other agreements and

documents executed and delivered pursuant to the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

66. The Debtors and Litigation Trust shall have the right, to the fullest extent permitted by Section 1142 of the Code, to apply to the Court for an order, notwithstanding any otherwise applicable non-bankruptcy law, directing any appropriate entity to execute and deliver an instrument or perform any other act necessary to implement the Plan or the provisions of this Confirmation Order.

67. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Plan Supplement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and Plan Supplement.

68. On and after the Effective Date, pursuant to Sections 105 and 1142 of the Code, the Court, except as otherwise provided in the Plan or in this Confirmation Order, shall retain jurisdiction over all matters arising out of, and related to, the Cases, including, but not limited to, jurisdiction over the matters set forth in Article XI of the Plan.

69. The failure to include specifically any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent that the Plan is confirmed in its entirety.

70. The provisions of the Plan and this Confirmation Order are non-severable and mutually dependent.

71. All fees and charges chargeable pursuant to 28 U.S.C. § 1930 shall be timely paid by the Reorganized Debtor for each quarter (including any fraction thereof) until the Cases are

converted, dismissed, or closed, whichever occurs first. Any outstanding amounts owed under 28 U.S.C. § 1930(a) by the Debtors, and any interest thereon pursuant to 31 U.S.C. § 3717, as of the Effective Date shall be paid in full on the Effective Date. Notwithstanding the inclusion of fees and charges under 28 U.S.C. § 1930 in the Plan definition of "Administrative Claim," the United States Trustee shall not be required to file any proof of claim or request for payment of an Administrative Claim.

72. On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127 of the Code.

73. This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof. The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order are hereby waived. This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by a subsequent order of the Court, or any other court of competent jurisdiction, such reversal, stay, modification, of vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors, or the Litigation Trust, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, and the Plan Supplement, and shall remain binding on the Debtors or the Litigation Trust, as the case may be.

74. In the event of a conflict between the terms and conditions of this Confirmation Order, the Plan, the Plan Supplement, and/or any other supporting document, the terms and conditions of this Confirmation Order shall control. The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of the Court.

75. The Litigation Trust Agreement, as attached to the Plan Supplement as Exhibit 4 is approved.

76. On the Effective Date or promptly thereafter, the Debtors shall file a notice of the occurrence of the Effective Date (the "**Notice of Effective Date**") with the Court. No service of such notice other than via the Court's ECF system shall be necessary or required.

77. Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any non-debtor. Nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Notwithstanding any provision of the Plan, this Order, or any implementing or supplementing plan documents divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order or the Plan to adjudicate any defense asserted under this Confirmation Order or the Plan.

**# # # END OF ORDER # # #**

***Order Proposed By***:

Joshua N. Eppich (TBN 24050567)
Ken Green (TBN 24036677)
Eric T. Haitz (TBN 24101851)
Bailey C. Pompea (TBN 24151000)
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: ken.green@bondsellis.com
Email: eric.haitz@bondsellis.com
Email: bailey.pompea@bondsellis.com

*Counsel for*
*Debtors and Debtors-in-Possession*

# EXHIBIT A

**Plan**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **BALKAN EXPRESS, LLC, *et al.*** | § | **Case No. 25-41544** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |
| | § | |
| | § | |

# THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR BALKAN EXPRESS, LLC AND ITS AFFILIATED DEBTOR

***AUGUST 5, 2026***

**BONDS ELLIS EPPICH SCHAFER JONES LLP**
Joshua N. Eppich
Texas Bar I.D. No. 24050567
Eric T. Haitz
Texas Bar I.D. No. 24101851
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: eric.haitz@bondsellis.com

Ken Green
Texas Bar I.D. 24036677
402 Heights Blvd.
Houston, Texas 77007
(713) 335-4990 telephone
(713) 335-4991 facsimile
Email: ken.green@bondsellis.com

**COUNSEL FOR THE DEBTORS**
**AND DEBTORS-IN-POSSESSION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Balkan Express, LLC (3974), and Balkan Logistics, LLC (8202). The Debtors' mailing address is 2560 E Long Ave, Fort Worth, Texas 76137.

# Table of Contents

INTRODUCTION ....................................................................................................1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF TERMS, COMPUTATION OF TIME, AND GOVERNING LAW ..........................................1

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS ............................10

2.1. Administrative Claims ............................................................................10
2.2. Section 503(b)(9) Claims ........................................................................11
2.3. Professional Fee Claims...........................................................................12
2.4. Priority Tax Claims..................................................................................12

ARTICLE III. CLASSIFICATION ......................................................................13

ARTICLE IV. TREATMENT ..............................................................................14

4.1. Class 1 (Other Priority Claims)................................................................14
4.2. Class 2 (Secured Tax Claims)..................................................................14
4.3. Class 3 (Other Secured Claims)...............................................................14
4.4. Class 4 (Compass Secured Claim)............................................................15
4.5. Class 5 (PNC Secured Claim)...................................................................15
4.6. Class 6 (Wells Fargo Secured Claim)........................................................16
4.7. Class 7 (Huntington Secured Claim) ........................................................16
4.8. Class 8 (M&T Secured Claim) .................................................................16
4.9. Class 9 (Unsecured Claims)......................................................................17
4.10. Class 10 (Covered Personal Injury Claims)...............................................18
4.11. Class 11 (Subordinated Unsecured Claim of Plan Sponsor) .......................19
4.12 Class 12 (Interests in the Debtors) ..............................................................19

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN...............................19

5.1. Formation of a Litigation Trust.................................................................19
5.2. Substantive Consolidation .......................................................................22
5.3. Sources of Plan Distributions....................................................................22
5.4. Cancellation of Existing Agreements .......................................................22
5.5. Corporate Action......................................................................................23
5.6. Directors and Officers of Reorganized Debtor. ..........................................23
5.7. Effectuating Documents; Further Transactions .........................................23
5.8. Section 1146 Exemption. ..........................................................................23
5.9. Retained Causes of Action.........................................................................24

ARTICLE VI. EXECUTORY CONTRACTS ............................................................24

6.1. Assumption and Rejection of Executory Contracts and Unexpired Leases. .........24

6.2. Pass-Through ....................25
6.3. Claims Based on Rejection of Executory Contracts or Unexpired Leases ....................25
6.4. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ....................26
6.5. Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases ....................26
6.6. Reservation of Rights ....................27
6.7. Nonoccurrence of Effective Date ....................27

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ....................27

7.1. Timing and Calculation of Amounts to Be Distributed ....................27
7.2. Delivery of Distributions and Undeliverable or Unclaimed Distributions. ....................28
7.3. Compliance with Tax Requirements ....................29
7.4. No Post-Petition Interest on Claims ....................29
7.5. Setoffs and Recoupment ....................29
7.6. Claims Paid or Payable by Third Parties. ....................29

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ....................30

8.1. Claims Administration Responsibilities ....................30
8.2. Estimation of Claims ....................30
8.3. Adjustment to Claims without Objection. ....................31
8.4. Time to File Objections to Claims ....................31
8.5. Disallowance of Claims. ....................31
8.6. Amendments to Claims ....................31
8.7. No Distributions Pending Allowance ....................31
8.8. Distributions After Allowance ....................31

ARTICLE IX. SETTLEMENT, DISCHARGE, AND RELEASE ....................32

9.1. Compromise and Settlement ....................32
9.2. Incorporation of Compromise and Settlement with Zuza ....................32
9.3. Release of Liens. ....................32
9.4. Releases by the Debtors. ....................33
9.5. Exculpation. ....................34
9.6. Injunction. ....................34
9.7. Protections Against Discriminatory Treatment. ....................35
9.8. Document Retention. ....................35
9.9. Reimbursement or Contribution ....................35
9.10. Section 524(e) ....................36

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN ....................36

10.1. Conditions Precedent to Confirmation ....................36
10.3. Waiver of Conditions ....................36
10.4. Effect of Failure of Conditions ....................36

ARTICLE XI. RETENTION OF COURT JURISDICTION ........ 37

11.1. Retention of Court Jurisdiction ........ 37

ARTICLE XII. MODIFICATION AND REVOCATION OF THE PLAN ........ 38

12.1. Immediate Binding Effect ........ 38
12.2. Modification of the Plan ........ 39
12.3. Revocation or Withdrawal of the Plan ........ 39

ARTICLE XIII. MISCELLANEOUS PROVISIONS ........ 39

## INTRODUCTION

Pursuant to Section 1121(c) of the Code, the Debtors respectfully propose this Plan for the resolution of the outstanding Claims against, and Interests in, the Debtors. The Debtors are each a proponent of the Plan within the meaning of Section 1129 of the Code. Reference is made to the Disclosure Statement, distributed contemporaneously with this Plan, for a discussion of the Debtors' history, assets, and operations; a summary and analysis of this Plan; and certain related matters.

Nothing contained herein shall constitute an offer, an acceptance, or a legally binding obligation of any party in interest. This Plan is subject to approval of the Court and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the Court in accordance with Section 1125 of the Code. Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE COURT.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF TERMS, COMPUTATION OF TIME, AND GOVERNING LAW

1.1. Scope of Defined Terms. For purposes of the Plan, the following terms shall have the meanings set forth below unless the context clearly requires otherwise. Any term used but not defined in this Plan that is defined in the Code or Bankruptcy Rules as the case may be, shall have the meaning ascribed in the Code or Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular. The masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2. Defined Terms.

1.2.1. **Administrative Claim**: means a Claim (other than any adequate protection claims) for costs and expenses of administration of the Debtors' estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Debtors' estates and operating the Debtors' businesses; (ii) Allowed Professional Fee Claims; and (iii) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

1.2.2. **Administrative Claim Bar Date**: means the first Business Day that is thirty (30) days after the entry of the Confirmation Order or such earlier deadline established by an order of the Court.

1.2.3. **<u>Affiliate</u>**: means any specified Person, any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such Person and, with respect to any specified natural Person, any other Person having a relationship by blood, marriage, or adoption not more remote than first cousins with such natural Person. For purposes of this definition, "controlling" (including, with correlative meanings, the terms "controlled by" and "under direct or indirect common control with"), as used with regards to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such Person, whether through the ownership of voting securities, by agreement, or otherwise.

1.2.4. **<u>Allowed</u>**: means, with reference to any Claim or Interest, except as otherwise provided in this Plan:

(i) any Claim or Interest arising on or before the Effective Date (a) as to which no objection to allowance has been interposed within the time period set forth in the Plan or (b) as to which any objection has been determined by a Final Order of the Bankruptcy Court to the extent such objection is determined in favor of the respective holder;

(ii) any Claim or Interest as to which the liability of a Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or

(iii) any Claim or Interest expressly allowed under the Plan; *provided further,* that notwithstanding the foregoing, the Reorganized Debtor will retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise unimpaired pursuant to the Plan.

1.2.5. **<u>Approval Order</u>**: means the Final Order approving the Disclosure Statement.

1.2.6. **<u>Ballot</u>**: means the applicable form or forms of ballot(s) to be distributed to Holders of Claims entitled to vote on the Plan and on which the acceptance or rejection of the Plan is to be indicated.

1.2.7. **<u>Bankruptcy Rules</u>**: means the Federal Rules of Bankruptcy Procedure, as amended, or any successor rules.

1.2.8. **<u>Business Day</u>**: means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.2.9. **<u>Case or Cases</u>**: means each chapter 11 case of the Debtors in the Court jointly administered under Case No. 25-41544 in the United States Bankruptcy Court for the Northern District of Texas.

1.2.10. **<u>Cash</u>**: means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

1.2.11. **<u>Causes of Action</u>**: means all of the Debtors' and Estates' actions, causes of action, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, third-party claims, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Cases, through and including the Effective Date, including, but not limited to, the Chapter 5 Causes of Action and all causes of action listed in the Schedule of Retained Causes of Action to be filed as part of the Plan Supplement as **Exhibit 3**.

1.2.12. **Chapter 5 Causes of Action**: means (i) any and all actions that are filed or that may be filed pursuant to the provisions of Sections 502(d), 510(c), 542, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, or applicable non-bankruptcy law that may be incorporated or brought under the foregoing Sections of the Code or (ii) any other similar actions or proceedings filed to recover property for or on behalf of the Estates or to avoid a lien or transfer.

1.2.13. **Claim**: means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtors.

1.2.14. **Claims Bar Date**: means, (a) with respect to any Entity that is not a Governmental Unit, September 24, 2025, and (b) with respect to a Governmental Unit, October 27, 2025, unless modified by entry of an Order of the Court.

1.2.15. **Claims Register**: means the official register of Claims for the Cases maintained by the Court.

1.2.16. **Class**: means a category of Claims or Interests as described in the Plan pursuant to Section 1122(a) of the Code.

1.2.17. **Code**: means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

1.2.18. **Compass**: means Compass Funding Solutions, LLC.

1.2.19. **Comptroller**: means Texas Comptroller of Public Accounts.

1.2.20. **Confirmation**: means the Court's entry of the Confirmation Order on the docket of the Case, subject to all conditions specified in § 10.1 of the Plan having been (a) satisfied or (b) waived pursuant to § 10.3 of the Plan.

1.2.21. **Confirmation Date**: means the date of a determination by the Court by entry of the Confirmation Order that the Plan satisfies Section 1129 of the Code.

1.2.22. **Confirmation Hearing**: means the hearing required by Section 1128 of the Code.

1.2.23. **Confirmation Order**: means the order entered by the Court following the Confirmation Hearing confirming the Plan pursuant to Section 1129 of the Code.

1.2.24. **Consummation**: means the occurrence of the Effective Date.

1.2.25. **Court**: means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

1.2.26. **Covered Personal Injury Claim**: means a claim arising from bodily harm or injury to property that is covered by the Debtors' Insurance Policies.

1.2.27. **Creditor**: has the meaning prescribed in Section 101(10) of the Code.

1.2.28. **Cure Amounts**: means all amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults and other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) pursuant to a Cure Claim under any Executory Contract or Unexpired Lease that is to be assumed or assumed and assigned by the Debtors pursuant to sections 365 or 1123 of the Code.

1.2.29. **Cure Claim**: means a Claim based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Code.

1.2.30. **Debtors**: means, collectively, Express and Logistics.

1.2.31. **Disallowed**: means a Claim or an Interest (or portion thereof) that has been disallowed, denied, dismissed, or overruled pursuant to this Plan or a Final Order of the Court or of any other court of competent jurisdiction.

1.2.32. **Disclosure Statement**: means a Disclosure Statement as described in Section 1125 of the Code to be filed in support of this Plan, as it may be amended or supplemented.

1.2.33. **Disputed Claim**: means any Claim that is not yet Allowed or Disallowed.

1.2.34. **Distribution Record Date**: means the record date for purposes of making Plan Distributions on account of Allowed Claims, which date shall be the later of (i) the Confirmation Date; and (ii) the Claims Bar Date.

1.2.35. **Effective Date**: means as defined in § 10.2 of the Plan.

1.2.36. **Entity**: has the meaning set forth in Section 101(15) of Code.

1.2.37. **Equity Security**: means any equity security, as defined in section 101(16) of the Code, in the Debtor.

1.2.38. **Estates**: means the estates created for the Debtors in the Cases pursuant to Section 541 of the Code, with each such estate constituting an "Estate."

1.2.39. **Exculpated Parties**: means, collectively, and in each case, in its capacity as such: (a) the Debtors, (b) the Professionals; and (c) with respect to each of the foregoing, such Entity and its current and former affiliates, and such Entity's and its current and former affiliates' equity

holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case acting in such capacity at any time on or after the Petition Date.

1.2.40. **Executory Contract**: means an executory contract or unexpired lease as such terms are used in Section 365 of the Code, including all operating leases, capital leases, and contracts to which either Debtor is a party or beneficiary.

1.2.41. **Exit Facility**: means a continuation of debt obligations to Wells Fargo, PNC, Compass and Huntington and their existing collateral.

1.2.42. **Express**: means Balkan Express, LLC as debtor and debtor in possession.

1.2.43. **Federal Judgment Rate**: means the federal post-judgment interest rate in effect as of the Petition Date.

1.2.44. **File or Filed**: means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Case.

1.2.45. **Final Order**: means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, re-argument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, re-argument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, re-argument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Code has been or may be filed with respect to such order or judgment.

1.2.46. **Governmental Unit**: means any governmental unit, as defined in Section 101(27) of the Code.

1.2.47. **GUC Recovery**: means the total amount of funds available, first, to creditors holding Allowed Administrative Claims not paid in accordance with 11 U.S.C. § 1129(a)(9), if any, and second, to Allowed Unsecured Claims in Class 9, which shall be equal to either (a) seventy (70) percent of the Net Income of Reorganized Debtors for each of the five (5) years following the Effective Date or (b) one hundred (100) percent of all Allowed Unsecured Claims in Class 9 plus five (5) percent per annum interest recovery, whichever occurs first.

1.2.48. **Holder**: means any Entity holding a Claim or an Interest.

1.2.49. **Huntington**: means The Huntington National Bank.

1.2.50. **Impaired**: means, with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Section 1124 of the Code.

1.2.51. **Initial Litigation Trust Funding Amount**: means an amount equal to $25,000.00 USD in Cash.

1.2.52. **Initial Plan Payment**: means a Pro Rata payment of $500,000.00 USD in Cash as between Wells Fargo, Compass, PNC and Huntington, reduced by any amounts paid to Section 503(b)(9) Claims pursuant to § 2.2 of the Plan.

1.2.53. **Insider**: has the meaning set forth in Section 101(31) of the Code.

1.2.54. **Insurance Policies**: means any and all insurance policies, insurance settlement agreements, coverage-in-place agreements, and other agreements, documents, or instruments relating to the provision of insurance entered into by or issued to or for the benefit of, at any time, the Debtors or their predecessors.

1.2.55. **Insurer**: means any company or other entity that issued an Insurance Policy, any third party administrator of or for any Insurance Policy, and any respective predecessors and/or Affiliates of any of the foregoing.

1.2.56. **Interest**: means any Equity Security in the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in the Debtors.

1.2.57. **Lien**: means a lien, security interest, or other interest or encumbrance as defined in Section 101(37) of the Code.

1.2.58. **Litigation Trust**: means the trust described in Article V of the Plan to be established under Texas trust law that will prosecute the Chapter 5 Causes of Action and any related litigation pursuant to the terms of the Plan and Litigation Trust Agreement. With respect to any action required or permitted to be taken by the Litigation Trust, the term includes the Litigation Trustee or any other person authorized to take such action in accordance with the Litigation Trust Agreement.

1.2.59. **Litigation Trust Agreement:** means the agreement, substantially in the form annexed to the Plan Supplement as **Exhibit 4**, establishing the Litigation Trust in conformity with the provisions of the Plan, which shall be approved in the Confirmation Order and entered into by the Debtors, on behalf of the beneficiaries, and the Litigation Trustee by the Effective Date pursuant to the terms of the Plan.

1.2.60. **Litigation Trust Assets**: means the Chapter 5 Causes of Action.

1.2.61. **Litigation Trust Interest(s)**: means as defined in the Litigation Trust Agreement and as described in Article V of this Plan.

1.2.62. **Litigation Trustee:** means the person appointed in accordance with Article V of this Plan to administer the Litigation Trust in accordance with the terms of the Litigation Trust Agreement.

1.2.63. **Logistics**: means Balkan Logistics, LLC as debtor and debtor in possession.

1.2.64. **M&T:** means M&T Bank.

1.2.65. **Monthly Litigation Trust Funding Amount**: means an amount equal to $5,000.00 USD in Cash.

1.2.66. **Net Income**: means and is calculated as income after operating expenses, capex expenses, debt service and tax payments.

1.2.67. **New Interest**: means any new Interest issued to members in the Reorganized Debtor.

1.2.68. **Organizational Documents**: means the Debtors' existing documents providing for corporate governance of the Debtors, including charters, bylaws, operating agreements, or other organizational documents, as applicable.

1.2.69. **Other Priority Claim**: means any Claim, other than an Administrative Claim, Section 503(b)(9) Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.2.70. **Other Secured Claim**: means any Secured Claim other than (1) the Secured Claims of Wells Fargo, Compass, PNC, Huntington and M&T, and (2) Secured Tax Claims.

1.2.71. **Person(s)**: has the meaning set forth in Section 101(41) of the Code.

1.2.72. **Petition Date**: means April 30, 2025, the date on which the Debtors commenced their Cases.

1.2.73. **Plan**: means this *Third Amended Joint Chapter 11 Plan of Reorganization for Balkan Express, LLC and Its Affiliated Debtor*, as supplemented and/or amended.

1.2.74. **Plan Distribution**: means a payment or distribution to holders of Allowed Claims, Allowed Interests, or other eligible Entities under the Plan.

1.2.75. **Plan Sponsor**: means Zlatan Karic.

1.2.76. **Plan Supplement**: has the meaning ascribed to it as defined in § 13.10 of this Plan.

1.2.77. **PNC**: shall mean PNC Bank, National Association.

1.2.78. **Priority Tax Claim**: means a Priority Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Code.

1.2.79. **<u>Pro Rata</u>:** means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

1.2.80. **<u>Professional</u>**: means an Entity employed by the Debtors pursuant to a Court order in accordance with Sections 327, 363, or 1103 of the Code.

1.2.81. **<u>Professional Fee Claims</u>**: means a Claim for compensation or reimbursement of expenses of a Professional incurred on and after the Petition Date and prior to the Effective Date, including fees and expenses incurred in preparing final fee applications and participating in hearings on such applications, and requested in accordance with the provisions of Sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Code.

1.2.82. **<u>Proof of Claim</u>**: means a proof of Claim filed against the Debtors in the Cases by the applicable Claims Bar Date.

1.2.83. **<u>Reinstate, Reinstated or Reinstatement</u>**: means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

1.2.84. **<u>Released Parties</u>**: means individually and collectively, and in each case, in its capacity as such: (i) each of the Debtors' officers, directors, and managers and (ii) with respect to the Debtors, and each of the foregoing Entities in clauses (i) through (ii), such Entity's current and former Affiliates and subsidiaries, and such Entities' and their current and former Affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

1.2.85. **<u>Reorganized Debtor</u>**: means the Debtors, or any successor thereto or assign thereof, by merger, consolidation, or otherwise, on and after the Effective Date.

1.2.86. **<u>Retained Causes of Action</u>**: means those Causes of Action of the Debtors and their Estates that are retained under the Plan, including those specifically identified on the Schedule of Retained Causes of Action and that are not released, waived, or transferred pursuant to the Plan.

1.2.87. **<u>Schedule of Assumed Contracts and Leases</u>**: means the schedule of Executory Contracts and Unexpired Leases to be assumed and, if applicable, assigned, by the Debtors, to be filed as part of the Plan Supplement as **<u>Exhibit 1</u>**.

1.2.88. **<u>Schedule of Rejected Contracts and Leases</u>**: means the Schedule of Executory Contracts and Unexpired Leases to be rejected, if any, to be filed as part of the Plan Supplement as **<u>Exhibit 2</u>**.

1.2.89. **<u>Schedule of Retained Causes of Action</u>**: means the schedule of retained Causes of Action, to be filed as part of the Plan Supplement as **<u>Exhibit 3</u>**.

1.2.90. **Schedules**: means the schedules of assets and liabilities, the list of Holders of Interest, and the statements of financial affairs filed by the Debtors in accordance with Section 521 of the Code, Bankruptcy Rule 1007, and the Official Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented on or prior to the Confirmation Date.

1.2.91. **Section 503(b)(9) Claims**: means any Administrative Claim against the Debtors as set forth in Section 503(b)(9) of the Code.

1.2.92. **Secured Claim**: means a Claim (i) secured by a lien on collateral to the extent of the value of such collateral as (a) set forth in the Plan, (b) agreed to by the Holder of such Claim and the Debtors, or (c) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.2.93. **Secured Tax Claim**: means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

1.2.94. **Securities Act**: means the Securities Act of 1933, as amended.

1.2.95. **Solicitation**: means solicitation in accordance with the Approval Order of votes under the Plan.

1.2.96. **Solicitation Materials**: means the Disclosure Statement (including all exhibits and appendices), Ballot, and any other materials to be used in the Solicitation of votes on the Plan.

1.2.97. **Unexpired Lease**: means a lease to which either Debtor is a party that is subject to assumption or rejection under Section 365 of the Code.

1.2.98. **Unimpaired**: means a Claim or Interest that is unimpaired within the meaning of Section 1124 of the Code.

1.2.99. **Unsecured Claim**: means any Claim that is not an Administrative Claim, a Professional Fee Claim, a Secured Claim, a Priority Tax Claim, a Section 503(b)(9) Claim, an Other Priority Claim or an Other Secured Claim.

1.2.100. **Wells Fargo**: means Wells Fargo Equipment Finance, Inc.

1.2.101. **Zuza**: means Gorjana Zuza f/k/a Gorjana Karic.

1.2.102. **Zuza Settlement Agreement**: means the settlement agreement between Debtors and Zuza authorized pursuant to the Court's *Order Granting Debtors' Amended Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Docket No. 443].

1.3. Rules of Interpretation and Construction of Terms. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified; (ii)

unless otherwise specified, all references in the Plan to sections, articles, and exhibits are references to sections, articles, or exhibits of the Plan; (iii) the words “herein,” “hereof,” “hereto,” “hereunder,” and other words of similar import refer to the Plan in its entirety and not to any particular portion of the Plan; (iv) captions and headings contained in the Plan are inserted for convenience and reference only and are not intended to be part of or to affect the interpretation of the Plan; (v) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (vi) unless otherwise specified, all references in the Plan to exhibits are references to the exhibits in the Plan Supplement; (vii) any reference to an Entity as a Holder of a Claim or Interest includes the Entity’s successors and assigns; (viii) any reference to docket numbers of documents filed in the Case are references to docket numbers under the Court’s CM/ECF system; and (ix) the rules of construction outlined in Section 102 of the Code and in the Bankruptcy Rules apply to the Plan.

1.4. Computation of Time. Unless otherwise specifically provided herein, in computing any period, date, or deadline prescribed or allowed in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If the date on which a transaction may or must occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

1.5. Governing Law. Subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Code and Bankruptcy Rules.

1.6. Reference to Monetary Figures. All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with Section 1123(a)(1) of the Code, Administrative Claims, Professional Fee Claims, Section 503(b)(9) Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

2.1. Administrative Claims. Except to the extent that a Holder of an Allowed Administrative Claim and the Debtors agree to less favorable treatment for such Holder, each holder of an Allowed Administrative Claim (other than holders of Section 503(b)(9) Claims, Professional Fee Claims and Claims for fees and expenses pursuant to Section 1930 of Chapter 123 of Title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date, or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); or (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Administrative Claim

becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) at such time and upon such terms as may be agreed upon by such holder and the Debtors, including from the GUC Recovery from Debtors' Net Income prior to any distributions to Holders of Class 9 Allowed Unsecured Claims; and (iv) at such time and upon such terms as set forth in an order of the Court.

Except for Professional Fee Claims, unless previously filed, requests for payment of Administrative Claims must be filed and served on the Debtors no later than the Administrative Claim Bar Date. Objections to such requests must be filed and served on the Debtors and the requesting party by the later of (i) thirty (30) days after the Effective Date and (ii) thirty (30) days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Code and prior Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Court.

Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or any action by the Court.

2.2. Section 503(b)(9) Claims. Except to the extent that a Holder of an Allowed Section 503(b)(9) Claim and the Debtors agree to less favorable treatment for such Holder, each holder of an Allowed Section 503(b)(9) Claim will receive in full and final satisfaction of its Claim an amount of Cash from the Initial Plan Payment equal to the amount of such Claim in accordance with the following: (i) if a Section 503(b)(9) Claim is Allowed on or prior to the Effective Date, on the Effective Date, or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Section 503(b)(9) Claim is due or as soon as reasonably practicable thereafter); or (ii) if such Section 503(b)(9) Claim is not Allowed as of the date of the Effective Date, no later than ten (10) days after the date on which an order allowing such Section 503(b)(9) Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) at such time and upon such terms as may be agreed upon by such Holder and the Debtors; and (iv) at such time and upon such terms as set forth in an order of the Court.

Unless previously filed, requests for payment of Section 503(b)(9) Claims must be filed and served on the Debtors no later than the Administrative Claim Bar Date. Objections to such requests must be filed and served on the Debtors and the requesting party by the later of (i) thirty (30) days after the Effective Date and (ii) thirty (30) days after the Filing of the applicable request for payment of the Section 503(b)(9) Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Code and prior Court orders, the Allowed amounts, if any, of Section 503(b)(9) Claims shall be determined by, and satisfied in accordance with an order of, the Court.

Holders of Section 503(b)(9) Claims that are required to file and serve a request for such payment of such Section 503(b)(9) Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Section 503(b)(9) Claims against the Debtors, or their property, and such Section 503(b)(9) Claims

shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or any action by the Court.

2.3. Professional Fee Claims.

2.3.1. Final Fee Applications and Payment of Professional Fee Claims. All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served on the Debtors, the U.S. Trustee and their counsel no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the U.S. Trustee, Debtors and their counsel, and the requesting Professional or other entity no later than twenty-one (21) days (or such longer period as may be allowed by order of the Court) after the date on which the applicable application for compensation or reimbursement was served. The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Court. Debtors shall pay Professional Fee Claims in Cash in the amount the Court allows by Final Order.

2.3.2. Post-Effective Date Fees and Expenses. Except as otherwise specifically provided in the Plan, from and after the Effective Date, Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation. Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331, 363, and 1103 of the Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice, action, order, or approval of the Court.

2.4. Priority Tax Claims.

2.4.1. Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor against which such Allowed Priority Tax Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, treatment in a manner consistent with Section 1129(a)(9)(C) of the Code and paid in full through regular Cash payments, including interest at the Applicable Rate, over a period not exceeding five (5) years from the Petition Date of a value, as of the Effective Date, equal to the Allowed amount of such Claim.

2.4.2. Special Provisions Regarding Comptroller Tax Claims. Notwithstanding anything in the Plan or Confirmation Order to the contrary, the following provisions shall govern the treatment of the claims of the Comptroller: (1) nothing in the Plan or Confirmation Order shall affect or impair the Comptroller's statutory or common law setoff rights in accordance with 11 U.S.C. § 553; (2) nothing in the Plan or Confirmation Order shall affect or impair the Comptroller's rights to pursue any non-debtor third parties for any tax debts or claims; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's administrative expense tax claims; (4) to the extent that interest is payable on any

administrative expense, priority or secured tax claim of the Comptroller, the applicable interest rate shall be the statutory rate, currently 7.75% per annum; and (5) the Comptroller is not required to file a motion or application for payment of administrative expense claims; such claims are allowed upon filing, subject only to objection on substantive grounds.

Priority tax claims owed to the Comptroller shall be paid in full (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty (60) months of the Petition Date; or (3) as otherwise agreed to by the Comptroller. Interest on the Comptroller's priority tax claims shall accrue interest at the statutory rate, currently 7.75% per annum, from the Effective Date until paid in full.

Should the Reorganized Debtor fail to make any payments as required in the Plan, the Comptroller shall provide written notice of that default and send written notice to Reorganized Debtor's counsel advising of that default and providing the Reorganized Debtor with a period of ten (10) days to cure the default. If the default is not cured within ten (10) days, the Comptroller may, without further order of this Court, pursue all of its rights and remedies available to it under applicable non-bankruptcy law to collect the full amounts of all taxes, penalties, and interest owed. The Reorganized Debtor shall be entitled to no more than two (2) Notices of Default. In the event of a third (3rd) default, the Comptroller may pursue all rights and remedies available to it under applicable non-bankruptcy law without further order of the Court.

## ARTICLE III.
## CLASSIFICATION

For clarity, as described below, the Cases are being substantively consolidated and, except for Classes with subclasses where expressly indicated, each Class will be funded with assets pertaining to Express. For avoidance of any doubt, creditors for both Debtors will be paid with assets of Express. Subject to the foregoing, Claims and Interests shall be classified as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Other Secured Claims | Impaired | Entitled to Vote |
| Class 4 | Compass Secured Claim | Impaired | Entitled to Vote |
| Class 5 | PNC Secured Claim | Impaired | Entitled to Vote |
| Class 6 | Wells Fargo Secured Claim | Impaired | Entitled to Vote |
| Class 7 | Huntington Secured Claim | Impaired | Entitled to Vote |
| Class 8 | M&T Secured Claim | Impaired | Entitled to Vote |

| | | | |
|---|---|---|---|
| Class 9 | Unsecured Claims | Impaired | Entitled to Vote |
| Class 10 | Covered Personal Injury Claims | Impaired | Entitled to Vote |
| Class 11 | Plan Sponsor Subordinated Unsecured Claim | Impaired | Entitled to Vote |
| Class 12 | Equity Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

## ARTICLE IV.
## TREATMENT

Claims against the Debtors and Interests in the Debtors shall receive the following treatment:

4.1. Class 1 (Other Priority Claims). Class 1 consists of any Allowed Other Priority Claims against the respective Debtor. Each Holder of a Class 1 Claim will be paid on the later of: (i) the Effective Date or as soon as practicable thereafter or (ii) if such Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Claim becomes a Final Order, or as soon as reasonably practicable thereafter. Except to the extent that a Holder of a Class 1 Claim and the Debtor agree to less favorable treatment for such Holder, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for of such Claim, one of the following treatments, in the sole discretion of the Debtor: (i) full payment in Cash of its Allowed Priority Claim or (ii) treatment of its Allowed Priority Claim consistent with the provisions of section 1129(a)(9) of the Code. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such Holders will not be solicited.

4.2. Class 2 (Secured Tax Claims). Class 2 consists of any Allowed Secured Tax Claims against the Debtors. Except to the extent that a Holder of an Allowed Secured Tax Claim and the Debtor against which such Allowed Secured Tax Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Tax Claim, treatment in a manner consistent with Section 1129(a)(9)(D) of the Code and paid in full through regular Cash payments, including interest at the Applicable Rate, over a period not exceeding five (5) years from the Petition Date of a value, as of the Effective Date, equal to the Allowed amount of such Claim. Allowed Secured Tax Claims shall retain their Liens. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such Holders will not be solicited.

4.3. Class 3 (Other Secured Claims). Class 3 consists of any Allowed Other Secured Claims against the Debtors. Except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Other Secured Claim, shall receive the collateral securing its Allowed

Other Secured Claim on the Effective Date or as soon after the Effective Date as practicable. Upon sale of any such collateral, such Allowed Other Secured Claim shall reduce its Claim by the amount received from any such sale and will then be permitted to file an amended Claim based upon any alleged deficiency remaining following such sale, which will be an Allowed Unsecured Claim subject to treatment under Class 9, unless Debtors object to the same pursuant to § 8.4 of the Plan. Such Claims for deficiency, if any, shall be filed within forty-five (45) of the later of (i) the Effective Date or (ii) the date of Debtors' surrender of the collateral (the "Deficiency Claims"). For avoidance of doubt, initially, the *pro rata* distribution to Deficiency Claims will be calculated based on the Debtors' estimate of the same. Thereafter, the *pro rata* distribution will then be calculated based on the asserted deficiency pursuant to an amended claim, if any. The Holders of Claims in Class 3 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.4. Class 4 (Compass Secured Claim). Class 4 consists of the Secured Claim of Compass against Debtors. Except to the extent that a Holder of a Class 4 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 4 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 4 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, PNC and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Compass Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate, over a period not exceeding 2.5 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $550,000.00. The remainder of the Compass Claim will be treated as a Class 9 Unsecured Claim and will be paid as part of Class 9. Compass shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan. The Holders of Claims in Class 4 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.5. Class 5 (PNC Secured Claim). Class 5 consists of the Secured Claim of PNC against Debtors. Except to the extent that a Holder of a Class 5 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 5 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 5 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, Compass and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in section 1129(b)(2)(A) of the Code, the remainder of the PNC Secured Claim will be paid in full through regular cash payments, including interest at the applicable rate, over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling to approximately $4,800,000.00. Should PNC consent to treatment under this Class 5, PNC shall retain its Lien on its collateral but shall agree not to foreclose on its collateral pending a default under the terms of the Plan. In the alternative, if PNC does not consent to treatment under this Class 5, PNC will be treated as a Class 3 Other Secured Claim, such that

PNC shall receive its collateral and be entitled to an Unsecured Deficiency Claim as provided for thereunder. The Holders of Claims in Class 5 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.6. <u>Class 6 (Wells Fargo Secured Claim)</u>. Class 6 consists of the Secured Claim of Wells Fargo against Debtors. Except to the extent that a Holder of a Class 6 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 6 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 6 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Compass, PNC and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Wells Fargo Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate and inclusive of any adequate protection payments provided for in the Debtors' and Wells Fargo's stipulation concerning Wells Fargo's *Motion for Relief from Automatic Stay* [Docket No. 438], over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $328,000.00. Wells Fargo shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan. The Holders of Claims in Class 6 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.7. <u>Class 7 (Huntington Secured Claim)</u>. Class 7 consists of the Secured Claim of Huntington against Debtors. Except to the extent that a Holder of a Class 7 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 7 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 7 Claim, first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, Compass and PNC following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Huntington Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate, over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $157,000.00. Huntington shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan. The Holders of Claims in Class 7 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.8. <u>Class 8 (M&T Secured Claim)</u>. Class 8 consists of the Allowed Secured Claim of M&T against the Debtors. Except to the extent that a Holder of a Class 8 Claim and the Debtors agree to less favorable treatment, each Holder of a Class 8 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Class 8 Claim, receive the collateral securing its Claim on the Effective Date or as soon after the Effective Date as practicable. Upon sale of any such collateral, such Claim shall reduce its Claim by the amount

received from any such sale and such Holder will then be permitted to file an amended Claim based upon any alleged deficiency remaining following such sale, which will be an Allowed Unsecured Claim subject to treatment under Class 9, unless Debtors object to the same pursuant to § 8.4 of the Plan. Such Claims for deficiency, if any, shall be filed within forty-five (45) of the later of (i) the Effective Date or (ii) the date of Debtors' surrender of the collateral (the "M&T Deficiency Claim").

M&T has estimated that the collateral securing its Claim is worth less than seventy percent (70%) of the total value of its Claim as alleged by Debtors. Accordingly, Debtors will review the M&T Deficiency Claim and create an escrow account (the "M&T Escrow") and deposit *pro rata* portions of the quarterly payments from Debtors' Net Income to Unsecured Claims under Class 9 up to the value of the M&T Deficiency Claim less the thirty percent (30%) which is being disbursed to other Allowed Unsecured deficiency claims under Class 9 *pro rata* under the Plan as though the M&T Deficiency Claim were allowed in full. For avoidance of doubt, initially, the *pro rata* distribution to Deficiency Claims, including M&T, will be calculated based on the Debtors' estimate. Thereafter, the *pro rata* distribution will then be calculated based on the asserted deficiency. If the asserted deficiency *pro rata* distribution percentage is higher than the Debtors' proposed distribution percentage, M&T will receive a payment based on the Debtors' proposed distribution percentage and the difference between the Debtors' proposed distribution percentage and the M&T Deficiency percentage will be held in the M&T Escrow. Each other member of the Class 3 Deficiency Claims will receive distributions based on the lesser of the calculated *pro rata* distribution. Upon M&T's sale of the collateral under § 4.8 of the Plan, one of the following will occur with respect to the M&T Escrow:

(a) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount lower than the M&T Deficiency Claim, notwithstanding the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the actual deficiency remaining following the sale of the M&T collateral, with the remaining funds in the M&T Escrow paid towards to the GUC Recovery and other Allowed Unsecured Claims under § 4.9 of the Plan;

(b) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount that equals the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the M&T Deficiency Claim; or

(c) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount higher than the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the M&T Deficiency Claim, and will then be paid any remaining deficiency from the GUC Recovery as part of Class 9.

The Holders of Claims in Class 8 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.9. Class 9 (Unsecured Claims). Class 9 consists of any Allowed Unsecured Claims against the Debtors. Except to the extent that a Holder of a Class 9 Claim and the Debtors agree to less favorable treatment for such Holder, each Holder of an Allowed Unsecured Claim shall

receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Claim, its Pro Rata share of the GUC Recovery, less any applicable payments to Allowed Administrative Claims under § 2.1, from up to seventy percent (70%) of Debtors' Net Income and proceeds from the Litigation Trust Assets, if any. Payments to Allowed Unsecured Claims under Class 9 will occur at the end of each quarter following the Effective Date. Allowed Unsecured Claims in this Class 9 shall accrue interest at 5% per annum. For avoidance of any doubt, the quarterly payments described in this § 4.9 shall be capped at seventy percent (70%) of Debtors' Net Income for each period. Further, while the Debtors forecast that payment from the GUC Recovery will result in Holders of Claims in Class 9 being paid in full with interest once all collateral is appropriately valued and sold, if Debtors' forecast is incorrect, Debtors are asking Holders of Class 9 Claims to consent to payment of up to seventy percent (70%) of Debtors' Net Income under the GUC Recovery. The Holders of Claims in Class 9 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.10. Class 10 (Covered Personal Injury Claims). Class 10 consists of the Covered Personal Injury Claims as against the Debtors. Except to the extent that a Holder of a Covered Personal Injury Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Claim, on the Effective Date, the automatic stay and the injunction imposed by the Plan, as applicable, shall be modified on a limited basis, solely to permit each Holder of a Covered Personal Injury Claim to continue or commence an action in state or federal court against the Debtors in order to determine whether the Debtors have any liability on account of such Covered Personal Injury Claim and, if so, the amount of such Covered Personal Injury Claim as of the Petition Date, with the defense and settlement of such claims controlled exclusively by the applicable Insurer(s) under the terms of the applicable Insurance Policies.

In the event there is a final settlement or final, non-appealable judgment of a Covered Personal Injury Claim, such Covered Personal Injury Claim shall be Allowed under the Plan, up to the amount of coverage available for said Claim under any applicable Insurance Policies as set forth below. All settlements must have the consent of the applicable Insurer(s). After the adjudication or settlement of all Covered Personal Injury Claims, each holder of an Allowed Covered Personal Injury Claim shall receive:

(i) if the aggregate amount of Allowed Personal Injury Claims is greater than the remaining available insurance limits under the applicable Insurance Policies (i.e., remaining limits less defense costs), their pro rata share of the total coverage available under the Debtors' Insurance Policies, or, if the aggregate amount of Allowed Covered Personal Injury Claims is less than the remaining available insurance limits under the applicable Insurance Policies (i.e., remaining limits net of defense costs), 100% of their Allowed Covered Personal Injury Claim, which, in either event, shall be paid directly by the applicable Insurer(s) under the applicable Insurance Policies to the Holder of an Allowed Covered Personal Injury Claim; *provided* that under no circumstances shall a Holder receive more than 100% of the Allowed amount of such Holder's Allowed Personal Injury Claim as of the Petition Date or postpetition interest on such Claim, and

(ii) standing to pursue any cause of action of the Debtors against Insurer for non-payment of the foregoing treatment.

For the avoidance of doubt, if the aggregate amount of Allowed Covered Personal Injury Claims exceeds the available insurance proceeds under the applicable Insurance Policies, no Insurer shall be required to fund any amount in excess of the limits of the applicable Insurance Policy; and if the aggregate amount of Allowed Covered Personal Injury Claims is less than the available insurance proceeds under the applicable Insurance Policy, no Insurer shall be required to fund any amount in excess of the aggregate amount of the Allowed Covered Personal Injury Claims.

Some of the Covered Personal Injury Claims are fully insured, and no deductible or self-insured retention amount would be payable by the Debtors under the terms of the applicable Insurance Policy. As to other Covered Personal Injury Claims, the Debtors may owe deductibles or self-insured retention amounts. The Debtors shall not be responsible to Holders of Allowed Covered Personal Injury Claims for any deductible or self-insured retention obligations incurred prior to the Petition Date (a "Prepetition Insurance Amount"), and all Claims for such deductibles and self-insured retention obligations shall be treated as Class 9 Unsecured Claims, to the extent Allowed. Allowed Administrative Claims and/or Allowed Unsecured Claims for self-insured retention obligations incurred after the Petition Date (a "Postpetition Insurance Amount") shall satisfy such self-insured retention obligations, and Holders of such Claims may thereafter pursue recovery from Insurers.

The Holders of Claims in Class 10 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.11. Class 11 (Subordinated Unsecured Claim of Plan Sponsor). Class 11 consists of the Unsecured Claims of the Plan Sponsor as against the Debtors. On the Effective Date, the Plan Sponsor agrees to subordinate its claim and shall not receive or retain any property or distributions under the Plan on account of its Unsecured Claims until all Allowed Unsecured Claims have been paid in full. The Holders of Claims in Class 11 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4.12 Class 12 (Interests in the Debtors). Class 12 consists of the Holders of Interests in the Debtors. On the Effective Date, all Class 12 Interests shall remain in place at their prepetition priority and status. The Holders of Interests in Class 12 are Unimpaired. In accordance with Section 1126(f) of the Code, the Holders of these Interests are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such Holders will not be solicited.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1. Formation of a Litigation Trust

5.1.1. Litigation Trust Generally. The Litigation Trust will be established on the Effective Date to retain and hold all Chapter 5 Causes of Action, the proceeds of which shall be distributed Pro Rata to Holders of Allowed Unsecured Claims. On the Effective Date, the Litigation Trust

Assets shall be deemed transferred to the Litigation Trust by the Debtors and will vest in the Litigation Trust free and clear of all Liens, Claims, interests, encumbrances, etc., with all reversionary and beneficial interests in the Litigation Trust to be held by the Holders of Allowed Unsecured Claims. The sole beneficiaries of the Litigation Trust will be Holders of Allowed Unsecured Claims. The act of transferring the Litigation Trust Assets, as authorized by this Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Litigation Trust as if the asset or right was still held by the relevant Debtor. Notwithstanding anything to the contrary herein, the Litigation Trust may abandon to creditors or otherwise not accept any Chapter 5 Causes of Action that the Litigation Trustee believes, in good faith, have no value to the Litigation Trust; provided, that the Litigation Trust Agreement shall provide for the assignment by creditors to the Litigation Trust of any such Chapter 5 Causes of Action so abandoned to creditors.

Solely as relating to the Litigation Trust Assets, the Litigation Trustee, on behalf of the Litigation Trust, shall step into the shoes of the Debtors as it relates to either communications that occurred prior to, or documents prepared before, the Petition Date with respect to Debtors' right to assert attorney-client privilege or any other privilege or immunity Debtors possess, if any, and the Litigation Trustee shall be entitled to preserve, assert, access, or waive such privilege or immunity of the Debtors as it relates to such documents or communications. On the Effective Date, the Litigation Trustee shall have the power, right and responsibility to access or receive copies of all books, files and records of the Debtors or Reorganized Debtor, as applicable, to the extent relating to the Litigation Trust Assets for purposes of carrying out the purpose of the Litigation Trust. At any time after the Effective Date, upon reasonable request of the Litigation Trustee, the Reorganized Debtor shall provide the Litigation Trustee with copies of the Debtors' or the Reorganized Debtor's books, records, and files in their possession, custody, or control, and the Reorganized Debtor may, in good faith, provide such privileged information of the Debtors as is in their possession that relates to the evaluation and prosecution of the Chapter 5 Causes of Action. Following the Effective Date, the Litigation Trust and the Litigation Trustee shall be deemed a party in interest with standing to appear in the Cases and object to any pleadings Filed thereafter; provided, however, such standing and right to object does not alter the respective rights or responsibilities of the Litigation Trustee or the Reorganized Debtors under the Plan, or the Litigation Trust Agreement, alter any governing approval standard under applicable law, or otherwise limit the ability of any party with standing to respond to pleadings Filed, or objections raised, by the Litigation Trustee.

5.1.2. Litigation Trustee. The Litigation Trustee shall be an independent, third-party fiduciary selected by the Debtors and identified in the Plan Supplement, and shall be compensated at market rates; provided, that, for the avoidance of doubt, the Litigation Trustee shall have no affiliation with either Debtor and may not own any Claim, including Allowed Administrative Claims and Allowed Unsecured Claims, or other Interests in or Securities issued by either of the Debtors. The Litigation Trustee shall have the sole authority to make decisions and take action with respect to the Litigation Trust Assets, and shall have a duty to maximize the value of the assets of the Litigation Trust in accordance with the Litigation Trust Agreement. The Litigation Trustee shall confer with the Reorganized Debtor with respect to the commencement of any litigation in respect of such assets, provided that the ultimate decision with respect to whether to commence any litigation shall be in the sole discretion of the Litigation Trustee. For the avoidance of doubt, in exercising such sole discretion, the Litigation Trustee shall consider and may take

such actions in connection with the exercise of such sole discretion that promote the greatest recovery to the holders of Allowed Unsecured Claims. The Litigation Trustee shall seek Court approval, after notice and an opportunity for a hearing, of (a) any settlements with respect to the Chapter 5 Causes of Action, and (b) any other transaction with respect to any assets of the Litigation Trust, in each case, that has an economic value of $100,000.00 or more (in the Litigation Trustee's good faith determination) as of the date of such transaction.

The Litigation Trustee shall use the Initial Litigation Trust Funding Amount to fund all expenses related to its duties under this Plan and the Litigation Trust Agreement. Thereafter, and beginning on the first month following the Effective Date, the Litigation Trust and the Litigation Trustee will be paid the Monthly Litigation Trust Funding Amount to fund expenses related to their duties under the Plan and the Litigation Trust Agreement. The Litigation Trust and the Litigation Trustee may also use proceeds from monetizing the Chapter 5 Causes of Action to fund the reasonable and customary out-of-pocket expenses incurred by the Litigation Trust and Litigation Trustee. Beginning on the Effective Date, the Litigation Trustee shall have customary powers, including the power to employ (without further order of the Bankruptcy Court) professionals (including professionals previously engaged in the Cases), employees, or other independent contractors to assist in carrying out its duties under this Plan, including the Litigation Trust Agreement, and may compensate and reimburse the expenses of these professionals, employees, or other independent contractors based upon the nature of the work performed by such parties without further order of the Court, subject to any limitations and procedures established by the Litigation Trust Agreement.

5.1.3. Reports to Be Filed by the Litigation Trust. Following the Effective Date, and unless otherwise ordered by the Court, and during the existence of the Litigation Trust, the Litigation Trust shall File with the Court (and provide to any other party entitled to receive any such report pursuant to the Litigation Trust Agreement), within 90 days after the end of each calendar year during the term of the Litigation Trust, and within 45 days after the end of each calendar quarter during the term of the Litigation Trust (other than the fourth quarter), a quarterly report regarding the administration of property subject to its ownership and control pursuant to this Plan, receipts, distributions made by it, an update regarding the status of the Chapter 5 Causes of Action being prosecuted by the Litigation Trust, and a summary of all major activities during the period.

5.1.4. Termination of the Litigation Trust. The initial term of the Litigation Trust shall be the lesser of: (a) three years; (b) the date all Holders of Allowed Unsecured Claims receive the full amount to which they are entitled to pursuant to this Plan; and (c) the date that all Chapter 5 Causes of Action have been fully resolved, as reasonably determined by the Litigation Trustee in its sole determination; provided, however, that, subject to applicable law, the Litigation Trustee may extend the term of the Litigation Trust solely in the event termination would otherwise occur under subsection (a) of this paragraph by Filing a motion with the Court prior to the expiration of the initial term and obtaining court approval of such extension, with a maximum extension of two (2) years per request (subject, in each instance, to reasonable consideration being given to implications of tax law and other applicable law of a proposed extension of the term of the Litigation Trust). For the avoidance of doubt, no later than the termination of the Litigation Trust, the Litigation Trustee shall transfer all of the net proceeds realized from the Litigation Trust's assets Pro Rata to Allowed Unsecured Claims. Any (i) remaining Chapter 5 Causes of Action and (ii) remaining portions of the Initial Litigation Trust Funding Amount or Monthly Litigation Trust Funding

Amounts shall revert to the Reorganized Debtor upon termination of the Litigation Trust. Notwithstanding the foregoing, and for the avoidance of doubt, nothing in this Plan (or the Plan Supplement, as applicable) shall prohibit the Litigation Trustee from making interim transfers of Cash realized by the Litigation Trust to holders of Allowed Unsecured Claims in accordance with this Plan.

5.1.5. Litigation Trustee Monitoring of Reorganized Debtor. Notwithstanding any request for information by the Litigation Trustee under § 5.1.1 of this Plan, the Reorganized Debtor shall also agree to provide a quarterly report to the Litigation Trust regarding the Reorganized Debtor's operations and finances for the preceding quarter. The Litigation Trustee shall also assist with any distributions and payments made under the Plan by the Reorganized Debtor, in addition to those for which it is responsible under the Litigation Trust Agreement and as stated herein.

5.2. Substantive Consolidation. Except as otherwise provided in this Plan, each Debtor shall continue to maintain its separate corporate existence after the Effective Date for all purposes other than the treatment of Claims under this Plan. Except as expressly provided in this Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date: (a) all Plan payments and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under this Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of the other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by either Debtor and any joint or several liability of either of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in either of the Cases shall be treated as filed against the consolidated Debtors and shall be treated as one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to either of the Debtors may be set off against the debts of the other Debtor. Such substantive consolidation shall not (other than for purposes relating to this Plan) affect the legal and corporate structures of the Reorganized Debtor. Moreover, such substantive consolidation shall not affect any subordination provisions set forth in any agreement relating to any Claim or Interest or the ability of the Reorganized Debtor to seek to have any Claim or Interest subordinated in accordance with any contractual rights or equitable principles. For the avoidance of doubt, any Secured Claim shall remain secured only to the extent and solely to the extent validly asserted against the collateral securing such Secured Claim and this substantive consolidation shall not affect the security interests of any Holder of any Secured Claim.

5.3. Sources of Plan Distributions. Distributions under the Plan shall be funded with: (1) Cash on hand; (2) assumption of Exit Facility; (3) the Initial Plan Payment; (4) the proceeds from any recovery by the Litigation Trust; and (5) the proceeds of Debtors' operations.

5.4. Cancellation of Existing Agreements. On the Effective Date, all notes, instruments, and other documents evidencing Claims, including credit agreements and indentures, shall be cancelled and the obligations of the Debtors relating to such instruments shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled

instruments and other documentation will have no rights arising from or relating to such instruments and other documentation, except the rights provided for pursuant to the Plan.

5.5. Corporate Action. On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtors and any corporate action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors. As applicable, on or prior to the Effective Date, the appropriate officers of the Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to give effect to the transactions contemplated under the Plan). The authorizations and approvals contemplated by Article V of the Plan shall beeffective notwithstanding any requirements under non-bankruptcy law.

5.6. Directors and Officers of Reorganized Debtor. As of the Effective Date, the managers, managing members, and officers of the Debtors existing on the Petition Date shall be reinstated and continue in such roles for the Reorganized Debtor in the same capacity and same manner as existing on the Petition Date. On and after the Effective Date, the managers and managing members of the Reorganized Debtor shall consist of those entities and individuals serving in those roles on the Petition Date. The managers include the following individual: Zlatan Karic. The officer of the Reorganized Debtor shall be Zlatan Karic, as President. Mr. Karic will continue to receive an annual salary as compensation for his role as the Reorganized Debtor's President. Andrej Karic, the Plan Sponsor's son, will also continue to receive an annual salary as compensation for his role as an employee of the Reorganized Debtor. To the extent applicable and not previously disclosed in this Plan, if any such director or officer is an "insider" as defined in section 101(31) of the Bankruptcy Code, the nature of any compensation to be paid to such director or officer, if any, will also be disclosed to the extent required under the Bankruptcy Code. If necessary, the Organizational Documents will provide that subsequent managers of the Reorganized Debtor will be elected by the members holding a majority of the equity Interests in the Reorganized Debtor.

5.7. Effectuating Documents; Further Transactions. On and after the Effective Date, the Reorganized Debtor, and the officers and members of the board of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan (collectively, a "Restructuring Transaction") in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

5.8. Section 1146 Exemption. To the fullest extent permitted by Section 1146(a) of the Code, any transfers (whether from the Debtors to the Reorganized Debtor or any other Person) of property under the Plan or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, equity interest, or other interest in the Debtors; (ii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in

connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Section 1146(c) of the Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.9. <u>Retained Causes of Action.</u> Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b)(3) of the Code, the Debtors or the Litigation Trust, as applicable, shall have the exclusive right, authority, and discretion to (without further order of the Court) determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw, or litigate to judgment any and all Causes of Action that the Debtors or Estates may hold against any Entity, whether arising before or after the Petition Date, including, without limitation, all Causes of Action listed on the Schedule of Retained Causes of Action, except the Litigation Trust shall have the exclusive rights described herein with respect to the Chapter 5 Causes of Action until such time as the Litigation Trust is terminated. The Debtors and/or Litigation Trust reserve and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Cases.

Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order of the Court, the Debtors and/or Litigation Trust, as applicable, expressly reserve such Cause of Action (including any counterclaims) for later adjudication by the Court. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action (including counterclaims) by virtue of Confirmation of the Plan.

## ARTICLE VI.
## EXECUTORY CONTRACTS

6.1. <u>Assumption and Rejection of Executory Contracts and Unexpired Leases.</u> On the Effective Date, except as otherwise provided in this Plan, all Executory Contracts or Unexpired Leases (i) not included in the Schedule of Assumed Contracts and Leases; (ii) included in the Schedule of Rejected Contracts and Leases, (iii) not previously assumed by the Debtors by Final Order of the Court, or (iv) not included in a motion to assume pending on the Confirmation Date, will be deemed rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Code.

Such automatic rejection shall be effective without the need for any further notice to or action, order, or approval of the Court, in accordance with the provisions and requirements of Sections 365 and 1123 of the Code, other than any Executory Contracts and/or Unexpired Leases that: (i) have been previously assumed, assumed and assigned, or rejected pursuant to a Court order; (ii) are the subject of a motion to assume, assume and assign, or reject such Executory Contract or Unexpired Leases (or of a filed objection with respect to the proposed assumption, assumption and assignment, or rejection of such Executory Contract or Unexpired Leases) that is pending on the Effective Date; or (iii) are a contract, release, or other agreement or document entered into in connection with the Plan or the sale of the Debtors' assets pursuant to the Sale Orders. Entry of the Confirmation Order shall constitute an order of the Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts and/or Unexpired Leases as set forth in this Plan or the Schedule of Assumed Contracts and Leases or Schedule of Rejected Contracts and Leases, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth in this Plan, assumptions or rejections of Executory Contracts and/or Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Any motions to assume or reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date by a Final Order. Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Contracts and Leases and Schedule of Rejected Contracts and Leases at any time through and including the Effective Date.

6.2. Pass-Through. Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the operation of the Reorganized Debtor's businesses, but not otherwise addressed as a Claim or Interest or assumed under Article V of the Plan, including nonexclusive or exclusive patent, trademark, copyright, or other intellectual property licenses, and other contracts not assumable under section 365(c) of the Code, shall, in the absence of any other treatment under the Plan or Confirmation Order, be passed through the Cases for the benefit of the Reorganized Debtor, provided that, notwithstanding anything to the contrary herein, any Claim thereunder shall be treated in accordance with the distribution provisions of the Plan.

6.3. Claims Based on Rejection of Executory Contracts or Unexpired Leases. Unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Court within thirty (30) days after the later of (i) the date of entry of an order of the Court (including the Confirmation Order) approving such rejection, (ii) the effective date of such rejection, (iii) the Effective Date, or (iv) the date after the Effective Date that the applicable Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease affected. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Litigation Trust, the Estates, or their property without the need for any objection by the Litigation Trust or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as Unsecured Claims and shall be treated in accordance with § 4.9 of the Plan.

6.4. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. Any Cure Claims pursuant to an Executory Contract and Unexpired Lease, as reflected on the Schedule of Assumed Contracts and Leases, shall be satisfied, pursuant to section 365(b)(1) of the Code, by payment of the Cure Amounts in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

The Debtors shall provide a Schedule of Assumed Contracts and Leases as part of the Plan Supplement.

In the event of a dispute regarding (1) the Cure Amount, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

In any case, if the Court determines that the Allowed Cure Amount with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors or the Reorganized Debtor, as applicable, will have the right to remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

Any objection regarding (1) the Cure Amounts or (2) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Code) must have been Filed with the Court by the deadline set by the Bankruptcy Court for objecting to Confirmation of the Plan. To the extent any such objection is not determined by the Court at the Confirmation Hearing, such objection may be heard and determined at a subsequent hearing. Any counterparty to an Executory Contract or Unexpired Lease of the Debtors that does not timely object to such "adequate assurance of future performance" by such deadline will be deemed to have forever released and waived any such objection.

6.5. Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases. Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, Debtors expressly reserve and do not waive any right to receive, or any continuing

obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

6.6. Reservation of Rights. Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Contracts and Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability under such Executory Contract. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

6.7. Nonoccurrence of Effective Date. In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to Section 365(d)(4) of the Code.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

7.1. Timing and Calculation of Amounts to Be Distributed. Unless otherwise provided in the Plan and/or the Litigation Trust Agreement, on the Effective Date or as soon as reasonably practicable after the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim or as soon as reasonably practicable after such date), each holder of an Allowed Claim shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII of the Plan. Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

7.2. Delivery of Distributions and Undeliverable or Unclaimed Distributions.

7.2.1. Record Date for Distribution. As of the close of business on the Distribution Record Date, the register for each of the Classes of Claims as maintained by the Debtors shall be closed, and the Debtors, or their agents, shall not be required to make any further changes in the record holders of any of the Claims. The Debtors or Litigation Trust shall have no obligation to recognize any transfer of the Claims occurring on or after the Distribution Record Date. The Debtors shall be entitled to recognize and deal for all purposes under this Plan only with those record holders stated on the Debtors' transfer ledgers as of the close of business on the Distribution Record Date to the extent applicable.

7.2.2. Delivery of Distributions in General. Except as otherwise provided in this Plan, the Debtors or the Litigation Trust, as applicable, shall make distributions to holders of Allowed Claims as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Debtors or the Litigation Trust, as applicable; provided further, however, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that holder.

7.2.3. Undeliverable Distributions and Unclaimed Property. In the event that any distribution to any holder of Allowed Claims is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtors and/or the Litigation Trust, as applicable, has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under Section 347(b) of the Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Debtors and/or Litigation Trust automatically and without need for a further order by the Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder of Claims to such property shall be discharged and forever barred.

7.2.4. De Minimis Distributions as to Allowed Class 9 Unsecured Claims. In order to avoid the disproportionate expense and inconvenience associated with making a *de minimis* distribution to the Holder of an Allowed Unsecured Claim, the Debtors and/or the Litigation Trustee, as applicable, shall not be required to make, and shall be excused from making, any initial or interim distribution to such Holder that is in the amount of less than or equal to $15.00. At the time of any final distribution to the Holders of Allowed Class 9 Unsecured Claims, all such excused distributions to such Holder shall be aggregated and, if such aggregate amount is $15.01 or more, the Debtors and/or the Litigation Trustee, as applicable, shall make a final distribution to such Holder equal to such aggregated amount.

7.2.5. Manner of Payment. All distributions to the holders of Allowed Claims under the Plan shall be made by the Debtors and/or the Litigation Trustee, as applicable. At the option of the Debtors, any Cash payment to be made under this Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

7.3. Compliance with Tax Requirements. In connection with the Plan, to the extent applicable, the Debtors and Litigation Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors and the Litigation Trust shall be authorized to take all actions necessary to comply with such withholding and reporting requirements.

7.4. No Post-Petition Interest on Claims. Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, post-petition interest shall not accrue or be paid on any pre-petition Claims against the Debtors, and no holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

7.5. Setoffs and Recoupment. Except as expressly provided in the Plan, the Debtors and the Litigation Trust may, pursuant to Section 553 of the Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Debtors and Litigation Trust may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (i) agreed in amount among the Debtors, Litigation Trust and/or holder of Allowed Claim or (ii) otherwise adjudicated by the Court or another court of competent jurisdiction; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, Litigation Trust or their successors of any and all claims, rights, and Causes of Action that the Debtors, Litigation Trust or their successors may possess against the applicable holder. In no event shall any holder of Claims against the Debtors be entitled to recoup any such Claim against any claim, right, or Cause of Action of the Debtors or the Litigation Trust, as applicable, unless such holder actually has performed such recoupment and provided notice of such recoupment in writing to the Debtors in accordance with § 13.8 of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

7.6. Claims Paid or Payable by Third Parties.

7.6.1. Claims Paid by Third Parties. The Debtors shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Litigation Trust. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or the Litigation Trust on account of such Claim, such holder shall, within fourteen (14) days of receipt of such payment, repay or return the distribution to the Debtors or Litigation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the Debtors or the Litigation Trust annualized interest at the Federal Judgment

Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

7.6.2. Claims Payable by Third Parties. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Court.

7.6.3. Applicability of Insurance Policies. Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in this Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

8.1. Claims Administration Responsibilities. Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor or Litigation Trustee, as applicable, with respect to all Claims shall have the authority to: (i) file, withdraw, or litigate to judgment, objections to Claims; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (iii) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court. After the Effective Date, the Reorganized Debtor or Litigation Trustee, as applicable, shall have and retain any and all rights and defenses the Debtors had with respect to any Claims immediately prior to the Effective Date.

8.2. Estimation of Claims. Before or after the Effective Date, the Debtors may (but are not required to) at any time request that the Court estimate any Disputed Claim that is contingent or unliquidated pursuant to Section 502(c) of the Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at $0.00 unless otherwise ordered by the Court. In the event that the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

8.3. Adjustment to Claims without Objection. Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtor without any further notice to or action, order, or approval of the Court.

8.4. Time to File Objections to Claims. Except as otherwise specifically provided in the Plan, or as further ordered by the Court, any objections to Claims shall be filed on or before the later of (i) 180 days after the Effective Date, (ii) 30 days after the filing of a Claim for deficiency under § 4.3 of the Plan or (iii) such other period of limitation as may be specifically fixed by a Final Order of the Court for objecting to such claims.

8.5. Disallowance of Claims. Except as otherwise specifically provided in the Plan, any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Code, or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Code, shall be deemed Disallowed pursuant to Section 502(d) of the Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as any objection to those Claims have been settled or a Court order with respect to such Claim has been entered. Except as provided in this Plan or otherwise agreed, any and all (i) scheduled contingent, unliquidated and/or disputed Claims for which a timely Proof of Claim was not filed by the applicable Claims Bar Date and (ii) Proofs of Claim filed after the applicable Claims Bar Date shall both be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Court, and holders of such Claims may not receive any distributions on account of such Claims unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.

8.6. Amendments to Claims. On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Court or Reorganized Debtor or except as provided for under this Plan, and any such unauthorized new or amended Claim filed shall be deemed Disallowed in full and expunged without any further action; provided, however, that Governmental Units shall not be required to obtain authorization of the Court or Reorganized Debtor to file or amend a Proof of Claim prior to the Claims Bar Date applicable to Governmental Units pursuant to Section 502(b)(9) of the Code.

8.7. No Distributions Pending Allowance. If an objection to a Claim or portion of a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.8. Distributions After Allowance. To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. No later than ten (10) days after the date on which an order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtor or Litigation Trust, as applicable, shall provide to the Holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless otherwise required under the Plan or applicable bankruptcy law.

## ARTICLE IX.
## SETTLEMENT, DISCHARGE, AND RELEASE

9.1. Compromise and Settlement. Pursuant to Section 1123 of the Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan (collectively, the "Plan Settlement"). The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and are fair, equitable, and within the range of reasonableness. The provisions of the Plan are mutually dependent and non-severable.

9.2. Incorporation of Compromise and Settlement with Zuza. The *Order Granting Debtors' Amended Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Docket No. 443] and corresponding Zuza Settlement Agreement are expressly incorporated into this Plan.

9.3. Release of Liens.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, ON THE EFFECTIVE DATE AND CONCURRENTLY WITH THE APPLICABLE DISTRIBUTIONS MADE PURSUANT TO THE PLAN AND, IN THE CASE OF A SECURED CLAIM, SATISFACTION IN FULL OF THE PORTION OF THE SECURED CLAIM THAT IS ALLOWED AS OF THE EFFECTIVE DATE, EXCEPT FOR OTHER SECURED CLAIMS THAT THE DEBTORS ELECT TO REINSTATE IN ACCORDANCE WITH ARTICLE IV OF THIS PLAN, ALL MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS AGAINST ANY PROPERTY OF THE ESTATES SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL OF THE RIGHT, TITLE, AND INTEREST OF ANY HOLDER OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS SHALL REVERT TO THE DEBTORS AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS. ON AND AFTER THE EFFECTIVE DATE, ANY HOLDER OF SUCH SECURED CLAIM (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AT THE EXPENSE OF THE DEBTORS, SHALL BE AUTHORIZED AND DIRECTED TO RELEASE ANY COLLATERAL OR OTHER PROPERTY OF THE DEBTORS HELD BY SUCH HOLDER (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AND TO TAKE SUCH ACTIONS AS MAY BE REASONABLY REQUESTED BY THE DEBTORS TO EVIDENCE THE RELEASE OF SUCH LIEN, INCLUDING THE EXECUTION, DELIVERY, AND FILING OR RECORDING OF SUCH RELEASES. THE PRESENTATION OR FILING OF THE CONFIRMATION ORDER TO OR WITH ANY FEDERAL, STATE, PROVINCIAL,**

**LOCAL AGENCY OR DEPARTMENT SHALL CONSTITUTE GOOD AND SUFFICIENT EVIDENCE OF, BUT SHALL NOT BE REQUIRED TO EFFECT, THE TERMINATION OF SUCH LIENS.**

**WITHOUT LIMITING THE AUTOMATIC RELEASE PROVISIONS OF THE IMMEDIATELY PRECEDING PARAGRAPH: (i) EXCEPT AS OTHERWISE PROVIDED IN ARTICLE IV OF THE PLAN, NO OTHER DISTRIBUTION UNDER THIS PLAN SHALL BE MADE TO OR ON BEHALF OF ANY CLAIM HOLDER UNLESS AND UNTIL SUCH HOLDER EXECUTES AND DELIVERS TO THE DEBTORS OR THE DEBTORS SUCH RELEASE OF LIENS OR OTHERWISE TURNS OVER AND RELEASES SUCH CASH, PLEDGE, OR OTHER POSSESSORY LIENS; AND (ii) ANY SUCH HOLDER THAT FAILS TO EXECUTE AND DELIVER SUCH RELEASE OF LIENS WITHIN 180 DAYS OF THE EFFECTIVE DATE SHALL BE DEEMED TO HAVE NO CLAIM AGAINST THE DEBTORS OR THEIR ASSETS OR PROPERTY IN RESPECT OF SUCH CLAIM AND SHALL NOT PARTICIPATE IN ANY DISTRIBUTION UNDER THIS PLAN.**

9.4. Releases by the Debtors.

**PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES ARE EACH DEEMED RELEASED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTOR, AND THEIR ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, FROM ANY AND ALL CAUSES OF ACTION INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THAT THE DEBTORS, THE REORGANIZED DEBTOR, OR THE DEBTORS' ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, DEBTORS OR OTHER ENTITIES, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, THE CHAPTER 11 CASES, THE PLAN, ANY RESTRUCTURING TRANSACTION, THE PLAN SETTLEMENT, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE FOREGOING RELEASE DOES NOT RELEASE ANY OBLIGATION OF ANY PARTY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES DESCRIBED IN THIS SECTION 9.4 BY THE DEBTORS, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE ITS FINDING THAT EACH RELEASE DESCRIBED IN THIS SECTION 9.4 IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES AND A GOOD FAITH SETTLEMENT AND COMPROMISE OF SUCH CLAIMS; (2) FAIR, EQUITABLE, AND REASONABLE; (3) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (4) A BAR TO THE DEBTOR OR REORGANIZED DEBTOR ASSERTING ANY CLAIM, CAUSE OF ACTION, OR LIABILITY RELATED THERETO, OF ANY KIND WHATSOEVER, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.**

9.5. Exculpation.

**THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST, FOR ANY ACT, EVENT, OR OMISSION FROM THE PETITION DATE TO THE EFFECTIVE DATE IN CONNECTION WITH OR ARISING OUT OF THE CASE, THE CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN OR THE ASSETS AND PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN (INCLUDING UNCLAIMED PROPERTY UNDER THE PLAN), UNLESS SUCH ENTITY'S ACTION IS DETERMINED AS (i) BAD FAITH; (ii) ACTUAL FRAUD; (iii) WILLFUL MISCONDUCT; OR (iv) GROSS NEGLIGENCE, IN EACH CASE BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. EACH ENTITY MAY REASONABLY RELY UPON THE OPINIONS OF ITS COUNSEL, CERTIFIED PUBLIC ACCOUNTANTS, AND OTHER EXPERTS OR PROFESSIONALS. FOR THE AVOIDANCE OF DOUBT, THE EXCULPATION IN THIS § 9.5 SHALL NOT APPLY TO ANY ACTIONS TAKEN PRIOR TO THE PETITION DATE. THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING THE PARTIES EXCULPATED IN THE PLAN FROM LIABILITY. NOTHING IN THIS SECTION SHALL BE DEEMED TO RELEASE OR EXCULPATE ANY PARTY FROM ANY CAUSES OF ACTION.**

9.6. Injunction.

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR ANY OTHER ORDER ENTERED PREVIOUSLY BY THE BANKRUPTCY COURT WITH RESPECT TO A COMPROMISE, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS ARE PERMANENTLY ENJOINED, ON AND AFTER CONFIRMATION DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTEGRATED AFTER THE EFFECTIVE DATE, FROM (i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, LITIGATION TRUST OR LITIGATION TRUST ASSETS WITH RESPECT TO**

**ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS; (ii) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, LITIGATION TRUST OR LITIGATION TRUST ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS; (iii) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LITIGATION TRUST, OR THEIR ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS; AND (iv) ASSERTING ANY RIGHT OF SETOFF, RECOUPMENT OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS, THE LITIGATION TRUST, OR THEIR ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS. THE FOREGOING INJUNCTION WILL EXTEND TO SUCCESSORS OF THE DEBTORS AND LITIGATION TRUST AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN THE PROPERTY.**

9.7. Protections Against Discriminatory Treatment.

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, have been insolvent before the commencement of the Cases (or during the Cases but before the Debtors are granted or denied a discharge), or have not paid a debt that is dischargeable in the Cases.

9.8. Document Retention.

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with its standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor, subject to the requirements of this Plan and the Litigation Trust Agreement, as applicable.

9.9. Reimbursement or Contribution. If the Court disallows a Claim for reimbursement or contribution of an Entity pursuant to Section 502(e)(1)(B) of the Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding Section 502(j) of the Code unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the relevant holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

9.10. Section 524(e). Regardless of anything to the contrary in this Plan nothing in the release provisions in this Plan shall operate as a third-party discharge or affect the liability of any non-debtor party in contravention of 11 U.S.C. § 524(e).

**ARTICLE X.**
**CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

10.1. Conditions Precedent to Confirmation. The following are conditions precedent to confirmation of the Plan that shall be satisfied or waived in writing in accordance with § 10.3 of the Plan:

10.1.1. The Court shall have approved a Disclosure Statement with respect to the Plan in form and substance acceptable to the Debtors; and

10.1.2. the Confirmation Order, Plan, Litigation Trust Agreement, and Plan Documents shall be in form and substance acceptable to the Debtors.

10.2. Conditions Precedent to Effectiveness. The following are conditions precedent to the occurrence of the "Effective Date," which shall be the date upon which each of the following shall be satisfied or waived in writing in accordance with § 10.3 of the Plan:

10.2.1. The Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors; and the Confirmation Order shall be a Final Order and shall not (i) have been reversed or vacated or (ii) be subject to a then-effective stay;

10.2.2. The Litigation Trust Agreement and related documents shall have been in place, effective, and filed where required; and

10.2.3. The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan.

10.3. Waiver of Conditions. The conditions to Confirmation and the Effective Date set forth in this Article X may be waived only with the prior written consent of the Debtors without notice, leave, or order of the Court or any formal action other than proceedings to confirm or consummate the Plan.

10.4. Effect of Failure of Conditions. If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by the Debtors, Claims, or Interests; (ii) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity.

## ARTICLE XI.
## RETENTION OF COURT JURISDICTION

11.1. <u>Retention of Court Jurisdiction.</u> Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain jurisdiction over all matters arising in, arising under, or related to, the Debtors' Cases including matters concerning and related to, among other things, the following purposes:

11.1.1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

11.1.2. Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Code or Plan;

11.1.3. Resolve any matters related to: (i) the assumption, assignment, or rejection of any executory contract or unexpired lease to which either Debtor is party or with respect to which either Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure obligations pursuant to Section 365 of the Code, or any other matter related to such Executory Contract or Unexpired Lease; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

11.1.4. Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and Litigation Trust Agreement;

11.1.5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

11.1.6. Adjudicate, decide, or resolve any and all matters related to Causes of Action;

11.1.7. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all agreements or documents created in connection with the Plan or Disclosure Statement;

11.1.8. Enter and enforce any order for the sale of property pursuant to Sections 363 or 1123 of the Code;

11.1.9. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

11.1.10. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.1.11. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases and injunctions, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

11.1.12. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions to insiders, if any;

11.1.13. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.1.14. Determine any other matters that may arise in connection with or relate to the Plan, Disclosure Statement, Confirmation Order or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or Disclosure Statement;

11.1.15. Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated in the Plan;

11.1.16. Consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Court order, including the Confirmation Order;

11.1.17. Determine requests for the payment of Claims entitled to priority pursuant to Section 507 of the Code;

11.1.18. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

11.1.19. Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Code;

11.1.20. Enforce all orders previously entered by the Court;

11.1.21. Hear any other matter not inconsistent with the Code;

11.1.22. Enter an order concluding or closing the Cases; and

11.1.23. Enforce the injunction and discharge provisions set forth in the Plan.

## ARTICLE XII.
## MODIFICATION AND REVOCATION OF THE PLAN

12.1. Immediate Binding Effect. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (as may be amended or modified), any supplement to the Plan, or the Confirmation Order shall be immediately

effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims against or Interests in the Debtors (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan) all entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each entity acquiring property under the Plan or Confirmation Order, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

12.2. Modification of the Plan. Subject to the limitations contained in this Plan, the Debtors reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XII.

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation of the Plan and prior to the Confirmation Date are approved pursuant to Section 1127(a) of the Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

12.3. Revocation or Withdrawal of the Plan. The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date or Effective Date and to file subsequent plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

13.1. Payment of Statutory Fees. All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation Hearing, shall be paid on or before the Effective Date. After the Effective Date, the Reorganized Debtor shall pay, including any outstanding U.S. Trustee fees, prior to the closing of the Case, in accordance with the Code and Bankruptcy Rules, all fees payable pursuant to Section 1930 of title 28 of the United States Code, which accrue after the Effective Date through and including the closing of any of the Case.

The Reorganized Debtor shall file timely quarterly operating reports until this case is closed, dismissed, or converted.

13.2. Governing Law. Except to the extent that the Code, the Bankruptcy Rules or other federal law is applicable or to the extent a schedule or exhibit to this Plan or instrument agreement or other document executed under the Plan provides otherwise, this Plan, the rights, duties and obligations arising under this Plan, and any claim or controversy directly or indirectly based upon or arising out of this Plan or the transactions contemplated by this Plan (whether based on contract, tort, or any other theory), including all matters of construction, validity and performance, shall be governed by and interpreted, construed, and determined in accordance with, the internal laws of the State of Texas (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).

13.3. Corporate Action. Prior to, on, and after the Effective Date, all matters provided for under the Plan that otherwise would require approval of the equity holders, members, managers or other governing Persons of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, and after the Effective Date pursuant to the applicable general corporation law of the jurisdiction in which the Debtors are organized without any requirement of further action by the shareholders or directors of the Debtors.

13.4. Severability of Plan Provisions. If, prior to Confirmation, any term or provision of this Plan is held by the Court or other court of competent jurisdiction to be invalid, void, or unenforceable, the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.5. Successors and Assigns. The Plan shall be binding on, and shall inure to the benefit of, the Debtors and their respective successors and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

13.6. Reservation of Rights. Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Court shall enter the Confirmation Order and the Effective Date shall have occurred. Neither the filing of this Plan, nor any statement or provision contained in this Plan, nor the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors prior to the Effective Date. If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Debtors are and shall be reserved in full. Any concessions or settlements reflected in this Plan, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Case shall be bound or deemed prejudiced by any such concession or settlement.

13.7. Further Assurances. The Debtors are authorized to execute, deliver, file, or record such contracts, agreements, instruments, releases and other documents and take or cause to be taken such action as may be necessary or appropriate to effectuate, implement and further evidence the terms, provisions and intent of this Plan and to consummate the transactions and transfers contemplated by the Plan.

13.8. Notice and Service of Documents. With the exception of the Debtors and the U.S. Trustee, as of the Effective Date, all parties having filed entries or notices of appearance or requests for service in the Case shall no longer be provided with notice. Any Person desiring to remain on the Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Debtors within thirty (30) days of the Effective Date. Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. Post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee's Office, counsel to the Debtors, and all persons on the Bankruptcy Rule 2002 service list.

All notices, requests, and demands required or permitted to be provided to the Debtors under the Plan shall be in writing and shall be deemed to have been duly given or made (i) when actually delivered (a) by certified mail, return receipt requested, (b) by hand delivery or (c) by U.S. mail, postage prepaid or (ii) in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

Joshua N. Eppich
Bonds Ellis Eppich Schafer Jones LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

13.9. Conflicts. To the extent any provision of the Disclosure Statement or any instrument, document, or agreement executed in connection with the Plan or Confirmation Order (or any exhibits, schedules, appendices, supplements, or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.

13.10. Plan Supplement. Not later than ten (10) days prior to the Confirmation Hearing, the Debtors shall file with the Court any supplement to the Plan (the "Plan Supplement"), which shall include the Exhibits identified in this Plan and any other such agreements and documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.11. Determination of Tax Liability. The Debtors are authorized, but not required, to request an expedited determination under Section 505(b) of the Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

13.12. Post-Effective Date Fees and Expenses. From and after the Effective Date, the Litigation Trust shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable professional fees and expenses incurred by the Reorganized Debtor or Litigation Trust, and any professionals retained by the Reorganized Debtor or Litigation Trust, related to the Consummation and to the implementation of this Plan.

13.13. Entire Agreement. This Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, which have all become merged and integrated into this Plan.

13.14. Closing of the Cases. At such time as it selects, the Reorganized Debtor may seek a final decree pursuant to Section 350 of the Code formally closing the Cases.

13.15. Change of Control Provisions. Any acceleration, vesting or similar change of control rights under any employment, benefit or other arrangements triggered by the consummation of this Plan shall be waived or otherwise cancelled under this Plan.

13.16. Votes Solicited in Good Faith. Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Code, and pursuant to Section 1125(e) of the Code, the Debtors and their affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Litigation Trust will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

13.17. Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Code.

13.18. Default. No default in the performance of this Plan shall automatically result in the termination of the Plan or constitute a revocation of the Confirmation Order. Unless otherwise specified in the Plan, if any party in interest believes that the Debtors/Reorganized Debtor are in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtors/Reorganized Debtor and counsel to the Debtors prior to filing a motion with the Court regarding the alleged noncompliance or otherwise seeking Court enforcement of the terms of this Plan.

13.19. No Admission Against Interest. Neither the filing of this Plan, the Disclosure Statement, nor any statement contained in the Plan or Disclosure Statement, is or shall be deemed an admission against interest. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained in the Plan or Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Court involving the Debtors or any of their respective former or present officers, directors, or Interest Holder.

13.20. <u>Post-Confirmation Notice.</u> Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon the U.S. Trustee, counsel for the Debtors, counsel to the Litigation Trust, and all persons on the Bankruptcy Rule 2002 service list. As of the Effective Date, any Person desiring to remain on the Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Debtors within thirty (30) days of the Effective Date. Persons who do not file a request for continued service shall be removed from the Bankruptcy Rule 2002 service list upon the Effective Date and shall be served with pleadings only where they have a direct pecuniary interest in the relief sought by the pleading.

Dated: August 5, 2026

Respectfully submitted,

**BALKAN EXPRESS, LLC**

By: *<u>/s/ Zlatan Karic</u>*
Its: President

**BALKAN LOGISTICS, LLC**

By: *<u>/s/ Zlatan Karic</u>*
Its: President

# **EXHIBIT B**

**Disclosure Statement**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **BALKAN EXPRESS, LLC, *et al.*** | § | **Case No. 25-41544** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

# DISCLOSURE STATEMENT IN SUPPORT OF THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR BALKAN EXPRESS, LLC AND ITS AFFILIATED DEBTOR

***AUGUST 5, 2026***

**BONDS ELLIS EPPICH SCHAFER JONES LLP**
Joshua N. Eppich
Texas Bar I.D. No. 24050567
Eric T. Haitz
Texas Bar I.D. No. 24101851
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: eric.haitz@bondsellis.com

Ken Green
Texas Bar I.D. 24036677
402 Heights Blvd.
Houston, Texas 77007
(713) 335-4990 telephone
(713) 335-4991 facsimile
Email: ken.green@bondsellis.com

**COUNSEL FOR THE DEBTORS**
**AND DEBTORS-IN-POSSESSION**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Balkan Express, LLC (3974), and Balkan Logistics, LLC (8202). The Debtors' mailing address is 2560 E Long Ave, Fort Worth, Texas 76137.

**THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT AS CONTAINING "ADEQUATE INFORMATION" AS DEFINED IN SECTION 1125(a) OF THE CODE FOR USE IN SOLICITATION OF ACCEPTANCES OR REJECTIONS OF A CHAPTER 11 PLAN. THE FILING AND DISSEMINATION OF THIS DISCLOSURE STATEMENT ARE NOT INTENDED TO BE, AND SHOULD NOT IN ANY WAY BE CONSTRUED AS, A SOLICITATION OF VOTES ON THE DEBTORS' PLAN , NOR SHOULD THE INFORMATION CONTAINED IN THIS PROPOSED DISCLOSURE STATEMENT BE RELIED UPON FOR ANY PURPOSE BEFORE THE COURT DETERMINES THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTORS AND THE CONDITION OF THE DEBTORS' BOOKS AND RECORDS, THAT WOULD ENABLE A HYPOTHETICAL INVESTOR OR CREDITOR OF THE RELEVANT CLASS TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN. THE DEBTORS RESERVE THE RIGHT TO AMEND OR SUPPLEMENT THIS PROPOSED DISCLOSURE STATEMENT AT ANY TIME BEFORE THE HEARING TO CONSIDER WHETHER THE SAME CONTAINS "ADEQUATE INFORMATION" AND AUTHORIZE THE SOLICITATION OF ACCEPTANCES AND REJECTIONS OF THE DEBTORS' PLAN.**

**A SEPARATE NOTICE OF HEARING WILL BE SERVED BY THE DEBTORS TO NOTIFY PARTIES IN INTEREST OF THE DATE AND TIME SCHEDULED FOR A HEARING ON THE APPROVAL OF THIS PROPOSED DISCLOSURE STATEMENT.**

## ARTICLE I. INTRODUCTION

1. The Debtors submit this Disclosure Statement for use in the solicitation of votes on the *Third Amended Joint Chapter 11 Plan of Reorganization for Balkan Express, LLC and its Affiliated Debtor* (the "**Plan**"). The Plan is annexed as **Exhibit 1** to this Disclosure Statement. Capitalized terms used in this Disclosure Statement shall have the meaning give to them in the Plan.

The following is a nonexclusive list of certain key terms in the Plan:

- Payment in full of all Allowed Administrative and Priority Claims;
- Payment in full of all Allowed Secured Claims and Secured Tax Claims;
- Forecasted payment in full of all Allowed Unsecured Claims;
- Payment from Insurance Policies for Allowed Covered Personal Injury Claims; and
- Creation of the Litigation Trust as further described in this Disclosure Statement and the Plan.

2. The sources of funding for the Plan include Cash on hand, the Net Income of the Debtor, and the Litigation Trust Assets, which will include: Chapter 5 Causes of Action and proceeds from the prosecution thereof.

3. As of the filing of this Disclosure Statement, several assets of the Debtors have been liquidated or returned to Secured lenders. In particular, the Debtors' real estate has been liquidated and will be used to pay for the Initial Plan Payment going to certain creditors and Claims, as well as a settlement payment in a significantly reduced amount to Debtors' largest creditor, discussed in more detail below. Additionally, a significant portion of the Debtors' truck and equipment collateral has or will be returned to the applicable Secured lender as part of the Plan and the overall reorganization process.

4. If the Plan is approved, the Debtors intend to fund the Plan and distributions to Holders of Allowed Claims, in part, with the Initial Plan Payment to certain Allowed Secured and Administrative Claims, and thereafter, from its Net Income and proceeds from the Litigation Trust Assets.

5. This Disclosure Statement sets forth certain relevant information regarding the Debtors' pre-petition operations and financial history, the need to seek Chapter 11 protection, significant events that have occurred during the Cases, and the resultant analysis of the expected treatment of the Debtors' Creditors and Interest Holders. This Disclosure Statement also describes terms and provisions of the Plan, including certain alternatives to the Plan, certain effects of Confirmation of the Plan, certain risk factors associated with the Plan, and the manner in which distributions will be made under the Plan. Additionally, this Disclosure Statement discusses the confirmation process and the voting procedures that Holders of Claims and

Interests must follow for their votes to be counted.

6. Any capitalized term not otherwise defined in this Disclosure Statement shall have the meaning ascribed to such term in the Plan.

7. All descriptions of the Plan set forth in this Disclosure Statement are for summary purposes only. To the extent there are any inconsistencies between this Disclosure Statement and the Plan, the Plan shall control. You are encouraged to review the Plan in full.

**YOU ARE BEING SENT THIS DISCLOSURE STATEMENT BECAUSE YOU ARE A CREDITOR, SHAREHOLDER, OR OTHER PARTY IN INTEREST OF THE DEBTORS. THIS DOCUMENT DESCRIBES A CHAPTER 11 PLAN WHICH, WHEN CONFIRMED BY THE COURT, WILL GOVERN HOW YOUR CLAIM OR INTEREST WILL BE TREATED. THE DEBTORS URGE YOU TO CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND THE PLAN.**

**THE DEBTORS BELIEVE THAT ALL CREDITORS SHOULD VOTE IN FAVOR OF THE PLAN.**

## A. Summary of the Plan

8. The Debtors are proposing a plan in which Holders of Allowed Claims will be paid a percentage or portion of their Claim either on the Effective Date as set forth in the Plan or periodically over time pursuant to the specific treatment of such Class of Claims and the terms of the Litigation Trust Agreement. Distributions, as contemplated by the Plan, shall be made from the Initial Plan Payment, which consists of $500,000.00 of Debtors' Cash on hand, and thereafter, Debtors' Net Income and any proceeds from the Litigation Trust Assets as a result of prosecuting the Chapter 5 Causes of Action.

9. Under the Plan, Claims and Interests are classified, and each Class has its own treatment. The table below describes each Class of Claims and Interests, which Holders of Claims and Interests belong in each class, the treatment of each Class of Claims or Interests, and the expected recovery of each Holder of Claims or Interests in the respective class.[2]

| Class Description | Voting and Treatment |
|---|---|
| **Unclassified Claims** | |
| **Administrative Claims (excluding Professional Fee Claims and Section 503(b)(9) Claims)**<br><br>Estimated Amount: | Except to the extent that a Holder of an Allowed Administrative Claim and the Debtors agree to less favorable treatment for such Holder, each holder of an Allowed Administrative Claim (other than holders of Section 503(b)(9) Claims, Professional Fee Claims and Claims for fees and expenses pursuant to Section 1930 of Chapter 123 of Title 28 |

[2] The estimated totals are based upon the Debtors' Schedules and/or the Claims Register, unless otherwise provided.

| | |
|---|---|
| $0.00<br><br>Estimated Recovery:<br>N/A<br>(100%) | of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date, or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); or (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) at such time and upon such terms as may be agreed upon by such holder and the Debtors, including from the GUC Recovery from Debtors' Net Income prior to any distributions to Holders of Class 9 Allowed Unsecured Claims; and (iv) at such time and upon such terms as set forth in an order of the Court. |
| **Section 503(b)(9) Claims**<br><br>Estimated Amount:<br>$0.00<br><br>Estimated Recovery:<br>N/A<br>(100%) | Except to the extent that a Holder of an Allowed Section 503(b)(9) Claim and the Debtors agree to less favorable treatment for such Holder, each holder of an Allowed Section 503(b)(9) Claim will receive in full and final satisfaction of its Claim an amount of Cash from the Initial Plan Payment equal to the amount of such Claim in accordance with the following: (i) if a Section 503(b)(9) Claim is Allowed on or prior to the Effective Date, on the Effective Date, or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Section 503(b)(9) Claim is due or as soon as reasonably practicable thereafter); or (ii) if such Section 503(b)(9) Claim is not Allowed as of the date of the Effective Date, no later than ten (10) days after the date on which an order allowing such Section 503(b)(9) Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) at such time and upon such terms as may be agreed upon by such Holder and the Debtors; and (iv) at such time and upon such terms as set forth in an order of the Court. |
| **Professional Fee Claims**<br><br>Estimated Amount:<br>$400,000.00<br><br>Estimated Recovery:<br>$400,000.00<br>(100%) | Final Fee Applications and Payment of Professional Fee Claims. All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served on the Debtors, the U.S. Trustee and their counsel no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses |

| | |
|---|---|
| | must be filed and served on the U.S. Trustee, Debtors and their counsel, and the requesting Professional or other entity no later than twenty-one (21) days (or such longer period as may be allowed by order of the Court) after the date on which the applicable application for compensation or reimbursement was served. The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Court. Debtors shall pay Professional Fee Claims in Cash in the amount the Court allows by Final Order.<br><br><u>Post-Effective Date Fees and Expenses.</u> Except as otherwise specifically provided in the Plan, from and after the Effective Date, Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation. Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331, 363, and 1103 of the Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice, action, order, or approval of the Court. |
| **Priority Tax Claims**<br><br><u>Estimated Amount</u>:<br>$49,143.25<br><br><u>Estimated Recovery</u>:<br>$49,143.25<br>(100%) (inclusive of priority claims against both Debtors) | Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor against which such Allowed Priority Tax Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, treatment in a manner consistent with Section 1129(a)(9)(C) of the Code and paid in full through regular cash payments, including interest at the Applicable Rate, over a period not exceeding five (5) years from the Petition Date of a value, as of the Effective Date, equal to the Allowed amount of such Claim. |
| **Classified Claims** | |
| **Class 1: Other Priority Claims**<br><br><u>Estimated Amount:</u><br>$0.00 | Class 1 is Unimpaired under the Plan. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such |

| | |
|---|---|
| Estimated Recovery:<br>N/A<br>(100%) | Holders will not be solicited.<br><br>Except to the extent that a Holder of a Class 1 Claim and the Debtors agree to less favorable treatment for such Holder, each Holder of an Allowed Other Priority Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Claim, receive one of the following treatments, in the sole discretion of the Debtors: (i) full payment in Cash of its Allowed Priority Claim or (ii) treatment of its Allowed Priority Claim in a manner that leaves such Claim Unimpaired.<br><br>Each Holder of a Class 1 Claim will be paid on the later of: (i) the Effective Date or as soon as practicable after the Effective Date, or (ii) if such Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Claim becomes a Final Order, or as soon as reasonably practicable after such date. |
| **Class 2: Secured Tax Claims**<br><br>Estimated Amount:<br>$253,028.16<br><br>Estimated Recovery:<br>$253,028.16<br>(100%, though the Debtors reserve the right to object to any Secured Tax Claim as overstated based on the current value of Debtors' retained collateral) | Class 2 is Unimpaired under the Plan. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited.<br><br>Class 2 consists of any Allowed Secured Tax Claims against the Debtors. Except to the extent that a Holder of an Allowed Secured Tax Claim and the Debtor against which such Allowed Secured Tax Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Tax Claim, treatment in a manner consistent with Section 1129(a)(9)(D) of the Code and paid in full through regular Cash payments, including interest at the Applicable Rate, over a period not exceeding five years from the Petition Date of a value, as of the Effective Date, equal to the Allowed amount of such Claim. Allowed Secured Tax Claims shall retain their Liens. |
| **Class 3: Other Secured Claims**<br><br>Estimated Deficiency Amount (after surrender and sale of collateral): | Class 3 is Impaired under the Plan. Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.<br><br>Except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors agree to less favorable |

| | |
|---|---|
| $3,532,976.10<br><br><u>Estimated Deficiency Recovery (after surrender and sale of collateral):</u><br>$3,532,976.10<br>(100%)<br><br>(For claims designated as fully secured, Debtors conservatively estimate a 70% recovery of the value of the collateral through sale, 30% remaining deficiency to be paid as Unsecured Claim under Class 9—however, many claims have been filed as fully secured based on the estimated value of the collateral, such that this figure could be significantly lower based on actual sale of the applicable collateral. This estimate also includes (1) already-filed deficiency claims and (2) unsecured portions of filed partially secured claims. Debtors reserve the right to contest all claimed deficiency amounts as necessary.) | treatment, each Holder of an Allowed Other Secured Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Other Secured Claim, shall receive the collateral securing its Allowed Other Secured Claim on the Effective Date or as soon after the Effective Date as practicable. Upon sale of any such collateral, such Allowed Other Secured Claim shall reduce its Claim by the amount received from any such sale and will then be permitted to file an amended Claim based upon any alleged deficiency remaining following such sale, which will be an Allowed Unsecured Claim subject to treatment under Class 9, unless Debtors object to the same pursuant to § 8.4 of the Plan. Such Claims for deficiency, if any, shall be filed within forty-five (45) of the later of (i) the Effective Date or (ii) the date of Debtors' surrender of the collateral (the "<u>Deficiency Claims</u>"). For avoidance of doubt, initially, the *pro rata* distribution to Deficiency Claims will be calculated based on the Debtors' estimate of the same. Thereafter, the *pro rata* distribution will then be calculated based on the asserted deficiency pursuant to an amended claim, if any. |
| **Class 4: Compass Secured Claim**<br><br><u>Estimated Amount:</u><br>$550,000.00<br><br><u>Estimated Recovery:</u><br>$550,000.00<br>(100%) (remainder to be paid as Unsecured Claim under Class 9) | Class 4 is Impaired under the Plan. Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.<br><br>Except to the extent that a Holder of a Class 4 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 4 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 4 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, PNC and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) |

| | |
|---|---|
| | of the Code, the remainder of the Compass Secured Claim will be paid in full through regular cash payments, including interest at the applicable rate, over a period not exceeding 2.5 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $550,000.00. The remainder of the Compass Claim will be treated as a Class 9 Unsecured Claim and will be paid as part of Class 9. Compass shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan. |
| **Class 5: PNC Secured Claim**<br><br><u>Estimated Amount:</u><br>$4,800,000.00<br><br><u>Estimated Recovery:</u><br>$4,800,000.00<br>(100%) | Class 5 is Impaired under the Plan. Holders of Allowed Claims in Class 5 are entitled to vote to accept or reject the Plan.<br><br>Except to the extent that a Holder of a Class 5 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 5 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 5 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, Compass and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the PNC Secured Claim will be paid in full through regular cash payments, including interest at the applicable rate, over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $4,800,000.00. Should PNC consent to treatment under this Class 5, PNC shall retain its Lien on its collateral but shall agree not to foreclose on its collateral pending a default under the terms of the Plan. In the alternative, if PNC does not consent to treatment under this Class 5, PNC will be treated as a Class 3 Other Secured Claim, such that PNC shall receive its collateral and be entitled to an Unsecured Deficiency Claim as provided for thereunder. |
| **Class 6: Wells Fargo Secured Claim**<br><br><u>Estimated Amount:</u><br>$328,000.00 | Class 6 is Impaired under the Plan. Holders of Allowed Claims in Class 6 are entitled to vote to accept or reject the Plan.<br><br>Except to the extent that a Holder of a Class 6 Claim and the |

| | |
|---|---|
| Estimated Recovery:<br>$328,000.00<br>(100%) | Debtors agree to less favorable treatment, each Holder of an Allowed Class 6 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 6 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Compass, PNC and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Wells Fargo Secured Claim will be paid in full through regular cash payments, including interest at the applicable rate and inclusive of any adequate protection payments provided for in the Debtors' and Wells Fargo's stipulation concerning Wells Fargo's *Motion for Relief from Automatic Stay* [Docket No. 438], over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $328,000.00. Wells Fargo shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan. |
| **Class 7: Huntington Secured Claim**<br><br>Estimated Amount:<br>$157,000.00<br><br>Estimated Recovery:<br>$157,000.00<br>(100%) | Class 7 is Impaired under the Plan. Holders of Allowed Claims in Class 7 are entitled to vote to accept or reject the Plan.<br><br>Except to the extent that a Holder of a Class 7 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 7 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 7 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, Compass and PNC following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Huntington Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate, over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $157,000.00. Huntington shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms |

| | |
|---|---|
| | of the Plan. |
| **Class 8: M&T Secured Claim**<br><br><u>Estimated Secured Amount:</u><br>$4,365,028.04<br><br><u>Estimated Unsecured Deficiency Recovery (after surrender and sale of collateral):</u><br>$1,309,508.41 - $3,055,519.63 (100%)<br>(Debtors estimate a 70% recovery of the value of the collateral through sale; however, a worst-case scenario 30% recovery of the value of the collateral through sale is also included, in light of M&T's estimate. Any deficiency to be paid as Unsecured Claim under Class 9) | Class 8 is Impaired under the Plan. Holders of Allowed Claims in Class 8 are entitled to vote to accept or reject the Plan.<br><br>Class 8 consists of the Allowed Secured Claim of M&T against the Debtors. Except to the extent that a Holder of a Class 8 Claim and the Debtors agree to less favorable treatment, each Holder of a Class 8 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Class 8 Claim, receive the collateral securing its Claim on the Effective Date or as soon after the Effective Date as practicable. Upon sale of any such collateral, such Claim shall reduce its Claim by the amount received from any such sale and such Holder will then be permitted to file an amended Claim based upon any alleged deficiency remaining following such sale, which will be an Allowed Unsecured Claim subject to treatment under Class 9, unless Debtors object to the same pursuant to § 8.4 of the Plan. Such Claims for deficiency, if any, shall be filed within forty-five (45) of the later of (i) the Effective Date or (ii) the date of Debtors' surrender of the collateral (the "<u>M&T Deficiency Claim</u>").<br><br>M&T has estimated that the collateral securing its Claim is worth less than seventy percent (70%) of the total value of its Claim as alleged by Debtors. Accordingly, Debtors will review the M&T Deficiency Claim and create an escrow account (the "<u>M&T Escrow</u>") and deposit *pro rata* portions of the quarterly payments from Debtors' Net Income to Unsecured Claims under Class 9 up to the value of the M&T Deficiency Claim less the thirty percent (30%) which is being disbursed to other Allowed Unsecured deficiency claims under Class 9 *pro rata* under the Plan as though the M&T Deficiency Claim were allowed in full. For avoidance of doubt, initially, the *pro rata* distribution to Deficiency Claims, including M&T, will be calculated based on the Debtors' estimate. Thereafter, the *pro rata* distribution will then be calculated based on the asserted deficiency. If the asserted deficiency *pro rata* distribution percentage is higher than the Debtors' proposed distribution percentage, M&T will receive a payment based on the Debtors' proposed distribution percentage and the difference between the Debtors' proposed distribution percentage and the M&T Deficiency percentage will be held in the M&T Escrow. Each other member of the |

| | |
|---|---|
| | Class 3 Deficiency Claims will receive distributions based on the lesser of the calculated *pro rata* distribution. Upon M&T's sale of the collateral under § 4.8 of the Plan, one of the following will occur with respect to the M&T Escrow:<br><br>(a) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount lower than the M&T Deficiency Claim, notwithstanding the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the actual deficiency remaining following the sale of the M&T collateral, with the remaining funds in the M&T Escrow paid towards to the GUC Recovery and other Allowed Unsecured Claims under § 4.9 of the Plan;<br><br>(b) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount that equals the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the M&T Deficiency Claim; or<br><br>(c) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount higher than the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the M&T Deficiency Claim, and will then be paid any remaining deficiency from the GUC Recovery as part of Class 9. |
| **Class 9: Unsecured Claims**<br><br><u>Estimated Amount:</u><br>$7,383,653.27<br><br><u>Estimated Recovery:</u><br>$7,383,653.27<br>(100%) (includes Unsecured claims against both Debtors. Further includes estimated deficiency claims (both filed and unfiled) from Classes 3 and 8, and Unsecured portion of Class 4 Claim. Again, based upon the value of the collateral sold to satisfy Other Secured | Class 9 is Impaired under the Plan. Holders of Allowed Claims in Class 9 are entitled to vote to accept or reject the Plan.<br><br>Except to the extent that a Holder of a Class 9 Claim and the Debtors agree to less favorable treatment for such Holder, each Holder of an Allowed Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Claim, its Pro Rata share of the GUC Recovery, less any applicable payments to Allowed Administrative Claims under § 2.1 of the Plan, from up to seventy percent (70%) of Debtors' Net Income and proceeds from the Litigation Trust Assets, if any. Payments to Allowed Unsecured Claims under Class 9 will occur at the end of each quarter following the Effective Date. Allowed Unsecured Claims in this Class 9 shall accrue interest at 5% per annum. For avoidance of any doubt, the quarterly |

| | |
|---|---|
| Claims and the M&T Secured Claim, this amount could lower substantially) | payments described in § 4.9 of the Plan shall be capped at seventy percent (70%) of Debtors' Net Income for each period. Further, while the Debtors forecast that payment from the GUC Recovery will result in Holders of Claims in Class 9 being paid in full with interest once all collateral is appropriately valued and sold, if Debtors' forecast is incorrect, Debtors are asking Holders of Class 9 Claims to consent to payment of up to seventy percent (70%) of Debtors' Net Income under the GUC Recovery. |
| **Class 10: Covered Personal Injury Claims**<br><br><u>Estimated Amount:</u><br>$1,467,580.50<br><br><u>Estimated Recovery:</u><br>N/A<br>(0%) (recovery from Insurance Policies only) | Class 10 is Impaired under the Plan. Holders of Allowed Claims in Class 10 are entitled to vote to accept or reject the Plan.<br><br>Except to the extent that a Holder of a Covered Personal Injury Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Claim, on the Effective Date, the automatic stay and the injunction imposed by the Plan, as applicable, shall be modified on a limited basis, solely to permit each Holder of a Covered Personal Injury Claim to continue or commence an action in state or federal court against the Debtors in order to determine whether the Debtors have any liability on account of such Covered Personal Injury Claim and, if so, the amount of such Covered Personal Injury Claim as of the Petition Date, with the defense and settlement of such claims controlled exclusively by the applicable Insurer(s) under the terms of the applicable Insurance Policies.<br><br>In the event there is a final settlement or final, non-appealable judgment of a Covered Personal Injury Claim, such Covered Personal Injury Claim shall be Allowed under the Plan, up to the amount of coverage available for said Claim under any applicable Insurance Policies as set forth below. All settlements must have the consent of the applicable Insurer(s). After the adjudication or settlement of all Covered Personal Injury Claims, each holder of an Allowed Covered Personal Injury Claim shall receive:<br><br>(i) if the aggregate amount of Allowed Personal Injury Claims is greater than the remaining available insurance limits under the applicable Insurance Policies (i.e., remaining limits less defense costs), their pro rata share of the total coverage available under the Debtors' Insurance Policies, or, if the aggregate amount of Allowed Covered Personal |

| | |
|---|---|
| | Injury Claims is less than the remaining available insurance limits under the applicable Insurance Policies (i.e., remaining limits net of defense costs), 100% of their Allowed Covered Personal Injury Claim, which, in either event, shall be paid directly by the applicable Insurer(s) under the applicable Insurance Policies to the Holder of an Allowed Covered Personal Injury Claim; *provided* that under no circumstances shall a Holder receive more than 100% of the Allowed amount of such Holder's Allowed Personal Injury Claim as of the Petition Date or postpetition interest on such Claim, and<br><br>(ii) standing to pursue any cause of action of the Debtors against Insurer for non-payment of the foregoing treatment.<br><br>For the avoidance of doubt, if the aggregate amount of Allowed Covered Personal Injury Claims exceeds the available insurance proceeds under the applicable Insurance Policies, no Insurer shall be required to fund any amount in excess of the limits of the applicable Insurance Policy; and if the aggregate amount of Allowed Covered Personal Injury Claims is less than the available insurance proceeds under the applicable Insurance Policy, no Insurer shall be required to fund any amount in excess of the aggregate amount of the Allowed Covered Personal Injury Claims.<br><br>Some of the Covered Personal Injury Claims are fully insured, and no deductible or self-insured retention amount would be payable by the Debtors under the terms of the applicable Insurance Policy. As to other Covered Personal Injury Claims, the Debtors may owe deductibles or self-insured retention amounts. The Debtors shall not be responsible to Holders of Allowed Covered Personal Injury Claims for any deductible or self-insured retention obligations incurred prior to the Petition Date (a "Prepetition Insurance Amount"), and all Claims for such deductibles and self-insured retention obligations shall be treated as Class 9 Unsecured Claims, to the extent Allowed. Allowed Administrative Claims and/or Allowed Unsecured Claims for self-insured retention obligations incurred after the Petition Date (a "Postpetition Insurance Amount") shall satisfy such self-insured retention obligations, and Holders of such Claims may thereafter pursue recovery from Insurers. |

| | |
|---|---|
| **Class 11: Plan Sponsor Subordinated Claim**<br><br><u>Estimated Amount:</u><br>Unliquidated<br><br><u>Estimated Recovery:</u><br>N/A<br>(0%) | Class 11 is Impaired under the Plan. Holders of Allowed Claims in Class 11 are entitled to vote to accept or reject the Plan.<br><br>On the Effective Date, the Plan Sponsor agrees to subordinate its claim and shall not receive or retain any property or distributions under the Plan on account of its Unsecured Claims until all Allowed Unsecured Claims have been paid in full. |
| **Class 12: Equity Interests**<br><br><u>Estimated Recovery:</u><br>$0.00 | Class 12 is Unimpaired under the Plan. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited.<br><br>On the Effective Date, all Class 12 Interests shall remain in place at their prepetition priority and status. |

## B. Filing of the Debtors' Cases

10. On April 30, 2025 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Code in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. The Debtors filed the Cases to preserve the value of their estates and to restructure their financial and legal affairs. To such end, the Debtors have continued to manage their businesses as debtors in possession in accordance with Sections 1107 and 1108 of the Code. No committee was appointed in the Debtors' Cases.

## C. Purpose of Disclosure Statement

11. The purpose of this Disclosure Statement is to enable creditors whose Claims are impaired to make an informed decision in exercising their right to vote to accept or reject the Plan. Approval of this Disclosure Statement does not constitute a judgment by the Court as to the desirability of the Plan or as to the value or suitability of any consideration offered under the Plan. The Court's approval does indicate, however, that the Court has determined that the Disclosure Statement contains adequate information to permit a Creditor to make an informed judgment regarding acceptance or rejection of the Plan.

## D. Hearing on Conditional Approval of Disclosure Statement and Solicitation Procedures

12. The Court has scheduled a hearing to consider conditional approval of this Disclosure Statement and proposed Plan solicitation procedures (the "**<u>Disclosure Statement Hearing</u>**") on **<u>August 3, 2026, at 2:00 p.m., Central Time</u>**, in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. Once commenced, the Disclosure Statement Hearing may be adjourned or continued by announcement in open court with no

further notice. Moreover, pursuant to L.B.R. 3017-3(a), if there are no objections to the Debtors' *Motion for Entry of an Order for (I) Conditional Approval of a Disclosure Statement; (II) Approval of Solicitation Procedures for Forms of Ballots and Notices; and (III) Scheduling a Joint Hearing to Consider Final Approval of the Adequacy of the Disclosure Statement and Confirmation of a Proposed Plan*, the Court may vacate the Disclosure Statement Hearing and approve the proposed solicitation procedures and conditionally approve the Disclosure Statement, subject to final approval at the Confirmation Hearing.

**E. Joint Hearing on Confirmation of Plan and Final Approval of Disclosure Statement**

13. Pursuant to Section 1128 of the Code, the Court has scheduled a hearing to consider confirmation of the Plan and approval of the adequacy of the Disclosure Statement on a final basis (the "**Confirmation Hearing**"), on [DATE] at [TIME] [].m. prevailing Central Time , in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. Once commenced, the Confirmation Hearing may be adjourned or continued by announcement in open court with no further notice.

**F. Disclaimers**

THIS DISCLOSURE STATEMENT IS PROVIDED FOR USE SOLELY BY HOLDERS OF CLAIMS AND INTERESTS AND THEIR ADVISERS IN CONNECTION WITH THEIR DETERMINATION TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY OTHER ENTITY FOR ANY OTHER PURPOSE.

THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY IMPACT ON YOUR DECISION TO ACCEPT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE.

FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS THE REPRESENTATION OF THE DEBTORS ONLY AND NOT OF THEIR ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS. FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECTED TO AN AUDIT BY AN INDEPENDENT CERTIFIED PUBLIC ACCOUNTANT. THE FINANCIAL PROJECTIONS AND OTHER FINANCIAL INFORMATION, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, NECESSARILY WERE BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT ARE INHERENTLY UNCERTAIN AND MAY BE BEYOND THE CONTROL OF THE DEBTORS AND THE DEBTORS' MANAGEMENT.

THE DEBTORS ARE NOT ABLE TO CONFIRM THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT INCLUDE ANY INACCURACIES. HOWEVER, THE DEBTORS HAVE MADE THEIR BEST EFFORT TO PROVIDE ACCURATE INFORMATION AND IS NOT AWARE OF ANY INACCURACY IN THIS DISCLOSURE STATEMENT.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS

NOT BEEN INDEPENDENTLY INVESTIGATED BY THE COURT AND HAS NOT YET BEEN APPROVED BY THE COURT. IN THE EVENT THIS DISCLOSURE STATEMENT IS APPROVED, SUCH APPROVAL DOES NOT CONSTITUTE A DETERMINATION BY THE COURT OF THE FAIRNESS OR MERITS OF THE PLAN OR OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED BY THE DEBTORS CONCERNING THE DEBTORS, THE VALUE OF THEIR ASSETS, THE EXTENT OF THEIR LIABILITIES, OR ANY OTHER FACTS MATERIAL TO THE PLAN ARE THE REPRESENTATIONS MADE IN THIS DISCLOSURE STATEMENT. REPRESENTATIONS CONCERNING THE PLAN OR THE DEBTORS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT ARE NOT AUTHORIZED BY THE DEBTORS.

HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE, AND ALL SUCH HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT WITH THEIR OWN ADVISERS.

THE DEBTORS HAVE NO ARRANGEMENT OR UNDERSTANDING WITH ANY BROKER, SALESMAN, OR OTHER PERSON TO SOLICIT VOTES FOR THE PLAN. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATIONS IN CONNECTION WITH THE PLAN OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATIONS SHOULD NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTORS. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT UNDER ANY CIRCUMSTANCES CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS CORRECT AS OF ANY TIME AFTER THIS DATE OR THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT OR IN THE AFFAIRS OF THE DEBTORS SINCE THIS DATE. ANY ESTIMATES OF CLAIMS AND INTERESTS SET FORTH IN THIS DISCLOSURE STATEMENT MAY VARY FROM THE FINAL AMOUNTS OF CLAIMS OR INTERESTS ALLOWED BY THE COURT. SIMILARLY, THE ANALYSIS OF ASSETS AND THE AMOUNT ULTIMATELY REALIZED FROM THEM MAY DIFFER MATERIALLY.

THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED TO BRIEFLY SUMMARIZE THE MATERIAL PROVISIONS OF THE PLAN AND IS SUBJECT TO AND QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PROVISIONS OF THE PLAN.

THE DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THIS DATE UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO

SO, AND EXPRESSLY DISCLAIM ANY DUTY TO PUBLICLY UPDATE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE. HOLDERS OF CLAIMS OR INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH IN THIS DISCLOSURE STATEMENT HAVE NOT CHANGED SINCE THIS DISCLOSURE STATEMENT WAS FILED. INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS SUBJECT TO COMPLETION, MODIFICATION, OR AMENDMENT. THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED OR MODIFIED PLAN AND RELATED DISCLOSURE STATEMENT FROM TIME TO TIME, SUBJECT TO THE TERMS OF THE PLAN.

## ARTICLE II. VOTING PROCEDURES AND CONFIRMATION REQUIREMENTS

### A. Ballots and Voting Deadline

14. Holders of Claims and Interests who are entitled to vote on the Plan in these Cases will receive instructions for submitting a Ballot to vote to accept or reject the Plan. After carefully reviewing the Disclosure Statement, each Holder of a Claim or Interest (or its authorized representative) entitled to vote should follow the instructions to indicate its vote on the Ballot. All Holders of Claims or Interests (or their authorized representatives) entitled to vote must (i) carefully review the Ballot and the instructions for completing it, (ii) complete all parts of the Ballot, and (iii) submit the Ballot by the specified deadline for the Ballot to be considered. Holders of Claims or Interests entitled to vote must either (i) send the Ballot(s) by electronic mail to Linda.Gordon@bondsellis.com, or (ii) send the Ballot(s) by First Class Mail to the Debtors at the following address: Bonds Ellis Eppich Schafer Jones LLP, c/o Linda Paquette-Gordon, 420 Throckmorton St., Suite 1000, Fort Worth, Texas 76102. Holders of Claims or Interests may contact the Debtors' counsel, Joshua N. Eppich by telephone at (817) 405-6905, or by email at Joshua@bondsellis.com.

15. The Court has directed that, in order to be counted for voting purposes, Ballots for the acceptance or rejection of the Plan must be received by the Debtors by no later than [DATE] at [TIME] [].m. prevailing Central Time (the "Voting Deadline"). **BALLOTS SUBMITTED IN PAPER FORM MUST BE SUBMITTED SO AS TO BE ACTUALLY RECEIVED BY THE DEBTORS OR THEIR COUNSEL NO LATER THAN THE VOTING DEADLINE. ANY BALLOTS SUBMITTED AFTER THE VOTING DEADLINE MAY NOT BE COUNTED UNLESS AGREED TO BY THE DEBTORS.**

### B. Holders of Claims Entitled to Vote

16. The Court has ordered [DATE] as the record date (the "**Voting Record Date**") for the purposes of determining the Holders of Claims that are entitled to vote on the Plan.

17. Any Holder of a Claim of the Debtors whose Claim is Impaired under the Plan is entitled to vote if such Claim has not been Disallowed and either (i) the Claim is evidenced by a Proof of Claim that has been timely filed by the Claims Bar Date and as to which the Debtors or

any other party in interest, as of the Voting Record Date, has not filed an objection, or (ii) the Claim has been listed in the Schedules in an amount greater than $0.00 and such Claim is not scheduled as unknown, disputed, contingent, or unliquidated.

18. Any Holder of a Claim that is otherwise not entitled to vote may seek the temporary allowance of such Claim, by filing a motion, in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Such motion must be heard and determined by the Court on or before the Voting Deadline.

19. In addition, a vote may be disregarded if the Court determines that the acceptance or rejection was not solicited or procured in good faith or in accordance with the applicable provisions of the Code.

## C. Claims and Interests Impaired or Unimpaired Under the Plan

20. Classes 3, 4, 5, 6, 7, 8, 9, 10 and 11 are Impaired under the Plan. Holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, 10 and 11 are eligible, subject to the voting requirements described above, to vote to accept or reject the Plan.

21. Classes 3, 4, 5, 6, 7, 8, 9, 10 and 11 are Impaired because the proposed treatment of each of these Classes alters the legal, equitable, or contractual rights of Holders of Allowed Claims and Interests in such Classes.

22. Allowed Claims in Class 1 are Unimpaired under the Plan. Holders of Claims in this Class will receive full payment on account of such Allowed Claim on or before the Effective Date or as reasonably practicable thereafter and, therefore will be conclusively presumed to accept the Plan and will not be entitled to vote on the Plan pursuant to Section 1126(f) of the Code.

23. Allowed Claims in Class 2 are Unimpaired under the Plan. Holders of Claims in this Class will be treated in accordance with Section 1129(a)(9)(D) of the Code and, therefore will be conclusively presumed to accept the Plan and will not be entitled to vote on the Plan pursuant to Section 1126(f) of the Code.

24. Allowed Claims in Class 12 are Unimpaired under the Plan. On the Effective Date, all Class 12 Interests shall remain in place at their prepetition priority and status and, therefore will be conclusively presumed to accept the Plan and will not be entitled to vote on the Plan pursuant to Section 1126(f) of the Code.

## D. Information on Voting and Vote Tabulations

**1.** Transmission of Ballots to Holders of Claims and Interests

25. Instructions for completing and submitting Ballots are being provided to all Holders of Claims entitled to vote on the Plan in accordance with the Bankruptcy Rules. In the event a Holder of a Claim entitled to vote does not vote, the Court may deem such Holder of a Claim to have accepted the Plan. Those Holders of Claims whose Claims are Unimpaired under

the Plan are conclusively presumed to have accepted the Plan under Section 1126(f) of the Code, and therefore need not vote with regards to the Plan. Under Section 1126(g) of the Code, Holders of Claims or Interests who do not either receive or retain any property under the Plan are deemed to have rejected the Plan.

2. Ballot Tabulation Procedures

26. For the avoidance of doubt, because the Debtors' Estates are substantively consolidated for the purposes of the Plan and distributions thereunder, the voting and tabulation of ballots shall also be on a consolidated basis; that is, the tabulation of each ballot shall be applied to both Debtors' Estates, and only one substantively-combined estate must meet the requirements of Section 1126 to accept or reject the plan. Accordingly, each class of Claims and Interests shall apply to both Debtors on a consolidated basis.

27. The Debtors shall count all Ballots filed on account of (i) Claims evidenced by a Proof of Claim that have been timely filed by the Claims Bar Date and as to which the Debtors or any other party in interest, as of the Voting Record Date, have not filed an objection or (ii) Claims that have been listed in the Schedules in an amount greater than $0.00 and such Claims are not scheduled as unknown, disputed, contingent, or unliquidated. The foregoing general procedures will be subject to the following exceptions and clarifications:

(a) if a Claim is Allowed under the Plan or by order of the Court, such Claim is Allowed for voting purposes in the Allowed amount set forth in the Plan or order;

(b) if a Claim is listed in the Debtors' Schedules and is not listed as unknown, contingent, unliquidated, or disputed, and is listed in an amount in excess of $0.00, such Claim is temporarily Allowed for voting purposes in the amount set forth in the Debtors' Schedules;

(c) if a Claim is listed in the Debtors' Schedules and no Proof of Claim was timely filed by the Claims Bar Date, and such Claim is listed or asserted as unknown, contingent, unliquidated, or disputed, or is listed or asserted for $0.00, such Claim shall not be counted or included for voting purposes;

(d) if any Claim is otherwise a Disputed Claim as of the Voting Deadline, or an order has been entered disallowing such Claim, such Claim shall not be counted or included for voting purposes;

(e) if a Creditor filed duplicate Proofs of Claim by the Claims Bar Date against the Debtors, such Creditor's Claim shall only be counted once; and

(f) if a Proof of Claim has been amended by a later-filed Proof of Claim, only the later-filed Claim shall be entitled to vote unless the later-filed Claim was filed after the Voting Record Date, in which case, the earlier-filed Claim shall be entitled to vote.

28. The following procedures shall apply for tabulating votes:

(a) any Ballot that is otherwise timely completed, executed, and properly cast to the Debtors but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, shall not be counted; if no votes to accept or reject the Plan and no objections to the Plan are received with respect to a particular Class that is entitled to vote on the Plan, such Class shall be designated as having accepted the Plan;

(b) if a Creditor casts more than one (1) Ballot voting the same Claim before the Voting Deadline, the last properly cast Ballot received before the Voting Deadline shall be deemed to reflect the voter's intent and thus supersede any prior Ballots;

(c) Creditors must vote all of their Claims within a particular Class to either accept or reject the Plan and may not split their votes within a particular Class and thus a Ballot (or group of Ballots) within a particular Class that partially accepts and partially rejects the Plan shall not be counted;

(d) a Creditor who votes an amount related to a Claim that has been paid or otherwise satisfied in full or in part shall only be counted for the amount that remains unpaid or not satisfied, and if such Claim has been fully paid or otherwise satisfied, such vote will not be counted for purposes of amount or number; and

(e) for purposes of determining whether the numerosity and amount requirements of Sections 1126(c) and 1126(d) of the Code have been satisfied, the Debtors will tabulate only those Ballots received by the Voting Deadline. For purposes of the numerosity requirement of Section 1126(c) of the Code, separate Claims held by a single Creditor in a particular Class shall be aggregated as if such Creditor held one (1) Claim against the applicable Debtor in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

29. The following Ballots shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a) any Ballot received after the Voting Deadline unless the Debtors, in their sole discretion, grant an extension of the Voting Deadline with respect to such Ballot;

(b) any Ballot that is illegible or contains insufficient information to permit identification of the voter;

(c) any Ballot cast by a Person that does not hold a Claim or Interest in a

Class that is entitled to vote to accept or reject the Plan;

(d) any duplicate Ballot will only be counted once; and

(e) any unsigned Ballot or paper Ballot that does not contain an original signature.

3. Execution of Ballots by Representatives

30. To the extent applicable, if a Ballot is submitted by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity, such Persons must indicate their capacity when submitting the Ballot and, at the Debtors' request, must submit proper evidence satisfactory to the Debtors of their authority to so act. For purposes of voting tabulation, a Ballot submitted by a representative shall account for the total number of represented parties with respect to the numerosity requirement set forth in this Article.

4. Waivers of Defects and Other Irregularities Regarding Ballots

31. Unless otherwise directed by the Court, all questions concerning the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots will be determined by the Debtors, in their sole discretion, whose determination will be final and binding. The Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, be unlawful. The Debtors further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determine. Neither the Debtors nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification; provided, however, that the Debtors will indicate on the ballot summary the Ballots, if any, that were not counted and will provide copies of such Ballots with the ballot summary to be submitted at the Confirmation Hearing. Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until any irregularities have been cured or waived. Unless otherwise directed by the Court, Ballots previously furnished, and as to which any irregularities have not subsequently been cured or waived, will be invalidated.

5. Withdrawal of Ballots and Revocation

32. The Debtors may allow any claimant who submits a properly completed Ballot to supersede or withdraw such Ballot on or before the Voting Deadline. In the event the Debtors do permit such supersession or withdrawal, the claimant, for cause, may change or withdraw its acceptance or rejection of the Plan in accordance with Bankruptcy Rule 3018(a).

## E. Confirmation of Plan

1. Solicitation of Acceptances

33. The Debtors are soliciting your vote.

**NO REPRESENTATIONS OR ASSURANCES, IF ANY, CONCERNING THE DEBTORS OR THE PLAN ARE AUTHORIZED BY THE DEBTORS, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE, OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED ON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO DEBTORS' COUNSEL FOR APPROPRIATE ACTION.**

**THIS IS A SOLICITATION SOLELY BY THE DEBTORS, AND IS NOT A SOLICITATION BY ANY SHAREHOLDER, ATTORNEY, ACCOUNTANT, OR OTHER PROFESSIONAL FOR THE DEBTORS. THE REPRESENTATIONS, IF ANY, MADE IN THIS DISCLOSURE STATEMENT ARE THOSE OF THE DEBTORS AND NOT OF SUCH SHAREHOLDERS, ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS, EXCEPT AS MAY BE OTHERWISE SPECIFICALLY AND EXPRESSLY INDICATED.**

2. Requirements for Confirmation of Plan

34. At the Confirmation Hearing, the Court shall determine whether the requirements of Section 1129 of the Code have been satisfied, in which event, the Court shall enter an order confirming the Plan. The Debtors believe that the Plan satisfies all the statutory requirements of the Code for Confirmation because, among other things:

(a) The Plan complies with the applicable provisions of the Code;

(b) The Debtors have complied with the applicable provisions of the Code;

(c) The Plan has been proposed in good faith and not by any means forbidden by law;

(d) Any payment or distribution made or promised by the Debtors or by a Person issuing securities or acquiring property under the Plan for services or for costs and expenses in connection with the Plan has been disclosed to the Court, and any such payment made before the Confirmation of the Plan is reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Court as reasonable;

(e) The Debtors will have disclosed the identity and affiliation of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in a joint plan with the Debtors, or a successor to the Debtors under the Plan; the appointment to, or continuance in, such office of such individual is consistent with the interests of Holders of Claims and Interests and with public policy;

(f) Any government regulatory commission with jurisdiction (after confirmation of the Plan) over the rates of the Debtors has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval;

(g) With respect to each Impaired Class of Claims or Interests, either each Holder of a Claim or Interest of the Class will have accepted the Plan, or will receive or retain under the Plan on account of that Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Code. If Section 1111(b)(2) of the Code applies to the Claims of a Class, each Holder of a Claim of that Class will receive or retain under the Plan on account of that Claim property of a value, as of the Effective Date, that is not less than the value of that Holder's interest in the Debtors' interest in the property that secures that Claim;

(h) Each Class of Claims or Interests will have accepted the Plan or is not Impaired under the Plan, subject to the Debtors' right to seek cramdown of the Plan under Section 1129(b) of the Code;

(i) Except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that administrative expenses and Priority Claims, other than Priority Tax Claims, will be paid in full on the Effective Date or as soon as reasonably practicable after the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable after the Effective Date), and that Priority Tax Claims will receive either payment in full on the Effective Date or as soon as reasonably practical after the Effective Date, or deferred cash payments over a period not exceeding five years after the Petition Date, of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claims;

(j) If a Class of Claims or Interests is Impaired under the Plan, at least one such Class of Claims or Interests will have accepted the Plan determined without including any acceptance of the Plan by any insider holding a Claim or Interest of that Class;

(k) Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan unless such liquidation or reorganization is proposed in the Plan;

(l) All court fees, as determined by the Court at the Confirmation Hearing, will have been paid or the Plan provides for the payment of such fees on the Effective Date; and

(m) The Plan provides that all transfers of property shall be made in accordance with applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

35. The Debtors assert that they have proposed the Plan in good faith and believe that they have complied, or will have complied, with all the requirements of the Code governing confirmation of the Plan.

3. Acceptances Necessary to Confirm the Plan

36. Voting on the Plan by each Holder of an Impaired Claim or Interest (or its authorized representative) is important. Chapter 11 of the Code does not require that each Holder of a Claim or Interest vote in favor of the Plan in order for the Court to confirm the Plan. Generally, under the acceptance provisions of Section 1126(a) of the Code, each Class of Claims or Interests has accepted the Plan if Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class actually voting in connection with the Plan vote to accept the Plan. With regard to a Class of Interests, more than two-thirds of the shares actually voted must accept to bind that Class. Even if all Classes of Claims and Interests accept the Plan, the Court may refuse to confirm the Plan.

4. Cramdown

37. In the event that any Impaired Class of Claims or Interests does not accept the Plan, the Court may still confirm the Plan at the request of the Debtors if (i) at least one Impaired Class has voted to accept the Plan and (ii) as to each Impaired Class that has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A Chapter 11 plan does not discriminate unfairly within the meaning of the Code if no Class receives more than it is legally entitled to receive for its Claims or Interests. "Fair and equitable" has different meanings for Holders of secured and unsecured Claims and Interests.

38. With respect to a Secured Claim, "fair and equitable" means either (i) the Impaired secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred Cash payments at least equal to the allowed amount of its Claims with a present value as of the effective date of the plan at least equal to the value of such Creditor's interest in the property securing its Liens; (ii) property subject to the Lien of the Impaired secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of sale, and such Lien proceeds must be treated in accordance with clauses (i) and (iii) of this paragraph; or (iii) the

Impaired secured Creditor realizes the "indubitable equivalent" of its Claim under the plan.

39. With respect to an Unsecured Claim, "fair and equitable" means either (i) each Impaired Creditor receives or retains property of a value equal to the amount of its Allowed Claim or (ii) the Holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

40. With respect to Interests, "fair and equitable" means either (i) each Impaired Interest receives or retains, on account of that Interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the Holder is entitled, any fixed redemption price to which the Holder is entitled, or the value of the Interest or (ii) the Holder of any Interest that is junior to the Interest of that Class will not receive or retain under the Plan, on account of that junior equity interest, any property.

41. The Debtors believe that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired Class of Claims and Interests. In the event at least one Class of Impaired Claims or Interests rejects or is deemed to have rejected the Plan, the Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting Impaired Class of Claims or Interests.

5. Conditions Precedent to Confirmation and Effectiveness of the Plan

42. In addition to the requirements of the Code, Article X of the Plan contains certain conditions precedent to Confirmation and effectiveness of the Plan.

## ARTICLE III. THE DEBTORS AND THEIR BUSINESSES

### A. History of the Debtors

#### a. The Debtors' Corporate Structure & History

43. For more than sixteen years, the Debtors have historically provided ground transport services, trucking services, and logistics services across all 48 continental states. The Debtors' services include freight transportation, supply chain solutions, warehousing and distribution services capable of locating trucks and cargo 24 hours a day, seven days a week. Although the Debtors are capable of operating, and have historically operated, nationwide, more recently, the Debtors' core business offerings have focused on trucking, ground transport, and logistics services in the Western half of the United States with its principal base of operations being Fort Worth, Texas.

44. The Debtors are each single-member limited liability companies organized under the laws of the State of Texas wholly owned by the Plan Sponsor, Zlatan Karic (also referred to as "**Z. Karic**"). Express manages the corporate operations of the Debtors' businesses, and Logistics serves principally as the employer of approximately 150 truck drivers with limited other operations. Although the Debtors have historically entered into transactions with one another and are considered Affiliates as such term is defined in the Code, Express and Logistics operate separate businesses.

**b. The Debtors' Businesses and Assets**

**i. Express**

45. As reflected by Express's Amended Schedule A/B [Docket No. 85], as of the Petition Date, it owned significant assets in the form of over $33 million in encumbered equipment and the Truck Terminal valued at $4 million, in addition to some cash, accounts receivable and furniture and fixtures. Since the Petition Date, much of the equipment has been surrendered to Secured lenders as part of the Debtors' reorganization efforts. Moreover, the Truck Terminal, as discussed herein, has also been sold.

**ii. Logistics**

46. Logistics held no assets as of the Petition Date and, as discussed above, was merely the entity that employed drivers as part of the overall operations of the Debtors.

## B. Financial Background

47. As of the Petition Date, the Debtors had (a) a negative cash position, (b) approximately $22.3 million in total principal outstanding under its approximately 43 funded traditional secured vehicle loan facilities, (c) approximately $3.9 million in receivables factored pursuant to its factoring agreement with Compass, (d) approximately $669,000 in additional loans with Compass, and (e) approximately $665,000 in total outstanding unsecured debt obligations, of which, approximately $100,000 is attributable to fuel charges from Pilot that the Debtors sought and obtained immediate authorization to pay as a critical vendor. Further details of these transactions are discussed below.

**a. Secured Vehicle Loans—Traditional Vehicle Lenders**

48. To fund the Debtors' acquisition of additional trucking fleet inventory, in the ordinary course, the Debtors obtain secured vehicle loans to finance the purchase of new trucks and trailers (the "**Vehicle Loans**"). The Vehicle Loans were comprised of approximately 43 separate loans originated by approximately sixteen separate financial institutions (the "**Vehicle Lenders**") with an aggregate amount outstanding of approximately $22.3 million as of the Petition Date. The Vehicle Lenders included: BMO, Daimler Financing, De Lage Laden Financial, Huntington Bank, Hyundai Translead Trailer Finance, M&T Capital, MHC Financial Services, Mitsubishi HC Capital America, Navistar Financial Corporation, PNC Bank, Sumitomo Mitsui Finance, Triumph, Truist Bank, Wallwork Financial Corporation, Wells Fargo, and Volvo.

49. Each of the loans comprising the Vehicle Loans were/are secured by first lien security interests in certain of the Debtors' assets, including trucks and trailers.

**b. The Compass Factoring Arrangement**

50. To fund the Debtors' operations and assure sufficient working capital, the Debtors entered into a Factoring and Security Agreement dated July 16, 2020 (the "**Factoring Agreement**") with Compass Funding Solutions LLC ("**Compass**") whereby Balkan would sell acceptable accounts receivable to Compass in accordance with the terms set forth in the Factoring Agreement. Prior to the Petition Date, the Debtors sold to Compass acceptable accounts receivable generated from the Debtors' business operations and advance payments were made by Compass to the Debtors. All of the Debtors' obligations under the Factoring Agreement are subject to a lien attaching to substantially all of the Debtors' assets.

#### c. The Compass Vehicle Loan

51. In addition to the amounts factored pursuant to the Factoring Agreement, the Debtors entered into a vehicle financing addendum with Compass (the "**Vehicle Addendum**"). Pursuant to the Vehicle Addendum, Compass loaned approximately $850,000 to Express in January 2025 (the "**Compass Vehicle Loan**"). The Compass Vehicle Loan was entered into as an addendum to the Factoring Agreement and constitutes an obligation owing by the Debtors under the Factoring Agreement. As additional security for the Compass Vehicle Loan, the Debtors also pledged certain otherwise unencumbered trucks and trailers as collateral securing amounts outstanding under the Compass Vehicle Loan.

#### d. The Compass Advance Loan

52. In addition to the amounts factored pursuant to the Factoring Agreement, the Debtors entered into an advance financing addendum with Compass (the "**Advance Addendum**"). Pursuant to the Advance Addendum, Compass loaned approximately $374,000 to Express in March 2025 (the "**Compass Advance Loan**"). The Compass Advance Loan was entered into as an addendum to the Factoring Agreement and constitutes an obligation owing by the Debtors under the Factoring Agreement. As of the Petition Date, the Debtors owed approximately $280,000 on account of the Compass Advance Loan.

#### e. The Debtors' Unsecured Obligations

53. As of the Petition Date, the Debtors were substantially current on payment of trade claims and other unsecured liabilities. As of the Petition Date, the Debtors estimate that approximate $665,000 is owed to creditors on account of unsecured obligations.

#### e. The Debtors' Unsecured Obligations

54. The Debtors are each member-managed LLCs organized under the laws of the State of Texas. The sole member of each of the Debtors is Z. Karic.

### C. Events Leading to Bankruptcy

55. The Debtors have suffered several challenges in the months and years immediately preceding the Petition Date. First, the entire freight, cargo, and trucking industries have seen a significant decline over the last several years. Several longstanding American

trucking companies have sought protection under the Bankruptcy Code, and some even liquidated without any effort to reorganize. The troubles in the trucking and freight industries stem partly from a saturated trucking services provider market.

56. Additionally, more recently, decreased daily rate prices (i.e., the prices paid for transportation and trucking services) declined considerably as a result of slowdowns attributable to decreased trade stemming from tariff policies implemented by the current federal administration.

57. Furthermore, at the same time that the market for the Debtors' services weakened, the Debtors' leverage position became challenging to manage. With decreased daily rate prices, debt service became more difficult to satisfy. As a result, the Debtors got behind on many of their Vehicle Loans—prompting the Debtors to resort to alternative sources of liquidity.

## D. Brief History of the Cases

### a. Initial Post-Petition Efforts and Restructuring Strategy

58. On the Petition Date, Express and Logistics each filed a voluntary petition for relief under Chapter 11 of the Code. All of the Cases are being jointly administered under Case No. 25-41544. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to Sections 1107(a) and 1108 of the Code. No request for the appointment of a trustee or examiner has been made as of the filing of this Disclosure Statement. An Official Committee of Unsecured Creditors was not appointed.

59. The Debtors commenced their Cases to consummate one or more value-maximizing transactions with respect to the sale of a portion of the Debtors' assets for the benefit of the Debtors' creditors. Furthermore, through these Cases, the Debtors initially intended to shrink their asset base through the sale of trucks and trailers, pay off corresponding secured debt held by institutional and alternative lenders, and emerge from chapter 11 as a de-levered, more nimble operating trucking and logistics company.

60. In addition to typical administrative matters, the Debtors filed certain First Day motions to ensure the continuance of their operations post-petition. These First Day motions have been approved by the Court on a final basis.

61. Additionally, on May 29, 2025, the Court entered its *Final Order Authorizing Debtor to (I) Maintain and Continue to Operate Under Factoring and Security Agreement in Order to Sell Accounts Post-petition to Compass Funding Solutions, LLC Pursuant to 11 U.S.C. § 363(B), (C), (F), and (M); (II) Obtain Working Capital from Compass Funding Solutions, LLC Pursuant to 11 U.S.C. § 364(C)(L), (C)(2), & (D)(L); (III) Grant Compass Funding Solutions, LLC Adequate Protection in the Form of First Priority Liens and Security Interests on Property of the Debtor's Estate Pursuant to 11 U.S.C. §§ 361 and 363(E); (IV) Modify the Automatic Stay; and (V) Grant Such Other Related Relief* [Docket No. 123] (the "Final DIP Order"), wherein Debtors and Compass were approved to execute the Post-Petition Chapter 11 Bankruptcy Rider to the Factoring Agreement (the "Rider") to continue under the Factoring Agreement on a post-petition basis. Compass filed Proof of Claim No. 37 in the amount of $555,440.43, which, upon

information and belief, consists solely of alleged outstanding post-petition obligations of the Debtors under the Rider and Factoring Agreement to Compass.

**b. Automatic Stay Motions and Resolutions**

62. Understandably, a large portion of the Vehicle Lenders began making private demands for adequate protection payments and/or filed motions for relief from the automatic stay or in the alternative, requests for adequate protection. The Debtors negotiated with substantially all of the Vehicle Lenders and entered into agreed lift-stay orders requiring a series of adequate protection payments tailored to the particular circumstances relevant to each of the moving or requesting Vehicle Lenders. Generally, each such agreed order required periodic adequate protection payments, the nonpayment of which would trigger an automatic lifting of the automatic stay.

63. Given the continued decline of the trucking and cargo marketplace, the Debtors fell behind with a large majority of their adequate protection payment commitments. One by one, a substantial portion of the Vehicle Lenders filed notices of termination of the stay and began efforts to repossess their collateral pursuant to applicable non-bankruptcy law.

64. As it stands now, the Debtors' fleet is considerably trimmed, consisting of a few dozen trucks and a larger number of trailers. The remaining trucks and trailers are encumbered by debt obligations to Compass, PNC Bank, Huntington or Wells Fargo. Debtors are in the process of negotiating resolutions to stay relief motions filed by Wells Fargo and Compass as part of this Plan and the overall reorganization process.

**c. Truck Terminal; Sale**

65. The Debtors have historically operated their businesses from a central truck terminal and office space located at 2560 E Long Ave, Fort Worth, Texas 76137 (the "**Truck Terminal**"). The Truck Terminal served as the corporate headquarters for the Debtors' operations, and also provided a service and operational hub for a portion of the Debtors' trucking fleet. Express had a fee simple ownership interest in the Truck Terminal, subject to a small number of secured claims.

66. Prior to the Petition Date, and during the pendency of these Cases, the Debtors continued to evaluate the Debtors' operational and liquidity needs. As part of the Debtors' ongoing evaluation, the Debtors, along with advice of their Broker (defined below) and their other advisors, determined that it was in the best interests of the Debtors and their Estates to generate liquidity from the sale of the Truck Terminal.

67. Accordingly, in March 2025, the Debtors began exploring the sale of the Truck Terminal and solicited interests from numerous parties for a potential sale transaction. Ultimately, the Debtors engaged the Broker. Subsequently, the Debtors and Broker jointly marketed, solicited, and negotiated terms of multiple potential sale transactions with multiple interested parties.

68. On June 3, 2025, Express entered into that certain *Amended and Restated*

*Commercial Contract of Sale* (the "**Truck Terminal Sale Agreement**"), dated June 3, 2025, by and between CanTex RE Holdings, LLC (the "**Stalking Horse Bidder**") and Express.

69. Pursuant to the Truck Terminal Sale Agreement, Express proposed to sell the Truck Terminal to the Stalking Horse Bidder for a purchase price of $4 million (the "Sale Transaction"). Additionally, pursuant to Paragraph 26.A of the Truck Terminal Sale Agreement, Express and the Stalking Horse Bidder agreed to execute a lease agreement for the lease of the Truck Terminal upon the terms specified therein (the "**Leaseback Transaction**").

70. On June 4, 2025, the Debtors filed their *Motion for Entry of An Order (A) Authorizing the Debtors to (I) Enter Into the Truck Terminal Sale Agreement and (II) Enter Into the Lease Agreement and Consummate the Leaseback Transaction; (B) Approving (I) the Stalking Horse Bid Protections, and (II) the Overbid Requirements; and (C) Granting Related Relief* [Docket No. 131] (the "**Truck Terminal Sale Motion**").

71. On July 11, 2025, the Court entered the *Order (A) Authorizing the Debtors to (I) Enter Into the Truck Terminal Sale Agreement and (II) Enter Into the Lease Agreement and Consummate the Leaseback Transaction; (B) Approving (I) the Stalking Horse Bid Protections, and (II) the Overbid Requirements; and (C) Granting Related Relief* [Docket No. 186] (the "**Truck Terminal Sale Order**").

72. Following a competitive marketing process wherein the Debtors and their advisors negotiated with a small number of potential alternative purchasers, the Debtors determined that the Truck Terminal Sale Agreement was the highest or otherwise best offer to acquire the Truck Terminal, and was in the best interest of the Debtors' Estates. The Debtors and the Stalking Horse Bidder moved toward closing the Sale Transaction.

73. As parties negotiated and finalized closing documents, the title company identified certain existing deeds of trust securing third-party debt to the Truck Terminal. Among those debts were three previously-known debts to non-insider third parties. The Debtors, in consultation with their advisors, determined that two of the deeds of trust likely constituted preferential transfers (having been recorded in the property records on the eve of bankruptcy with the corresponding notes dating back a year or more). The third deed of trust and corresponding debt was properly perfected and owing. The claims resting on late-filed deeds of trust have not been paid; meanwhile, the Debtors' sought and obtained authority to pay the non-preferential secured claim.

74. A fourth purported lien was also identified by the title company during the closing process of the Sale Transaction: a potential lien on the Truck Terminal in favor of Gorjana Zuza ("**Zuza**" and such purported lien, the "**Zuza Secured Claim**"). Resolution of the Zuza Secured Claim is discussed further below.

75. Ultimately, pursuant to the Truck Terminal Sale Order, Debtors consummated a sale for the Truck Terminal for the purchase price of $4,000,000.00 on or about September 26, 2025. Following distributions and costs of sale, the Debtors held $2,689,000 (the "**Sale Proceeds**") in escrow.

76. On May 19, 2025, the Debtors also filed their Motion for Entry of an *Order Approving Procedures for De Minimis Asset Sales and Granting Related Relief* [Docket No. 76] (the "**De Minimis Sale Motion**"). On June 12, 2025, this Court entered the *Order Approving Procedures for De Minimis Asset Sales and Granting Related Relief* [Docket No. 149] (the "**De Minimis Sale Order**"), which established procedures for the sale of the Debtors' *de minimis* assets defined therein. No *de minimis* sale of assets has since occurred.

**d. Zuza Settlement**

77. Prior to the Petition Date, Z. Karic and Zuza were married for many years but decided to divorce in 2016. As part of their divorce, the 325th Judicial District Court of Tarrant County, Texas entered an Agreed Final Decree of Divorce in May 2017 (the "**Divorce Decree**").

78. The Divorce Decree contemplated and ordered the division of the marital property of Z. Karic and Zuza—including an allocation of the membership interests in the Debtors. Seemingly as an exchange for Z. Karic maintaining ownership of 100% of the Debtors' membership interests, Z. Karic was to execute a promissory note in favor of Zuza for several million dollars (the "**Zuza Note**") and pledge as security for such note the Truck Terminal real estate interest owned by Express (the "**Zuza Deed of Trust**"). The Divorce Decree had several exhibits, including forms of (but not executed copies of) the Zuza Note and the Zuza Deed of Trust. Subsequently, the Divorce Decree (including its attachments) was recorded in the Tarrant County deed records in October 2020.

79. Following the Petition Date, Zuza asserted a claim against the Debtors in the amount of $2,563,000.00, Claim No. 42 (the "**Zuza Claim**"). Zuza asserted the Zuza Claim was secured by a lien on the Truck Terminal, arising from the Divorce Decree and Zuza Deed of Trust. On November 26, 2025, Zuza also filed her *Motion of Gorjana Zuza to Pay Secured Claim* [Docket No. 333] (the "**Motion to Pay**"), seeking authorization for the Debtors to pay the Zuza Claim in full from the Sale Proceeds.

80. On December 15, 2025, Compass filed Adversary Proceeding No. 25-04155 (the "**Zuza Adversary Proceeding**"), asserting a *Complaint to Determine the Extent, Validity, and Priority of Lien and for Other Relief* [Docket No. 337], seeking, among other things, a declaratory judgment that Zuza's purported lien on the Truck Terminal is invalid. Also on December 15, 2025, Compass filed its Objection to the Zuza Claim [Docket No. 336] (the "**Zuza Claim Objection**") in the main bankruptcy case, seeking to disallow and expunge the Zuza Claim.

81. Zuza filed her Response to the Claim Objection [Docket No. 349] and her Motion to Dismiss the Adversary Complaint for Lack of Standing, each contesting the relief sought by Compass [Docket No. 7 in Adversary Proceeding 25-04155].

82. On May 7, 2026, the Debtors filed their *Amended Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Docket No. 391] (the "**Settlement Motion**"), seeking to settle the Zuza Claim. In particular, the settlement resulted in a reduction of the Zuza Claim from $2,563,000.00 to $1,550,000.00 and payment thereof from

the Sale Proceeds.

83. On June 23, 2026, the Court entered the *Order Granting Debtors' Amended Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Docket No. 443] (the "**Settlement Order**"). Following payment to Zuza, the remainder of the Sale Proceeds remains in escrow with Debtors' counsel.

## E. The Debtors' Professionals

84. On June 20, 2025, Bonds Ellis Eppich Schafer Jones LLP ("**BEESJ**") was approved as counsel for the Debtors (Docket No. 163).

85. On July 8, 2025, Younger Partners Dallas, LLC was approved as the Debtors' Broker (the "**Broker**") (Docket No. 179), to facilitate the sale of the Truck Terminal. The Broker has since been paid from the Sale Proceeds.

# ARTICLE IV. THE PLAN

## A. Introduction

86. A summary of the principal provisions of the Plan and the treatment of Classes of Allowed Claims and Allowed Interests is outlined below. The summary is entirely qualified by the Plan. This Disclosure Statement is only a summary of the terms of the Plan.

## B. Classification in General

87. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below and in Article III of the Plan in accordance with Sections 1122 and 1123(a)(1) of the Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

## C. Designation of Classes of Claims and Interests and Impairment

88. The following are the Classes of Claims and Interests designated under the Plan. In accordance with Section 1123(a)(1) of the Code, Administrative Claims, Professional Fee Claims, Section 503(b)(9) Claims and Priority Tax Claims are not classified. No distribution shall be made on account of any Claim that is not Allowed.

89. For clarity, as described below, the Cases are being substantively consolidated and, except for Classes with subclasses where expressly indicated, each Class will be funded with assets pertaining to Express. For avoidance of any doubt, creditors for both Debtors will be paid with assets of Express. Subject to the foregoing, Claims and Interests shall be classified as

follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Other Secured Claims | Impaired | Entitled to Vote |
| Class 4 | Compass Secured Claim | Impaired | Entitled to Vote |
| Class 5 | PNC Secured Claim | Impaired | Entitled to Vote |
| Class 6 | Wells Fargo Secured Claim | Impaired | Entitled to Vote |
| Class 7 | Huntington Secured Claim | Impaired | Entitled to Vote |
| Class 8 | M&T Secured Claim | Impaired | Entitled to Vote |
| Class 9 | Unsecured Claims | Impaired | Entitled to Vote |
| Class 10 | Covered Personal Injury Claims | Impaired | Entitled to Vote |
| Class 11 | Plan Sponsor Subordinated Unsecured Claim | Impaired | Entitled to Vote |
| Class 12 | Equity Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

**D. Allowance and Treatment of Administrative Claims, Section 503(b)(9) Claims, Professional Fee Claims, and Priority Tax Claims**

1. Administrative Claims

90. Except to the extent that a Holder of an Allowed Administrative Claim and the Debtors agree to less favorable treatment for such Holder, each holder of an Allowed Administrative Claim (other than holders of Section 503(b)(9) Claims, Professional Fee Claims and Claims for fees and expenses pursuant to Section 1930 of Chapter 123 of Title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date, or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); or (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) at such time and upon such terms as may be agreed upon by such holder and the Debtors, including from the GUC Recovery from Debtors' Net Income prior to any distributions to Holders of Class 9

Allowed Unsecured Claims; and (iv) at such time and upon such terms as set forth in an order of the Court.

91. Except for Professional Fee Claims, unless previously filed, requests for payment of Administrative Claims must be filed and served on the Debtors no later than the Administrative Claim Bar Date. Objections to such requests must be filed and served on the Debtors and the requesting party by the later of (i) thirty (30) days after the Effective Date and (ii) thirty (30) days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Code and prior Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Court.

92. Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or any action by the Court.

2. Section 503(b)(9) Claims

93. Except to the extent that a Holder of an Allowed Section 503(b)(9) Claim and the Debtors agree to less favorable treatment for such Holder, each holder of an Allowed Section 503(b)(9) Claim will receive in full and final satisfaction of its Claim an amount of Cash from the Initial Plan Payment equal to the amount of such Claim in accordance with the following: (i) if a Section 503(b)(9) Claim is Allowed on or prior to the Effective Date, on the Effective Date, or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Section 503(b)(9) Claim is due or as soon as reasonably practicable thereafter); or (ii) if such Section 503(b)(9) Claim is not Allowed as of the date of the Effective Date, no later than ten (10) days after the date on which an order allowing such Section 503(b)(9) Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) at such time and upon such terms as may be agreed upon by such Holder and the Debtors; and (iv) at such time and upon such terms as set forth in an order of the Court.

94. Unless previously filed, requests for payment of Section 503(b)(9) Claims must be filed and served on the Debtors no later than the Administrative Claim Bar Date. Objections to such requests must be filed and served on the Debtors and the requesting party by the later of (i) thirty (30) days after the Effective Date and (ii) thirty (30) days after the Filing of the applicable request for payment of the Section 503(b)(9) Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Code and prior Court orders, the Allowed amounts, if any, of Section 503(b)(9) Claims shall be determined by, and satisfied in accordance with an order of, the Court.

95. Holders of Section 503(b)(9) Claims that are required to file and serve a request for such payment of such Section 503(b)(9) Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting

such Section 503(b)(9) Claims against the Debtors, or their property, and such Section 503(b)(9) Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or any action by the Court.

3. Professional Fee Claims

(a) Final Fee Applications and Payment of Professional Fee Claims.

96. All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served on the Debtors, the U.S. Trustee and their counsel no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the U.S. Trustee, Debtors and their counsel, and the requesting Professional or other entity no later than twenty-one (21) days (or such longer period as may be allowed by order of the Court) after the date on which the applicable application for compensation or reimbursement was served. The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Court. Debtors shall pay Professional Fee Claims in Cash in the amount the Court allows by Final Order.

(b) Post-Effective Date Fees and Expenses.

97. Except as otherwise specifically provided in the Plan, from and after the Effective Date, Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation. Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331, 363, and 1103 of the Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice, action, order, or approval of the Court.

4. Priority Tax Claims.

98. Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor against which such Allowed Priority Tax Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, treatment in a manner consistent with Section 1129(a)(9)(C) of the Code and paid in full through regular Cash payments, including interest at the Applicable Rate, over a period not exceeding five (5) years from the Petition Date of a value, as of the Effective Date, equal to the Allowed amount of such Claim.

99. Special Provisions Regarding Comptroller Tax Claims. Notwithstanding anything in the Plan or Confirmation Order to the contrary, the following provisions shall govern the treatment of the claims of the Comptroller: (1) nothing in the Plan or Confirmation Order shall affect or impair the Comptroller's statutory or common law setoff rights in accordance with 11

U.S.C. § 553; (2) nothing in the Plan or Confirmation Order shall affect or impair the Comptroller's rights to pursue any non-debtor third parties for any tax debts or claims; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's administrative expense tax claims; (4) to the extent that interest is payable on any administrative expense, priority or secured tax claim of the Comptroller, the applicable interest rate shall be the statutory rate, currently 7.75% per annum; and (5) the Comptroller is not required to file a motion or application for payment of administrative expense claims; such claims are allowed upon filing, subject only to objection on substantive grounds.

Priority tax claims owed to the Comptroller shall be paid in full (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty (60) months of the Petition Date; or (3) as otherwise agreed to by the Comptroller. Interest on the Comptroller's priority tax claims shall accrue interest at the statutory rate, currently 7.75% per annum, from the Effective Date until paid in full.

Should the Reorganized Debtor fail to make any payments as required in the Plan, the Comptroller shall provide written notice of that default and send written notice to Reorganized Debtor's counsel advising of that default and providing the Reorganized Debtor with a period of ten (10) days to cure the default. If the default is not cured within ten (10) days, the Comptroller may, without further order of this Court, pursue all of its rights and remedies available to it under applicable non-bankruptcy law to collect the full amounts of all taxes, penalties, and interest owed. The Reorganized Debtor shall be entitled to no more than two (2) Notices of Default. In the event of a third (3rd) default, the Comptroller may pursue all rights and remedies available to it under applicable non-bankruptcy law without further order of the Court.

**E. Allowance and Treatment of Classified Claims and Interests**

100. Claims and Interests are classified as set forth in Article III of the Plan and their respective treatment is described in Article IV of the Plan. A Claim or Interest shall be deemed classified within a particular class only to the extent that the Claim or Interest fits the description of that class. To the extent that any portion of a Claim or Interest does not fit the description of such class, but fits the description of a different class, the Claim or Interest shall be classified in such different class. A creditor may have a Claim that falls within one or more classes. Those Claims specified in Sections 507(a)(1), 507(a)(2), and 507(a)(8) of the Code and included within the definition of Class 1 have been so described therein for convenience only and shall not be deemed classified for purposes of Section 1123(a)(1) of the Code.

1. Allowance and Treatment of Other Priority Claims (Class 1)

101. This Class includes any Allowed Unsecured Claim entitled to priority status pursuant to Section 507(a) of the Code that is not (a) an Administrative Claim, (b) a Professional Fee Claim, (c) a Section 503(b)(9) Claim; or (d) a Priority Unsecured Tax Claim.

102. Class 1 consists of any Allowed Other Priority Claims against the respective Debtor. Each Holder of a Class 1 Claim will be paid on the later of: (i) the Effective Date or as soon as practicable thereafter or (ii) if such Claim is not Allowed as of the Effective Date, no

later than ten (10) days after the date on which an order allowing such Claim becomes a Final Order, or as soon as reasonably practicable thereafter. Except to the extent that a Holder of a Class 1 Claim and the Debtor agree to less favorable treatment for such Holder, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for of such Claim, one of the following treatments, in the sole discretion of the Debtor: (i) full payment in Cash of its Allowed Priority Claim or (ii) treatment of its Allowed Priority Claim consistent with the provisions of section 1129(a)(9) of the Code. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited.

2. Allowance and Treatment of Secured Tax Claims (Class 2)

103. Class 2 consists of any Allowed Secured Tax Claims against the Debtors. Except to the extent that a Holder of an Allowed Secured Tax Claim and the Debtor against which such Allowed Secured Tax Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Secured Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Tax Claim, treatment in a manner consistent with Section 1129(a)(9)(D) of the Code and paid in full through regular Cash payments, including interest at the Applicable Rate, over a period not exceeding five (5) years from the Petition Date of a value, as of the Effective Date, equal to the Allowed amount of such Claim. Allowed Secured Tax Claims shall retain their Liens. In accordance with Section 1126(f) of the Code, the Holders of these Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited.

3. Allowance and Treatment of Other Secured Claims (Class 3)

104. Class 3 consists of any Allowed Other Secured Claims against the Debtors. Except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Other Secured Claim, receive the collateral securing its Allowed Other Secured Claim on the Effective Date or as soon after the Effective Date as practicable. Upon sale of any such collateral, such Allowed Other Secured Claim shall reduce its Claim by the amount received from any such sale and will then be permitted to file an amended Claim based upon any alleged deficiency remaining following such sale, which will be an Allowed Unsecured Claim subject to treatment under Class 9, unless Debtors object to the same pursuant to § 8.4 of the Plan. Such Claims for deficiency, if any, shall be filed within forty-five (45) of the later of (i) the Effective Date or (ii) the date of Debtors' surrender of the collateral (the "Deficiency Claims"). For avoidance of doubt, initially, the *pro rata* distribution to Deficiency Claims will be calculated based on the Debtors' estimate of the same. Thereafter, the *pro rata* distribution will then be calculated based on the asserted deficiency pursuant to an amended claim, if any. The Holders of Claims in Class 3 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

4. Allowance and Treatment of Compass Secured Claim (Class 4)

105. Class 4 consists of the Secured Claim of Compass against Debtors. Except to the extent that a Holder of a Class 4 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 4 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 4 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, PNC and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Compass Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate, over a period not exceeding 2.5 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $550,000.00. The remainder of the Compass Claim will be treated as a Class 9 Unsecured Claim and will be paid as part of Class 9. Compass shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan. The Holders of Claims in Class 4 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited.

5. Allowance and Treatment of PNC Secured Claim (Class 5)

106. Class 5 consists of the Secured Claim of PNC against Debtors. Except to the extent that a Holder of a Class 5 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 5 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 5 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, Compass and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the PNC Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate, over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $4,800,000.00. Should PNC consent to treatment under this Class 5, PNC shall retain its Lien on its collateral but shall agree not to foreclose on its collateral pending a default under the terms of the Plan. In the alternative, if PNC does not consent to treatment under this Class 5, PNC will be treated as a Class 3 Other Secured Claim, such that PNC shall receive its collateral and be entitled to an Unsecured Deficiency Claim as provided for thereunder. The Holders of Claims in Class 5 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited.

a. PNC's Position

107. After receiving no payments pursuant the Agreed Order Resolving PNC Bank, National Association's ("PNC") Motion for Relief from the Automatic Stay Regarding

Equipment Or, in The Alternative, Motion for Adequate Protection [Docket No. 285], the Automatic Stay was terminated with respect to PNC's collateral on December 2, 2025. Since that time, PNC has made substantial efforts to recover its collateral and obtain information about its location through both Debtors and VSS Transportation Group. As of the date of the filing of Debtors' Disclosure Statement, PNC has only been able to recover seven (7) of one-hundred seventeen (117) items of its collateral. As such, PNC doubts and disputes that Debtors are in possession or actively operating PNC's collateral.

108. Debtors' Plan and Disclosure Statement contemplate the full utilization of PNC's collateral to fund the Plan. At this time, PNC has not consented to allowing the Debtors to use its collateral to fund their Plan. PNC also has not agreed to refrain from foreclosing on its collateral.

a. Debtors' Response to PNC's Position

109. Debtors disagree that the Debtors lack possession of the PNC collateral or are not actively operating PNC's collateral. Debtors are operating their equipment pursuant to the Court-approved Fleet Management Agreement with VSS Transportation [Docket No. 257].

6. Allowance and Treatment of Wells Fargo Secured Claim (Class 6)

110. Class 6 consists of the Secured Claim of Wells Fargo against Debtors. Except to the extent that a Holder of a Class 6 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 6 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 7 Claim, shall first receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Compass, PNC and Huntington following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Wells Fargo Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate and inclusive of any adequate protection payments provided for in the Debtors' and Wells Fargo's stipulation concerning Wells Fargo's *Motion for Relief from Automatic Stay* [Docket No. 438], over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling to approximately $328,000.00. Wells Fargo shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan. The Holders of Claims in Class 6 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited.

7. Allowance and Treatment of Huntington Secured Claim (Class 7)

111. Class 7 consists of the Secured Claim of Huntington against Debtors. Except to the extent that a Holder of a Class 7 Claim and the Debtors agree to less favorable treatment, each Holder of an Allowed Class 7 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Allowed Class 7 Claim, first

receive its Pro Rata share of the Initial Plan Payment, less payment to all Allowed Section 503(b)(9) Claims, with Wells Fargo, Compass and PNC following either (i) the expiration of the Administrative Claims Bar Date or (ii) determination of all Section 503(b)(9) Claims, whichever occurs last. Thereafter, in accordance with the terms set for in Section 1129(b)(2)(A) of the Code, the remainder of the Huntington Secured Claim will be paid in full through regular Cash payments, including interest at the applicable rate, over a period not exceeding 4 years from the Effective Date of a value, as of the Effective Date, equal to the Allowed amount of such Secured Claim, with payments totaling approximately $157,000.00. Huntington shall retain its Lien on its collateral but agrees not to foreclose on its collateral pending a default under the terms of the Plan. The Holders of Claims in Class 7 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

8. Allowance and Treatment of M&T Secured Claim (Class 8)

112. Class 8 consists of the Allowed Secured Claim of M&T against the Debtors. Except to the extent that a Holder of a Class 8 Claim and the Debtors agree to less favorable treatment, each Holder of a Class 8 Claim shall, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Class 8 Claim, receive the collateral securing its Claim on the Effective Date or as soon after the Effective Date as practicable. Upon sale of any such collateral, such Claim shall reduce its Claim by the amount received from any such sale and such Holder will then be permitted to file an amended Claim based upon any alleged deficiency remaining following such sale, which will be an Allowed Unsecured Claim subject to treatment under Class 9, unless Debtors object to the same pursuant to § 8.4 of the Plan. Such Claims for deficiency, if any, shall be filed within forty-five (45) of the later of (i) the Effective Date or (ii) the date of Debtors' surrender of the collateral (the "M&T Deficiency Claim").

M&T has estimated that the collateral securing its Claim is worth less than seventy percent (70%) of the total value of its Claim as alleged by Debtors. Accordingly, Debtors will review the M&T Deficiency Claim and create an escrow account (the "M&T Escrow") and deposit *pro rata* portions of the quarterly payments from Debtors' Net Income to Unsecured Claims under Class 9 up to the value of the M&T Deficiency Claim less the thirty percent (30%) which is being disbursed to other Allowed Unsecured deficiency claims under Class 9 *pro rata* under the Plan as though the M&T Deficiency Claim were allowed in full. For avoidance of doubt, initially, the *pro rata* distribution to Deficiency Claims, including M&T, will be calculated based on the Debtors' estimate. Thereafter, the *pro rata* distribution will then be calculated based on the asserted deficiency. If the asserted deficiency *pro rata* distribution percentage is higher than the Debtors' proposed distribution percentage, M&T will receive a payment based on the Debtors' proposed distribution percentage and the difference between the Debtors' proposed distribution percentage and the M&T Deficiency percentage will be held in the M&T Escrow. Each other member of the Class 3 Deficiency Claims will receive distributions based on the lesser of the calculated *pro rata* distribution. Upon M&T's sale of the collateral under § 4.8 of the Plan, one of the following will occur with respect to the M&T Escrow:

(a) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount lower than the M&T Deficiency Claim, notwithstanding the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the actual deficiency remaining following the sale of the M&T collateral, with the remaining funds in the M&T Escrow paid towards to the GUC Recovery and other Allowed Unsecured Claims under § 4.9 of the Plan;

(b) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount that equals the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the M&T Deficiency Claim; or

(c) if the M&T collateral is sold for an amount that reduces its original Allowed Secured Claim to an amount higher than the M&T Deficiency Claim, M&T will be paid an Allowed Unsecured Claim from the M&T Escrow up to the amount of the M&T Deficiency Claim, and will then be paid any remaining deficiency from the GUC Recovery as part of Class 9.

The Holders of Claims in Class 8 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited.

9. Allowance and Treatment of Unsecured Claims (Class 9)

113. Class 9 consists of any Allowed Unsecured Claims against the Debtors. Except to the extent that a Holder of a Class 9 Claim and the Debtors agree to less favorable treatment for such Holder, each Holder of an Allowed Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange of such Claim, its Pro Rata share of the GUC Recovery, less any applicable payments to Allowed Administrative Claims under § 2.1 of the Plan, from up to seventy percent (70%) of Debtors' Net Income and proceeds from the Litigation Trust Assets, if any. Payments to Allowed Unsecured Claims under Class 9 will occur at the end of each quarter following the Effective Date. Allowed Unsecured Claims in this Class 9 shall accrue interest at 5% per annum. For avoidance of any doubt, the quarterly payments described in § 4.9 of the Plan shall be capped at seventy percent (70%) of Debtors' Net Income for each period. Further, while the Debtors forecast that payment from the GUC Recovery will result in Holders of Claims in Class 9 being paid in full with interest once all collateral is appropriately valued and sold, if Debtors' forecast is incorrect, Debtors are asking Holders of Class 9 Claims to consent to payment of up to seventy percent (70%) of Debtors' Net Income under the GUC Recovery. The Holders of Claims in Class 9 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited.

10. Allowance and Treatment of Covered Personal Injury Claims (Class 10)

114. Class 10 consists of the Covered Personal Injury Claims as against the Debtors. On the Effective Date, the automatic stay and the injunction imposed by the Plan, as applicable, shall be modified on a limited basis, solely to permit each Holder of a Covered Personal Injury Claim to continue or commence an action in state or federal court against the Debtors in order to

determine whether the Debtors have any liability on account of such Covered Personal Injury Claim and, if so, the amount of such Covered Personal Injury Claim as of the Petition Date, with the defense and settlement of such claims controlled exclusively by the applicable Insurer(s) under the terms of the applicable Insurance Policies.

In the event there is a final settlement or final, non-appealable judgment of a Covered Personal Injury Claim, such Covered Personal Injury Claim shall be Allowed under the Plan, up to the amount of coverage available for said Claim under any applicable Insurance Policies as set forth below. All settlements must have the consent of the applicable Insurer(s). After the adjudication or settlement of all Covered Personal Injury Claims, each holder of an Allowed Covered Personal Injury Claim shall receive:

(i) if the aggregate amount of Allowed Personal Injury Claims is greater than the remaining available insurance limits under the applicable Insurance Policies (i.e., remaining limits less defense costs), their pro rata share of the total coverage available under the Debtors' Insurance Policies, or, if the aggregate amount of Allowed Covered Personal Injury Claims is less than the remaining available insurance limits under the applicable Insurance Policies (i.e., remaining limits net of defense costs), 100% of their Allowed Covered Personal Injury Claim, which, in either event, shall be paid directly by the applicable Insurer(s) under the applicable Insurance Policies to the Holder of an Allowed Covered Personal Injury Claim; *provided* that under no circumstances shall a Holder receive more than 100% of the Allowed amount of such Holder's Allowed Personal Injury Claim as of the Petition Date or postpetition interest on such Claim, and

(ii) standing to pursue any cause of action of the Debtors against Insurer for non-payment of the foregoing treatment.

For the avoidance of doubt, if the aggregate amount of Allowed Covered Personal Injury Claims exceeds the available insurance proceeds under the applicable Insurance Policies, no Insurer shall be required to fund any amount in excess of the limits of the applicable Insurance Policy; and if the aggregate amount of Allowed Covered Personal Injury Claims is less than the available insurance proceeds under the applicable Insurance Policy, no Insurer shall be required to fund any amount in excess of the aggregate amount of the Allowed Covered Personal Injury Claims.

Some of the Covered Personal Injury Claims are fully insured, and no deductible or self-insured retention amount would be payable by the Debtors under the terms of the applicable Insurance Policy. As to other Covered Personal Injury Claims, the Debtors may owe deductibles or self-insured retention amounts. The Debtors shall not be responsible to Holders of Allowed Covered Personal Injury Claims for any deductible or self-insured retention obligations incurred prior to the Petition Date (a "Prepetition Insurance Amount"), and all Claims for such deductibles and self-insured retention obligations shall be treated as Class 9 Unsecured Claims, to the extent Allowed. Allowed Administrative Claims and/or Allowed Unsecured Claims for self-insured retention obligations incurred after the Petition Date (a "Postpetition Insurance Amount") shall satisfy such self-insured retention obligations, and Holders of such Claims may thereafter pursue recovery from Insurers.

The Holders of Claims in Class 10 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited.

11. Allowance and Treatment of Subordinated Unsecured Claim of Plan Sponsor (Class 11)

115. Class 11 consists of the Unsecured Claims of the Plan Sponsor as against the Debtors. On the Effective Date, the Plan Sponsor agrees to subordinate its claim and shall not receive or retain any property or distributions under the Plan on account of its Unsecured Claims until all Allowed Unsecured Claims have been paid in full. The Holders of Claims in Class 11 are Impaired. In accordance with Section 1126(f) of the Code, the Holders of these Claims are entitled to vote to accept or reject this Plan, and the votes of such Holders will be solicited.

12. Allowance and Treatment of Equity Interests (Class 12)

116. Class 12 consists of the Holders of Interests in the Debtors. On the Effective Date, all Class 12 Interests shall remain in place at their prepetition priority and status. The Holders of Interests in Class 12 are Unimpaired. In accordance with Section 1126(f) of the Code, the Holders of these Interests are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited.

## F. Procedures for Resolving Contingent, Unliquidated and Disputed Claims

### 1. Claims Administration Responsibilities

117. Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor, with respect to all Claims shall have the authority to: (i) file, withdraw, or litigate to judgment, objections to Claims; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (iii) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court. After the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtors had with respect to any Claims immediately prior to the Effective Date.

### 2. Estimation of Claims

118. Before or after the Effective Date, the Debtors may (but are not required to) at any time request that the Court estimate any Disputed Claim that is contingent or unliquidated pursuant to Section 502(c) of the Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at $0.00 unless otherwise ordered by the Court. In the event that the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum

limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

**3. Adjustment to Claims without Objection**

119. Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtor without any further notice to or action, order, or approval of the Court.

**4. Time to File Objections to Claims**

120. Except as otherwise specifically provided in the Plan, or as further ordered by the Court, any objections to Claims shall be filed on or before the later of (i) 180 days after the Effective Date, (ii) 30 days after the filing of a Claim for deficiency under § 4.3 of the Plan or (iii) such other period of limitation as may be specifically fixed by a Final Order of the Court for objecting to such claims.

**5. Disallowance of Claims**

121. Except as otherwise specifically provided in the Plan, any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Code, or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Code, shall be deemed Disallowed pursuant to Section 502(d) of the Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as any objection to those Claims have been settled or a Court order with respect to such Claim has been entered. Except as provided in this Plan or otherwise agreed, any and all (i) scheduled contingent, unliquidated and/or disputed Claims for which a timely Proof of Claim was not filed by the applicable Claims Bar Date and (ii) Proofs of Claim filed after the applicable Claims Bar Date shall both be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Court, and holders of such Claims may not receive any distributions on account of such Claims unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.

**6. Amendments to Claims**

122. On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Court or Reorganized Debtor or except as provided for under this Plan, and any such unauthorized new or amended Claim filed shall be deemed Disallowed in full and expunged without any further action; provided, however, that Governmental Units shall not be required to obtain authorization of the Court or Reorganized Debtor to file or amend a Proof of Claim prior to the Claims Bar Date applicable to Governmental Units pursuant to Section 502(b)(9) of the Code.

**7. No Distributions Pending Allowance**

123. If an objection to a Claim or portion of a Claim is filed, no payment or

distribution provided under the Plan shall be made on account of such Claim or portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**8. Distributions After Allowance**

124. To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. No later than ten (10) days after the date on which an order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtor or Litigation Trust, as applicable, shall provide to the Holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless otherwise required under the Plan or applicable bankruptcy law.

## G. Treatment of Executory Contracts and Unexpired Leases

1. Assumption and Rejection of Executory Contracts and Unexpired Leases Under the Plan

125. On the Effective Date, except as otherwise provided in this Plan, all Executory Contracts or Unexpired Leases (i) not included in the Schedule of Assumed Contracts and Leases; (ii) included in the Schedule of Rejected Contracts and Leases, (iii) not previously assumed by the Debtors by Final Order of the Court, or (iv) not included in a motion to assume pending on the Confirmation Date, will be deemed rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Code.

126. Such automatic rejection shall be effective without the need for any further notice to or action, order, or approval of the Court, in accordance with the provisions and requirements of Sections 365 and 1123 of the Code, other than any Executory Contracts and/or Unexpired Leases that: (i) have been previously assumed, assumed and assigned, or rejected pursuant to a Court order; (ii) are the subject of a motion to assume, assume and assign, or reject such Executory Contract or Unexpired Leases (or of a filed objection with respect to the proposed assumption, assumption and assignment, or rejection of such Executory Contract or Unexpired Leases) that is pending on the Effective Date; or (iii) are a contract, release, or other agreement or document entered into in connection with the Plan or the sale of the Debtors' assets pursuant to the Sale Orders. Entry of the Confirmation Order shall constitute an order of the Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts and/or Unexpired Leases as set forth in this Plan or the Schedule of Assumed Contracts and Leases or Schedule of Rejected Contracts and Leases, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth in this Plan, assumptions or rejections of Executory Contracts and/or Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Any motions to assume or reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date by a Final Order. Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Contracts and Leases and Schedule of Rejected Contracts and Leases at any time through and

including the Effective Date.

2. Pass-Through

127. Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the operation of the Reorganized Debtor's businesses, but not otherwise addressed as a Claim or Interest or assumed under Article V of the Plan, including nonexclusive or exclusive patent, trademark, copyright, or other intellectual property licenses, and other contracts not assumable under section 365(c) of the Code, shall, in the absence of any other treatment under the Plan or Confirmation Order, be passed through the Cases for the benefit of the Reorganized Debtor, provided that, notwithstanding anything to the contrary herein, any Claim thereunder shall be treated in accordance with the distribution provisions of the Plan.

3. Claims Based on Rejection of Executory Contracts or Unexpired Leases

128. Unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Court within thirty (30) days after the later of (i) the date of entry of an order of the Court (including the Confirmation Order) approving such rejection, (ii) the effective date of such rejection, (iii) the Effective Date, or (iv) the date after the Effective Date that the applicable Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease affected. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Litigation Trust, the Estates, or their property without the need for any objection by the Litigation Trust or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as Unsecured Claims and shall be treated in accordance with § 4.9 of the Plan.

4. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

129. Any Cure Claims pursuant to a Executory Contract and Unexpired Lease, as reflected on the Schedule of Assumed Contracts and Leases, shall be satisfied, pursuant to section 365(b)(1) of the Code, by payment of the Cure Amounts in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

130. The Debtors shall provide a Schedule of Assumed Contracts and Leases as part of the Plan Supplement.

131. In the event of a dispute regarding (1) the Cure Amount, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Code) under the Executory Contract or Unexpired

Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

132. In any case, if the Court determines that the Allowed Cure Amount with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors or the Reorganized Debtor, as applicable, will have the right to remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

133. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

134. Any objection regarding (1) the Cure Amounts or (2) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Code) must have been Filed with the Court by the deadline set by the Bankruptcy Court for objecting to Confirmation of the Plan. To the extent any such objection is not determined by the Court at the Confirmation Hearing, such objection may be heard and determined at a subsequent hearing. Any counterparty to an Executory Contract or Unexpired Lease of the Debtors that does not timely object to such "adequate assurance of future performance" by such deadline will be deemed to have forever released and waived any such objection.

5. Preexisting Obligations to the Debtor under Executory Contracts and Unexpired Leases

135. Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

6. Reservation of Rights

136. Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Contracts and Leases, nor anything contained in the Plan,

shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability under such Executory Contract. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

7. Nonoccurrence of Effective Date

137. In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to Section 365(d)(4) of the Code.

## H. Plan Supplement

138. **In addition to considering the Plan and Disclosure Statement, Creditors and Interest Holders entitled to vote on the Plan should also carefully consider the Plan Supplement and documents contained in the Plan Supplement, which will be filed with the Court no later than ten (10) days prior to the Confirmation Hearing or such later date as may be approved by the Court. The Plan Supplement will include, without limitation, the following documents, as applicable (i) Schedule of Assumed Contracts and Leases; (ii) the Schedule of Rejected Contracts and Leases; (iii) the Schedule of Retained Causes of Action; (iv) Litigation Trust Agreement; (v) the identity of the Litigation Trustee for the Litigation Trust, to the extent known at the time of the filing of the Plan Supplement; and (vi) related documents and information (each as may be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan and in accordance with the Code and Bankruptcy Rules).**

# ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN

## A. Formation of Litigation Trust

1. Litigation Trust Generally

139. The Litigation Trust will be established on the Effective Date to retain and hold all Chapter 5 Causes of Action, the proceeds of which shall be distributed Pro Rata to Holders of Allowed Unsecured Claims. On the Effective Date, the Litigation Trust Assets shall be deemed transferred to the Litigation Trust by the Debtors and will vest in the Litigation Trust free and clear of all Liens, Claims, interests, encumbrances, etc., with all reversionary and beneficial interests in the Litigation Trust to be held by the Holders of Allowed Unsecured Claims. The sole beneficiaries of the Litigation Trust will be Holders of Allowed Unsecured Claims. The act of transferring the Litigation Trust Assets, as authorized by this Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Litigation Trust as if the asset or right was still held by the relevant Debtor. Notwithstanding anything to the contrary herein, the Litigation Trust may abandon to creditors or otherwise not accept any Chapter 5 Causes of Action that the Litigation Trustee believes, in good faith, have no value to the Litigation Trust; provided, that the Litigation Trust

Agreement shall provide for the assignment by creditors to the Litigation Trust of any such Chapter 5 Causes of Action so abandoned to creditors.

140. Solely as relating to the Litigation Trust Assets, the Litigation Trustee, on behalf of the Litigation Trust, shall step into the shoes of the Debtors as it relates to either communications that occurred prior to, or documents prepared before, the Petition Date with respect to Debtors' right to assert attorney-client privilege or any other privilege or immunity Debtors possess, if any, and the Litigation Trustee shall be entitled to preserve, assert, access, or waive such privilege or immunity of the Debtors as it relates to such documents or communications. On the Effective Date, the Litigation Trustee shall have the power, right and responsibility to access or receive copies of all books, files and records of the Debtors or Reorganized Debtor, as applicable, to the extent relating to the Litigation Trust Assets for purposes of carrying out the purpose of the Litigation Trust. At any time after the Effective Date, upon reasonable request of the Litigation Trustee, the Reorganized Debtor shall provide the Litigation Trustee with copies of the Debtors' or the Reorganized Debtor's books, records, and files in their possession, custody, or control, and the Reorganized Debtor may, in good faith, provide such privileged information of the Debtors as is in their possession that relates to the evaluation and prosecution of the Chapter 5 Causes of Action. Following the Effective Date, the Litigation Trust and the Litigation Trustee shall be deemed a party in interest with standing to appear in the Cases and object to any pleadings Filed thereafter; provided, however, such standing and right to object does not alter the respective rights or responsibilities of the Litigation Trustee or the Reorganized Debtors under the Plan, or the Litigation Trust Agreement, alter any governing approval standard under applicable law, or otherwise limit the ability of any party with standing to respond to pleadings Filed, or objections raised, by the Litigation Trustee.

2. Litigation Trustee

141. The Litigation Trustee shall be an independent, third-party fiduciary selected by the Debtors and identified in the Plan Supplement, and shall be compensated at market rates; provided, that, for the avoidance of doubt, the Litigation Trustee shall have no affiliation with either Debtor and may not own any Claim, including Allowed Administrative Claims and Allowed Unsecured Claims, or other Interests in or Securities issued by either of the Debtors. The Litigation Trustee shall have the sole authority to make decisions and take action with respect to the Litigation Trust Assets, and shall have a duty to maximize the value of the assets of the Litigation Trust in accordance with the Litigation Trust Agreement. The Litigation Trustee shall confer with the Reorganized Debtor with respect to the commencement of any litigation in respect of such assets, provided that the ultimate decision with respect to whether to commence any litigation shall be in the sole discretion of the Litigation Trustee. For the avoidance of doubt, in exercising such sole discretion, the Litigation Trustee shall consider and may take such actions in connection with the exercise of such sole discretion that promote the greatest recovery to the holders of Allowed Unsecured Claims. The Litigation Trustee shall seek Court approval, after notice and an opportunity for a hearing, of (a) any settlements with respect to the Chapter 5 Causes of Action, and (b) any other transaction with respect to any assets of the Litigation Trust, in each case, that has an economic value of $100,000.00 or more (in the Litigation Trustee's good faith determination) as of the date of such transaction.

142. The Litigation Trustee shall use the Initial Litigation Trust Funding Amount to fund all expenses related to its duties under this Plan and the Litigation Trust Agreement. Thereafter, and beginning on the first month following the Effective Date, the Litigation Trust and the Litigation Trustee will be paid the Monthly Litigation Trust Funding Amount to fund expenses related to their duties under the Plan and the Litigation Trust Agreement. The Litigation Trust and the Litigation Trustee may also use proceeds from monetizing the Chapter 5 Causes of Action to fund the reasonable and customary out-of-pocket expenses incurred by the Litigation Trust and Litigation Trustee. Beginning on the Effective Date, the Litigation Trustee shall have customary powers, including the power to employ (without further order of the Bankruptcy Court) professionals (including professionals previously engaged in the Cases), employees, or other independent contractors to assist in carrying out its duties under this Plan, including the Litigation Trust Agreement, and may compensate and reimburse the expenses of these professionals, employees, or other independent contractors based upon the nature of the work performed by such parties without further order of the Court, subject to any limitations and procedures established by the Litigation Trust Agreement.

3. Reports to Be Filed by the Litigation Trust

143. Following the Effective Date, and unless otherwise ordered by the Court, and during the existence of the Litigation Trust, the Litigation Trust shall File with the Court (and provide to any other party entitled to receive any such report pursuant to the Litigation Trust Agreement), within 90 days after the end of each calendar year during the term of the Litigation Trust, and within 45 days after the end of each calendar quarter during the term of the Litigation Trust (other than the fourth quarter), a quarterly report regarding the administration of property subject to its ownership and control pursuant to the Plan, receipts, distributions made by it, an update regarding the status of the Chapter 5 Causes of Action being prosecuted by the Litigation Trust, and a summary of all major activities during the period.

4. Termination of the Litigation Trust

144. The initial term of the Litigation Trust shall be the lesser of: (a) three years; (b) the date all Holders of Allowed Unsecured Claims receive the full amount to which they are entitled to pursuant to the Plan; and (c) the date that all Chapter 5 Causes of Action have been fully resolved, as reasonably determined by the Litigation Trustee in its sole determination; provided, however, that, subject to applicable law, the Litigation Trustee may extend the term of the Litigation Trust solely in the event termination would otherwise occur under subsection (a) of this paragraph by Filing a motion with the Court prior to the expiration of the initial term and obtaining court approval of such extension, with a maximum extension of two (2) years per request (subject, in each instance, to reasonable consideration being given to implications of tax law and other applicable law of a proposed extension of the term of the Litigation Trust). For the avoidance of doubt, no later than the termination of the Litigation Trust, the Litigation Trustee shall transfer all of the net proceeds realized from the Litigation Trust's assets Pro Rata to Allowed Unsecured Claims. Any (i) remaining Chapter 5 Causes of Action and (ii) remaining portions of the Initial Litigation Trust Funding Amount or Monthly Litigation Trust Funding Amounts shall revert to the Reorganized Debtor upon termination of the Litigation Trust. Notwithstanding the foregoing, and for the avoidance of doubt, nothing in the Plan (or the Plan

Supplement, as applicable) shall prohibit the Litigation Trustee from making interim transfers of Cash realized by the Litigation Trust to holders of Allowed Unsecured Claims in accordance with this Plan.

5. Litigation Trustee Monitoring of Reorganized Debtors

145. Notwithstanding any request for information by the Litigation Trustee under § 5.1.1 of the Plan, the Reorganized Debtor shall also agree to provide a quarterly report to the Litigation Trust regarding the Reorganized Debtor's operations and finances for the preceding quarter. The Litigation Trustee shall also assist with any distributions and payments made under the Plan by Debtors, in addition to those for which it is responsible under the Litigation Trust Agreement and as stated herein.

## B. Substantive Consolidation

146. Except as otherwise provided in the Plan, each Debtor shall continue to maintain its separate corporate existence after the Effective Date for all purposes other than the treatment of Claims under the Plan. Except as expressly provided in the Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date: (a) all Plan payments and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under the Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of the other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by either Debtor and any joint or several liability of either of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in either of the Cases shall be treated as filed against the consolidated Debtors and shall be treated as one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to either of the Debtors may be set off against the debts of the other Debtor. Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structures of the Reorganized Debtor. Moreover, such substantive consolidation shall not affect any subordination provisions set forth in any agreement relating to any Claim or Interest or the ability of the Reorganized Debtor to seek to have any Claim or Interest subordinated in accordance with any contractual rights or equitable principles. For the avoidance of doubt, any Secured Claim shall remain secured only to the extent and solely to the extent validly asserted against the collateral securing such Secured Claim and this substantive consolidation shall not affect the security interests of any Holder of any Secured Claim.

## C. Sources of Plan Distributions

147. Distributions under the Plan shall be funded with: (1) Cash on hand; (2) assumption of Exit Facility; (3) the Initial Plan Payment; (4) the proceeds from any recovery by the Litigation Trust; and (5) the proceeds of Debtors' operations.

## D. Cancellation of Existing Securities and Agreements

148. On the Effective Date, all notes, instruments, and other documents evidencing Claims, including credit agreements and indentures, shall be cancelled and the obligations of the Debtors relating to such instruments shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments and other documentation will have no rights arising from or relating to such instruments and other documentation, except the rights provided for pursuant to the Plan.

## E. Corporate Action

149. On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtors and any corporate action required by the Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors. As applicable, on or prior to the Effective Date, the appropriate officers of the Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to give effect to the transactions contemplated under the Plan). The authorizations and approvals contemplated by Article V of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

## F. Directors and Officers of Reorganized Debtor

150. As of the Effective Date, the managers, managing members, and officers of the Debtors existing on the Petition Date shall be reinstated and continue in such roles for the Reorganized Debtor in the same capacity and same manner as existing on the Petition Date. On and after the Effective Date, the managers and managing members of the Reorganized Debtor shall consist of those entities and individuals serving in those roles on the Petition Date. The managers include the following individual: Zlatan Karic. The officer of the Reorganized Debtor shall be Zlatan Karic, as President. Mr. Karic will continue to receive an annual salary as compensation for his role as the Reorganized Debtor's President. Andrej Karic, the Plan Sponsor's son, will also continue to receive an annual salary as compensation for his role as an employee of the Reorganized Debtor. To the extent applicable and not previously disclosed in the Plan, if any such director or officer is an "insider" as defined in section 101(31) of the Bankruptcy Code, the nature of any compensation to be paid to such director or officer, if any, will also be disclosed to the extent required under the Bankruptcy Code. If necessary, the Organizational Documents will provide that subsequent managers of the Reorganized Debtor will be elected by the members holding a majority of the equity Interests in the Reorganized Debtor.

## G. Effectuating Documents; Further Transactions

151. On and after the Effective Date, the Reorganized Debtor, and the officers and members of the board of directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such

actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan (collectively, a "Restructuring Transaction") in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### H. Section 1146 Exemption

152. To the fullest extent permitted by Section 1146(a) of the Code, any transfers (whether from the Debtors to the Reorganized Debtor or any other Person) of property under the Plan or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, equity interest, or other interest in the Debtors; (ii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Section 1146(c) of the Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### I. Retained Causes of Action

153. Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b)(3) of the Code, the Debtors or the Litigation Trust, as applicable, shall have the exclusive right, authority, and discretion to (without further order of the Court) determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw, or litigate to judgment any and all Causes of Action that the Debtors or Estates may hold against any Entity, whether arising before or after the Petition Date, including, without limitation, all Causes of Action listed on the Schedule of Retained Causes of Action, except the Litigation Trust shall have the exclusive rights described herein with respect to the Chapter 5 Causes of Action until such time as the Litigation Trust is terminated. The Debtors and/or Litigation Trust reserve and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Cases.

154. Unless a Cause of Action is expressly waived, relinquished, released,

compromised or settled in the Plan or any Final Order of the Court, the Debtors and/or Litigation Trust, as applicable, expressly reserve such Cause of Action (including any counterclaims) for later adjudication by the Court. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action (including counterclaims) by virtue of Confirmation of the Plan.

## J. Settlement, Releases, Exculpation, Injunctions, and Related Provisions

### 1. Compromise and Settlement

155. Pursuant to Section 1123 of the Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan (collectively, the "Plan Settlement"). The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and are fair, equitable, and within the range of reasonableness. The provisions of the Plan are mutually dependent and non-severable.

### 2. Incorporation of Compromise and Settlement with Zuza

156. The *Order Granting Debtors' Amended Motion for Order Approving Compromise and Settlement Pursuant to Bankruptcy Rule 9019* [Docket No. 443] and corresponding Zuza Settlement Agreement are expressly incorporated into the Plan.

### 3. Release of Liens

157. **EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THE PLAN, ON THE EFFECTIVE DATE AND CONCURRENTLY WITH THE APPLICABLE DISTRIBUTIONS MADE PURSUANT TO THE PLAN AND, IN THE CASE OF A SECURED CLAIM, SATISFACTION IN FULL OF THE PORTION OF THE SECURED CLAIM THAT IS ALLOWED AS OF THE EFFECTIVE DATE, EXCEPT FOR OTHER SECURED CLAIMS THAT THE DEBTORS ELECT TO REINSTATE IN ACCORDANCE WITH ARTICLE IV OF THIS PLAN, ALL MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS AGAINST ANY PROPERTY OF THE ESTATES SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL OF THE RIGHT, TITLE, AND INTEREST OF ANY HOLDER OF SUCH MORTGAGES, DEEDS OF TRUST, LIENS, PLEDGES, OR OTHER SECURITY INTERESTS SHALL REVERT TO THE DEBTORS**

**AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS. ON AND AFTER THE EFFECTIVE DATE, ANY HOLDER OF SUCH SECURED CLAIM (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AT THE EXPENSE OF THE DEBTORS, SHALL BE AUTHORIZED AND DIRECTED TO RELEASE ANY COLLATERAL OR OTHER PROPERTY OF THE DEBTORS HELD BY SUCH HOLDER (AND THE APPLICABLE AGENTS FOR SUCH HOLDER), AND TO TAKE SUCH ACTIONS AS MAY BE REASONABLY REQUESTED BY THE DEBTORS TO EVIDENCE THE RELEASE OF SUCH LIEN, INCLUDING THE EXECUTION, DELIVERY, AND FILING OR RECORDING OF SUCH RELEASES. THE PRESENTATION OR FILING OF THE CONFIRMATION ORDER TO OR WITH ANY FEDERAL, STATE, PROVINCIAL, LOCAL AGENCY OR DEPARTMENT SHALL CONSTITUTE GOOD AND SUFFICIENT EVIDENCE OF, BUT SHALL NOT BE REQUIRED TO EFFECT, THE TERMINATION OF SUCH LIENS.**

**WITHOUT LIMITING THE AUTOMATIC RELEASE PROVISIONS OF THE IMMEDIATELY PRECEDING PARAGRAPH: (i) EXCEPT AS OTHERWISE PROVIDED IN ARTICLE IV OF THE PLAN, NO OTHER DISTRIBUTION UNDER THE PLAN SHALL BE MADE TO OR ON BEHALF OF ANY CLAIM HOLDER UNLESS AND UNTIL SUCH HOLDER EXECUTES AND DELIVERS TO THE DEBTORS OR THE DEBTORS SUCH RELEASE OF LIENS OR OTHERWISE TURNS OVER AND RELEASES SUCH CASH, PLEDGE, OR OTHER POSSESSORY LIENS; AND (ii) ANY SUCH HOLDER THAT FAILS TO EXECUTE AND DELIVER SUCH RELEASE OF LIENS WITHIN 180 DAYS OF THE EFFECTIVE DATE SHALL BE DEEMED TO HAVE NO CLAIM AGAINST THE DEBTORS OR THEIR ASSETS OR PROPERTY IN RESPECT OF SUCH CLAIM AND SHALL NOT PARTICIPATE IN ANY DISTRIBUTION UNDER THE PLAN.**

**4. Releases by the Debtors**

158. **PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES ARE EACH DEEMED RELEASED AND DISCHARGED BY THE DEBTORS, THE REORGANIZED DEBTOR, AND THEIR ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION, DIRECTLY OR DERIVATIVELY, BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, FROM ANY AND ALL CAUSES OF ACTION INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THAT THE DEBTORS, THE REORGANIZED DEBTOR, OR THE DEBTORS' ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, DEBTORS OR OTHER ENTITIES, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, THE CHAPTER 11 CASES, THE PLAN, ANY RESTRUCTURING TRANSACTION, THE PLAN SETTLEMENT, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE FOREGOING RELEASE DOES NOT RELEASE ANY OBLIGATION OF ANY PARTY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES DESCRIBED IN SECTION 9.4 OF THE PLAN BY THE DEBTORS, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND FURTHER, SHALL CONSTITUTE ITS FINDING THAT EACH RELEASE DESCRIBED IN SECTION 9.4 OF THE PLAN IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES AND A GOOD FAITH SETTLEMENT AND COMPROMISE OF SUCH CLAIMS; (2) FAIR, EQUITABLE, AND REASONABLE; (3) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (4) A BAR TO THE DEBTORS OR REORGANIZED DEBTOR ASSERTING ANY CLAIM, CAUSE OF ACTION, OR LIABILITY RELATED THERETO, OF ANY KIND WHATSOEVER, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.**

**5. Exculpation**

159. **THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST, FOR ANY ACT, EVENT, OR OMISSION FROM THE PETITION DATE TO THE EFFECTIVE DATE IN CONNECTION WITH OR ARISING OUT OF THE CASE, THE CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN OR THE ASSETS AND PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN (INCLUDING UNCLAIMED PROPERTY UNDER THE PLAN), UNLESS SUCH ENTITY'S ACTION IS DETERMINED AS (i) BAD FAITH; (ii) ACTUAL FRAUD; (iii) WILLFUL MISCONDUCT; OR (iv) GROSS NEGLIGENCE, IN EACH CASE BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION. EACH ENTITY MAY REASONABLY RELY UPON THE OPINIONS OF ITS COUNSEL, CERTIFIED PUBLIC ACCOUNTANTS, AND OTHER EXPERTS OR PROFESSIONALS. FOR THE AVOIDANCE OF DOUBT, THE EXCULPATION IN § 9.5 OF THE PLAN SHALL NOT APPLY TO ANY ACTIONS TAKEN PRIOR TO THE PETITION DATE. THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING THE PARTIES EXCULPATED IN THE PLAN FROM LIABILITY. NOTHING IN THIS SECTION SHALL BE DEEMED TO RELEASE OR EXCULPATE ANY PARTY FROM ANY CAUSES OF ACTION.**

**6. Injunction**

160. **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR ANY OTHER ORDER ENTERED PREVIOUSLY BY THE BANKRUPTCY COURT WITH RESPECT TO A COMPROMISE, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS ARE PERMANENTLY ENJOINED, ON AND AFTER CONFIRMATION DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTEGRATED AFTER THE EFFECTIVE DATE, FROM (i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, LITIGATION TRUST OR LITIGATION TRUST ASSETS WITH RESPECT TO ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS; (ii) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, LITIGATION TRUST, OR LITIGATION TRUST ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS; (iii) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE LITIGATION TRUST, OR THEIR ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS; AND (iv) ASSERTING ANY RIGHT OF SETOFF, RECOUPMENT OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE**

**DEBTORS, THE LITIGATION TRUST, OR THEIR ASSETS ON ACCOUNT OF ANY SUCH CLAIM OR INTEREST IN ANY VENUE OTHER THAN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS. THE FOREGOING INJUNCTION WILL EXTEND TO SUCCESSORS OF THE DEBTORS AND LITIGATION TRUST AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN THE PROPERTY.**

### 7. Protections Against Discriminatory Treatment

161. Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtor has been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, have been insolvent before the commencement of the Cases (or during the Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Cases.

### 8. Document Retention

162. On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with its standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor, subject to the requirements of the Plan and the Litigation Trust Agreement, as applicable.

### 9. Reimbursement or Contribution

163. If the Court disallows a Claim for reimbursement or contribution of an Entity pursuant to Section 502(e)(1)(B) of the Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding Section 502(j) of the Code unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the relevant holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

### 10. Section 524(e)

164. Regardless of anything to the contrary in the Plan nothing in the release provisions in the Plan shall operate as a third-party discharge or affect the liability of any non-debtor party in contravention of 11 U.S.C. § 524(e).

## K. Retention of Jurisdiction

165. To the fullest extent permitted by applicable law, and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the

Cases and the Plan pursuant to Sections 105(a) and 1142 of the Code, including jurisdiction with respect to the matters more fully described in Article XI of the Plan.

## L. Modifications and Amendments, Revocation, or Withdrawal of the Plan

1. Modification and Amendments

166. Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XII.

2. Effect of Confirmation on Modifications

167. Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation of the Plan and prior to the Confirmation Date are approved pursuant to Section 1127(a) of the Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

3. Revocation or Withdrawal of Plan

168. The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date or Effective Date and to file subsequent plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE VI. LEGAL PROCEEDINGS

169. The following is a summary of material litigation involving the Debtors, including potential Claims and Causes of Action that arose as a result of the filing of the Cases.

**A. David Garza v. Roberto Salazar and Balkan Express, LLC**

170. This is a lawsuit by David Garza against Express, among others, for causes of action for negligence arising out of an automobile accident filed in the 96th Judicial District of Tarrant County, Texas, Cause No. 096-362770-25. Express disputed the allegations and filed its Original Answer and Affirmative Defenses jointly with Roberto Salazar. This proceeding remains pending.

171. On September 24, 2025, Mr. Garza filed his Proof of Claim No. 36 as related to his claims, asserting an unsecured (and unliquidated) personal injury claim in the amount of approximately $1,000,000.00.

172. On March 12, 2026, the Court entered the *Agreed Order Granting David Garza's Motion for Relief from Automatic Stay* [Docket No. 366], allowing Mr. Garza to proceed with his lawsuit against Express, to liquidate his damages and pursue collection solely as against the Debtors' applicable insurance policies. Debtors do not intend to treat Mr. Garza under the Plan except that, to the extent Debtors are found liable for any damages, will allow him to seek payment from Debtors' insurance policies as part of Class 10 Covered Personal Injury Claims.

**B. Terence Murphey v. Balkan Express, LLC**

173. This is a lawsuit by Terence Murphey against Express for causes of action for negligence arising out of a personal injury claim filed in Tarrant County, Texas, Cause No. 236-358303-24. Express disputed the allegations and filed its Original Answer. This proceeding remains pending.

174. Mr. Murphey did not file a Proof of Claim in the Cases. Moreover, Debtors designated Mr. Murphey as contingent, unliquidated and disputed on their Schedule E/F. Debtors do not intend to treat Mr. Murphey under the Plan except that, to the extent Debtors are found liable for any damages, will allow him to seek payment from Debtors' insurance policies as part of Class 10 Covered Personal Injury Claims.

**C. Elsa Guerra v. Balkan Express and Terence Lynn Murphey**

175. This is a lawsuit by Elsa Guerra against Express, among others, for causes of action for negligence arising out of a personal injury claim filed in Tarrant County, Texas, Cause No. 342-358000-24. Express disputed the allegations and filed its Original Answer. This proceeding remains pending.

176. On October 9, 2025, Ms. Guerra filed her Proof of Claim No. 41 as related to her claims, asserting an unsecured (and unliquidated) personal injury claim.

177. On March 25, 2026, the Court entered the *Order Granting Elsa Guerra's Motion for Relief from the Automatic Stay* [Docket No. 374], allowing Ms. Guerra to proceed with her lawsuit against Express, to liquidate her damages and pursue collection solely as against the Debtors' applicable insurance policies, third party insurers or non-debtors. Debtors do not intend to treat Ms. Guerra under the Plan except that, to the extent Debtors are found liable for any

damages, will allow her to seek payment from Debtors' insurance policies as part of Class 10 Covered Personal Injury Claims.

**D. NTTA v. Balkan Express, LLC**

178. This is a lawsuit by the North Texas Tollway Authority ("**NTTA**") against Express for causes of action for suit on sworn account, breach of contract, quantum meruit and attorney's fees, filed in the 493rd Judicial District of Collin County, Texas, Cause No. 493-02334-2024. Express disputed the allegations and filed its Special Exceptions and Original Answer. This proceeding, including a Motion for Summary Judgment filed by NTTA prior to the Petition Date, remains pending.

179. On May 5, 2025, the NTTA filed Proof of Claim No. 1 as related to its claims, asserting a fully unsecured claim of $488,330.03. Debtors intend to treat the NTTA under Class 9 of the Plan as an Allowed Unsecured Claim.

**E. M&T Capital and Leasing Corporation v. Balkan Express, LLC and Balkan Logistics, LLC**

180. This is a lawsuit by M&T Capital and Leasing Corporation ("**M&T**") against both Debtors, among others, for causes of action for a writ of sequestration for certain equipment, breach of contract and breach of guaranty, filed in the U.S. District Court for the Northern District of Texas, Civil Action No. 4:25-cv-224. Debtors disputed the allegations and filed a Joint Answer. This proceeding remains pending.

181. On June 24, 2025, the Court entered the *Stipulation and Agreed Order Between the Debtor and M&T Bank (1) Providing Adequate Protection Payments, (2) Modifying the Automatic Stay, and (3) Granting Related Relief* [Docket No. 161], which provided that Debtors were to make certain adequate protection payments to M&T and comply with loan documents on account of their security interest in the collateral, otherwise the automatic stay would terminate as to M&T's collateral. On September 19, 2025, M&T filed its *Notice of Termination of the Automatic Stay* [Docket No. 277], on account of Debtors' failure to make all adequate protection payments.

182. On September 4, 2025, M&T filed Amended Proof of Claim No. 35 as related to their claims, claiming a partially secured claim in the amount of $3,935,697.00, with the remaining unsecured portion of $429,331.04. Debtors intend to treat M&T under Class 8 of the Plan and surrender any remaining collateral to M&T to resolve the claim.

**F. Summit Transportation, Inc. and Summit Trucking, Inc. v. Balkan Express, LLC, Nazif Rasidovic, and Daniel Ivandic**

183. This is a lawsuit by Summit Transportation, Inc. and Summit Trucking, Inc. (collectively, "**Summit**") against Express, among others, for causes of action filed in the 298th Judicial District of Dallas County, Texas, Cause No. DC-23-06002. Express disputed the allegations and filed its Original Answer. On May 12, 2025, Summit filed its Notice of Non-Suit, specifically stating that Summit "no longer desire[d] to prosecute their claim against

Defendants BALKAN EXPRESS, LLC, NAZIF RASIDAVIC, and DANIEL IVANDIC. … Plaintiffs' [sic] request that their claims against Defendants be dismissed." Accordingly, the matter has concluded.

184. Notwithstanding the Notice of Non-Suit, Summit did not file a Proof of Claim in the Chapter 11 Cases. Moreover, Debtors designated Summit as contingent, unliquidated and disputed on their Schedule E/F. Accordingly, any Claim of Summit is Disallowed under the Plan and will not be treated under the same.

**G. Brian Hulett v. Balkan Express, LLC**

185. On or about April 20, 2026, Brian Hulett made a demand upon Debtors' insurance carrier, arising out of personal injuries allegedly caused by a vehicle crash that occurred on or about October 30, 2024. Debtors were not previously aware of this Claim and therefore did not schedule the same or otherwise provide notice of the Cases to Mr. Hulett. Upon information and belief, no lawsuit has been filed.

186. Debtors do not intend to treat Mr. Hulett under the Plan except that, to the extent Debtors are found liable for any damages, will allow him to seek payment from Debtors' insurance policies as part of Class 10 Covered Personal Injury Claims.

**H. Zuza Adversary Proceeding**

187. As discussed above, on December 15, 2025, Compass filed the Zuza Adversary Proceeding, asserting a Complaint to Determine the Extent, Validity, and Priority of Lien and for Other Relief [Docket No. 337], seeking, among other things, a declaratory judgment that Zuza's purported lien on the Truck Terminal is invalid.

188. In light of the Zuza Settlement Order entered by the Court, the Zuza Adversary Proceeding is moot and should be dismissed in short order.

**I. Recovery on Preference Actions and Other Avoidance Actions**

189. During the ninety (90) days immediately preceding the Petition Date (the "**Preference Period**"), while presumed insolvent, the Debtors made various payments and other transfers to Creditors on account of antecedent debts. Some of those payments may be subject to avoidance and recovery as preferential and/or fraudulent transfers pursuant to Sections 329, 544, 545, 548, 549, 550, and 553(b) of the Code.

190. The Debtors continue to investigate Chapter 5 Causes of Action it may have against third parties. The Debtors have not completed their investigation of potential objections to Claims and recoveries on Chapter 5 Causes of Action and there may be additional Claims and Chapter 5 Causes of Action possessed by the Debtors and their Estates which are assigned to and vested in the Litigation Trust under the Plan.

191. **OTHER THAN AS EXPRESSLY SET FORTH IN ARTICLE IX OF THE PLAN, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES**

**OF ACTION, AVOIDANCE ACTIONS, OR OBJECTIONS TO PROOFS OF CLAIM. ALL SUCH RIGHTS ARE SPECIFICALLY PRESERVED UNLESS SPECIFICALLY RELEASED UNDER THE PLAN.**

### J. Retained Causes of Action

192. Creditors and other parties in interest should understand that certain legal rights, Claims, and causes of action the Debtors and their Estates may have against them, if any exist, are retained under the Plan for prosecution by either the Reorganized Debtor or Litigation Trust, as applicable, unless expressly released under the Plan.

## ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS

### A. Timing and Calculation of Amounts to Be Distributed

193. Unless otherwise provided in the Plan and/or the Litigation Trust Agreement, on the Effective Date or as soon as reasonably practicable after the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim or as soon as reasonably practicable after such date), each holder of an Allowed Claim shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII of the Plan. Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

### B. Delivery of Distributions and Undeliverable or Unclaimed Distributions

1. Record Date for Distributions

194. As of the close of business on the Distribution Record Date, the register for each of the Classes of Claims as maintained by the Debtors shall be closed, and the Debtors, or their agents, shall not be required to make any further changes in the record holders of any of the Claims. The Debtors or Litigation Trust shall have no obligation to recognize any transfer of the Claims occurring on or after the Distribution Record Date. The Debtors shall be entitled to recognize and deal for all purposes under the Plan only with those record holders stated on the Debtors' transfer ledgers as of the close of business on the Distribution Record Date to the extent applicable.

2. Delivery of Distributions in General

195. Except as otherwise provided in the Plan, the Debtors or the Litigation Trust, as applicable, shall make distributions to holders of Allowed Claims as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' records as of the date of any

such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Debtors or the Litigation Trust, as applicable; provided further, however, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that holder.

3. Undeliverable Distributions and Unclaimed Property

196. In the event that any distribution to any holder of Allowed Claims is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtors and/or the Litigation Trust, as applicable, has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under Section 347(b) of the Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Debtors and/or Litigation Trust automatically and without need for a further order by the Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder of Claims to such property shall be discharged and forever barred.

4. De Minimis Distributions as to Allowed Class 9 Unsecured Claims

197. In order to avoid the disproportionate expense and inconvenience associated with making a *de minimis* distribution to the Holder of an Allowed Unsecured Claim, the Debtors and/or the Litigation Trustee, as applicable, shall not be required to make, and shall be excused from making, any initial or interim distribution to such Holder that is in the amount of less than or equal to $15.00. At the time of any final distribution to the Holders of Allowed Class 9 Unsecured Claims, all such excused distributions to such Holder shall be aggregated and, if such aggregate amount is $15.01 or more, the Debtors and/or the Litigation Trustee, as applicable, shall make a final distribution to such Holder equal to such aggregated amount.

5. Manner of Payment

198. All distributions to the holders of Allowed Claims under the Plan shall be made by the Debtors and/or the Litigation Trustee, as applicable. At the option of the Debtors, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

## C. Compliance with Tax Requirements

199. In connection with the Plan, to the extent applicable, the Debtors and Litigation Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Debtors and the Litigation Trust shall be authorized to take all actions necessary to comply with such withholding and reporting requirements.

**D. No Post-Petition Interest on Claims**

200. Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, post-petition interest shall not accrue or be paid on any pre-petition Claims against the Debtors, and no holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

**E. Setoffs and Recoupment**

201. Except as expressly provided in the Plan, the Debtors and the Litigation Trust may, pursuant to Section 553 of the Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Debtors and Litigation Trust may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (i) agreed in amount among the Debtors, Litigation Trust and/or holder of Allowed Claim or (ii) otherwise adjudicated by the Court or another court of competent jurisdiction; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, Litigation Trust or their successors of any and all claims, rights, and Causes of Action that the Debtors, Litigation Trust or their successors may possess against the applicable holder. In no event shall any holder of Claims against the Debtors be entitled to recoup any such Claim against any claim, right, or Cause of Action of the Debtors or the Litigation Trust, as applicable, unless such holder actually has performed such recoupment and provided notice of such recoupment in writing to the Debtors in accordance with § 13.8 of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

**F. Claims Paid or Payable by Third Parties**

1. Claims Paid by Third Parties

202. The Debtors shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Litigation Trust. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or the Litigation Trust on account of such Claim, such holder shall, within fourteen (14) days of receipt of such payment, repay or return the distribution to the Debtors or Litigation Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the Debtors or the Litigation Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2. Claims Payable by Third Parties

203. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Court.

3. Applicability of Insurance Policies

204. Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in this Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII. FEASIBILITY

### A. Financial Projections and Feasibility

205. Pursuant to Section 1129(a)(11) of the Code, a debtor must demonstrate that a bankruptcy court's confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor or its successor under the plan, unless such liquidation or reorganization is proposed under the plan.

206. The feasibility of the Plan is supported by, among other things, the Debtors' ongoing operations and Net Income therefrom, the remainder of the Sale Proceeds received from the sale of the Truck Terminal (which, in part, has funded the Zuza Settlement and will also fund the Initial Plan Payment), and the Debtors' Plan Projections, which are attached hereto as **Exhibit 2**. The Debtors' expenses have been significantly reduced by cutting employees, drivers and rent expenses. The Debtors assert that they are currently cash flow positive if the debt obligations from the Vehicle Lenders who have retrieved (or will retrieve) their collateral are extinguished and otherwise treated as Unsecured Claims. As such, Debtors maintain positive cash flow and can operate and satisfy ordinary course obligations and make necessary Plan payments throughout the term of the Plan.

## ARTICLE IX. ALTERNATIVES TO THE PLAN

### A. Chapter 7 Liquidation; Liquidation Analysis

207. As a condition to confirmation of a plan, Section 1129(a)(7)(A)(ii) of the Code requires that each impaired class of claims or interests must receive or retain at least the amount of value it would receive if the debtors were liquidated under Chapter 7 of the Code on the effective date of the plan, also called the "best interests" test.

208. A liquidation analysis is attached hereto as **Exhibit 3**. Based upon the same, the Debtors believe that, under the proposed terms of the Plan, all holders of Impaired Claims and Interests will receive property with a value not less than the value such holders would receive in a Chapter 7 liquidation of the Debtors' assets. The Debtors' belief is based primarily on consideration of the effect that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to holders of Impaired Claims, including (i) the increased costs and expenses of a liquidation under Chapter 7 arising from fees payable to a Chapter 7 trustee and professional advisors to the trustee, (ii) the substantial increases in claims, and (iii) the substantial delay in distributions to holders of Impaired Claims and Interests that will likely ensue in a Chapter 7 liquidation. Relatedly, liquidation under Chapter 7 of the Code would likely entail the appointment of a trustee having no experience or knowledge of the Debtors' businesses, its records, or assets. A substantial period of education would be required in order for any Chapter 7 trustee to effectively wind up the cases. Also, in the event litigation were to prove necessary, the Chapter 7 trustee would likely be in an inferior position to prosecute such actions without prior knowledge regarding the Debtors' business and particularly if there were a lack of funding to support such efforts.

209. In summary, the Debtors have determined that a Chapter 7 liquidation would result in diminution in the recoveries to be realized by Holders of Allowed Claims, as compared to the proposed distributions under the Plan. Consequently, the Debtors have determined that the Plan will provide a greater ultimate return to Holders of Allowed Claims than would a chapter 7 liquidation of the Debtors.

**B. Dismissal**

210. If dismissal of the Cases were to occur, the Debtors would no longer benefit from the protections of the Court and the applicable provisions of the Code. In the event of dismissal, it is likely that many Holders of Unsecured Claims would not receive any payment on their Claims. Dismissal would force a race among Creditors to take over and dispose of the Debtors' available assets. Even the most diligent Holders of Unsecured Claims would be unlikely to obtain a recovery on their Claims similar to the recovery proposed under the Plan, and many Holders of Unsecured Claims would likely not obtain any recovery on their Claims.

## ARTICLE X. CERTAIN RISK FACTORS TO BE CONSIDERED

211. The following is intended as a summary of certain risks associated with the Plan, but it is not exhaustive and must be supplemented by the analysis and evaluation made by each Holder of a Claim or Interest of the Plan and this Disclosure Statement as a whole with such Holder's own advisors.

**A. Bankruptcy Risks**

212. There can be no assurance that any impaired Class of Claims under the Plan will accept the Plan or that the Proponents will be able to use the cramdown provisions of the Code for confirmation of the Plan. The Debtors have made concerted efforts to propose a Plan that would be accepted by a sufficient number of Claimants and a sufficient amount of Claims to confirm the Plan.

**B. Confirmation Risks**

213. The following specific risks exist with respect to confirmation of the Plan:

- Any objection to confirmation of the Plan can either prevent confirmation of the Plan, or delay such confirmation for a significant period of time.
- Since the Debtors may be seeking to obtain approval of the Plan over the rejection of one or more impaired Classes of Claims, the cramdown process could delay confirmation.

**C. Conditions Precedent**

214. Confirmation of the Plan and occurrence of the Effective Date are subject to certain conditions precedent that may not occur. The Debtors, however, are working diligently with all parties in interest to ensure that all conditions precedent are satisfied.

## ARTICLE XI. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

215. THE PLAN AND ITS RELATED TAX CONSEQUENCES ARE COMPLEX. MOREOVER, MANY OF THE INTERNAL REVENUE CODE PROVISIONS DEALING WITH THE FEDERAL INCOME TAX ISSUES ARISING FROM THE PLAN HAVE BEEN THE SUBJECT OF RECENT LEGISLATION AND, AS A RESULT, MAY BE SUBJECT TO AS YET UNKNOWN ADMINISTRATIVE OR JUDICIAL INTERPRETATIONS. THE DEBTORS HAVE NOT REQUESTED A RULING FROM THE INTERNAL REVENUE SERVICE (THE "IRS") OR AN OPINION OF COUNSEL WITH RESPECT TO THESE MATTERS. ACCORDINGLY, NO ASSURANCE CAN BE GIVEN AS TO THE INTERPRETATION THAT THE IRS WILL ADOPT. THERE ALSO MAY BE STATE, LOCAL OR OTHER TAX CONSIDERATIONS APPLICABLE TO EACH CREDITOR. CREDITORS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE, LOCAL, AND OTHER TAX LAWS.

## ARTICLE XII. CONCLUSION

216. This Disclosure Statement provides information regarding the Debtors' bankruptcy and the potential benefits that might accrue to Holders of Claims against and Interests in the Debtors under the Plan, as proposed. The Plan is the result of extensive efforts by the Debtors and their advisors to provide the Holders of Allowed Claims with a meaningful recovery on account of their Claims. The Debtors believe that the Plan is feasible and will provide each Holder of a Claim or Interest against the Debtors with an opportunity to receive greater benefits than those that would be received under any other alternative. The Debtors, therefore, urge interested parties to vote in favor of the Plan.

DATED: August 5, 2026

**BONDS ELLIS EPPICH SCHAFER JONES LLP**
Joshua N. Eppich
Texas Bar I.D. No. 24050567
Eric T. Haitz
Texas Bar I.D. No. 24101851
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: eric.haitz@bondsellis.com

Ken Green
Texas Bar I.D. 24036677
402 Heights Blvd.
Houston, Texas 77007
(713) 335-4990 telephone
(713) 335-4991 facsimile
Email: ken.green@bondsellis.com

**COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION**

# EXHIBIT 2

**Balkan Express Past and Forecast Budget**

| | 9/1-9/30 | 10/1-10/31 | 11/1-11/30 | 12/1-12/31 | 2027 | 2028 | 2029 | 2030 | 2031 | Totals | Total Monthly Payments Under Plan |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | $ 391,331.92 | $ 365,567.55 | $ 380,509.42 | $ 395,451.30 | $ 410,393.17 | $ 616,995.67 | $ 933,656.17 | $ 1,402,908.07 | $2,065,694.35 | | |
| **Gross Revenue** | $ 720,000.00 | $ 720,000.00 | $ 720,000.00 | $ 720,000.00 | $ 8,640,000.00 | $ 10,368,000.00 | $ 12,441,600.00 | $ 14,929,920.00 | $ 17,915,904.00 | $67,175,424.00 | |
| **Expenses** | | | | | | | | | | | |
| VSS Contract Fee | $ 72,000.00 | $ 72,000.00 | $ 72,000.00 | $ 72,000.00 | $ 864,000.00 | $ 1,036,800.00 | $ 1,244,160.00 | $ 1,492,992.00 | $1,791,590.40 | $6,717,542.40 | |
| Mechanics and Yard Storage | $ 32,000.00 | $ 32,000.00 | $ 32,000.00 | $ 32,000.00 | $ 384,000.00 | $ 384,000.00 | $ 415,000.00 | $ 415,000.00 | $ 415,000.00 | $2,141,000.00 | |
| Driver Payroll | $ 138,000.00 | $ 138,000.00 | $ 138,000.00 | $ 138,000.00 | $ 1,656,000.00 | $ 1,987,200.00 | $ 2,384,640.00 | $ 2,861,568.00 | $ 3,433,881.60 | $12,875,289.60 | |
| Fuel Cost | $ 156,000.00 | $ 156,000.00 | $ 156,000.00 | $ 156,000.00 | $ 1,872,000.00 | $ 2,246,400.00 | $ 2,695,680.00 | $ 3,234,816.00 | $ 3,881,779.20 | $14,554,675.20 | |
| Maintenance | $ 33,000.00 | $ 33,000.00 | $ 33,000.00 | $ 33,000.00 | $ 396,000.00 | $ 475,200.00 | $ 480,000.00 | $ 480,000.00 | $ 480,000.00 | $2,443,200.00 | |
| Pilot Travel Centers | $ 52,500.00 | $ 52,500.00 | $ 52,500.00 | $ 52,500.00 | $ 630,000.00 | $ 756,000.00 | $ 907,200.00 | $ 1,088,640.00 | $ 1,306,368.00 | $4,898,208.00 | |
| Zlatan Karic | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 200,000.00 | $ 220,000.00 | $ 230,000.00 | $ 240,000.00 | $ 240,000.00 | $1,190,000.00 | |
| Andrej Karic | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 120,000.00 | $ 130,000.00 | $ 135,000.00 | $ 140,000.00 | $ 140,000.00 | $705,000.00 | |
| Litigation Trust Fees | $ 25,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 60,000.00 | $ 60,000.00 | $ 60,000.00 | $ 60,000.00 | $ 60,000.00 | $340,000.00 | |
| PNC | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 75,000.00 | $ 900,000.00 | $ 950,000.00 | $ 1,000,000.00 | $ 1,200,000.00 | $ - | $4,350,000.00 | $ 4,350,000.00 |
| Compass | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 25,000.00 | $ 140,000.00 | $ 140,000.00 | $ 125,000.00 | $ - | $ - | $505,000.00 | $ 505,000.00 |
| Wells Fargo | $ 6,875.00 | $ 6,875.00 | $ 6,875.00 | $ 6,875.00 | $ 82,500.00 | $ 82,500.00 | $ 82,500.00 | $ 55,000.00 | | $330,000.00 | $ 330,000.00 |
| Huntington | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 36,000.00 | $ 36,000.00 | $ 36,000.00 | $ 23,000.00 | | $143,000.00 | $ 143,000.00 |
| Cap Ex | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 20,000.00 | $ 240,000.00 | $ 240,000.00 | $ 240,000.00 | $ 240,000.00 | $ 240,000.00 | $1,280,000.00 | |
| Total Expenses | $ 663,375.00 | $ 643,375.00 | $ 643,375.00 | $ 643,375.00 | $ 7,580,500.00 | $ 8,744,100.00 | $ 10,035,180.00 | $ 11,531,016.00 | $ 11,988,619.20 | $52,472,915.20 | |
| Income | $ 56,625.00 | $ 76,625.00 | $ 76,625.00 | $ 76,625.00 | $ 1,059,500.00 | $ 1,623,900.00 | $ 2,406,420.00 | $ 3,398,904.00 | $ 5,927,284.80 | $14,702,508.80 | |
| Cash Balance | $ 447,956.92 | $ 442,192.55 | $ 457,134.42 | $ 472,076.30 | $ 1,469,893.17 | $ 2,240,895.67 | $ 3,340,076.17 | $ 4,801,812.07 | $ 7,992,979.15 | $21,665,016.41 | |
| Taxes | $ 19,818.75 | $ 26,818.75 | $ 26,818.75 | $ 26,818.75 | $ 370,825.00 | $ 568,365.00 | $ 842,247.00 | $ 1,189,616.40 | $ 2,074,549.68 | $5,145,878.08 | |
| Net Income | $ 36,806.25 | $ 49,806.25 | $ 49,806.25 | $ 49,806.25 | $ 688,675.00 | $ 1,055,535.00 | $ 1,564,173.00 | $ 2,209,287.60 | $ 3,852,735.12 | $9,556,630.72 | |
| GUC Plan Payment | $ 25,764.38 | $ 34,864.38 | $ 34,864.38 | $ 34,864.38 | $ 482,072.50 | $ 738,874.50 | $ 1,094,921.10 | $ 1,546,501.32 | $ 2,696,914.58 | $6,689,641.50 | $ 6,689,641.50 |
| Income after GUC Plan Payment | $ 82,389.38 | $ 61,683.13 | $ 61,683.13 | $ 61,683.13 | $ 852,897.50 | $ 1,307,239.50 | $ 1,937,168.10 | $ 2,736,117.72 | $ 4,771,464.26 | $11,872,325.83 | |

| | | | |
|---|---|---|---|
| One Time Plan Payment shared pro rata between PNC, Compass, Wells Fargo and Huntington | | | $ 500,000.00 |
| | PNC | $ 4,800,000.00 | $ 411,311.05 |
| | Wells Fargo | $ 328,000.00 | $ 28,106.26 |
| | Compass | $ 550,000.00 | $ 47,129.39 |
| | Huntington | $157,000.00 | $ 13,453.30 |
| | | $ 5,835,000.00 | $ 500,000.00 |
| One Time Restructuring Expenses | | | $ 275,000.00 |
| Total Payments made to Creditors under plan | | | $ 12,792,641.50 |
| Estimated Admin Claims: | Compass | $0* | |
| | Bonds Ellis | $400,000.00 | |
| | US Trustee Fees | | |

**Notes:**

Secured creditors constituting lenders other than Huntington, PNC, Wells Fargo and Compass will take their collateral back and sell it. They will then file a deficiency claim which will be an unsecured claim if not objected to.

VSS Contract Fee includes factoring, accounting, dispatch, and insurance costs

Source of Plan Payment and Restructuring Payment is proceeds from sale of real property

Restructuring Payment is used to pay UST fees, allowed admin expenses (might be prorata depending on what has been approved). Allowed admin claims that have been approved and there is not sufficient cash from real estate sales proceeds will be paid first from payments to GUCs until they are paid in full. General GUC claims will be paid after all allowed admin claims have been paid in full.

*Compass Admin claim is listed as $0 because no admin claim has been filed to date. There have been informal representations made to Debtors counsel regarding an estimated amount.

# EXHIBIT 3

**Liquidation Analysis**

**In re: Balkan Express, LLC *et al* .**
**Plan vs Liquidation Recovery Comparisons**
**As of August 5, 2026**

| Remaining Assets | Current Value | Liquidation Value |
|---|---|---|
| Cash | $ 864,192.96 | $ 864,192.96 |
| Accounts Receivable | $ - | $ - |
| Earned Tax Credit | $ 438,326.00 | $ 438,326.00 |
| Vehicles and Trailers* | $ 5,835,000.00 | $ 4,084,500.00 |
| Furniture and Fixtures and Office Equipment | $ 30,000.00 | $ 1,500.00 |
| **Total** | $ 7,167,518.96 | $ 5,388,518.96 |

| Estimated Liquidation Costs and Claims | Amount |
|---|---|
| Chapter 7 Trustee Fees | $ 65,000.00 |
| Chapter 7 Trustee's Professional Fees | $ 50,000.00 |
| **Total Estimated Liquidation Proceeds** | $ 5,273,518.96 |

| Class | Claim Estimate ($) | Liquidation Recoveries ($) | Liquidation Recovery (%) | Estimated Plan Recoveries ($) | Plan Recoveries (%) |
|---|---|---|---|---|---|
| Priority Tax Claims | $49,143.25 | $49,143.25 | 100.00% | $ 49,143.25 | 100.00% |
| Administrative Claims (including fee claims) | $ 400,000.00 | $ 400,000.00 | 100.00% | $ 400,000.00 | 100.00% |
| Class 1 - Other Priority Claims | $ - | $ - | 100.00% | $ - | 100.00% |
| Class 2 - Secured Tax Claims | $253,028.16 | $ 253,028.16 | 100.00% | $ 253,028.16 | 100.00% |
| Class 3 - Other Secured Claims | $ - | $ - | See Class 10 Recovery | $ - | 100.00% |
| Class 4 - Compass Secured Claim | $ 550,000.00 | $ 385,000.00 | 70.00% | $ 550,000.00 | 100.00% |
| Class 5 - PNC Secured Claim | $ 4,800,000.00 | $ 3,360,000.00 | 70.00% | $ 4,800,000.00 | 100.00% |
| Class 6 - Wells Fargo Secured Claim | $ 328,000.00 | $ 229,600.00 | 70.00% | $ 328,000.00 | 100.00% |
| Class 7 - Huntington Secured Claim | $ 157,000.00 | $ 109,900.00 | 70.00% | $ 157,000.00 | 100.00% |
| Class 8 - M&T Secured Claim | $ - | $ - | See Class 10 Recovery | $ - | 100.00% |
| Class 9 - General Unsecured Claims† | $ 7,383,653.27 | $ 486,847.55 | 6.59% | $ 7,383,653.27 | 100.00% |
| Class 10 - Covered Personal Injury Claims⁰ | $ - | $ - | 0.00% | $ - | 0.00% |
| Class 11 - Plan Sponsor Subordinated Claim | $ - | $ - | 0.00% | $ - | 0.00% |
| **Total** | **$13,920,824.68** | **$5,273,518.96** | **37.88%** | **$ 13,920,824.68** | **100.00%** |

| Unpaid Liquidation Claims | $ 8,647,305.72 |
|---|---|

*Estimated value of remaining collateral to be kept by Debtors and not surrendered, calculated based on secured claims attached to collateral
†Face amount of unsecured claims. Some claims may be subject to dispute. Also inclusive of estimated deficiency claims from Classes 3 and 8 but exclusive of personal injury claims to be covered by insurance
⁰Assumes recovery under insurance policies by personal injury claimants but not plan recovery